# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN SOLOMON, | Civil Case No. 22-CV-03137-JEB |
| Plaintiff, | |
| -against- | |
| DECHERT LLP, DAVID NEIL GERRARD, DAVID GRAHAM HUGHES, NICHOLAS DEL ROSSO, VITAL MANAGEMENT SERVICES, INC., AMIT FORLIT, ISRAEL INSIGHT ANALYSIS AND RESEARCH, LLC, SDC-GADOT LLC, AMIR HANDJANI, ANDREW FRANK, and KARV COMMUNICATIONS, INC., | **ORAL HEARING REQUESTED** |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DECHERT LLP'S MOTION TO DISMISS

Sean Hecker*
John C. Quinn*
David Gopstein*
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel.: (212) 763-0883
shecker@kaplanhecker.com

*Attorneys for Defendant Dechert LLP*

**admitted pro hac vice*

February 3, 2023

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. iv

INTRODUCTION .................................................................................................................. 1

PLAINTIFF'S ALLEGATIONS ........................................................................................... 4

    I.     Background ................................................................................................ 5

    II.    The Al Sadeq Allegations ........................................................................ 6

    III.   The Hack-and-Release Allegations .......................................................... 6

    IV.   Cover-up Allegations ................................................................................ 8

    V.    Plaintiff's Claims ..................................................................................... 9

STANDARD OF REVIEW .................................................................................................... 9

ARGUMENT ........................................................................................................................ 10

    I.     All of Plaintiff's Claims Are Barred by the Applicable Statutes of Limitations ........................................................................................... 10

          A.    The Applicable Statutes of Limitations and Their Starting Points .............................................................................................. 10

          B.    Plaintiff's Claims Accrued at the Latest in June 2017 ...................... 12

          C.    The Statutes of Limitations Should Not be Tolled Because Plaintiff Was on Notice of His Claims ............................................. 13

    II.    The Complaint Fails to State a RICO Claim ............................................. 16

          A.    The Complaint Fails to Allege Any Racketeering Activity .............. 17

                i.    The Al Sadeq Allegations do not constitute RICO predicates ................................................................ 18

                ii.   The Hack-and-Reveal Allegations do not constitute RICO predicates ................................................... 21

                iii.  The Cover-Up Allegations do not constitute RICO predicates ................................................................ 24

           B.    The Complaint Does Not Allege a "Pattern" of Racketeering Activity .............................................................................................. 26

|  |  | i. | The Complaint does not allege an open-ended scheme. | 26 |
|  |  | ii. | The Complaint does not allege a close-ended scheme. | 27 |
|  | C. | | The Complaint Does Not Allege the Existence of an "Enterprise" | 29 |
|  | D. | | The Complaint Does Not Allege an Injury Proximately Caused by RICO Violations | 30 |
|  | E. | | The Complaint Alleges Non-Actionable Injuries | 34 |
| III. | | | The Complaint Does Not State a Claim Under the Federal Wiretap Act | 36 |
| IV. | | | The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims | 38 |
| V. | | | The Complaint Fails to State a Claim Under the D.C. Wiretap Act | 38 |
| VI. | | | The Complaint Fails to State a Claim For Tortious Interference With Business Relationships | 39 |
| VII. | | | The Complaint Fails to State a Claim For "Civil Conspiracy" | 41 |
| VIII. | | | The Complaint Fails to State a Claim for Punitive Damages | 43 |
| **CONCLUSION** | | | | 43 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Loyd*,
  496 F. Supp. 3d 269 (D.D.C. 2020)................................................................ 49, 53, 54

*Al-Aulaqi v. Panetta*,
  35 F.Supp.3d 56 (D.D.C. 2014) .............................................................................. 24

*Anderson v. Ayling*,
  396 F.3d 265 (3d Cir. 2005)..................................................................................... 65

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006).................................................................................................. 61

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................... 12, 14, 41

*Azima v. RAKIA*,
  926 F.3d 870 (D.C. Cir. 2019)................................................................................. 10

*Bailey v. Bailey*,
  No. 07-cv-11672, 2008 U.S. Dist. LEXIS 8565 (E.D. Mich. 2008)................................. 71, 72

*Bates v. Northwestern Human Servs., Inc.*,
  466 F. Supp. 2d 69 (D.D.C. 2006)....................................................................... 39, 40

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................... 12, 13, 43

*Bennett Enters., Inc. v. Domino's Pizza, Inc.*,
  45 F.3d 493 (D.C. Cir. 1995)...................................................................... 76, 78, 80

*Bigelow v. Virginia*,
  421 U.S. 809 (1973).................................................................................................. 33

*Broidy Cap. Mgmt. v. Muzin*,
  No. 19-cv-0150, 2020 WL 1536350 (D.D.C. Mar. 31, 2020) .......................................... *passim*

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002)........................................................................... 64, 69

*Browning v. Flexsteel Indus., Inc.*,
  955 F. Supp. 2d 900 (N.D. Ind. 2013) ..................................................................... 45

*Bunnell v. Motion Picture Ass'n of Am.*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................... 72

iv

*Burnett v. Al Baraka Inv. and Dev. Corp.*,
   274 F. Supp. 2d 86 (D.D.C. 2003) ....................................................... 68

*Butcher v. Wendt*,
   975 F.3d 236 (2d Cir. 2020) ............................................................... 48

*Casper v. Paine Webber Grp., Inc.*,
   787 F. Supp. 1480 (D.N.J. 1992) ........................................................ 62

*Cheeks of N. Am., Inc. v. Fort Myer Constr. Corp.*,
   807 F. Supp. 2d 77 (D.D.C. 2011) ...................................................... 81

*Cheeks v. Fort Myer Constr. Co.*,
   216 F. Supp. 3d 146 (D.D.C. 2016) ............................................... 38, 39

*Cockrum v. Donald J. Trump for President, Inc.*,
   319 F. Supp. 3d 158 (D.D.C. 2018) .................................................... 46

*Confederate Mem'l Ass'n, Inc. v. Hines*,
   995 F.2d 295 (D.C. Cir. 1993) ............................................................ 57

*Ctr. for Immigr. Stud. v. Cohen*,
   410 F. Supp. 3d 183, 189 (D.D.C. 2019) ............................................ 37

*Currier v. Radio Free Eur./Radio Liberty, Inc.*,
   159 F.3d 1363 (D.C. Cir. 1998) .......................................................... 21

*Democratic National Committee v. Russian Federation*,
   392 F. Supp. 3d 410 (S.D.N.Y. 2019) ................................. 44, 45, 47, 58

*Doe I v. State of Israel*,
   400 F. Supp. 2d 86 (D.D.C. 2005) ...................................................... 56

*Doe v. Roe*,
   958 F.2d 763 (7th Cir. 1992) .............................................................. 68

*Drake v. McNair*,
   993 A.2d 607 (D.C. 2010) .................................................................. 18

*Drummond Co. v. Collingsworth*,
   No. 2:15-cv-506, 2017 WL 3268907 (N.D. Ala. 2017) ........................ 34

*Dunleavy v. Wayne Cty. Comm'n*,
   No. 04-cv-74670, 2006 WL 8431836 (E.D. Mich. May 11, 2006) ......... 65

*E. Sav. Bank, FSB v. Papageorge*,
   31 F. Supp. 3d 1 (D.D.C. 2014) .......................................................... 67

*Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*,
   208 F. Supp. 3d 219, 229 (D.D.C. 2016) ....................................... 78, 79

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n,*
   48 F.3d 1260 (D.C. Cir. 1995) ............................................................... 52, 53, 74

*El Omari v. Buchanan,*
   No. 22-55-cv, 2022 WL 4454536 (2d Cir. Sept. 26, 2022) ...................................... 47

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.,*
   749 A.2d 724, 739 (D.C. 2000) ................................................................... 6, 83

*Findlay v. CitiMortgage, Inc.,*
   813 F. Supp. 2d 108 (D.D.C. 2011) ...................................................................... 84

*Fitzgerald v. Seamans,*
   384 F. Supp. 688 (D.D.C. 1974) .............................................................................. 21

*Fraser v. Nationwide Mut. Ins. Co.,*
   352 F.3d 107 (3d Cir. 2003) .................................................................................... 70

*Galerie Furstenberg v. Coffaro,*
   697 F. Supp. 1282 (S.D.N.Y. 1988) ....................................................................... 84

*Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.,*
   863 F. Supp. 447 (E.D. Mich. 1994) ...................................................................... 39

*Greenpeace, Inc. v. Dow Chemical Co.,*
   808 F. Supp. 2d 262 (D.D.C. 2011) ................................................... 13, 58, 59, 62

*Gross v. Waywell,*
   628 F. Supp. 2d 475 (S.D.N.Y. 2009) .................................................................... 28

*Grunewald v. United States,*
   353 U.S. 391 (1957) ......................................................................................... 45, 46

*H.J. Inc. v. N.W. Bell Tel. Co.,*
   492 U.S. 229 (1989) ................................................................................... 49, 50, 52

*Halberstam v. Welch,*
   705 F.2d 472 (D.C. Cir. 1983) ..................................................................... 81, 82, 83

*Hargraves v. Cap. City Mortg. Corp.,*
   140 F. Supp. 2d 7 (D.D.C. 2000) ........................................................................... 16

*Harris v. Corr. Corp. of America,*
   796 F. Supp. 2d 7 (D.C. Cir. 2011) ................................................................. 13, 14

*Havilah Real Prop. Servs., LLC v. VLK, LLC,*
   108 A.3d 334 (D.C. 2015) ...................................................................................... 77

*Hemi Grp., LLC v. City of New York, N.Y.,*
   559 U.S. 1 (2010) .......................................................................................... *passim*

*Hobson v. Wilson*,
   737 F.2d 1 (D.C. Cir. 1984) ................................................................................. 20

*Hollander v. Flash Dancers Topless Club*,
   340 F. Supp. 2d 453 (S.D.N.Y. 2004)................................................................... 59

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992).......................................................................................... 58, 59

*Hourani v. Mirtchev*,
   943 F. Supp. 2d 159 (D.D.C. 2013) ..................................................................... 35

*Huff v. Spaw*,
   794 F.3d 543 (6th Cir. 2015) ............................................................................ 5, 73

*Hughes v. Consol-Pa. Coal. Co.*,
   945 F.2d 594 (3d Cir. 1991).................................................................................. 51

*Ibrahim v. Titan Corp.*,
   391 F. Supp. 2d 10 (D.D.C. 2005) ....................................................................... 67

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   No. CV 03-1650, 2004 WL 7081446 (D.D.C. May 18, 2004) .............................. 24

*In re Vasquez*,
   705 N.E.2d 606 (Mass. 1999) ......................................................................... 34, 35

*Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*,
   726 F. Supp. 1 (D.D.C. 1989)............................................................................ 5, 77

*Intex Recreation Corp. v. Team Worldwide Corp.*,
   390 F. Supp. 2d 21 (D.D.C. 2005) ....................................................................... 40

*J.T. v. de Blasio*,
   500 F. Supp. 3d 137 (S.D.N.Y. 2020).............................................................. 27, 64

*Katzman v. Victoria's Secret Catalogue*,
   167 F.RD. 649 (S.D.N.Y 1996) ............................................................................ 31

*Kelly v. United States*,
   140 S. Ct. 1565 (2020).......................................................................................... 41

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018).................................................................................... 48

*Kimm v. Chang Hoon Lee & Champ, Inc.*,
   196 F. App'x 14 (2d Cir. 2006) ............................................................................ 68

*Kinchen v. St. John's Univ.*,
   Nos. 17-cv-3244, 17-cv-4409, 2019 WL 1386743 (E.D.N.Y. Mar. 26, 2019)........ 71

*Klayman v. Obama,*
   125 F. Supp. 3d 67 (D.D.C. 2015) ....................................................................... 67

*Klehr v. A.O. Smith Corp.,*
   521 U.S. 179 (1997) ........................................................................................... 16

*Knight v. Furlow,*
   553 A.2d 1232 (D.C. 1989) ............................................................................... 18

*Kowal v. MCI Commc'ns Corp.,*
   16 F.3d 1271 (D.C. Cir. 1994) ........................................................................... 13

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit,*
   507 U.S. 163 (1993) ........................................................................................... 20

*Lefkowitz v. Reissman,*
   No. 12 Civ. 8703, 2014 WL 925410 (S.D.N.Y. Mar. 7, 2014) ............................... 42

*Long Distance Servi. of Washington, Inc. v. MCI Telecomms. Corp.,*
   692 F. Supp. 1402 (D.D.C. 1988) ....................................................................... 75

*Luis v. Zang,*
   833 F.3d 619 (6th Cir. 2016) .............................................................................. 71

*McManus v. MCI Commc'ns Corp.,*
   748 A.2d 949 (D.C. 2000) .................................................................................. 79

*McPherson v. Harker,*
   No. 18-cv-3082, 2021 WL 1820290 (D.D.C. May 6, 2021) ......................... 4, 70, 71

*Medhin v. Hailu,*
   26 A.3d 307 (D.C. 2011) .................................................................................... 18

*Meng v. Schwartz,*
   116 F. Supp. 2d 92 (D.D.C. 2000) ................................................................. 60, 64

*Meng v. Schwartz,*
   305 F. Supp. 2d 49 (D.D.C. 2004) ..................................................................... 82

*Miller v. Meyers,*
   766 F. Supp. 2d 919 (W.D. Ark. 2011) ............................................................... 72

*Mondy v. Sec'y of the Army,*
   845 F.2d 1051 (D.C. Cir. 1988) ......................................................................... 21

*Mruz v. Caring, Inc.,*
   991 F. Supp. 701 (D.N.J. 1998) ......................................................................... 66

*Nader v. Democratic Nat'l Comm.,*
   567 F.3d 692 (D.C. Cir. 2009) ............................................................ 3, 20, 22, 26

*Newmyer v. Sidwell Friends Sch.*,
   128 A.3d 1023 (D.C. 2015) ............................................................................... 80

*Nodine v. Textron*,
   819 F.2d 347 (1st Cir. 1987) .............................................................................. 62

*Nyambal v. Alliedbarton Sec. Servs., LLC*,
   153 F. Supp. 3d 309 (D.D.C. 2016) .................................................................... 79

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2007) .............................................................................. 28

*Palacios v. MedStar Health, Inc.*,
   298 F. Supp. 3d 87 (D.D.C. 2018) ...................................................................... 26

*Petroff Amshen LLP v. Alfa Rehab PT PC.*,
   No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022) ........................................ 69

*Pohlot v. Pohlot*,
   664 F. Supp. 112 (S.D.N.Y. 1987) ..................................................................... 68

*Pyramid Sec. Ltd. v. IB Resol., Inc.*,
   924 F.2d 1114 (D.D.C. 1991) ................................................................. 46, 49, 50

*R.J.R. Nabisco v. European Cmty.*,
   579 U.S. 325 (2016) .................................................................................... 32, 37

*Radbod v. Moghim*,
   269 A.3d 1035 (D.C. 2022) ......................................................................... 17, 19

*Red Ball Interior Demolition Corp. v. Palmadessa*,
   874 F. Supp. 576 (S.D.N.Y. 1995) ..................................................................... 31

*Republic of Kazakhstan v. Stati*,
   380 F. Supp. 3d 55 (D.D.C. 2019) ............................................................... *passim*

*Reynolds v. Condon*,
   908 F. Supp. 1494 (N.D. Iowa 1995) .................................................................. 66

*Riggs v. Home Builders Inst.*,
   203 F. Supp. 2d 1 (D.D.C. 2002) ........................................................................ 79

*Rotella v. Wood*,
   528 U.S. 549 (2000) ........................................................................ 2, 14, 16, 19

*Sandza v. Barclays Bank PLC*,
   151 F. Supp. 3d 94 (D.D.C. 2015) ....................................................... 1, 26, 38, 39

*Saunders v. Davis*,
   No. 15-cv-2026, 2016 WL 4921418 n.6 (D.D.C. Sept. 15, 2016) ........................... 63

*Scheck v. Gen. Elec. Corp.*,
  No. 91-1594, 1992 WL 13219 (D.D.C. Jan. 7, 1992)....................................................56

*Scheidler v. Nat'l Org. for Women, Inc.*,
  537 U.S. 393 (2003) ..................................................................................................36

*Schwartz v. Schwartz*,
  No. 19-cv-00340, 2021 WL 4589084 (D.D.C. Oct. 6, 2021) .......................................82

*Sheridan v. Mariuz*,
  No. 07 Civ. 3313, 2009 WL 920431 (S.D.N.Y. Apr. 6, 2009)....................................61

*Sky Medical Supply, Inc. v. SCS Support Claims Servs. Inc.*,
  17 F. Supp. 3d 207 (E.D.N.Y. 2014) ..........................................................................28

*Smith v. Wright*,
  No. 20-3389, 2021 WL 5906040 (D.D.C. Dec. 14, 2021)...........................................43

*Sparshott v. Feld Ent., Inc.*,
  311 F.3d 425 (D.C. Cir. 2002) ............................................................................17, 19

*Sprint Commc'ns Co., L.P. v. F.C.C.*,
  76 F.3d 1221 (D.C. Cir. 1996) ............................................................................20, 25

*Sundberg v. TTR Realty, LLC*,
  109 A.3d 1123 (D.C. 2015) .........................................................................................83

*Toumazou v. Turkish Republic of N. Cyprus*,
  71 F. Supp. 3d 7 (D.D.C. 2014)............................................................................41, 80

*Tyco Int'l (US) Inc. v. John Does*,
  No. 01-cv-3856, 2003 WL 21638205 (S.D.N.Y. July 11, 2003)..................................83

*U.S. ex rel. Miller v. Bill Harbert Int'l Constr.*,
  505 F. Supp. 2d 1 (D.D.C. 2007) ................................................................................22

*United States v. All Assets Held at Bank Julius*,
  251 F. Supp. 3d 82 (D.D.C. 2017) ..............................................................................36

*United States v. Maturo*,
  982 F.2d 57 (2d Cir. 1992)..........................................................................................73

*United States v. Maxwell*,
  920 F.2d 1028 (D.C. Cir. 1990) ..................................................................................37

*United States v. Minaya*,
  No. 17-359, 2019 WL 1615549 (D.N.J. Apr. 16, 2019) .............................................73

*United States v. Steiger*,
  318 F.3d 1039 (11th Cir. 2003) ..................................................................................71

*United States v. Turkette*,
    452 U.S. 576 (1981)..................................................................................... 55

*Wagh v. Metris Direct, Inc.*,
    348 F.3d 1102 (9th Cir. 2003) ................................................................. 28

*Waldon v. Covington*,
    415 A.2d 1070 (D.C. 1980) ....................................................................... 81

*Washington Post v. Robinson*,
    935 F.2d 282 (D.C. Cir. 1991)................................................................... 26

*Watson v. Norris*,
    No. 89-0625, 1991 WL 7165 (D.D.C. Jan. 11, 1991).................................... 55, 56, 57

*Weaver v. Bratt*,
    421 F. Supp. 2d 25 (D.D.C. 2006) ...................................................... 60, 63

*Western Assocs. Ltd. P'ship ex rel. Ave Assocs. Ltd. P'Ship v. Mkt. Square Assocs.*,
    235 F.3d 629 (D.C. Cir. 2001) ........................................................ *passim*

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007).................................................... 67

*Wright v. Towns*,
    No. 90-0565, 1991 WL 100388 (D.D.C. May 30, 1991)............................ 57

*Youkelsone v. F.D.I.C.*,
    910 F. Supp. 2d 213 (D.D.C. 2012) ...................................................... 24

*Zandford v. NASD*,
    30 F. Supp. 2d 1 (D.D.C. 1998) ............................................................ 15

*Zheng v. Yahoo! Inc.*,
    No. C-08-1068, 2009 WL 4430297 (N.D. Cal. Dec. 2, 2009)................... 73

## Statutes

18 U.S.C. § 1030................................................................................... 33, 42

18 U.S.C. § 1503................................................................................... 20, 25

18 U.S.C. § 1515(a)(1)................................................................................ 25

18 U.S.C. § 1951.......................................................................................... 20

18 U.S.C. § 1956(a)(2)(A)........................................................................... 23

18 U.S.C. § 1961.............................................................................. *passim*

18 U.S.C. § 1962 ................................................................................................ 17

18 U.S.C. § 1964 ............................................................................... 9, 16, 35, 43

18 U.S.C. § 2510(4) .......................................................................................... 38

18 U.S.C. § 2511 ............................................................................... 9, 10, 36, 38

18 U.S.C. § 2520 ................................................................................... 10, 11, 36

18 U.S.C. § 2521 .................................................................................................. 9

28 U.S.C. § 1367(c) .......................................................................................... 38

D.C. Code § 12-301(8) ...................................................................................... 10

D.C. Code § 22-2001 ........................................................................................ 19

D.C. Code § 22-3251 ........................................................................................ 20

D.C. Code § 23-541(3) ................................................................................. 4, 38

D.C. Code § 23-542 ...................................................................................... 9, 38

D.C. Code § 23-554 ...................................................................................... 9, 38

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 10, 16

Fed. R. Civ. P. 8 ............................................................................................ 4, 22

Fed. R. Civ. P. 9(b) .......................................................................................... 21

**Other Authorities**

Amended Complaint, *Azima v. RAK Investment Authority*,
No. 16-cv-1948 (D.D.C. May 16, 2017) .................................................. 2, 14

Complaint, *Azima et al. v. Dechert LLP et al.*,
No. 22-cv-08728 (S.D.N.Y. Oct. 13, 2022) ................................................... 8

Complaint, *Azima v. Del Rosso, et al.*,
No. 20-cv-954 (M.D.N.C. Oct. 15, 2020) .................................................... 13

Complaint, *Azima v. RAK Investment Authority*,
No. 16-cv-1948 (D.D.C. Sept. 30, 2016) ....................................................... 8

Gardiner Harris & Mark Landler, *Qatar Charm Offensive Appears to Have Paid Off, U.S.
Officials Say*, N.Y. Times (April 9, 2018), https://www.nytimes.com/2018/04/
09/us/politics/qatar-trump-embargo-charm-offensive.html ....................... 14

Jay Solomon, *The Source*, Columbia Journalism Review (March 5, 2018),
  https://www.cjr.org/special_report/the-source.php ................................................................ 1, 16

Jon Gambrell et al., *'Worth Killing Over': How a Plane Mogul Dodged US Scrutiny*, AP News
  (June 20, 2017), https://apnews.com/article/north-america-ap-top-news-international-news-
  politics-iran-80386144f86b4fe5a6986d862875837f ............................................................... 14

Kevin Collier, *How Two Persian Gulf Nations Turned The US Media Into Their Battleground*,
  Buzzfeed News (May 10, 2018), https://www.buzzfeednews.com/article/kevincollier/qatar-
  uae-iran-trump-leaks-emails-broidy ...................................................................................... 14

Restatement (Second) of Torts § 772 (1979) ............................................................................ 39

Zach Dorfman, *The Mysterious Tale of a Powerful American Businessman, Three Sanctioned
  Iranians and an Imprisonment in Tehran*, Politico (May 27, 2018),
  https://www.politico.com/magazine/story/2018/05/27/the-mysterious-tale-of-a-powerful-
  american-business .................................................................................................................. 14

Defendant Dechert LLP ("Dechert") respectfully submits this memorandum in support of its motion to dismiss the Complaint filed by Plaintiff Jonathan Solomon on October 14, 2022.

## <u>INTRODUCTION</u>

In June 2017, more than five years before Plaintiff commenced this action, *The Wall Street Journal* ("the Journal") terminated Plaintiff's employment as a reporter. As the Complaint acknowledges, the immediate cause of the firing was a heads-up from the Associated Press that it was going to publish a story about serious ethical lapses Plaintiff had engaged in with one of his longtime sources, Farhad Azima. *See* Compl. ¶¶ 99-100. The Associated Press's reporting was based, in part, on Plaintiff's emails with Azima, including emails about business opportunities for the two of them. *See id.* ¶¶ 95-101.

In March 2018, more than four years before filing the Complaint, Plaintiff wrote an essay in the *Columbia Journalism Review* entitled "The Source: How Hacked Emails and a Yacht in Monaco Ended my Career at *The Wall Street Journal*" (the "CJR Essay").[1] Among other things, Plaintiff wrote, "I understand that I made serious mistakes in managing my source relationship with Azima." Plaintiff also wrote that he believed that Dechert played some role in the disclosure of his improper emails with Azima. *Id.*

In October 2022, Plaintiff filed the instant eight-count, seventy-page complaint (the "Complaint"), alleging that eleven Defendants, including Dechert, together with unidentified "Cohorts," formed a racketeering enterprise that exposed his improper emails and should be held responsible for the Journal's decision to terminate him. If only his unethical conduct had remained secret, his theory goes, Plaintiff could have escaped the consequences of his

---

[1] *See* Jay Solomon, *The Source*, COLUMBIA JOURNALISM REVIEW (March 5, 2018), https://www.cjr.org/special_report/the-source.php (attached as Exhibit 1 to the Declaration of John C. Quinn (the "Quinn Decl.")). As described below, in footnote 6, the Court can take judicial notice of the CJR Essay for purposes of establishing Plaintiff was on notice of his claims at that time. *See Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 113 (D.D.C. 2015).

wrongdoing.  On that theory, he asserts a slew of civil Racketeer Influenced and Corrupt

Organizations ("RICO"), federal wiretapping, tort, and conspiracy claims, and seeks to recover

his pay, as well as unspecified damages for "pain, suffering, mental anguish, emotional distress,"

all "trebled," plus punitive damages, interest, and fees and costs.  For the reasons set forth below,

Plaintiff's claims are untimely, without merit, and a misuse of the civil RICO statute.  The

Complaint should be dismissed in its entirety with prejudice.

   *First*, Plaintiff's claims are all untimely.  Of Plaintiff's causes of action, his RICO claims

have the longest statute of limitations, at four years.  And for civil RICO claims, "discovery of

the injury, not discovery of the other elements of a claim, is what starts the clock."  *Rotella v.

Wood*, 528 U.S. 549, 555 (2000).  Plaintiff was fired in June 2017, more than five years before

he filed this action.  And Plaintiff certainly knew of both his own improper conduct and the

exposure of his emails before he was fired.  Indeed, the Journal informed Plaintiff that it was

aware of his inappropriate dealings with Azima as early as December 2016.  Plaintiff discussed

all of this in the CJR Essay—and even that was more than four years prior to filing.  Plaintiff

tries to escape the time bar by alleging that the conduct at issue was "fraudulently concealed"

from him. Compl. ¶ 125.  But "the doctrine of fraudulent concealment does not come into

play . . . if a plaintiff [was] on notice of a potential claim," *Nader v. Democratic Nat'l Comm.*,

567 F.3d 692, 700 (D.C. Cir. 2009), and here, Azima was making public allegations about

Dechert's supposed involvement in the release of his emails as early as May 2017, *see* Amended

Complaint, *Azima v. RAK Investment Authority*, No. 16-cv-1948 (D.D.C. May 16, 2017), ECF

No. 28 (the "Azima D.C. Proceeding"), and Plaintiff admitted his awareness of that proceeding

in the CJR Essay.  *See* Quinn Decl., Ex. 1 at 4-5.  It is thus clear that Plaintiff has been on notice

of his injury and his claims since at least 2017.  As a result his claims are all time-barred.

*Second*, even if his Complaint were timely, it fails to state a claim on which relief may be granted.  Plaintiff's lead RICO claim does not sufficiently allege a single cognizable predicate act by Dechert (or any Defendant).  Nor does it allege the required "pattern" of racketeering activity; rather, it alleges precisely the type of "single scheme, [] single injury, and few victims" that makes it "virtually impossible for plaintiffs to state a RICO claim."  *Western Assocs. Ltd. P'ship ex rel. Ave Assocs. Ltd. P'Ship v. Mkt. Square Assocs.*, 235 F.3d 629, 262 (D.C. Cir. 2001); *Broidy Cap. Mgmt. v. Muzin*, No. 19-cv-0150, 2020 WL 1536350, at *9 (D.D.C. Mar. 31, 2020) (dismissing RICO claim based on alleged hack and release for failure to allege a "pattern" of racketeering activity).  Plaintiff also alleges no basis to maintain—and in fact makes allegations that refute—that his injuries were proximately caused by Defendants' alleged conduct, which was purportedly targeted at Azima, not at Plaintiff.  Plaintiff's firing, and resulting "emotional distress," Compl. ¶ 217, was caused by the content of his own emails, and "the independent actions of third and even fourth parties," *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 15 (2010), namely the Journal and the Associated Press.

Plaintiff's remaining federal and state claims also fail.  His claims pursuant to the Federal Wiretap Act should be dismissed because that statute applies by its terms only to "interception" that is "contemporaneous with the communication's transmission."  *McPherson v. Harker*, No. 18-cv-3082, 2021 WL 1820290, at *10 (D.D.C. May 6, 2021), *aff'd*, 2022 WL 985412 (D.C. Cir. Mar. 28, 2022).  The Complaint alleges no such real-time interception here.  Moreover, the Federal Wiretap Act does not apply to interceptions that occurred extraterritorially, and here, the alleged "hacking" took place in India.  *See* Compl. ¶ 74; *Huff v. Spaw*, 794 F.3d 543, 547 (6th Cir. 2015).

The Complaint's only ostensible basis for subject-matter jurisdiction appears to be federal question jurisdiction, *see* Compl. ¶ 2, and if the RICO and Wiretap Act claims are

dismissed, there is none.  But even if the Court reaches them, the state law claims fail as well.

Plaintiff's claims pursuant to the D.C. Wiretap Act fail because that statute does not apply to

emails at all, but rather the "*aural* acquisition" of "wire or oral communication(s)."  D.C. Code

§ 23-541(3) (emphasis added).  Plaintiff's claim for tortious interference with business

relationships fails because he does not plead that he had anything beyond at-will employment,

which cannot support the claim as a matter of law.  Moreover, tortious interference claims do not

apply to the disclosure of "truthful information," *Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*,

726 F. Supp. 1, 6-7 (D.D.C. 1989), and Plaintiff's claim is, by his own admission, based on the

exposure of his actual communications.  Finally, Plaintiff's claim for civil conspiracy fails

because civil conspiracy is not an independently actionable tort.  *Exec. Sandwich Shoppe, Inc. v.

Carr Realty Corp.*, 749 A.2d 724, 739 (D.C. 2000).  To the extent Plaintiff relies on another tort,

he does not sufficiently allege one.

> For these reasons, and others set forth below, the Complaint should be dismissed in its
entirety.

## PLAINTIFF'S ALLEGATIONS

> Plaintiff's sprawling 70-page, 225-paragraph Complaint wanders between impassioned
storytelling, outright conjecture, and tangents of little to no relevance to his purported causes of

action.  *But see* Fed. R. Civ. P. 8(a)-(e).  For all its meandering complexity, the Complaint boils

down to three purported sets of allegations: first, the purported kidnapping and extortion of non-

party Karam Salah Al Din Awni Al Sadeq (the "Al Sadeq Allegations"), Compl, ¶¶ 64-70;

second, the hack and release of Azima's emails to the Journal and Associated Press (the "Hack-

and-Release Allegations"), *id.* ¶¶ 71-101; and third, the "fraudulent concealment and coordinated

perjury initiatives" that were purportedly meant to cover up the hacking (the "Cover-up

Allegations"), *id.* ¶¶ 102-134.  The allegations concerning each are summarized below in turn.

## I.      Background

Prior to June 2017, Plaintiff was the chief foreign affairs correspondent for *The Wall Street Journal*.  Compl. ¶ 12.  Defendant Dechert is a global law firm with more than twenty offices worldwide.  *Id.* ¶ 19.  Defendants David Hughes and David Gerrard are former Dechert partners.  *Id.* ¶¶ 22, 24.

The non-party Emirate of Ras Al Khaimah ("RAK") is one of the seven United Arab Emirates ("UAE").  The Complaint alleges that the Ras Al Khaimah Investment Authority ("RAKIA") is an "instrumentality" of RAK.  *Id.* ¶ 20.  RAK is ruled by non-party Sheikh Saud (the "Ruler").  *Id.* ¶ 33.  Dechert, and specifically Gerrard and Hughes, previously served as counsel to RAKIA.  *Id.* ¶¶ 20.

Non-party Azima is alleged to be a businessman with ties to the CIA who Plaintiff claims previously brokered business deals involving RAK and the Ruler, *id.*. ¶¶ 34, 85, but whose relationship with the Ruler ultimately soured.  *Id.* ¶ 61.  Azima also served as a source to Plaintiff in connection with reporting for the Journal.  *Id.* ¶ 34.

While Plaintiff devotes pages of his Complaint to discussion of Iranian sanctions, Compl. ¶¶ 34-36, the attempted sale of a Georgian hotel, and palace intrigue within RAK, *id.* ¶¶ 33-62, almost none of that is relevant to his claims.  At its core, Plaintiff alleges that RAKIA hired Dechert to "investigate claims of fraudulent activity at RAKIA."  *Id.* ¶ 36.  This investigation came to include looking at Azima's prior business deals with RAK.  *Id.* ¶¶ 38, 44.  According to Plaintiff, Dechert, its agents and unspecified "Cohorts"—a term Plaintiff defines solely as unidentified "fellow participants in a racketeering enterprise," *id.* ¶ 14—conducted their legal work for RAKIA using unlawful methods.  *Id. passim.*

## II.     The Al Sadeq Allegations

Al Sadeq is a Jordanian businessman who, in 2020, filed a claim in the United Kingdom against Dechert, Gerrard, Hughes, and another Dechert attorney relating to an allegedly improper detention in 2014.  Compl. ¶¶ 62, 64.[2]  Plaintiff echoes the claims of that filing in his own Complaint, alleging that "RAK State Security Investigations personnel" detained Al Sadeq in the "GHQ," presumably referring to the military General Headquarters in RAK.  *Id.* ¶¶ 64-65. Plaintiff alleges that while Al Sadeq was detained, Gerrard "aggressively questioned" Al Sadeq in an attempt to elicit "false information to implicate Mr. Azima."  *Id.* ¶ 64.  Plaintiff additionally alleges that another Dechert attorney directed the search of Al Sadeq's home in Dubai.  *Id.* ¶ 65. Finally, Plaintiff alleges that Al Sadeq was transferred to Al Barirat Camp in Al Ashqar in RAK. *Id.* ¶ 66.  All of this alleged activity took place within the UAE.

## III.     The Hack-and-Release Allegations

In 2015, Azima allegedly became a "target" of Dechert's investigation on behalf of RAK. Compl. ¶ 72.  The Complaint alleges that Gerrard worked with a non-party investigator named Stuart Page to hire various entities to hack and distribute Azima's emails and other data.  *Id.* ¶¶ 44, 76.  This allegedly included hiring Defendant Nicholas Del Rosso and his company Defendant Vital Management Services ("Vital") to work with additional non-parties located in India to conduct the hacking, *id.* ¶¶ 7, 74; Defendant Forlit and his companies Defendants Israel Insight Analysis and Research ("Insight") and SDC-Gadot LLC ("SDC-Gadot") to independently locate the hacked data on the internet, *id.* ¶¶ 8, 74, 87; and Defendants Amir Handjani, Andrew Frank, and their company KARV Communications ("KARV") to "disseminat[e] those materials

---

[2] The Complaint obliquely references another "Jordanian businessman," Jihad Quzmar, who also "filed [a] Particulars of Claim" against Dechert claiming he was "abducted and unlawfully detained in September 2014."  Compl. ¶ 127.  Other than this brief mention of a filing in a different litigation, the Complaint contains no allegations regarding Quzmar.

to the press." *Id.* ¶ 6.  Conveniently, the Complaint avoids any discussion of the contents of any of the emails that were allegedly hacked, including Plaintiff's own correspondence with Azima.

In December 2016, the Washington D.C. bureau chief of the Journal called Plaintiff in to a meeting with "some Dow Jones lawyers," where they presented Plaintiff "with some of the hacked and stolen correspondence between him and Mr. Azima." *Id.* ¶ 95.  Plaintiff does not allege how his employer obtained his correspondence with Azima.  After that meeting, Plaintiff "noticed some changes in how he was being treated on the job," but he "remained employed and continued writing front page stories for the paper." *Id.* ¶ 98

Six months later, Plaintiff was contacted by an Associated Press reporter, Jeff Horwitz, who said he was writing about Plaintiff's business dealings with Azima. *Id.* ¶ 99.  Horwitz also informed the Journal that he had evidence Plaintiff "played a role in trafficking arms to the Middle East; was part of a conspiracy to instigate a coup against the royal family of Kuwait"; and "had an interest in Denx," a company Azima had formed. *Id.* ¶ 100.  The Journal fired Solomon "in connection with the accusations advanced by Mr. Horwitz's reporting." *Id.*

While Plaintiff vaguely alleges he was "framed . . . for alleged violation of journalism ethics," *id.* ¶ 165, or that his communications "were selected in a manipulative and misleading way to present a false narrative implicating [him] in purported improper" activities, *id.* ¶ 39, Plaintiff does not allege that the hacked emails whose distribution purportedly led to his termination were not his authentic communications.  Indeed, in the CJR Essay, Plaintiff conceded that he "had accepted the gift of time on [Azima's] yacht," had "sat in on conversations and meetings that [he] shouldn't have" regarding business ventures that "[Azima and his colleagues] thought could involve me," and had not been "forthcoming enough about all of [his] contacts with Azima" with the Journal.  Quinn Decl., Ex 1 at 9, 14.

## IV.     Cover-up Allegations

The remainder of Plaintiff's allegations involve "the racketeering enterprise's fraudulent concealment and coordinated perjury initiatives."  Compl. ¶¶ 102-134.  This purported "cover up" allegedly played out largely in the context of two litigations.  *Id.*  In 2016, RAKIA sued Azima in the United Kingdom for fraud based on their prior business dealings.  *See RAKIA v. Azima*, Case No. HC-2016-002798 (the "U.K. Proceeding").  Some of the evidence in that case involved emails from Azima's account.  Compl. ¶ 109.  In response, months later, Azima sued RAKIA in this Court (in the aforementioned Azima D.C. Proceeding), alleging that RAKIA hacked his emails.  *See* Complaint, *Azima v. RAK Investment Authority*, No. 16-cv-1948 (D.D.C. Sept. 30, 2016), ECF No. 1.  The Azima D.C. Proceeding was eventually dismissed by the D.C. Circuit on *forum non conveniens* grounds based on a prior settlement agreement between Azima and RAKIA.  *See Azima v. RAKIA*, 926 F.3d 870, 880 (D.C. Cir. 2019).  After his claims were dismissed, Azima filed counterclaims against RAKIA in the U.K. Proceeding based on the alleged hacking, at a later stage adding Dechert (and others) as defendants.  That proceeding is pending.[3]

Plaintiff alleges that Dechert filed briefs before this Court and the D.C. Circuit "falsely and misleadingly asserting that Mr. Azima's stolen data was 'obtained via publicly available internet sources.'"  Compl. ¶ 111.  Plaintiff also asserts that meetings were held to fabricate responses to Azima's inquiries in those proceedings regarding how his data had been discovered by RAKIA, including meetings in Cyprus and Switzerland.  *Id.* ¶¶ 111-16.  Plaintiff does not

---

[3] Recently, Azima also filed suit in the Southern District of New York, alleging that Dechert and other defendants engaged in a RICO conspiracy related to the same purported "cover-up" alleged here.  *See* Complaint, *Azima et al. v. Dechert LLP et al.*, No. 22-cv-08728 (S.D.N.Y. Oct. 13, 2022), ECF No. 1.  The Court in that case stayed discovery *sua sponte* and set a briefing schedule for motions to dismiss.  *Id.*, ECF No. 104.

(and could not) connect the supposedly inaccurate briefs or testimony to his firing (which had already happened) or any other specific harm alleged in the Complaint.

Finally, Plaintiff makes an additional allegation that Page retained Defendant Forlit "to employ hacking techniques" to determine who was funding Al Sadeq's litigation against Dechert described above, "and did locate such information, which he shared with Mr. Page and which Mr. Page in turned shared with Defendants Mr. Gerrard and Mr. Handjani." *Id.* ¶ 131.  Plaintiff does not state who was hacked, when they were hacked, or how they were hacked.  Nor does Plaintiff allege that the hacking actually occurred nor make any effort to connect his firing or resulting distress to the purported hacking.

## V.     Plaintiff's Claims

Based on the conduct outlined above, Plaintiff asserts claims for violations of civil RICO pursuant to 18 U.S.C. § 1964 (Counts I and VIII); the Electronic Communications Privacy Act of 1986 (the "Federal Wiretap Act"), 18 U.S.C. §§ 2511(1)(c) and 2521 (Counts II and III); D.C. Wiretap Act, D.C. Code §§ 23-542 and 23-554 (Counts IV and V); tortious interference with business relationships (Count VI); and civil conspiracy (Count VII).

## STANDARD OF REVIEW

Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff's "obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Greenpeace, Inc. v. Dow Chemical Co.*, 808 F. Supp. 2d 262, 267-68 (D.D.C. 2011) (quoting *Twombly*, 550 U.S. at 555).  The facts alleged "must be enough to raise a right to relief above the speculative level."  *Id.*  And the Court "need not accept inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint." *Harris v. Corr. Corp. of America*, 796 F.

Supp. 2d 7, 10 (D.C. Cir. 2011) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276

(D.C. Cir. 1994.  Nor should courts accept "a legal conclusion couched as a factual allegation,"

or "naked assertions of unlawful misconduct devoid of further factual enhancement." *Id.*

(cleaned up) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

Plaintiff brings eight causes of action.  All of them are barred by the applicable statutes of

limitations, and none of them states a claim upon which relief may be granted.  *See* Fed. R. Civ.

P. 12(b)(6).

### I.      All of Plaintiff's Claims Are Barred by the Applicable Statutes of Limitations

#### A.  The Applicable Statutes of Limitations and Their Starting Points

The statute of limitations for civil RICO claims is **four years** from the date a plaintiff

discovers or should have discovered his injury.  *Rotella*, 528 U.S. at 552, 555.  The statute of

limitations for a civil claim under the federal wiretap law, 18 U.S.C. § 2511, is "**two years** after

the date upon which the claimant first has a reasonable opportunity to discover the violation."  18

U.S.C. § 2520(e) (emphasis added).  The statute of limitations for tortious interference with

business relationships and civil conspiracy under D.C. law is **three years** "from the time the

right to maintain the action accrues."  D.C. Code § 12-301(8); *Zandford v. NASD*, 30 F. Supp. 2d

1, 24 (D.D.C. 1998).  The D.C. Wiretap Act does not specify the applicable statute of limitations,

so claims under the statute are subject to D.C.'s residual **three-year** statutory limitations period.

D.C. Code § 12–301(8).  In other words, the longest statute of limitations applicable to Plaintiff's

claims is four years for the RICO claim.

The Supreme Court has made clear that for civil RICO claims, "discovery of the injury,

not discovery of the other elements of a claim, is what starts the clock."  *Rotella*, 528 U.S. at

555.  Whether or not a plaintiff knew of the alleged pattern of racketeering activity that caused

the harm, or of any predicate act in that pattern, has no bearing on the statute of limitations

analysis.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997); *Rotella*, 528 U.S. at 555.

Nor does Plaintiff need to know the alleged wrongdoer; it does not matter if a plaintiff "remained

unaware of the defendants' racketeering activities, and unaware that [his] injuries arose out of

such activities."  *Hargraves v. Cap. City Mortg. Corp.*, 140 F. Supp. 2d 7, 16 (D.D.C. 2000),

*amended on other grounds*, 147 F. Supp. 2d 1 (D.D.C. 2001).

For its part, the Federal Wiretap Act provides that a civil action must commence within

two years once the claimant "first has a reasonable opportunity to discover the violation," i.e.,

the wiretapping.  18 U.S.C. § 2520(e).  A plaintiff need not even "actually 'discover' or be aware

of the violation," *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002), but actual

knowledge of the wiretapping is sufficient.  *Id.*  "A plaintiff need not even know the perpetrators

of an illicit wiretapping if knowledge of the wiretapping itself would lead to discovery of the

perpetrators."  *Id.* at 430.

Similarly, Plaintiff's claims under D.C. law are typically governed by when the injury

actually occurs.  *Radbod v. Moghim*, 269 A.3d 1035, 1044 (D.C. 2022); *Medhin v. Hailu*, 26

A.3d 307, 310 (D.C. 2011).  When the relationship between the fact of the injury and the tortious

conduct is obscure, "a cause of action accrues when the plaintiff has knowledge of (or by the

exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its

cause in fact, and (3) some evidence of wrongdoing."  *Knight v. Furlow*, 553 A.2d 1232, 1234

(D.C. 1989).  As with federal law, a plaintiff need not know the full details of his injury for

accrual to occur.  *Drake v. McNair*, 993 A.2d 607, 617-18 (D.C. 2010) (accrual triggered by

"*general* knowledge that defendant's conduct was wrongful, rather than knowledge of *precise*

legal remedies for that wrongful conduct"); *Medhin*, 26 A.3d at 310 ("The limitations period['s] .

. . running is not delayed simply because the claimant does not know (or cannot be charged with knowledge of) the full breadth or nature of the defendant's wrongdoing." (cleaned up)).

### B. Plaintiff's Claims Accrued at the Latest in June 2017

In December 2016, Plaintiff was made aware that his emails with Azima had been disclosed to his employer. Compl. ¶ 95. Plaintiff was subsequently fired from the Journal in June 2017. *Id*. ¶ 12. There can thus be no dispute that Plaintiff had knowledge of his injury—*i.e.*, the disclosure of his emails and his termination from the Journal—by no later than June 2017. *Id*. ¶¶ 95-100. That was all that was required for Plaintiff's claims to accrue. *See Rotella*, 528 U.S. at 555 (RICO claim); *Sparshott*, 311 F.3d at 429 (Federal Wiretap claim); *Radbob*, 269 A.3d at 1044 (D.C. claims).

Plaintiff attempts to circumvent the statute of limitations by alleging that he did not and "still does not know the full nature of the Defendants' activities and role in the conspiracy and enterprise." Compl. ¶ 18; *see also id*. ¶ 41 (alleging Plaintiff lacked knowledge of "the roles of all other Defendants" until 2020). But courts uniformly refuse to excuse the untimely filing of litigation based on such assertions; indeed, binding precedent provides that "[a]ccrual does not wait until the injured party has access to or constructive knowledge of all the facts required to support its claim," *Sprint Commc'ns Co., L.P. v. F.C.C.*, 76 F.3d 1221, 1228 (D.C. Cir. 1996), and a plaintiff cannot "postpone suit until he knows every defendant by name and title." *Hobson v. Wilson*, 737 F.2d 1, 36 (D.C. Cir. 1984), *overruled in part on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993); *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 701 (D.C. Cir. 2009) (discovery of other participants' role "does not alter the fundamental nature of the wrong at issue, and so the addition of [a] coconspirator cannot resuscitate [Plaintiff's] claim against the entire conspiracy"); *Fitzgerald v. Seamans*, 384 F. Supp. 688, 696 (D.D.C. 1974), *overruled in part on other grounds*, 553 F.2d 220 (D.C. Cir.

1977) (same).  In short, the applicable standard for all of Plaintiff's claims concern either knowledge of the injury (for the RICO and state claims), or knowledge of the violation (for the Wiretapping Claim) and Plaintiff had knowledge of both by June 2017.

### C.  The Statutes of Limitations Should Not be Tolled Because Plaintiff Was on Notice of His Claims

Plaintiff, seemingly aware of his fatal timeliness problem, seeks equitable relief from the statutes of limitations, by invoking the principle of equitable estoppel.  But his request fails because he was on notice of his claims more than four years ago.

Equitable estoppel "prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (emphasis removed). Generally, a "court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  There are none here.  Plaintiff was on notice of his injury and his potential claims against Dechert in 2017 and "[w]hatever the lengths to which a defendant has gone to conceal the wrongs," equitable estoppel does not apply "if a plaintiff is on notice of a potential claim." *Nader*, 567 F.3d at 700.  "Neither a lack of knowledge of the specific pattern of fraudulent activity, or an inability to know the particular identities of some of the perpetrators . . . alters this result." *U.S. ex rel. Miller v. Bill Harbert Int'l Constr.*, 505 F. Supp. 2d 1, 9 (D.D.C. 2007).

Plaintiff specifically asserts that he was not aware "of the allegations that Defendant Dechert was involved in the hacking" until October 15, 2020, when Azima filed a lawsuit against Defendants Vital and Del Rosso in the Middle District of North Carolina alleging the same conduct.  Compl. ¶ 42; *see* Complaint, *Azima v. Del Rosso, et al.*, No. 20-cv-954 (M.D.N.C. Oct. 15, 2020), ECF No. 1 (the "North Carolina Proceeding").  But a plaintiff need not know the

who/what/when/where/why in order for the limitations clock to start.  And even taking Plaintiff's argument on its own terms, it is a matter of public record that Azima had already publicly filed an Amended Complaint in the Azima D.C. Proceeding (the "Azima D.C. Complaint") more than three years earlier, alleging that Dechert was involved in the use of the hacked materials.  *See* Amended Complaint, *Azima v. RAK Investment Authority*, No. 16-cv-1948, ECF No. 28 (D.D.C. May 16, 2017).  Indeed, the Azima D.C. Proceeding was publicized by at least four major news outlets between 2017 and 2018,[4] such that "even minimal diligence would have revealed the existence of Plaintiffs' cause of action."  *See In re Lorazepam & Clorazepate Antitrust Litig.*, No. 03-cv-1650, 2004 WL 7081446, at *1 (D.D.C. May 18, 2004) (charging plaintiff with notice of claims due to earlier, well-publicized lawsuits "based on the same conduct alleged" by plaintiff).

In the Azima D.C. Complaint, Azima alleged "the extortive use of the data by RAKIA and Dechert against Mr. Azima," Azima D.C. Complaint, ¶ 65, and that "[n]o one other than RAKIA and Dechert claimed that they had Mr. Azima's stolen data, used the stolen data, or

---

[4] Jon Gambrell, Jack Gillum & Jeff Horwitz, *'Worth Killing Over': How a Plane Mogul Dodged US Scrutiny*, AP NEWS (June 20, 2017), https://apnews.com/article/north-america-ap-top-news-international-news-politics-iran-80386144f86b4fe5a6986d862875837f; Gardiner Harris & Mark Landler, *Qatar Charm Offensive Appears to Have Paid Off, U.S. Officials Say*, N.Y. TIMES (April 9, 2018), https://www.nytimes.com/2018/04/09/us/politics/qatar-trump-embargo-charm-offensive.html; Kevin Collier, *How Two Persian Gulf Nations Turned The US Media Into Their Battleground*, BUZZFEED NEWS (May 10, 2018), https://www.buzzfeednews.com/article/kevincollier/qatar-uae-iran-trump-leaks-emails-broidy; Zach Dorfman, *The Mysterious Tale of a Powerful American Businessman, Three Sanctioned Iranians and an Imprisonment in Tehran*, POLITICO (May 27, 2018), https://www.politico.com/magazine/story/2018/05/27/the-mysterious-tale-of-a-powerful-american-businessman-an-emirati-sheikhdom-three-sanctioned-iranians-and-an-imprisonment-in-tehran-218405/.

threatened Mr. Azima with his hacked data," *id.* ¶ 4.[5]  In total, "Dechert" appears forty-four

times in Azima's twenty-eight-page hacking complaint.  *Id.*  And while the Azima D.C.

Complaint does not contain the full panoply of allegations Azima later filed against Del Rosso in

the North Carolina Proceeding, again accrual for limitations purposes does not require

"knowledge of all the facts required to support its claim." *Sprint Commc'ns. Co.*, 76 F.3d at

1228.

    In fact, in the North Carolina Proceeding, the District Court dismissed most of Azima's

hacking claims against Defendants Del Rosso and Vital on statute of limitations grounds. There,

the Court concluded that Azima's 2016 D.C. Complaint established that "by 2016 [Azima] had

discovered the conduct underlying" his multiple federal and state causes of action even if he "did

not learn of the role played by Del Rosso and Vital until recently," because, as here, accrual was

not contingent "on when a plaintiff discovered (or should have discovered) a perpetrator's role,

but rather when the misappropriation or harm itself was discovered[.]"  *Azima v. Del Rosso*, No.

20-cv-954, 2021 WL 5861282 (M.D.N.C. Dec. 10, 2021), *reconsideration denied*, 2022 WL

837185 (M.D.N.C. Mar. 21, 2022) (footnote omitted).

    Furthermore, on March 5, 2018—also more than four years before the filing of the instant

Complaint—Plaintiff published the CJR Essay, which addressed at some length the hacking

claims in this lawsuit and his termination from the Journal.[6]  In the CJR Essay, Plaintiff made

---

[5] The Court may take judicial notice "of public records and government documents available
from reliable sources."  *Al-Aulaqi v. Panetta*, 35 F.Supp.3d 56, 67 (D.D.C. 2014); *Youkelsone v.
F.D.I.C.*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012), *aff'd*, 560 F. App'x 4 (D.C. Cir. 2014).

[6] *See* Quinn Decl., Ex. 1. It is "entirely proper" for the court to take judicial notice of this essay
not "for the truth of [its] assertions, but rather for the fact that [it] contained certain information,
which (true or not) should have put plaintiff on notice of . . . potential claims."  *Sandza*, 151 F.
Supp. 3d at 113 (citing *Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991)); *see
also Nader*, 567 F.3d at 701.

clear he knew about Azima's D.C. Proceeding and the filings in that lawsuit.  *See* Quinn Decl., Ex. 1 at 10 ("Azima quickly countersued RAKIA in a US federal court for allegedly stealing his data, a charge RAKIA denied.").  Indeed, Plaintiff stated that he had come to believe "Dechert or Bell Pottinger [a British public relations firm] were the sources" of his emails.  *Id.* at 12.  In short, by his own admission, Plaintiff was aware of his injury and on notice of claims.

 In sum, all of Plaintiff's claims accrued at the latest when Plaintiff's employment was terminated in June 2017, six months after the Journal informed him that his emails with Azima had been disclosed.  Plaintiff's claims are therefore barred by the applicable statutes of limitations and should be dismissed.  And that dismissal should be with prejudice because any additional or amended claims would not change the fact of Plaintiff's knowledge of injury and notice of claim, and therefore would be futile.  *See, e.g., Palacios v. MedStar Health, Inc.*, 298 F. Supp. 3d 87, 90 (D.D.C. 2018) ("[I]f an amendment would not survive a motion to dismiss—such as where a claim sought to be added is barred by the statute of limitations—amendment is futile and should be denied.").

* * * * *

Even if Plaintiff's claims were not time-barred, the Complaint should be dismissed because it fails to state a claim for any of its causes of action, as set forth more fully below.  *See* Fed. R. Civ. P. 12(b)(6).

## II.     The Complaint Fails to State a RICO Claim

Count One asserts a claim for violation of civil RICO pursuant to 18 U.S.C. § 1964(c). *See* Compl. ¶¶ 149-66.  Plaintiff also seeks treble damages under RICO.  *Id.* ¶ 166.  "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 165 (S.D.N.Y. 2020) (quotation marks and

citation omitted); *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (same).  This is particularly true because "plaintiff[s] wielding RICO almost always miss the mark."  *Sky Medical Supply, Inc. v. SCS Support Claims Servs. Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014) (citing *Gross v. Waywell*, 628 F. Supp. 2d 475, 479-83 (S.D.N.Y. 2009) (noting that in a survey of 145 appellate decisions involving civil RICO actions, plaintiffs achieved victory in only 3 instances)).

A violation of § 1962 of the RICO Act consists of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Western Assocs.*, 235 F.3d at 633 (citations omitted).  Plaintiff fails to establish any of the requisite elements of a RICO claim here. He does not allege a single predicate act, a "pattern" of racketeering activity, the existence of a RICO enterprise, or a cognizable RICO injury.

### A.  The Complaint Fails to Allege Any Racketeering Activity

In order to establish a "pattern of racketeering activity," a plaintiff is required to plead at least two predicate racketeering offenses over a ten-year period.  18 U.S.C. § 1961(5); *Western Assocs.*, 235 F.3d at 633.  Each of the predicate acts must be among the criminal offenses delineated in the RICO statute itself, 18 U.S.C. § 1961(1) ("Section 1961").  *See Western Assocs.*, 235 F.3d at 633.  In a multi-defendant RICO scheme, "each defendant must have committed two predicate offenses."  *Broidy Cap. Mgmt. LLC*, 2020 WL 1536350, at *9 (cleaned up).  Here, Plaintiff fails to adequately allege a single predicate act against any Defendant, let alone two acts against Dechert.

Plaintiff's sprawling complaint obliquely references a number of purportedly unlawful actions but all without statutory citation or clarity.  For example, the Complaint asserts that Defendants participated "in repeated racketeering and other illegal acts that included, *inter alia*,

fraud, human rights abuses, kidnappings, torture, extortion, obstruction of justice, witness tampering, illegal hacking operations, money laundering and attacks against the free press." Compl. ¶ 37.  As an initial matter, Section 1961 does not include as cognizable predicates "human rights abuses," "torture," "attacks against the free press," or, most critically, "illegal hacking operations."  Therefore, these allegations cannot form the basis of a RICO claim.  *See, e.g.*, *Western Assoc.*, 235 F.3d at 633; *Katzman v. Victoria's Secret Catalogue*, 167 F.RD. 649, 655 n.2 (S.D.N.Y 1996) (violations of statutes not listed in Section 1961 "cannot satisfy the requirement for allegations of RICO predicate acts") (citing *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 586 (S.D.N.Y. 1995)).  To the extent the other labels could in theory point to cognizable RICO predicates, the alleged facts do not make them out.

### i.   The Al Sadeq Allegations do not constitute RICO predicates.

The Complaint references claims of "kidnapping" and "extortion" via the Al Sadeq Allegations.  *See* Compl. ¶¶ 64-70.  These allegations are entirely disconnected from Plaintiff and his claims.  Plaintiff alleges that Al Sadeq was arrested—in what he deems a "kidnapping"— by RAK State Security Investigations personnel and held in a camp in RAK.  *Id.* ¶ 66.  While Plaintiff does not allege that any Defendant actually took part in the kidnapping, he contends that Dechert was aware of the conditions in which Al Sadeq was being held, and that Gerrard interrogated him and "asked him to give false evidence that Mr. Azima was an international arms dealer."  *Id.* ¶ 68.  For this activity, Plaintiff alleges that Dechert and other Defendants committed the predicate offenses of kidnapping, obstruction of justice and extortion, for purposes of his civil RICO claim.  *Id.* ¶¶ 151, 153.  However, as forth below, the Al Sadeq Allegations cannot sustain a RICO predicate because the allegations are impermissibly extraterritorial.

The Al Sadeq Allegations involve actions taken wholly within the UAE and outside the limited extraterritorial scope of RICO.  In *R.J.R. Nabisco v. European Cmty.*, 579 U.S. 325 (2016), the Supreme Court, applying the statutory cannon of the presumption against extraterritoriality, held that RICO applied only to limited foreign racketeering activity: "A violation of § 1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, provided that each of those offenses violates a predicate statute *that is itself extraterritorial*."  *Id.* at 340 (emphasis added).  In other words, to determine whether foreign conduct can constitute a RICO predicate, the Court must first analyze the specific predicate statute that is alleged to have been violated and determine whether it has extraterritorial application.  *Id.*

While the Complaint here fails to specify what predicate statute(s) were purportedly violated with respect to the Al Sadeq Allegations, the Complaint vaguely avers "kidnapping," "obstruction of justice," and "extortion."  Compl. ¶¶ 159-61.  And as noted above, the only statutes that can form RICO predicates are those listed in Section 1961.  No such statute relating to the crimes listed by Plaintiff has the extraterritorial reach (or, in the case of obstruction of justice, application to Plaintiff's claims) required to sustain Plaintiff's predicates.

First, with respect to kidnapping, Section 1961(1) lists as a predicate offense only the state law crime of kidnapping.  The District of Columbia's kidnapping statute, in turn, is limited to acts that take place in the District, not those in other states, let alone beyond U.S. borders.  *See* D.C. Code § 22-2001.  This is consistent with the general principle that state criminal laws do not have extraterritorial effect beyond the borders of the state.  *See Bigelow v. Virginia*, 421 U.S. 809, 827-8 (1973); *In re Vasquez*, 705 N.E.2d 606, 610 (Mass. 1999) (collecting cases) ("The general rule, accepted as 'axiomatic' by the courts in this country, is that a State may not prosecute an individual for a crime committed outside its boundaries.").

Second, with respect to obstruction of justice, Section 1961(1) lists 18 U.S.C. § 1503—the federal obstruction of justice statute—as a predicate. While § 1503 can have extraterritorial effect, *Drummond Co. v. Collingsworth*, No. 2:15-cv-506, 2017 WL 3268907, at *17 (N.D. Ala. 2017), it, by its express terms, applies only to obstruction of proceedings in a "court of the United States." *See* 18 U.S.C. § 1503(a). Plaintiff nowhere alleges that Al Sadeq's "false testimony" was elicited for use in a U.S. court. *See, e.g.*, Compl. ¶ 67.

Third, with respect to "extortion," Section 1961(1) lists both state and Hobbs Act extortion pursuant to 18 U.S.C. § 1951. Again, the District of Columbia's criminal prohibition on extortion, D.C. Code § 22-3251, does not reach beyond the territory of the District. *See, e.g.*, *In re Vasquez*, 705 N.E.2d at 610. And this Court has repeatedly held that Hobbs Act extortion does not apply extraterritorially, including in the RICO context. *See Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 168 (D.D.C. 2013) ("In sum, the predicate acts that proximately caused Plaintiffs' injury—namely, the extortion *in Kazakhstan by a Kazakh actor* of Plaintiffs' *Kazakhstan-based* assets—were squarely extraterritorial and therefore outside RICO's reach." (emphasis in original)); *United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 101 (D.D.C. 2017), *motion for reconsideration granted on other grounds*, 315 F. Supp. 3d 90 (D.D.C. 2018). The claim for extortion also fails because extortion claims require the "wrongful taking of property." *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404 (2003) (cleaned up). Plaintiff half-heartedly alleges that "[t]he false testimony was a thing of value in that it affected the legal rights surrounding property and claims to power," Compl. ¶ 160, but—even if this novel expansion of basic property concepts made sense—mere interference with the use of property is not enough; a plaintiff must establish actual deprivation and acquisition of the property. *Scheidler*, 537 U.S. at 404-05. Plaintiff fails to do so here.

In short, none of the foreign activity alleged in the Al Sadeq Allegations violates any of the RICO predicates listed in Section 1961(1) because none of the relevant statutes has the requisite extraterritorial reach.  *See R.J.R. Nabisco*, 579 U.S. at 340.

### ii.   The Hack-and-Reveal Allegations do not constitute RICO predicates.

Plaintiff alleges that, through a coordinated effort, Defendants "lure[d] Mr. Azima into providing his login data" and uploaded unauthorized copies of Azima's data (including the improper emails with Solomon) onto the internet as encrypted files.  Compl. ¶¶ 79-80.  The Complaint makes no allegations as to how the Associated Press ultimately received the emails.

Critically, however, hacking, using or disclosing unauthorized data *are not predicates* under Section 1961.  Thus, Plaintiff attempts to repackage these allegations as wire fraud, *id*. ¶ 152 and money laundering, *id*. ¶ 154.  Neither theory works.

An allegation of wire fraud requires pleading "(1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme."  *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990); *Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183, 189 (D.D.C. 2019).  Plaintiff fails to allege any of the elements of the offense; merely labelling hacking "wire fraud" does not make it so.  To the contrary, the D.C. Circuit has admonished that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *Western Assocs*., 235 F.3d at 637.  Moreover, claims for wire fraud as RICO predicates require plaintiffs to meet the heightened pleading standards under Fed. R. Civ. P. 9(b). *Cheeks v. Fort Myer Constr. Co.*, 216 F. Supp. 3d 146, 157 (D.D.C. 2016) (citing *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 108 (D.D.C. 2015)).  This requires that the plaintiff "state the time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud."  *Id*. (quoting *Sandza*, 151 F. Supp.

3d at 108).  Plaintiff must allege "which defendant caused what to be . . . transmitted by wire . . . as well as *specifically* when and how each mailing or transmission . . . furthered the fraudulent scheme."  *Bates v. Northwestern Human Servs., Inc.*, 466 F. Supp. 2d 69, 89-90 (D.D.C. 2006) (citing *Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.*, 863 F. Supp. 447, 458 (E.D. Mich. 1994)).

 Plaintiff comes nowhere close to meeting these heightened requirements.  He alleges only that "the Defendants and/or their Cohorts committed more wire fraud by illegally hacking into the email accounts of Mr. Azima and using and disclosing the stolen emails to discredit and attempt to silence Azima and his associates."  Compl. ¶ 152.  Despite the use of the word "more," this is actually the only allegation of wire fraud in the entire Complaint.  And while elsewhere Plaintiff vaguely alleges that an entity called CyberRoot "gained access to Mr. Azima's computers and accounts through phishing and spear-phishing emails," *id.* ¶ 80, he does not allege the "time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud."  *Bates*, 466 F. Supp. 2d at 89 (citing *Intex Recreation Corp. v. Team Worldwide Corp.*, 390 F. Supp. 2d 21, 24 (D.D.C. 2005)) (rejecting mail and wire fraud predicates where plaintiff "failed to specify in their complaint what fraudulent statements were made and in what context, when they were made, who made them, and the manner in which the statements were misleading").  Nor does Plaintiff make any allegation that Dechert was involved in any purported wire fraud, rather than the vague allegation against "Defendants and/or their Cohorts."  *See, e.g., Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) ("Generally, a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct.").  Finally, Plaintiff makes no allegation that anything of *Plaintiff's* was an "object

of the fraud." *Kelly v. United States*, 140 S. Ct. 1565, 1573 (2020) (noting it is not fraud "when the loss to the victim is only an incidental byproduct of the scheme").

With respect to money laundering, Plaintiff merely recites the elements of money laundering pursuant to 18 U.S.C. § 1956(a)(2)(A). *See* Compl. ¶ 154. But of course, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not suffice. *Ashcroft*, 556 U.S. at 663; *see also*, *e.g.*, *Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 62 n.6 (D.D.C. 2019) (rejecting claim for money laundering as a RICO predicate where Plaintiff merely recited the elements of the statute). Furthermore, claims of money laundering require alleging the specific "unlawful activity" the transfer of funds was meant to promote, and Plaintiff fails to plead any such allegations. *See Republic of Kazakhstan*, 380 F. Supp. 3d at 62 n.6; 18 U.S.C. § 1956(a)(7). To the extent Plaintiff implicitly relies on the other alleged predicates asserted in the Complaint as the specified "unlawful activity," the money laundering claim fails for the same reason Plaintiff's other alleged predicates fail. *See id.*; *Lefkowitz v. Reissman*, No. 12 Civ. 8703, 2014 WL 925410, at *6 (S.D.N.Y. Mar. 7, 2014) (where plaintiff failed to plead mail or wire fraud, money laundering allegation could not support RICO claim as well). Indeed, Plaintiff all but admits as much when, rather than attempting to defend his allegations, he instead purports to adopt an exhibit attached to a complaint filed *by Azima* in a separate litigation filed in the Southern District of New York that makes money laundering claims. *See* Compl. ¶ 154 (citing *Azima et al. v. Dechert LLP, et al.*, No. 22-cv-8729 (S.D.N.Y. Nov 11, 2022), ECF No.1, Ex. A. Of course, there is no legal principle that allows a plaintiff to bypass its pleading failures by simply pointing to the allegations of a different complaint by a different person. To the contrary, "[t]he factual allegations *within a complaint* . . . must be sufficient to state a claim to relief that is plausible on its face." *Smith v. Wright*, No. 20-3389, 2021 WL 5906040, at *3 (D.D.C. Dec. 14, 2021) (emphasis added) (citing *Twombly*, 550 U.S. at 570).

### iii. The Cover-Up Allegations do not constitute RICO predicates.

As outlined above, the Complaint also alleges a series of activities purportedly designed to cover up the hacking of Azima's emails. Compl. ¶¶ 102-34. This includes allegations of laying a "false 'paper trail' of discovery," *id*. ¶ 124, multiple meetings in Cyprus, *id*. ¶¶ 112-13, and a "mock trial" to prepare false testimony in Switzerland. *Id*. ¶¶ 117-21. Per the Complaint, all of these "meetings, correspondence, and testimony were part of a broader scheme to conceal the enterprise's illegal acts." *Id*. ¶ 126. Plaintiff argues that this activity constituted "witness tampering and obstruction of justice." *Id*. ¶ 153. But it is well-settled that alleged acts to conceal unlawful activity are not cognizable as RICO predicates.

This issue was squarely addressed in *Democratic National Committee v. Russian Federation*, 392 F. Supp. 3d 410 (S.D.N.Y. 2019), where the plaintiff alleged that an "enterprise" hacked and released its emails, and later took steps to cover up the hacking, "through criminal obstruction of justice and witness tampering." *Id.* at 424. The court dismissed the RICO claim on several grounds. *Id.* at 443-44. With respect to the cover-up allegations in particular, the court held that they were not cognizable predicates because "acts of concealment after the central objections of the conspiracy have been attained, for the purpose of covering up the after the crime, are not considered part of the conspiracy." *Id.* at 444 (cleaned up) (quoting *Grunewald v. United States*, 353 U.S. 391, 405 (1957)). The court concluded that "the alleged acts of concealment were all done allegedly to cover defendants' tracks after the goal of the alleged conspiracy had been attained. Therefore, they cannot be found to be predicate acts for the purposes of the . . . RICO Claim." *Id.* (citing *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 919 (N.D. Ind. 2013)). This Court too has applied the same principle in the RICO context. *See Pyramid Sec. Ltd. v. IB Resol., Inc.*, 924 F.2d 1114, 1118 (D.D.C. 1991) (attempt to "extend[] the conspiracy" by alleging enterprise "conceal[ed] its knowledge of" substantive acts

failed because "[a]fter-the-fact concealment indicates nothing more than that the conspirators do not wish to be apprehended" (cleaned up) (citing *Grunewald*, 353 U.S. at 405)); *see also Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 182 (D.D.C. 2018).

Plaintiff presses exactly the same theory here: that after the hacking, the enterprise engaged in "witness tampering and obstruction of justice by conducting several private meetings at which the enterprise members conspired and coordinated false testimony *as to fraudulently conceal* how the Defendants and/or their Cohorts came into possession of the stolen communications." Compl. ¶ 153 (emphasis added). This conduct, "done allegedly to cover the defendants' tracks," cannot support the RICO claim as a matter of law. *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 443-44.

The Cover Up Allegations fail to make out a civil RICO claim for additional reasons. First, nearly all of the alleged conduct purportedly obstructed or interfered with the U.K. Proceeding, rather than a U.S. one. *See* Compl. ¶¶ 114-31 (describing the preparation and filing of false witness statements and other false testimony given in the U.K. Proceeding). As noted above, obstruction of justice applies to only proceedings in U.S. courts, *see* 18 U.S.C. § 1503(a), and the same is true for the witness tampering statute. *See* 18 U.S.C. § 1515(a)(1) (defining "official proceeding."). In litigation related to this case, the Second Circuit has already rejected virtually identical RICO claims for this exact reason. *See El Omari v. Buchanan*, No. 22-55-cv, 2022 WL 4454536, at *2 (2d Cir. Sept. 26, 2022) (affirming dismissal of witness tampering claims because it "addresses potential misconduct only in foreign proceedings and investigations conducted by RAK").

The Complaint's only alleged conduct directed at U.S. proceedings are three purportedly false statements made in briefs or other filings in the Azima D.C. Proceeding. Compl. ¶ 111. However, courts have repeatedly held that allegations of "false statements in their various

25

filings . . . cannot support a claim of a substantive RICO violation." *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (citing *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)); *see also Republic of Kazakhstan*, 380 F. Supp. 3d at 61 (noting that "[n]umerous other circuit courts and district courts across the country have concluded that wrongful litigation activities cannot serve as RICO predicate acts").

In short, Plaintiff has failed to adequately allege a single predicate act.

### B. The Complaint Does Not Allege a "Pattern" of Racketeering Activity

The RICO claim should also be dismissed because, even beyond failing to plead a single cognizable predicate, the Complaint does not allege a "pattern" of racketeering activity. To form a "pattern," predicate acts must be both related and continuous. *Adler v. Loyd*, 496 F. Supp. 3d. 269, 279 (D.D.C. 2020) (citing *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). With respect to the continuity requirement, it must be "shown that the predicates themselves amount to, or that they otherwise constitute, a threat of, *continuing* racketeering activity." *Id.* (emphasis in original). Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* Plaintiff alleges neither concept here.

### i. The Complaint does not allege an open-ended scheme.

An open-ended scheme requires "far more than a hypothetical possibility of further predicate acts." *Pyramid Sec. Ltd.*, 924 F.2d at 1119. Rather, to plead an open-ended scheme, "a complaint must plausibly allege a 'distinct' threat of further long-term racketeering activity or a 'showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *Broidy Cap. Mgmt.*, 2020 WL 1536350, at *9 (quoting *H.J. Inc.*, 492 U.S. at 242). The Complaint here fails to do either.

To the contrary, the Complaint alleges a hack that occurred more than six years ago, and fails to even suggest the "hypothetical possibility of further predicate acts," which would still be insufficient. *Pyramid Sec. Ltd.*, 924 F.2d at 1119. The most recent predicate act alleged in the Complaint occurred over three years ago. Compl. ¶ 143 (alleging false testimony in January 2020). Indeed, the Complaint does not allege that the purported "enterprise" even continues to exist.

In *Broidy*, the plaintiff alleged that Qatari agents hacked his computers and disseminated the hacked information to the media in retaliation for the plaintiff's anti-Qatari advocacy. *Broidy Cap. Mgmt.*, 2020 WL 1536350, at *1. The Court dismissed the plaintiff's RICO claim in part because the plaintiff failed to allege open-ended continuity; the Court held that "[t]he alleged hacking already has happened, and the stories that were meant to silence Broidy already have been published. A 'one time racket' like this one is not an open-ended scheme." *Id.* at *9 (citing *Hughes v. Consol-Pa. Coal. Co.*, 945 F.2d 594, 610-11 (3d Cir. 1991)). Any open-ended scheme theory here fails for the same reason.

### ii.     The Complaint does not allege a close-ended scheme.

A close-ended scheme is backward-facing and requires the plaintiff to plead "a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 230. The D.C. Circuit has outlined six factors that are relevant in determining the existence of a close-ended pattern of racketeering: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Republic of Kazakhstan*, 380 F.3d at 63 (citing *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995)). In applying this framework, courts have repeatedly held that "when a plaintiff merely alleges a 'single scheme, single injury, and few victims,' it is 'virtually impossible for plaintiffs

to state a RICO claim.'" *Id.* at 64 (quoting *Edmondson*, 48 F.3d at 1265) (rejecting RICO claim where "various stages to th[e] alleged scheme" were all aimed at accomplishing a "single discrete goal" of artificially inflating the value of a gas plant to enrich defendants).  It is the nature of the alleged conduct—and not the number of purportedly different predicate acts—that determines whether a closed-ended scheme has been alleged.  *See Adler*, 469 F. Supp. 3d at 280 (though plaintiff alleged twelve predicate acts, the acts "constitute a single scheme, not multiple schemes, because they were similar in nature and purpose"); see also *Western Assocs.*, 235 F.3d at 635 (affirming dismissal RICO claim where defendant's "conduct is more accurately characterized as a single effort to diminish the value of Western's partnership interest").

Again, *Broidy* is on point.  In *Broidy*, the Court held that the alleged hack-and-release was a "single scheme to retaliate against, discredit, and ultimately silence Mr. Broidy by manufacturing negative news stories and exposing his confidential communications and trade secrets to the public.  That is not enough to support a pattern of racketeering activity."  2020 WL 1536350 at *10.  The Court noted that the scheme had "at most a few victims," which was insufficient for a close-ended scheme, even if the complaint "allude[d] to other victims."  *Id.*

Here, the Complaint similarly alleges a single scheme targeted at Azima and indirectly harming Plaintiff.  *See, e.g.,* Compl. ¶¶ 13, 72.  To the extent Plaintiff attempts to allege multiple incidents of hacking, they "constitute[d] a single scheme . . . because they were similar in nature and purpose."  *Adler*, 496 F. Supp. 3d at 280.  Even if the Court included the Al Sadeq Allegations—which, as outlined above, it should not—the alleged pressure to elicit false testimony from Al Sadeq was still part of the same purported scheme.  *See* Compl. ¶ 64 (describing efforts to elicit false testimony that "Mr. Azima and his alleged co-conspirators . . . committed acts of fraud against RAKIA").  This single alleged scheme to

"target" Azima, with at most a "few victims," does not meet the pleading requirements for a RICO claim. *Western Assocs.*, 235 F.3d at 634.

Because Plaintiff failed to plead a continuous "pattern of racketeering," his RICO claim fails.

### C.  The Complaint Does Not Allege the Existence of an "Enterprise"

"[O]ne of the essential elements of a RICO violation is the existence of an 'enterprise.'" *Watson v. Norris*, No. 89-0625, 1991 WL 7165, at *2 (D.D.C. Jan. 11, 1991).  An enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  While an "association-in-fact" can be sufficient to satisfy the enterprise element, the association must be "an entity *separate and apart* from the pattern of racketeering activity in which it engages."  *Watson v*, 1991 WL 7165, at *2 (emphasis in original).

As a preliminary matter, the Complaint never identifies the composition of the purported enterprise.  *See Scheck v. Gen. Elec. Corp.*, No. 91-1594, 1992 WL 13219, at *3 (D.D.C. Jan. 7, 1992) ("To plead a RICO claim, plaintiff must identify and specifically describe the alleged enterprise.").  Rather, the Complaint refers to the Defendants and an unidentified group of "Cohorts," who vaguely consist of "co-conspirators and fellow participants in a racketeering enterprise."  Compl. ¶ 14.  This sort of "moving target" is insufficient and is itself fatal to Plaintiff's RICO claim.  *See Doe I v. State of Israel*, 400 F. Supp. 2d 86, 119 (D.D.C. 2005) (where plaintiff at times identified different groups as "the enterprise," he fails to establish a RICO enterprise); *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 399-400 (D.C. Cir. 1993).

In all events, whether the Cohorts are included or not, the Complaint fails to identify a legally cognizable "enterprise" apart from the purported racketeering.  At best, the Complaint

alleges that a group of persons and entities came together around an effort to target and discredit Azima. *See id*. ¶¶ 64-70 ("extorting" Al Sadeq to elicit false testimony that Azima engaged in fraud); ¶¶ 71-94 (hacking Azima); ¶¶ 95-101 (providing Plaintiff's emails to his employer based on connections to Azima); ¶¶ 102-34 (efforts to cover-up previously-described activity).  In other words, Plaintiff fails to plead anything that "indicates that this association-in-fact was in any way separate from the [alleged] pattern of racketeering activity."  *Watson*, 1991 WL 7165, at *2; *Wright v. Towns*, No. 90-0565, 1991 WL 100388, at *4 (D.D.C. May 30, 1991) ("Where the enterprise alleged has only one straightforward goal, the alleged wrongdoing, such an association is not sufficiently continuing to constitute an enterprise." (cleaned up)); *see also Democratic Nat'l Comm.*, 392 F. Supp. 3d at 440 (entities alleged to have hacked plaintiff did not form an "enterprise" for RICO purposes; a "plaintiff may not simply string together various defendants and label them an enterprise").  Because Plaintiff fails to allege an enterprise distinct from the alleged pattern of racketeering, his RICO claim should be dismissed.

### D.  The Complaint Does Not Allege an Injury Proximately Caused by RICO Violations

In order to state a RICO claim, a plaintiff "must show that the RICO predicate offense was not only the 'but for' cause of the injury, but the proximate cause as well."  *Greenpeace Inc.*, 808 F. Supp. 2d at 269 (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)).  This includes at least three distinct requirements.  First, proximate cause requires some "direct relation between the injury asserted and the injurious conduct alleged."  *Holmes*, 503 U.S. at 268.  "A link that is too remote, purely contingent, or indirect is insufficient."  *Hemi Grp., LLC*, 559 U.S. at 9-10.  Second, not any alleged misconduct will do.  The injury must flow from the alleged predicate acts supporting the RICO claim.  *Greenpeace, Inc.*, 808 F. Supp. 2d at 269 (dismissing RICO claim where plaintiff's injuries "in fact stem from underlying violations of District of Columbia law that do not constitute racketeering activity for the purposes of

§ 1962(c)"); *see also Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 459

(S.D.N.Y. 2004).  And third, proximate causation "demands that the plaintiff be the 'intended

target' of the RICO violation."  *Meng v. Schwartz*, 116 F. Supp. 2d 92, 96 (D.D.C. 2000)

(cleaned up).  Thus, even if directly traceable to cognizable predicates, incidental harm to a non-

target is insufficient.  *See also Weaver v. Bratt*, 421 F. Supp. 2d 25, 37 (D.D.C. 2006)

(dismissing RICO claim because "plaintiff was not the intended target of the alleged predicate

acts").

  *First*, the Complaint fails to allege that any of Plaintiff's injuries were caused by

predicate acts, as opposed to by intervening acts.  Specifically, the Complaint alleges that

Defendants:

> (1) engag[ed] several firms to hack, dump and retrieve Mr. Azima's email
> account; (2) deliver[ed] or caus[ed] to [be] deliver[ed] a dossier of stolen
> emails to Mr. Solomon's employer and other media outlets that painted an
> unfair and wrong impression of Mr. Solomon and Mr. Azima's relationship;
> [and] (3) after Mr. Solomon's employer investigated the emails and chose
> not to terminate his employment relationship, deliver[ed] or caus[ed] to be
> delivered the same dossier of stolen emails to several media outlets, which
> resulted in the publication of the stolen emails and forced Mr. Solomon's
> employer to terminate his employment relationship in a public and
> humiliating manner.

Compl. ¶ 205.  What is missing, of course, is any suggestion that the emails that were reviewed

by his employer and by other media outlets were doctored or inauthentic.  Accordingly, the only

reasonable inference is that ultimately Plaintiff was fired because of the content of his own

emails.  And while the Complaint tries to plead around that inescapable reality, it does so, even

in the carefully crafted paragraph quoted above, primarily by pointing to the conduct of others.

Indeed, even beyond the independent actions of his own employer—a sophisticated entity that

conducted its own analysis of Plaintiff's emails—the Complaint alleges that the actions of a

fourth-party media outlet (the Associated Press) allegedly "forced" his employer to terminate his

job.  Compl. ¶ 205.

Thus, the Complaint alleges a theory of liability that impermissibly "rests on the independent actions of third and even fourth parties." *Hemi Grp.*, 559 U.S. at 15; *see Sheridan v. Mariuz*, No. 07 Civ. 3313, 2009 WL 920431, at *7 (S.D.N.Y. Apr. 6, 2009) (noting that the Supreme Court has "explained that compensable RICO damages must flow directly from the commission of the predicate RICO acts themselves and cannot be the result of an intermediary's actions that may have be[en] induced or caused by the alleged RICO activity) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006)).  At least two "independent actions" accounted for Plaintiff's alleged injuries, *i.e.*, the Associated Press' decision to publish a story and *The Wall Street Journal*'s decision to terminate him.  *Hemi Grp., LLC*, 559 U.S. at 15. Indeed, even without the Associated Press' reporting, the independent actions of an employer alone generally create too much attenuation to sustain a RICO claim.  *See Casper v. Paine Webber Grp., Inc.*, 787 F. Supp. 1480, 1495 (D.N.J. 1992) (noting that "cases are legion which hold that a plaintiff, in a suit against the plaintiff's former employer, does not have standing to sue for a violation of [RICO] where the plaintiff's injury consists of termination from his job for 'blowing the whistle' on or for failure to cooperate with his employer's racketeering activity"); *Nodine v. Textron*, 819 F.2d 347, 349 (1st Cir. 1987) (plaintiff was not injured by predicate offenses but instead by "Textron's decision to fire him").

*Second*, Plaintiff does not allege that he was even indirectly harmed by any predicate acts specified in Section 1961, rather than the purported "hack and dump."  *See* Compl. ¶ 175; *Greenpeace, Inc.*, 808 F. Supp. 2d at 269 (injury must be caused by a predicate act listed in Section 1961).  As noted above, hacking, or even releasing hacked materials, are not predicate acts listed in Section 1961.  *See supra* Section II.A.ii; *Saunders v. Davis*, No. 15-cv-2026, 2016 WL 4921418, at *4 n.6 (D.D.C. Sept. 15, 2016) ("The Court notes that 18 U.S.C. § 1030 [the Computer Fraud and Abuse Act] is not a predicate offense for purposes of RICO.").

*Third*, Plaintiff's RICO claims fail because he was not the "intended target" of any RICO predicate offense. *Weaver*, 421 F. Supp. 2d at 37. Again, neither hacking nor the disclosure of hacked materials are RICO predicates, and Plaintiff certainly was not the target of the kidnapping, extortion, and other unlawful behavior alleged in the Al Sadeq Allegations. *See* Compl. ¶¶ 64-70. Instead, Plaintiff relies on purported wire fraud committed against *Azima*. *See* Compl. ¶ 152 (alleging that Defendants committed wire fraud "by illegally hacking into the email accounts of Mr. Azima and using and disclosing the stolen emails to discredit and attempt to silence Mr. Azima and his associates, including in particular Mr. Solomon"). Plaintiff does not, and cannot, claim that the alleged wire fraud was targeted at *him*. Nor does he allege that any Defendants were aware that Azima's emails would contain communications with Plaintiff— let alone emails that would evince behavior sufficient to lead to the termination of Plaintiff's employment. As Plaintiff was not the intended target of any alleged RICO predicate act, he cannot establish proximate causation. *Meng*, 116 F. Supp. 2d at 96 (dismissing claim where RICO violations were aimed at other parties); *J.T.*, 500 F. Supp. 3d at 166 ("Simply put, a RICO plaintiff cannot establish standing if the alleged injury is the derivative result of a fraudulent scheme that targets another victim.").

Finally, any alleged injury subsequent to Plaintiff's termination is even more attenuated from the alleged predicate acts. For example, "the relationship between any evaporation of interest in [Plaintiff's] book" and Defendant's alleged actions is "too remote" to sustain a RICO claim. *Browning v. Clinton*, 292 F.3d 235, 249 (D.C. Cir. 2002). Nor does he sufficiently tie his "mental anguish" and "emotional distress" to any actions of the Defendants. Simply put, all of Plaintiff's injuries are "too remote, purely contingent, or indirect" to sustain a RICO claim. *Hemi Grp., LLC*, 559 U.S. at 9.

### E.  The Complaint Alleges Non-Actionable Injuries

Plaintiff's RICO claims likewise fail because the nature of his injuries—being fired by his employer and suffering "distress" as a result—are not the sorts of injuries that confer RICO standing.

As an initial matter, courts routinely reject loss of employment as the basis for RICO injury because, as described above, the nature of that sort of loss makes clear that the employer decision (rather than a RICO predicate) was the cause.  *See also Anderson v. Ayling*, 396 F.3d 265, 270-71 (3d Cir. 2005) ("job loss" is an injury "that has been found not normally to create RICO standing.").  Indeed, several courts have additionally held that loss of employment does not constitute an injury to "business or property" sufficient to confer RICO standing.  *See Dunleavy v. Wayne Cty. Comm'n*, No. 04-cv-74670, 2006 WL 8431836, at *2 (E.D. Mich. May 11, 2006) (analyzing cases; concluding that "[i]f Congress had meant to confer standing on any person who has suffered any type of financial injury, including the loss of employment or the loss of an employment opportunity, it could have said so"); *Reynolds v. Condon*, 908 F. Supp. 1494, 1518 (N.D. Iowa 1995) ("Thus it appears that mere injuries to employment or income from employment are not RICO injuries."); *but see Mruz v. Caring, Inc.*, 991 F. Supp. 701, 711-12 (D.N.J. 1998) (job loss is injury to business or property).

Plaintiff's other purported injuries are even farther outside the narrow category of injuries to "business or property" that can convey standing under RICO. Plaintiff alleges that he suffered embarrassment and damages to his reputation, including being "blackballed" in the "journalistic and publishing community, and has seen current and future book publishing contracts "devalue[ed]."  Compl. ¶ 18.  He also alleges that he has suffered "severe emotional harm" and "emotional distress, mental grieving, [and] pain and suffering.  *Id.* ¶¶ 165, 206.  He provides no dollar figures for any of the purported injuries, but demands that the theoretical numbers all be

trebled.  *Id.* ¶ 166.  None of this sufficiently alleges damage to "business or property," a requirement to establish RICO standing.  18 U.S.C. § 1964(c).  Indeed, to have standing, Plaintiffs must plead a "concrete financial loss" which is "not easily met."  *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 521 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).  The alleged harm must be tied to "an ascertainable, calculable value."  *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014) (citation omitted).  Plaintiff does not meet that bar.

It is well-settled that "[a]llegations of personal injury do not suffice" to demonstrate injury to "business or property."  *Klayman v. Obama*, 125 F. Supp. 3d 67, 88 (D.D.C. 2015) (citing *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 19 (D.D.C. 2005)); *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp. 2d 86, 101 (D.D.C. 2003).  This includes claims for mental anguish or emotional distress.  *Pohlot v. Pohlot*, 664 F. Supp. 112, 116 (S.D.N.Y. 1987) ("The courts have uniformly held that personal injuries and emotional distress do not come within RICO.").  Pecuniary losses that flow from personal injuries also cannot confer RICO standing.  *Burnett*, 274 F. Supp. 2d at 100-02; *see also Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992) (RICO "preclude[s] recovery for personal injuries *and the pecuniary losses incurred therefrom*." (emphasis added)).  "[G]eneralized reputational harms" likewise will not suffice.  *Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14, 16 (2d Cir. 2006).  And allegations of lost future profits—including from book deals—cannot sustain a RICO claim because they are "too remote."  *Browning*, 292 F.3d at 249 (holding alleged lost profits on a potential book deal did not plead RICO injury because it was "too remote"); *Petroff Amshen LLP v. Alfa Rehab PT PC.*, No. 21-847, 2022 WL 480475, at *2 (2d Cir. Feb. 17, 2022).

In sum, Plaintiff fails to adequately establish any of the requisite elements of a civil RICO claim, including a single predicate act, a pattern of racketeering, an enterprise, or a proximately-caused, cognizable injury to his business or property.

### III.   The Complaint Does Not State a Claim Under the Federal Wiretap Act

Plaintiff's second and third causes of action are brought pursuant to the Electronic Communications Privacy Act of 1994, or the "Federal Wiretap Act," 18 U.S.C. §§ 2511(1) and 2520, for alleged disclosure (Count II) and use (Count III) of "information [that] was improperly and illegally obtained through interception" (the "Federal Wiretap Claims").  Compl. ¶ 168.  As described above, Plaintiff alleges that "Dechert and Mr. Gerrard used CyberRoot (via Defendants Mr. Del Rosso and Vital) to hack Mr. Azima's emails and to intentionally disclose large quantities of Mr. Azima's intercepted data, which included communications with Mr. Solomon, by instructing that the data be posted on BitTorrent and WeTransfer."  *Id.* ¶ 169.

The Federal Wiretap Act prohibits the intentional "intercept[ion] . . . [of] any wire, oral, or electronic communication."  18 U.S.C. § 2511(1).  Courts have universally held that the "interception" of a communication "must be contemporaneous with the communication's transmission."  *McPherson*, 2021 WL 1820290, at *10; *see Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as amended* (Jan. 20, 2004) ("Every circuit court to have considered the matter has held that an 'intercept' under the [Act] must occur contemporaneously with transmission."); *Luis v. Zang*, 833 F.3d 619, 627 (6th Cir. 2016); *United States v. Steiger*, 318 F.3d 1039, 1048 (11th Cir. 2003).  Applying this principle, numerous courts have held that the seizure of emails stored on a server is not an "interception" under the statute.  *McPherson*, 2021 WL 1820290, at *10 (retrieving Facebook messages after transmission was completed "did not contemporaneously intercept them"); *Kinchen v. St. John's Univ.*, Nos. 17-cv-3244, 17-cv-4409, 2019 WL 1386743, at *11 (E.D.N.Y. Mar. 26, 2019) (alleged phishing and subsequent

"surveill[ance]" of emails did not plead contemporaneous interception); *see also Bailey v. Bailey*, No. 07-cv-11672, 2008 U.S. Dist. LEXIS 8565, at *12 (E.D. Mich. 2008) (finding Wiretap Act did not apply where ex-husband used key logger to access his then wife's emails); *Miller v. Meyers*, 766 F. Supp. 2d 919, 924 (W.D. Ark. 2011).

For the same reasons, Plaintiff's claims under the Federal Wiretap Act fail.  The Complaint alleges that Defendants "obtained emails stolen from Mr. Azima's account by" a phishing hack.  Compl. ¶ 165.  But it does not allege—as it must—any contemporaneous interception of electronic communications.  *See*, *e.g.*, *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153 (C.D. Cal. 2007) (configuring email server so that all of plaintiff's messages were copied and forwarded was not contemporaneous interception because the emails were still in "electronic storage"); *Bailey*, 2008 U.S. Dist. LEXIS 8565, at *12.  As a matter of law, the Federal Wiretap Claims must therefore be dismissed.

Plaintiff's Federal Wiretap Claims fail for the additional reason that the Federal Wiretap Act does not apply extraterritorially.  *See, e.g.*, *Huff v. Spaw*, 794 F.3d 543, 547 (6th Cir. 2015); *United States v. Maturo*, 982 F.2d 57, 60 (2d Cir. 1992); *Zheng v. Yahoo! Inc.*, No. C-08-1068, 2009 WL 4430297, at *3-4 (N.D. Cal. Dec. 2, 2009).  The "relevant location" in determining extraterritoriality under the Federal Wiretap Act "is not the location or nationality of any person whose voice might have been intercepted; it is the site at which the interceptions occurred." *United States v. Minaya*, No. 17-359, 2019 WL 1615549, at *6 (D.N.J. Apr. 16, 2019), *aff'd*, 827 F. App'x 232 (3d Cir. 2020); *see also Huff*, 794 F.3d at 547 ("The relevant location is not where the Huffs' conversations took place, but where Spaw used a device to acquire the contents of those conversations.").  The Complaint alleges that CyberRoot and BellTroX—both located in India—were responsible for hacking Azima's emails.  Compl. ¶ 74.  As the Federal Wiretap Act does not reach the extraterritorial conduct of the Indian firms, the information was not obtained

"in violation of" the statute, and therefore its subsequent alleged use or disclosure cannot provide the basis of a claim here.  *See* 18 U.S.C. § 2511(1)(c), (d).

IV.     **The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims**

Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim" when the court "has dismissed all claims over which it has original jurisdiction."  This decision "is a matter left to the sound discretion of the district court." *Edmonson*, 48 F.3d at 1265-66.  Courts typically decline to exercise supplemental jurisdiction over state law claims after dismissing federal RICO claims.  *See Republic of Kazakhstan*, 380 F. Supp. 3d at 65 (after dismissing RICO claim, declining to exercise supplemental jurisdiction over state law claims); *Long Distance Servi. of Washington, Inc. v. MCI Telecomms. Corp.*, 692 F. Supp. 1402, 1406 (D.D.C. 1988) (same).  And this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims here.

V.      **The Complaint Fails to State a Claim Under the D.C. Wiretap Act**

To the extent the Court considers the Plaintiff's state law causes of action, however, it should dismiss them because they fail to state a claim.  Counts IV and V allege violations of the D.C. Wiretap Act, D.C. Code §§ 23-542(a) and 23-554, which prohibit the "interception" of "any wire or oral communication."  D.C. Code § 23-542(a).  Notably, unlike the Federal Wiretap Act, the D.C. Wiretap Act does not include within its proscription "electronic communications."  This makes sense: under the D.C. Code, "intercept" means "the *aural* acquisition of the contents of any wire or oral communication through the use of any intercepting device."  D.C. Code § 23-541(3) (emphasis added); *cf.* 18 U.S.C. § 2510(4) (federal definition of "intercept" means "the aural *or other* acquisition of the contents of any wire, electronic, or oral communication" (emphasis added)).  In other words, it is literally a wiretapping statute, and it does not reach hacking of emails.  As emails cannot be "aurally" intercepted—and, even if they could, that

certainly is not alleged in the Complaint—Plaintiff's claims under the D.C. Wiretap Act must be dismissed.

### VI.     The Complaint Fails to State a Claim For Tortious Interference With Business Relationships

Plaintiff's tortious interference with business relationships claim (Count VI) fails as well. In order to state a claim for tortious interference, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy, and (4) resultant damage." *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995).  "A necessary prerequisite to recovery under this theory is that the interference alleged [has] been both intentional and improper." *Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*, 726 F. Supp. 1, 6 (D.D.C. 1989).  As with much of the Complaint, Plaintiff's tortious interference claim improperly lumps all eleven Defendants together, without identifying the allegedly tortious conduct of any specific defendant.

Plaintiff's tortious interference claim founders on several of the required elements. *First*, truthful disclosure cannot provide a basis for a tortious interference claim as a matter of law.  It is well-established that the District of Columbia "embraces the Restatement's definition of tortious interference and its defenses." *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 349 (D.C. 2015).  And under Section 772 of the Restatement of Torts, a plaintiff cannot base a tortious interference claim on a defendant's disclosure of "truthful information." Restatement (Second) of Torts § 772, cmt. b (1979).  Thus, federal and state D.C. courts consistently dismiss tortious interference claims based solely on truthful disclosures. *See, e.g.*, *Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*, 726 F. Supp. at 6-7; *see also Bennett Enters., Inc.*, 45 F.3d at 499 (reversing district court's judgment because defendant's disclosure of truthful information was insufficient to establish tortious interference claim).  Here, although Plaintiff

39

alleges that his communications were "stolen and manipulated," Compl. ¶ 97, he does not allege that they were altered in any respect.  Thus, Plaintiff's tortious interference claim—based on the disclosure of actual emails—must also be dismissed.

*Second*, Plaintiff fails to plead the existence of a valid business relationship or expectancy with the requisite specificity.  "Specific facts about the terms of the relationships and whether the employees were subject to at-will employment agreements are necessary to state a plausible claim" for tortious interference with economic advantage.  *Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*, 208 F. Supp. 3d 219, 229 (D.D.C. 2016) (dismissing plaintiff's tortious interference claim for insufficient pleading).  This is not a matter of quibbling over technicalities; under D.C. law, an at-will employment agreement cannot provide a basis for a tortious interference claim. *Id.* at 229-30*; Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 24 (D.D.C. 2002); *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000).  Plaintiff does not allege he had anything more than that here.

Plaintiff's other alleged expectancies are far too speculative to sustain his tortious interference claim.  Plaintiff alleges that he lost "opportunities to build on his reputation such as prestigious job opportunities, high value speaking engagements and book publishing deals that would have otherwise been available to him."  Compl. ¶ 206.  But beyond these conclusory allegations, Plaintiff does not "name [any] specific contractual relationships that the defendant allegedly interfered with, or . . . identify any facts related to future contracts compromised by the alleged interferer."  *Nyambal v. Alliedbarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 316 (D.D.C. 2016), *reconsidered on other grounds*, 344 F. Supp. 3d 183 (D.D.C. 2018).  And even if he had, Plaintiff also fails to allege any "knowledge of the relationship or expectancy on the part of" Defendants.  *Bennett Enters., Inc.*, 45 F.3d at 499.

*Third*, Plaintiff does not adequately plead a "'substantial and direct causal link' between [Defendants'] alleged interference and the damages suffered." *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1039 (D.C. 2015) (internal citation omitted). Plaintiff fails to articulate or even distinguish among Defendants who are responsible for the purported interference. *See, e.g.*, *Toumazou*, 71 F. Supp. 3d at 21 (explaining that a plaintiff cannot satisfy Rule 8's requirements by "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" (internal citation omitted)). Moreover, instead of a "substantial and direct link," Plaintiff provides a theory of causation that is at least three steps removed from any alleged interference by Defendants. *See supra* at 31-2*;* Compl. ¶ 205 (alleging that Defendants disclosed Plaintiff's emails to media, media outlets independently chose to report on those emails, and those reports resulted in the Journal's independent decision to fire Plaintiff); *see also Cheeks of N. Am., Inc. v. Fort Myer Constr. Corp.*, 807 F. Supp. 2d 77, 98 (D.D.C. 2011).

Thus, Plaintiff's tortious interference claim should be dismissed.

## VII.     The Complaint Fails to State a Claim For "Civil Conspiracy"

Count VII of the Complaint alleges "civil conspiracy." *See* Compl. ¶¶ 208-13. Of course, "there is no recognized independent tort action for civil conspiracy in the District of Columbia." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) (emphasis omitted) (quoting *Waldon v. Covington*, 415 A.2d 1070, 1074 n.14 (D.C. 1980)). Thus, civil conspiracy is "not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." *Id.* This claim should therefore be dismissed because, as established above, Plaintiff has failed to allege any underlying tort. *See Meng v. Schwartz*, 305 F. Supp. 2d 49, 60 (D.D.C. 2004) ("[D]ismissal of the plaintiffs' breach of fiduciary duty and negligence claims also disposes of any underlying tort to which the civil conspiracy claim could have attached,

necessitating its dismissal."); *Schwartz v. Schwartz*, No. 19-cv-00340, 2021 WL 4589084, at *5
(D.D.C. Oct. 6, 2021) (same).

Plaintiff attempts to add an additional tort to his "civil conspiracy" claim: an allegation
that Defendants violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.
Compl. ¶ 210. It is telling that Plaintiff does not even try to assert a straightforward CFAA
claim. Even if he had, such a claim would fail because Plaintiff has not alleged an injury under
the CFAA. *See Halbertsam*, 705 F.2d at 479 ("[A]greement can only lead to liability if an act
pursuant to it causes injury."). CFAA injuries are focused on "physical damage to property" and
have otherwise "been limited to those costs necessary to assess the damage caused to the
plaintiff's computer system or to resecure the system in the wake of a hacking attack." *Tyco Int'l
(US) Inc. v. John Does*, No. 01-cv-3856, 2003 WL 21638205, at *1 (S.D.N.Y. July 11, 2003).
Plaintiff alleges no such damages.

In all events, a claim of civil conspiracy does not lie for a statutory violation with no
common law analogue. *See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129-30 (D.C. 2015)
("[W]e . . . have cited authority that 'a claim of civil conspiracy does not lie for a violation of a
statute' absent statutory language to the contrary.") (quoting *Exec. Sandwich Shoppe, Inc.*, 749
A.2d at 739); *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011) (rejecting
civil conspiracy claim under Consumer Protection Procedures Act and noting that "the District of
Columbia Court of Appeals has expressed skepticism about statutory violations serving as
'underlying torts' for civil conspiracy claims where the statutory right at issue has no common
law tort analogue"). There is no common law analogue to the CFAA and thus it cannot sustain a
civil conspiracy claim. *Id.*

## VIII.   The Complaint Fails to State a Claim for Punitive Damages

Plaintiff's eighth cause of action seeks punitive damages pursuant to RICO.  It fails along with the RICO claim.  Moreover, the statute Plaintiff cites—18 U.S.C. § 1964(c)—does not provide for punitive damages.  *See, e.g.*, *Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1289 (S.D.N.Y. 1988) (stating that RICO's "plain language do[es] not allow for punitive damages").

## <u>CONCLUSION</u>

For the foregoing reasons, Dechert respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

Dated: February 3, 2023
     New York, New York

                                            _____
                                            Sean Hecker*
                                            John C. Quinn*
                                            David Gopstein*
                                            KAPLAN HECKER & FINK LLP
                                            350 Fifth Avenue, 63rd Floor
                                            New York, New York 10118
                                            Tel.: (212) 763-0883
                                            shecker@kaplanhecker.com

                                            *Attorneys for Defendant Dechert LLP*

                                            *\* admitted pro hac vice*