# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN SOLOMON<br><br>    Plaintiff<br><br>  v.<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC,<br>AMIT FORLIT,<br>ISRAEL INSIGHT ANALYSIS AND<br>RESEARCH, LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS, INC.,<br><br>    Defendants. | Civil Action No. 22-CV-03137-JEB<br><br><u>Oral Argument Requested</u> |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DAVID GRAHAM HUGHES' MOTION TO DISMISS

Helen Gredd* (N.Y. Bar: 1997360)
Michael Gerber* (N.Y. Bar: 4527727)
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 921-8399
hgredd@lswlaw.com
mgerber@lswlaw.com
*Attorneys for Defendant David Graham Hughes*

* admitted pro hac vice

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ...................................................................................................1

PLAINTIFF'S ALLEGATIONS ................................................................................................2

ARGUMENT ..............................................................................................................................5

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER MR. HUGHES.................5

      A.      The complaint fails to establish a statutory basis for personal jurisdiction. ............6

            1.      18 U.S.C. § 1965(b) does not provide
                 a statutory basis for personal jurisdiction. ...................................................7

            2.      The District of Columbia long-arm statute
                 does not provide a statutory basis for personal jurisdiction......................8

                 i.      Jurisdiction is not authorized under D.C. Code § 13-423(a)(3).......8

                 ii.     Jurisdiction is not authorized by any
                     other subsection of D.C. Code § 13-423(a). .................................11

                 iii.    Jurisdiction is not authorized by
                     § 13-423(a) under an agency or conspiracy theory.......................13

      B.      Exercise of personal jurisdiction over Mr. Hughes would violate due process.....17

II.     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. HUGHES.............19

      A.      Counts I and VIII fail to state a RICO claim against Mr. Hughes........................20

      B.      Counts II–VII fail to state a claim against Mr. Hughes. .......................................23

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*\* Acosta Orellana v. CropLife Int'l,*
   711 F. Supp. 2d 81 (D.D.C. 2010) ..................................................................16, 25

*AGS Int'l, Serv. S.A. v. Newmont USA Ltd.,*
   346 F. Supp. 2d 64 (D.D.C. 2004) ..........................................................................7

*\* Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..............................................................................19, 20, 24

*Associated Producers, LTD v. Vanderbilt Univ.,*
   76 F. Supp. 3d 154 (D.D.C. 2014) ........................................................................17

*Avianca, Inc. v. Corriea,*
   705 F. Supp. 666 (D.D.C. 1989) ............................................................................7

*Avianca, Inc. v. Harrison,*
   70 F.3d 637 (D.C. Cir. 1995) ................................................................................7

*B3DC Navy Yard LLC v. Epoch Design Grp. Inc.,*
   No. 19-2939 (JEB), 2020 WL 888574 (D.D.C. Feb. 24, 2020) ..............................11

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................20

*Brady v. Livingood,*
   360 F. Supp. 2d 94 (D.D.C. 2004) ........................................................................16

*Bridges v. Lezell Law, PC,*
   842 F. Supp. 2d 261 (D.D.C. 2012) ......................................................................22

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985) ............................................................................................18

*Burman v. Phoenix Worldwide Indus., Inc.,*
   437 F. Supp. 2d 142 (D.D.C. 2006) ......................................................................12

*Campaign Legal Ctr. v. Fed. Election Comm'n,*
   No. 22-cv-1976 (JEB), 2022 WL 17496211 (D.D.C. Dec. 8, 2022) ......................19

*\* Cockrum v. Donald J. Trump for President, Inc.,*
   319 F. Supp. 3d 158 (D.D.C. 2018) ..........................................................13, 14, 15

*Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.,*
   640 F.3d 369 (D.C. Cir. 2011) ..............................................................................14

iii

*Crane v. Carr*,
   814 F.2d 758 (D.C. Cir. 1987) ........................................................................................12

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..................................................................................................6, 17

* *Doe v. City of Boston*,
   No. 20-cv-2948 (CKK), 2021 WL 2457961 (D.D.C. June 16, 2021) ................................9, 17

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*,
   246 F. Supp. 3d 52 (D.D.C. 2017) ............................................................................14, 15

*Elsevier, Inc. v. Grossman*,
   77 F. Supp. 3d 331 (S.D.N.Y. 2015)................................................................................8

*Employment Law Group, P.C. v. Brady*,
   No. 20-cv-1852 (JDB), 2022 WL 35626 (D.D.C. Jan. 4, 2022)............................................8

*FutureGen Co. v. Carter*,
   915 F. Supp. 2d 104 (D.D.C. 2013) ................................................................................13

*Galerie Furstenberg v. Coffaro*,
   697 F. Supp. 1282 (S.D.N.Y. 1988)................................................................................20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 916 (2011)......................................................................................................7

*Groop Internet Platform Inc. v. Psychotherapy Action Network*,
   19-cv-1854 (BAH), 2020 WL 353861 (D.D.C. Jan. 21, 2020) ............................................12

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ....................................................................................11

*Helmer v. Doletskaya*,
   393 F.3d 201 (D.C. Cir. 2004) ........................................................................................8

*Holder v. Haarmann & Reimer Corp.*,
   779 A.2d 264 (D.C. 2001) ............................................................................................11

*iMark Marketing Serv., LLC v. Geoplast S.p.A.*,
   753 F. Supp. 2d 141 (D.D.C. 2010) ............................................................................9, 10

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)....................................................................................................18

*Jung v. Ass'n of Am. Med. Colls.*,
   300 F. Supp. 2d 119 (D.D.C. 2004) ..............................................................................14

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*,
      115 F.3d 1020 (D.C. Cir. 1997) ................................................................14

*Kraemer v. U.S. Dept. of Justice*,
      No. 22-cv-3265, 2022 WL 17485639 (D.D.C. Dec. 1, 2022) ..................................21

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*,
      786 F. Supp. 2d 240 (D.D.C. 2011) ................................................................18

*Lewis v. Parker*,
      67 F. Supp. 3d 189 (D.D.C. 2014) ................................................................5

*Margoles v. Johns*,
      483 F.2d 1212 (D.C. Cir. 1973) ................................................................8, 10

*Marsoun v. United States*,
      525 F. Supp. 2d 206 (D.D.C. 2007) ................................................................5

*Mehle v. Am. Mgmt. Sys., Inc.*,
      No. 01-7197, 2002 WL 31778773 (D.C. Cir. 2002) ................................................5

* *Moncrief v. Lexington Herald-Leader Co.*,
      807 F.2d 217 (D.C. Cir. 1986) ................................................................8, 9

*Mwani v. bin Laden*,
      417 F.3d 1, 7 (D.C. Cir. 2005) ................................................................5

*New Vision Photography Program, Inc. v. District of Columbia*,
      54 F. Supp. 3d 12 (D.D.C. 2014) ................................................................5

* *Nuevos Destinos, LLC v. Peck*,
      No. 15-cv-1846, 2019 WL 78780 (D.D.C. Jan. 2, 2019) ................................................7

*O'Malley v. N.Y.C. Transit Auth.*,
      896 F.2d 704 (2d Cir. 1990) ................................................................22

*Paul v. Howard Univ.*,
      754 A.2d 297 (D.C. 2000) ................................................................24

*Pyramid Sec. Ltd. v. IB Resolution, Inc.*,
      924 F.2d 1114 (D.C. Cir. 1991) ................................................................20

* *RJR Nabisco, Inc. v. European Community*,
      579 U.S. 325, 340 (2016) ................................................................21

*S.K. Innovation, Inc. v. Finpol*,
      854 F. Supp. 2d 99 (D.D.C. 2012) ................................................................6

*Saucier v. Countrywide Home Loans*,
    64 A.3d 428 (D.C. 2013) ........................................................................................24

*Second Amendment Found. v. U.S. Conference of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001) ...........................................................................13, 14

*Shatsky v. Palestine Liberation Org.*,
    955 F.3d 1016 (D.C. Cir. 2020) ...........................................................................18

*Sibley v. Roberts*,
    224 F. Supp. 3d 29 (D.D.C. 2016) ........................................................................5

*Slate v Kamau*,
    No. 20-cv-3732, 2021 WL 3472438 (D.D.C. Aug. 6, 2021) ...........................5, 12

*Smith v. Jenkins*,
    452 A.2d 333 (D.C. 1982) .....................................................................................17

*Steinberg v. Int'l Criminal Police Org.*,
    672 F.2d 927 (D.C. Cir. 1981) .............................................................................12

*Turner v. Abbott*,
    53 F. Supp. 3d 61 (D.D.C. 2014) .........................................................................12

*U.S. v. Philip Morris Inc.*,
    116 F. Supp. 2d 116 (D.C. Cir. 2000) ..................................................................6

*U.S. v. Philip Morris USA Inc.*,
    566 F.3d 1095 (D.C. Cir. 2009) ...........................................................................21

*Urquhart-Bradley v. Mobley*,
    964 F.3d 36 (D.C. Cir. 2020) ...........................................................................6, 17

*W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
    235 F.3d 629 (D.C. Cir. 2001) .............................................................................21

* *Walden v. Fiore*,
    571 U.S. 277 (2014)..........................................................................13, 14, 15, 18

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..............................................................................................18

*Youming Jin v. Ministry of State Sec.*,
    335 F. Supp. 2d 72 (D.D.C. 2004) ..................................................................14, 15

**Statutes**

18 U.S.C. § 1030.................................................................................................................25

18 U.S.C. § 1503 ..................................................................................................................22

18 U.S.C. § 1512 ..................................................................................................................22

18 U.S.C. § 1515 ..................................................................................................................22

18 U.S.C. § 1961 ..................................................................................................................22

18 U.S.C. § 1965 ....................................................................................................................7

D.C. Code § 13-423 ............................................................................8, 9, 10, 11, 12, 13

D.C. Code § 22-721 ..............................................................................................................22

D.C. Code § 22-2001 ............................................................................................................21

D.C. Code § 22-3251 ............................................................................................................21

D.C. Code § 22-3201 ............................................................................................................22

**Other Authorities**

Fed. R. Civ. P. 8 ..................................................................................................................21

Fed. R. Civ. P. 9 ..................................................................................................................22

Fed. R. Civ. P. 12(b) ..................................................................................................12, 19

Defendant David Graham Hughes respectfully submits this memorandum of law in support of his motion to dismiss the complaint filed by plaintiff Jonathan Solomon.  ("Compl.").

## PRELIMINARY STATEMENT

Plaintiff has brought a civil RICO suit against Mr. Hughes, a retired English solicitor.  The gravamen of plaintiff's complaint is that he lost his job as a reporter at the *Wall Street Journal* after one of his sources was hacked and emails between plaintiff and the source were exposed.  By plaintiff's own account, Mr. Hughes had no role in the alleged hacking, the alleged dissemination of the hacked materials, or plaintiff's termination.  Nonetheless, plaintiff attempts to proceed against Mr. Hughes by positing a Frankenstein-esque racketeering enterprise that falls of its own weight and an array of other claims under federal or District law that, to the extent they are intended to include Mr. Hughes, are untethered to the facts alleged in the complaint.  The result is a complaint that is subject to dismissal on a multitude of grounds.

To begin, the complaint should be dismissed because plaintiff pleads no facts that would give this Court personal jurisdiction over Mr. Hughes.  There is no statutory basis for jurisdiction, and there is no constitutional basis.  All of Mr. Hughes' conduct is alleged to have occurred overseas, and while plaintiff asserts that Mr. Hughes' conduct was somehow directed towards the District, plaintiff pleads no facts in support of that assertion.  Mr. Hughes does not belong before this Court, and that is reason enough to dismiss the claims against him.

Additionally, plaintiff's claims suffer from numerous flaws.  Defendant Dechert LLP ("Dechert") has identified various grounds for dismissal that are equally applicable to Mr. Hughes—including that the claims are all untimely by more than five years.  Mr. Hughes joins in those arguments rather than repeating them.

Further still, with respect to Mr. Hughes in particular, it is difficult to discern what RICO predicates he is even alleged to have committed.  And, in fact, none are properly pled.  Similarly,

and wholly apart from their untimeliness and various other flaws identified by Dechert, the remaining claims offer no clue as to how they apply to Mr. Hughes.  Indeed, plaintiff appears to be suing Mr. Hughes for things that plaintiff does not claim Mr. Hughes did.  The claims are by turns incoherent and incognizable, and in all instances fall far short of the most basic pleading requirements.

Mr. Hughes does not belong before this Court.  The claims against him fail as a matter of law and contain defects that cannot be cured by amendment.  The complaint accordingly should be dismissed with prejudice.

## PLAINTIFF'S ALLEGATIONS

Plaintiff's claims are based on the termination of his employment as a journalist at the *Wall Street Journal*.  Compl. ¶ 12.  According to plaintiff, he was fired after his communications with a source, Farhad Azima, were obtained by hackers working on behalf of the ruler of Ras Al Khaimah ("RAK"), one of the seven emirates comprising the United Arab Emirates, and disclosed to the *Wall Street Journal* and other members of the media.  *Id.* ¶¶ 73–100.  The hackers, allegedly working at the direction of a group of advisers to RAK, are claimed to have targeted Mr. Azima in response to his efforts to publicize the detention of Karam Al Sadeq, a former executive of Ras Al Khaimah Investment Authority ("RAKIA").  *Id.* ¶¶ 71–74.  Plaintiff further claims that after a meeting at which Mr. Azima "advised Defendant Mr. Gerrard that he had important contacts," including plaintiff, to whom he could disclose the alleged wrongdoing, *id.* ¶ 85, "Defendants Dechert and Mr. Gerrard immediately instructed their Cohorts including other Defendants to locate documents implicating Mr. Solomon from the batch of documents that were illegally hacked and stolen from Mr. Azima" and then disseminated the documents to plaintiff's employer and other members of the media, *id.* ¶ 39.  This disclosure prompted an Associated Press journalist to publish

an article describing misconduct by plaintiff in his relationship with Mr. Azima.  This, in turn, caused the *Wall Street Journal* to terminate plaintiff's employment in June 2017.  *Id.* ¶¶ 99–100.

    Plaintiff does not contend that Mr. Hughes was part of any of this.  Plaintiff does not claim that Mr. Hughes was aware of a report that allegedly "discussed the conspiratorial scheme, plan and design to 'target,' 'attack,' and 'go after' Mr. Azima."  *Id.* ¶ 73.  There is no allegation that Mr. Hughes was involved in the hacking.  *Id.* ¶¶ 74–94.  The complaint does not even suggest that Mr. Hughes was aware of plaintiff's existence, let alone his relationship with Mr. Azima or his employment at the *Wall Street Journal*.  *Id.* ¶¶ 38–39, 85.  Mr. Hughes is not alleged to have had any role in the dissemination of plaintiff's communications.  *Id.* ¶¶ 95–100.

Instead, the complaint makes two sets of allegations against Mr. Hughes.  One set of allegations involves events that are said to have occurred in the United Arab Emirates years before plaintiff's firing, which have nothing to do with plaintiff and (as plaintiff admits) have been the subject of litigation in the U.K. for years.  The other set of allegations involves Mr. Hughes' actions as an English solicitor, litigating in the U.K. on behalf of RAKIA against Mr. Azima.

First, plaintiff alleges that in 2014 Mr. Hughes interrogated former RAKIA executive Karam Al Sadeq and pressured him to inculpate Mr. Azima and others in fraud against RAKIA after Mr. Al Sadeq "had been kidnapped and illegally detained by local police at the Ruler's direction" at a military camp in RAK.  *Id.* ¶¶ 62, 66–67.  Mr. Al Sadeq filed a lawsuit against Dechert, Mr. Gerrard, and Mr. Hughes in the U.K. in 2020 in connection with this alleged abduction and detention.  *Id.* ¶ 127.  Plaintiff also alleges that Mr. Hughes "engaged directly and frequently" with another former RAKIA executive, Jihad Quzmar, who had also allegedly been kidnapped and detained in RAK,  *id.* ¶ 62.  Mr. Quzmar filed a lawsuit in the U.K. against Dechert

and Mr. Gerrard (but not Mr. Hughes) in 2020, claiming that he was abducted and detained in RAK in 2014 and pressured to give false testimony against Mr. Azima. *Id.* ¶ 127.

Second, plaintiff makes a cluster of allegations against Mr. Hughes in connection with litigation activities undertaken by Mr. Hughes in his capacity as a solicitor representing RAKIA in a lawsuit in the U.K. against Mr. Azima. *Id.* ¶¶ 109, 111, 113–14, 123. Mr. Hughes is alleged to have corresponded with Mr. Azima's counsel before filing a lawsuit on RAKIA's behalf in the U.K. in September of 2016. *Id.* ¶ 109. Then, in the "second half of 2018," long after plaintiff's termination, Mr. Hughes is alleged to have taken certain actions in the U.K. litigation as part of an effort to "confirm and commit to a case as to how [RAKIA] had discovered [Mr. Azima's] confidential data." *Id.* ¶ 111. Mr. Hughes is also alleged to have participated in a meeting in Cyprus in late 2018 concerning upcoming testimony by a witness named Majdi Halabi in the U.K. lawsuit, *id.* ¶¶ 113–14, and to have signed a document on behalf of RAKIA in the same U.K. litigation, *id.* ¶ 123. Plaintiff asserts that these actions, taken overseas in the context of RAKIA's suit against Mr. Azima in a U.K. court, were "necessarily intended, at least in part, to obstruct [Mr. Azima's suit against RAKIA in the District]," *id.* ¶ 113, and were part of a scheme to "prevent[] Mr. Solomon, the D.C. District [C]ourt, and the U.S. Court of Appeals for the D.C. Circuit from learning material information about the enterprise and its illegal activities," *id.* ¶ 126. There are no facts pled in support of this conclusory allegation.

The complaint alleges only one factual link between Mr. Hughes and any proceedings in the District of Columbia: "In July 2018, Defendant Mr. Hughes falsely stated in a filing before this court[] that a 'public relations company' innocently found Mr. Azima's stolen data on the internet." *Id.* ¶ 111. But the docket in that case, *Azima v. RAKIA*, No. 1:16-cv-01948-KBJ, demonstrates that the statement to which plaintiff refers is in a witness statement Mr. Hughes filed

in the U.K. litigation, not in the D.C. proceeding.  *See* Declaration of Helen Gredd, dated February 3, 2023.[1]  And while that witness statement was later filed in the D.C. proceeding, it was Mr. Azima's counsel who filed it.  *Id.*  In other words, Mr. Hughes' statement was "in a filing before this court" because Mr. Azima put it there.

## ARGUMENT

The complaint must be dismissed as to Mr. Hughes both because this Court lacks personal jurisdiction over him and because the complaint fails to state any claim against him.

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. HUGHES.

Plaintiff bears the burden of establishing this Court's personal jurisdiction over Mr. Hughes.  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).  To meet this burden, plaintiff "must allege specific facts on which personal jurisdiction can be based; he cannot rely on conclusory allegations."  *Marsoun v. United States*, 525 F. Supp. 2d 206, 211 (D.D.C. 2007).  "Determining whether personal jurisdiction exists over a given defendant is a two-part inquiry."  *Slate v Kamau*, No. 20-cv-3732, 2021 WL 3472438, at *4 (D.D.C. Aug. 6, 2021) (internal quotation marks omitted).  "First, a statutory basis for personal jurisdiction must be located.  Second, if a statutory basis is found, the Court must then 'determine whether an exercise of jurisdiction would comport with constitutional limitations.'"  *Id.* (internal quotation marks omitted).

---

[1] The Court may consider the docket in *Azima v. RAKIA* both because it is referenced in the complaint's allegations and because it is properly a subject of judicial notice.  *See New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 23 (D.D.C. 2014) ("[d]ocuments that are referenced in, or are an integral part of, the complaint are deemed not outside the pleadings for purposes of a motion to dismiss[,]") (internal quotation marks omitted); *Mehle v. Am. Mgmt. Sys., Inc.*, No. 01-7197, 2002 WL 31778773, at *1 (D.C. Cir. 2002) (per curiam) (judicial notice may be taken of the existence of documents filed in a litigation) *Accord Sibley v. Roberts*, 224 F. Supp. 3d 29, 31 n.2 (D.D.C. 2016); *Lewis v. Parker*, 67 F. Supp. 3d 189, 195 n.6 (D.D.C. 2014).

With respect to the constitutional inquiry, plaintiff must plead facts sufficient to establish that Mr. Hughes has had the requisite "minimum contacts with the District of Columbia" and that the exercise of personal jurisdiction over him would be reasonable.  *U.S. v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 129 (D.C. Cir. 2000).  In the absence of a basis for general jurisdiction—which requires a defendant's contacts with the judicial district to be "so constant and pervasive 'as to render [him] at home in the forum state,'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotation marks omitted)—a plaintiff must meet the test for specific jurisdiction, which requires that there be "minimum contacts between the defendant and the forum such that the defendant should reasonably anticipate being haled into court there." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (internal quotation marks omitted).  And the minimum contacts test, in turn, requires a showing that the defendant "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99, 118 (D.D.C. 2012) (internal quotation marks omitted).

As set forth below, plaintiff comes nowhere close to meeting his burden, either under the relevant statutes or as a matter of due process.  The complaint describes actions that Mr. Hughes purportedly took in the United Arab Emirates, the U.K., and Cyprus, but it contains no properly pled allegations connecting Mr. Hughes to the District of Columbia.  Plaintiff has not alleged facts linking Mr. Hughes to this forum at all, let alone facts that justify exercise of personal jurisdiction.

**A.**    **The complaint fails to establish a statutory basis for personal jurisdiction.**

Plaintiff invokes two statutory bases for personal jurisdiction over Mr. Hughes.  Compl. ¶ 5.  Both are inapplicable, and it is not close.

### 1.   18 U.S.C. § 1965(b) does not provide
### a statutory basis for personal jurisdiction.

Plaintiff first asserts that the nationwide service provision of the RICO statute, 18 U.S.C.

§ 1965(b), establishes personal jurisdiction over Mr. Hughes. Compl. ¶ 5. He is mistaken. Section

1965(a) provides for jurisdiction over a defendant in a RICO case "in the district court of the

United States for any district in which such person resides, is found, has an agent, or transacts his

affairs." 18 U.S.C. § 1965(a). Section 1965(b) expands this provision, providing that, if "the ends

of justice require that other parties residing in any other district be brought before the court, the

court may cause such parties to be summoned, and process for that purpose may be served in any

judicial district of the United States by the marshal thereof." 18 U.S.C. § 1965(b). In this way,

"[t]he RICO statute provides for nationwide personal jurisdiction over all domestic defendants."

*Nuevos Destinos, LLC v. Peck*, No. 15-cv-1846, 2019 WL 78780, at *12 (D.D.C. Jan. 2, 2019)

(internal quotation marks omitted). But § 1965(b) "cannot be used to obtain personal jurisdiction

over [foreign] defendants because it only provides for *nationwide* service of process." *Id.*

As the complaint acknowledges in its very caption, Mr. Hughes is not a domestic

defendant. *See* Compl. at 1 (identifying Mr. Hughes as a U.K. resident). Plaintiff accordingly

may not rely on § 1965(b) as a statutory basis for personal jurisdiction over Mr. Hughes. *See*

*Nuevos Destinos*, 2019 WL 78780 at *12. *Accord AGS Int'l, Serv. S.A. v. Newmont USA Ltd.*, 346

F. Supp. 2d 64, 86 (D.D.C. 2004), *abrogated on other grounds by Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 916 (2011); *Avianca, Inc. v. Correia*, 705 F. Supp. 666, 684–

85 (D.D.C. 1989) (noting that "[a]lthough RICO authorizes nationwide service of process, it does

not provide for service of process in a foreign country" and looking to the D.C. long-arm statute

to assess personal jurisdiction (internal citation omitted)), *superseded on other grounds by*

*Avianca, Inc. v. Harrison*, 70 F.3d 637 (D.C. Cir. 1995). Instead, "plaintiffs asserting RICO claims

against foreign defendants must rely on the long-arm statute of the state in which they filed suit." *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015) (internal quotation marks omitted).

## 2. The District of Columbia long-arm statute does not provide a statutory basis for personal jurisdiction.

Plaintiff fares no better under the D.C. long-arm statute. D.C. Code § 13-423(a). Plaintiff invokes a single subsection of that statute, § 13-423(a)(3). Compl. ¶ 5. But subsection (a)(3) does not in fact authorize personal jurisdiction over Mr. Hughes. Nor do any of the other subsections.

### i. Jurisdiction is not authorized under D.C. Code § 13-423(a)(3).

Subsection (a)(3) provides for personal jurisdiction for claims arising from a defendant's "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code. § 13-423(a)(3). "This provision is 'a precise and intentionally restricted tort section which stops short of the outer limits of due process,' and requires that both act and injury occur in the District of Columbia." *Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004) (quoting *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986)). Section 13-423(a)(3) does not confer personal jurisdiction over Mr. Hughes for two reasons: (1) Mr. Hughes is not alleged to have "act[ed] . . . in the District of Columbia;" and (2) Mr. Hughes is not alleged to have caused plaintiff injury. D.C. Code § 13-423(a)(3).

The relevant act, for the purposes of the D.C. long-arm statute, "is the act of the alleged tortfeasor," the location of which is unaffected by any "additional facts that other third-party acts were necessary to consummate the tort, or that the injury itself took place within the District." *Margoles v. Johns*, 483 F.2d 1212, 1218 (D.C. Cir. 1973). "Regardless of where the injury occurred, without an act or omission in the District of Columbia causing that injury, paragraph (a)(3) is unavailable as a basis for personal jurisdiction." *Employment Law Group, P.C. v. Brady*,

No. 20-cv-1852 (JDB), 2022 WL 35626, at *6 (D.D.C. Jan. 4, 2022).  For example, "the D.C. Circuit has repeatedly rejected the notion that a defendant may 'project[] her presence' into the District through phone calls originating outside of the District, so as to have committed the 'act' of defamation within the District."  *iMark Marketing Serv., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 160 (D.D.C. 2010) (quoting *Moncrief*, 807 F.2d at 220).  Likewise, a plaintiff who alleges that an out-of-state employer sent retaliatory negative information about her to prospective employers in the District of Columbia, causing her job applications with those prospective employers to be denied "has failed to plausibly allege any . . . intra-forum act" satisfying § 13-423(a)(3).  *Doe v. City of Boston*, No. 20-cv-2948 (CKK), 2021 WL 2457961, at *5 (D.D.C. June 16, 2021).  Even if such retaliatory references might cause injury within the District, "subsection (a)(3) . . . intentionally distinguishes between the situs of a tortious injury and the situs of the corresponding tortious conduct."  *Id.*

The complaint contains no allegation that Mr. Hughes acted in the District of Columbia. While plaintiff asserts that "[i]n July 2018, Defendant Mr. Hughes falsely stated in a filing before this court, that a 'public relations company' innocently found Mr. Azima's stolen data on the internet," Compl. ¶ 111, that sentence is carefully worded:  Mr. Hughes' statement was, as discussed above, "before this [C]ourt," not because he put it there, but because Mr. Azima put it there.  This unilateral action by Mr. Azima cannot be attributed to Mr. Hughes for jurisdictional purposes.  *See Doe*, 2021 WL 2457961, at *7 (refusing to attribute "the unilateral actions" of third parties to defendant for purposes of long-arm jurisdiction under § 13-423).  And even if it could, the filing of Mr. Hughes' statement would not matter: It is black-letter law that statements made by a defendant elsewhere and subsequently transmitted into the District do not qualify as an act within the District for purposes of § 13-423(a)(3).  *See Moncrief*, 807 F.2d at 220 (newspaper

printed elsewhere and mailed into the District); *Margoles*, 483 F.2d at 215 (statements made over the phone by defendant in Wisconsin in call to congressman's office in the District of Columbia).

The remaining allegations against Mr. Hughes all involve out-of-forum activities insufficient to confer jurisdiction under § 13-423(a)(3). Plaintiff alleges that Mr. Hughes interrogated Messrs. Al Sadeq and Quzmar in RAK, Compl. ¶¶ 41, 62, 64, 66–67, informed Mr. Azima's counsel that RAKIA intended to sue Mr. Azima in the U.K., *id.* ¶ 109, signed litigation papers on behalf of RAKIA in the U.K., *id.* ¶ 123, and attended a meeting in Cyprus regarding Mr. Halabi's testimony in the U.K. proceeding, *id.* ¶¶ 113–14. There simply is no well-pled allegation that Mr. Hughes performed any action within the District, and "out-of-forum actions . . . do not satisfy D.C. Code § 13-423(a)(3)." *iMark Marketing Serv., LLC*, 753 F. Supp. 2d at 159.

Moreover, Mr. Hughes is not alleged to have committed an act "causing tortious injury" to plaintiff. Plaintiff alleges that he was injured when his communications with Mr. Azima were accessed via the hacking of Mr. Azima's computer data and those communications were disclosed to plaintiff's former employer and other members of the media, leading to the termination of plaintiff's employment. Compl. ¶¶ 39, 43, 47, 95–100. Mr. Hughes, however, is not alleged to have directed, participated in, or even been aware of the hacking of Mr. Azima's email accounts. *Id.* ¶¶ 38–39, 42, 73–94. Nor is Mr. Hughes alleged to have been involved in the disclosure of plaintiff's communications to his employer and other members of the press. *Id.* ¶¶ 95–101. The complaint does not, because it cannot, contend that the actions allegedly taken by Mr. Hughes— interrogating Messrs. Al Sadeq and Quzmar in RAK; acting as RAKIA's counsel in the U.K.; and meeting in Cyprus about witness testimony in the U.K. litigation— caused plaintiff any injury. As a result, even on plaintiff's account, personal jurisdiction is not authorized under § 13-423(a)(3).

> ii.     **Jurisdiction is not authorized by any**
> **other subsection of D.C. Code § 13-423(a).**

Plaintiff does not invoke any other subsections of § 13-423(a), *see* Compl. ¶ 5, and in any

event none authorizes personal jurisdiction over Mr. Hughes.  To begin, subsection 13-423(a)(1),

which allows personal jurisdiction related to claims arising from a defendant's "transacting any

business in the District of Columbia," *id.* § 13-423(a)(1), does not apply.  While the "'transacting

any business' clause generally has been interpreted to be coextensive with the Constitution's due

process requirements and thus to merge into a single inquiry," *GTE New Media Servs. Inc. v.*

*BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000), a plaintiff still must show that a defendant

"has purposefully engaged in some type of commercial or business-related activity directed at

District residents."  *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001).

Here, the complaint does not allege that Mr. Hughes engaged in any type of commercial or

business-related activity within the District or directed at District residents.  On the contrary, the

complaint alleges that Mr. Hughes, an English solicitor, served as counsel in a proceeding in the

U.K., Compl. ¶¶ 109, 123, and that he took actions in the United Arab Emirates and Cyprus, *id.* ¶¶

66, 113–14, all in connection with his representation of RAKIA, an Emirates-based client, *see id.*

¶ 20.  Mr. Hughes has not "transacted business" within the District and therefore § 13-423(a)(1)

does not authorize the exercise of personal jurisdiction over him.

Subsection 13-423(a)(2), which authorizes personal jurisdiction for claims arising out of a

defendant's "contracting to supply services in the District of Columbia," is likewise unavailing

because plaintiff does not allege that Mr. Hughes entered into a contract that "obligated [him] to

supply a service in [the District of Columbia]."  *B3DC Navy Yard LLC v. Epoch Design Grp. Inc.*,

No. 19-2939 (JEB), 2020 WL 888574, at *3 (D.D.C. Feb. 24, 2020).

11

Nor can § 13-423(a)(4), which authorizes personal jurisdiction over a defendant who "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia," justify personal jurisdiction over Mr. Hughes. "'[R]ecognizing that allowing for personal jurisdiction any time an act outside of the District caused an injury within the District might open the courthouse doors too wide, Congress insisted that plaintiffs show "something more" before haling a defendant into this Court.'" *Slate*, 2021 WL 3472438, at *7 (quoting *Groop Internet Platform Inc. v. Psychotherapy Action Network*, 19-cv-1854 (BAH), 2020 WL 353861, at *4 (D.D.C. Jan. 21, 2020) (quoting *Crane v. Carr*, 814 F.2d 758, 761 (D.C. Cir. 1987)). Specifically, a plaintiff must demonstrate that the defendant (1) "regularly does or solicits business" in the District; (2) "engages in any other persistent course of conduct" there; or (3) "derives substantial revenue from goods used or consumed, or services rendered" there. D.C. Code § 13-423(a)(4). "These so-called 'plus factors' ensure that personal jurisdiction is not exercised over a defendant when the in-District injury is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Slate*, 2021 WL 3472438, at *7 (quoting *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981)).

Here, plaintiff has not alleged that an act by Mr. Hughes caused his injury. Moreover, plaintiff has not alleged facts establishing any of the "plus factors" with respect to Mr. Hughes. There is no allegation that Mr. Hughes, an English citizen, resident, and solicitor,[2] "regularly does

---

[2] *See* Declaration of David Graham Hughes, dated January 20, 2023. While the burden of alleging facts sufficient to establish personal jurisdiction lies with plaintiff, and a complaint's failure to meet that burden is enough to warrant dismissal, *see Burman v. Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 147 (D.D.C. 2006), the Court may also allow the record to be supplemented by declarations in assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(2), *see Turner v. Abbott*, 53 F. Supp. 3d 61, 66 (D.D.C. 2014). Here, Mr. Hughes has submitted a declaration to confirm, for avoidance of doubt, certain facts suggested but not expressly acknowledged in the complaint.

or solicits business" or "derives substantial revenue from goods used or consumed, or services rendered" in the District of Columbia.  D.C. Code § 13-423(a)(4).  Nor has plaintiff alleged that Mr. Hughes "engaged in any other persistent course of conduct" within the District.  *Id.*  "[S]ection (a)(4) requires that the persistent course of conduct occur *in* the District; directing conduct from another state into the District via telephone, internet, and mail is insufficient."  *FutureGen Co. v. Carter*, 915 F. Supp. 2d 104, 108 (D.D.C. 2013).  The complaint contains no allegations of any in-District act by Mr. Hughes, let alone acts that constitute a persistent course of conduct.[3]

### iii.   Jurisdiction is not authorized by § 13-423(a) under an agency or conspiracy theory.

The D.C. long-arm statute also allows for the exercise of personal jurisdiction over a person who satisfies the requirements of § 13-423(a) through the actions of an agent, *see* D.C. Code § 13-423(a), and courts have recognized a "conspiracy theory of personal jurisdiction" as "an application of long-arm jurisdiction pursuant to which a defendant's contacts with the forum consist of the defendant's conspiratorial activities."   *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523–24 (D.C. Cir. 2001) (internal quotation marks omitted). But neither theory is viable here.

"Some cases in this Circuit, predating the Supreme Court's 2014 decision in *Walden v. Fiore*, discussed a conspiracy theory of personal jurisdiction, and those cases required 'a prima facie showing of (1) a conspiracy (2) in which the defendant participated and (3) a coconspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the conspiracy.'" *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 185 (D.D.C. 2018) (quoting

---

[3] Additionally, subsections (a)(5)–(a)(7) of the long-arm statute are clearly inapplicable.  Mr. Hughes is not alleged to have any interest in real property in the District, D.C. Code § 13-423(a)(5), or to have contracted to insure or act as a surety for any obligation in D.C., *id.* § 13-423(a)(6), and this case does not concern a marital or parental relationship in D.C., *id.* § 13-423(a)(7).

*Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 78 (D.D.C. 2004)).  Courts applying this theory required plaintiffs to make a prima facie showing of the elements of a civil conspiracy claim under District of Columbia law: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which was done pursuant to and in furtherance of the common scheme.  *See Second Amendment Found.*, 274 F.3d at 524.

But "[c]ourts in this Circuit . . . have applied the test for co-conspirator jurisdiction warily in order to prevent a broad extension of long-arm jurisdiction." *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 90 (D.D.C. 2017) (internal quotation marks omitted). To satisfy this test, "plaintiffs 'must plead *with particularity* the conspiracy as well as the *overt acts within the forum* taken in furtherance of the conspiracy.'" *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011) (quoting *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997)). "This particularity requirement is 'strictly enforced.'" *EIG Energy*, 246 F. Supp. 3d at 90 (quoting *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 141 (D.D.C. 2004)). "Since the bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction, a plaintiff must allege specific acts connecting the defendant with the forum." *Second Amendment Found.*, 274 F.3d at 524 (internal quotation marks and alterations omitted).

Moreover, in *Walden*, the Supreme Court "made clear that, for purposes of determining specific jurisdiction, 'it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.'" *Cockrum*, 319 F. Supp. 3d at 185 (quoting *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).  There the Court explained that the actions of the defendant's Nevada-based attorney could not suffice to establish personal jurisdiction over the defendant in Nevada, as this was

14

"precisely the sort of unilateral activity of a third party that cannot satisfy the requirement of contact with the forum State." *Id.* at 291 (internal quotation marks omitted). The *Walden* court emphasized that a defendant's relationship with a forum "must arise out of contacts that the defendant *himself* creates with the forum." *Id.* at 284 (internal quotation marks omitted).

Accordingly, since *Walden*, "a plaintiff who seeks to establish jurisdiction over a defendant based on a co-conspirator's contacts must plead, at a minimum, that the defendant *knew* his co-conspirator was carrying out acts in furtherance of the conspiracy *in the forum*.'" *Cockrum*, 319 F. Supp. 3d at 185–86 (quoting *EIG Energy*, 246 F. Supp. 3d at 91); *see also Youming*, 319 F. Supp. 3d at 79–80 (identifying, pre-*Walden*, "the problematic relationship between due process and conspiracy jurisdiction" and holding that "jurisdiction based on the three traditional elements of conspiracy jurisdiction alone violates due process").

The complaint does not satisfy this burden. Plaintiff does not allege that Mr. Hughes was aware of alleged co-conspirators carrying out actions in furtherance of the alleged conspiracy in the District. And plaintiff's conclusory assertion that actions taken overseas concerning RAKIA's suit against Mr. Azima in the U.K. were "necessarily intended, at least in part, to obstruct the D.C. District Court Proceeding," *id.* ¶ 113, do not establish Mr. Hughes' knowledge of any actions taken in the District, as "[m]ere conclusions or bare allegations do not constitute the *prima facie* case for jurisdiction," let alone the "strictly enforced" particularity standard applicable to conspiracy jurisdiction. *Cockrum*, 319 F. Supp. 3d at 172, 185.

Indeed, a claim of conspiracy jurisdiction over Mr. Hughes would fail even the pre-*Walden* test. Plaintiff has not alleged a conspiracy with particularity (because there was none). Nor has he alleged with particularity that Mr. Hughes joined any conspiracy—that is, that he agreed to commit an unlawful act or a lawful act in an unlawful manner (because he did not). Instead, the

complaint broadly asserts that Mr. Hughes served as a "high-level deputy of Mr. Gerrard in the enterprise" who "worked closely with Mr. Gerrard in organizing and structuring the enterprise, coordinating and carrying out its affairs, and directing and executing its illegal acts," Compl. ¶ 24, that Mr. Hughes, Mr. Gerrard, and Dechert's representation of RAKIA "initiated, solidified and/or intensified a multipronged conspiracy in which they played a central role leading, coordinating and/or participating," *id.* ¶ 37, and that certain actions taken in litigation in the U.K. "were part of a broader scheme to conceal the enterprise's illegal acts," *id.* ¶ 126.  But these allegations are all "purely conclusory, and devoid of any factual support." *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010).  "[I]n pleading that a defendant entered into an agreement the 'plaintiff must set forth more than just conclusory allegations of the agreement.'" *Id.* (quoting *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004)).  Thus, "the failure of [a] complaint to provide any indication of when or how such an agreement was brokered, or how [Mr. Hughes] specifically, as opposed to . . . the . . . defendants generally, were parties to an agreement" is "[f]atal . . . to [any] conspiracy theory claim." *Id.* at 113.  This is precisely the failure of the complaint, and it is fatal to any conspiracy theory of personal jurisdiction as to Mr. Hughes.[4]

Finally, plaintiff has not alleged with particularity any overt acts taken within the District of Columbia.  With respect to the alleged disclosure of plaintiff's communications with Mr. Azima, plaintiff fails to identify which defendant made the disclosure and how, and whether such a

---

[4] As noted above, the complaint does allege that Mr. Hughes interrogated Messrs. Al Sadeq and Quzmar in RAK, Compl. ¶¶ 41, 62, 64, 66–67, informed Mr. Azima's counsel that RAKIA intended to sue Mr. Azima in the U.K., *id.* ¶ 109, signed legal papers on behalf of RAKIA in the U.K., *id.* ¶ 123, and met in Cyprus about testimony in the U.K. proceeding, *id.* ¶¶ 113–14.  But even taken at face value, these allegations do not establish Mr. Hughes' entry into an unlawful conspiracy or the contours of that conspiracy. "[S]tripped of its factual and legal conclusions, the plaintiff['s] complaint paints a maze from which it cannot be discerned with whom . . . [Mr. Hughes] conspired, when the alleged agreement was reached, and what particular activity was the object of the conspiracy." *Acosta Orellana*, 711 F. Supp. 2d at 114.

disclosure was made from inside or outside of the District. *See* Compl ¶ 39. The only supportable inference to be drawn from the complaint is that the alleged transmission of documents would have happened from outside of the district, which, as discussed above, does not constitute an act within the district. *See Doe*, 2021 WL 2457961, at *5. A claim of conspiracy jurisdiction over Mr. Hughes fails under post-*Walden* law and would fail even under pre-*Walden* law.

Nor is there jurisdiction over Mr. Hughes based on an agency theory. "'Generally an agency relationship results when one person authorizes another to act on his behalf subject to his control, and the other person consents to do so.'" *Associated Producers, LTD v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 166 (D.D.C. 2014) (quoting *Smith v. Jenkins*, 452 A.2d 333, 335 (D.C. 1982)). A showing of control is required because, "'[w]ithout control over the forum state actor, it cannot be said that the nonresident defendant is purposefully avail[ing] itself of the privilege of conducting activities within the forum State.'" *Id.* (quoting *Smith*, 452 A.2d at 335). The complaint does not allege that anyone under Mr. Hughes' control acted in the District, or even that that Mr. Hughes exercised control over anyone—in the District or elsewhere.

**B.     Exercise of personal jurisdiction over Mr. Hughes would violate due process.**

Even if, somehow, there were a statutory basis for personal jurisdiction over Mr. Hughes, it would not matter: Dismissal of the complaint would still be required because the exercise of personal jurisdiction over Mr. Hughes would violate due process.

Mr. Hughes, an English citizen and resident, does not have District of Columbia contacts that are "so constant and pervasive as to render [him] essentially at home in the forum State." *Daimler*, 571 U.S. at 122 (internal quotation marks omitted). In the absence of this "'general or all-purpose jurisdiction,'" the complaint must allege "'a relationship among the defendant, the forum, and the litigation' such that 'the defendant's suit-related conduct creates a substantial connection with the forum'" in order to justify the exercise of specific jurisdiction. *Urquhart-*

17

*Bradley*, 964 F.3d at 43–44 (quoting *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020) (alterations adopted)).  The complaint does no such thing.

The complaint only alleges actions taken by Mr. Hughes abroad.  This overseas conduct, even if true, is insufficient to subject Mr. Hughes to "the binding judgements of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  While the complaint makes much of the 2016 litigation in the District, there is no claim that Mr. Hughes actually did anything in that case.  Mr. Hughes represented RAKIA in litigation against Mr. Azima in the U.K.; Mr. Azima, having filed suit against RAKIA here, attached a statement by Mr. Hughes to a set of motion papers.  Mr. Hughes could not have "reasonably anticipat[ed] being haled into court" in the District of Columbia on the basis of a filing by his client's adversary.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Walden*, 571 U. S. at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").  And even if Mr. Hughes had taken action in connection with the D.C. litigation, it would not matter: litigation-related activities, without more, cannot create a sufficient connection with a forum state to satisfy due process.  *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 275 (D.D.C. 2011) ("Defendants' participation in litigation-related activities alone also does not subject [defendants] to personal jurisdiction in the District of Columbia.").

Consideration of "traditional notions of fair play and substantial justice" further confirms the absence of personal jurisdiction.  *Int'l Shoe Co.*, 326 U.S. at 320 (internal quotation marks omitted).  The entirety of the conduct alleged as to Mr. Hughes took place overseas, and allegations in the complaint regarding Mr. Azima, Mr. Al Sadeq, and Mr. Quzmar are all the subject of

ongoing litigation in the U.K.  There would be nothing remotely reasonable about forcing Mr. Hughes to litigate these claims in this Court.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. HUGHES.

Dismissal is also warranted under Rule 12(b)(6) because the complaint fails to state any claim against Mr. Hughes.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  While the federal pleading standard "does not require detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (internal quotation marks omitted).  The facts alleged by plaintiff "must be enough to raise a right to relief above the speculative level," and the court need not accept as true "a legal conclusion couched as a factual allegation," or "inferences unsupported by the facts set out in the complaint."  *Campaign Legal Ctr. v. Fed. Election Comm'n*, No. 22-cv-1976 (JEB), 2022 WL 17496211, at *3 (D.D.C. Dec. 8, 2022) (internal quotation marks omitted) (alteration adopted).

There are numerous grounds for dismissing the complaint under Rule 12(b)(6), many of which apply equally to Dechert and Mr. Hughes.  In the interest of economy, Mr. Hughes joins in various of the arguments advanced by Dechert.  In particular, with respect to the RICO claim in Count I, Mr. Hughes joins in and incorporates by reference Dechert's arguments that plaintiff has failed to bring his claim within RICO's four-year statute of limitations, has failed to properly plead an enterprise, has failed to allege a pattern of racketeering activity, and has failed to allege a cognizable injury proximately caused by the alleged RICO enterprise.  *See* Memorandum of Law in Support of Defendant Dechert LLP's Motion to Dismiss ("Dechert Mem.") at Points I and II.B

through II.E.[5]  As to the remaining claims in the complaint, Mr. Hughes joins in and incorporates

by reference Dechert's arguments that these claims are likewise untimely, that the conduct alleged

in the hacking of Mr. Azima does not fall within the ambit of the wiretap statutes cited, and that

the facts alleged in the complaint fail to support a claim of tortious interference with a business

relationship.  *See* Dechert Mem. at Points I, III, V, & VI.  All of the foregoing arguments apply

equally to Mr. Hughes, and because not all of the identified defects can be cured through

amendment, the complaint should be dismissed with prejudice.

The complaint also fails to state a claim against Mr. Hughes for reasons particular to the

conduct ascribed (or not ascribed) to him.  Many of the allegations against Mr. Hughes are vague,

conclusory, and fact-free legal conclusions.  *See, e.g.*, Compl. ¶¶ 5, 24 (Mr. Hughes "served as a

high-level deputy of Mr. Gerrard in the enterprise."), 161 (Mr. Hughes "engaged in and conspired

to engage in a pattern of threats and acts of obstruction of justice").  These are entitled to no weight

in assessing a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and

conclusions' . . . 'will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555–57 (2007)).  Once plaintiff's "labels and conclusions" are stripped away, little remains, and

what does remain fails to state any claim against Mr. Hughes.

### A.    Counts I and VIII fail to state a RICO claim against Mr. Hughes.

To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity."  *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d

1114, 1116 (D.C. Cir. 1991) (internal quotation marks omitted).  Moreover, "[t]he RICO Act

---

[5]  And because Count VIII simply seeks punitive damages for defendants' alleged RICO violation—which are not in any event authorized by the RICO statute, *see Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1289 (S.D.N.Y. 1988)—Count VIII falls with Count I.

defines the term 'pattern of racketeering activity' as requiring the commission of at least two predicate racketeering offenses over a ten year period." *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (citing 18 U.S.C. § 1961(5)).

In addition to the various defects identified by Dechert, the complaint fails to properly allege any racketeering predicates against Mr. Hughes, let alone the two required to state a claim. *See U.S. v. Philip Morris USA Inc*., 566 F.3d 1095, 1117 (D.C. Cir. 2009) (a pattern of racketeering activity must be alleged as to each defendant).  Indeed, it is not clear from the face of the complaint which predicates Mr. Hughes is even alleged to have committed, and this alone is enough to dismiss the complaint.  *See Kraemer v. U.S. Dept. of Justice*, No. 22-cv-3265, 2022 WL 17485639, at *1 (D.D.C. Dec. 1, 2022) ("When a pleading contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions . . . it does not fulfill the requirements of Rule 8." (internal quotation marks omitted)).  In any event, scouring the complaint to guess what racketeering predicates appear to be asserted against Mr. Hughes yields the same result because no predicates are properly asserted.

<u>Kidnapping and extortion</u>: Plaintiff appears to contend that Mr. Hughes participated in kidnapping and extortion in connection with the allegedly unlawful detention of Karam Al Sadeq in the United Arab Emirates. Compl. ¶¶ 62–66, 151, 159–60.  While the complaint states that this conduct was in violation of "state law," *id.* ¶ 10, the D.C. kidnapping and extortion statutes have no application to conduct overseas and cannot serve as racketeering predicates.  *See* D.C. Code §§ 22-2001, 22-3251; *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 340 (2016) (a "violation of § 1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, provided that each of those offenses violates a predicate statute that is itself extraterritorial").  And the extortion claim fails as a matter of law for additional reason:  the

allegedly false confession sought from Mr. Al Sadeq does not constitute the "property of another," as would be required to constitute extortion under District law.  *See* D.C. Code § 22-3201(3)–(4).

Witness tampering and obstruction of justice: The complaint contains scattered allegations that Mr. Hughes obstructed justice or tampered with witnesses, without reference to particular criminal statutes.  Compl. ¶¶ 37, 153, 155, 158, 161–63.  These allegations exclusively involve conduct overseas, in connection with litigation in the U.K.  To the extent that plaintiff seeks to rely on the federal obstruction of justice and witness tampering statutes as racketeering predicates, the law is clear that they do not apply to foreign legal proceedings. *See O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990) ("To constitute an offense under [18 U.S.C. § 1503], the act must relate to a proceeding in a federal court of the United States.") (collecting cases); 18 U.S.C. §§ 1512(b)(1) –(2)(D), 1515(a)(1) (definition of "official proceeding" as used in federal witness tampering statute does not include a foreign proceeding).  To the extent plaintiff relies on the D.C. obstruction of justice or witness tampering statutes, they likewise do not apply to extraterritorial proceedings, and in any event, they are not RICO predicates.  18 U.S.C. § 1961(1); D.C. Code § 22-721(4) (definition of "official proceeding" is limited to the District).

Wire fraud: The complaint also makes fleeting references to "wire fraud."  Compl. ¶¶ 152–53; 158.  Whether Mr. Hughes is alleged to have committed wire fraud is unclear; what that wire fraud would have been is anyone's guess.  In any event, any allegations of wire fraud against Mr. Hughes must meet the particularity requirement of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Bridges v. Lezell Law, PC*, 842 F. Supp. 2d 261, 265 (D.D.C. 2012) (applying 9(b) to fraud-based RICO predicates and noting that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO

pattern from allegations that, upon closer scrutiny, do not support it." (internal quotation marks omitted)).  The complaint does not even attempt to meet this burden.  There is not a single detail regarding who Mr. Hughes allegedly defrauded, when, or how.

Money laundering: The complaint states that the "Defendants have engaged in repeated acts of money laundering."  Compl. ¶¶ 154.  But it identifies no money laundering activity by Mr. Hughes.  It incorporates by reference Exhibit A to the complaint in *Azima, et al. v. Dechert LLP, et al.*, 22-cv-8728 (S.D.N.Y.), but this document likewise fails to identify a single instance of money laundering by Mr. Hughes.  Put another way:  Other than including the words "money laundering" in the complaint, there is no allegation of money laundering against Mr. Hughes.

## B.   Counts II–VII fail to state a claim against Mr. Hughes.

The remaining counts of the complaint likewise fail to state a claim against Mr. Hughes.  Counts II through V posit claims under federal and District wiretap acts relating to the disclosure and use of Mr. Solomon's communications.  While it is not clear whether plaintiff even seeks to bring these claims against Mr. Hughes, *see* Compl. ¶¶ 167–200 (making no reference to Mr. Hughes), plaintiff occasionally uses the blanket term "Defendants" with respect to these claims, and Mr. Hughes accordingly moves to dismiss these counts for failure to state a claim against him.

Even if the hacking of Mr. Azima alleged in the complaint fell within the ambit of the statutes cited—and, for the reasons stated in Dechert's motion to dismiss, it does not, *see* Dechert Mem. at Points III and V—plaintiff does not allege that Mr. Hughes had any involvement in it.  Compl. ¶¶ 71–94.  As set out above, Mr. Hughes is not alleged to have been a member of the group who targeted Mr. Azima for hacking, who participated in any way in the hacking, or who retained, directed, or paid the hackers.  *See supra* at 3.  Mr. Hughes is likewise not alleged to have had any involvement in identifying documents that implicated plaintiff or transmitting them to third parties; indeed, Mr. Hughes is not even alleged to have known who plaintiff was or who he worked for.

*Id.*  And although Mr. Hughes is alleged to have sent a demand letter to Mr. Azima's counsel related to a threatened U.K. lawsuit by RAKIA that attached emails allegedly stolen from Mr. Azima, there is no allegation that the emails contained plaintiff's communications or that Mr. Hughes was aware of the alleged origin of these documents.  *Id.* ¶ 109.  In sum, plaintiff has set out no more than a patently insufficient the "defendant-unlawfully-harmed-me accusation" with respect to Mr. Hughes' liability for Counts II through V.  *See Iqbal*, 556 U.S. at 678.

Count VI posits a claim for tortious interference with business relationships based on plaintiff's firing.  Again, it is not clear whether plaintiff seeks to bring this claim against Mr. Hughes, but to the extent that he does, Mr. Hughes moves to dismiss it for failure to state a claim. In addition to the pleading defects identified by Dechert, *see* Dechert Mem. at Point VI, plaintiff offers no non-conclusory allegations that Mr. Hughes intentionally interfered with plaintiff's employment at the *Wall Street Journal*.  Indeed, as noted above, plaintiff does not even allege facts suggesting that Mr. Hughes was aware of plaintiff, his relationship with Mr. Azima, or his employment as a journalist.  *See* Compl. ¶¶ 38–39, 203.  Simply put, Count VI contains no allegations, much less sufficient ones, in support of a claim against Mr. Hughes.

Finally, Count VII posits a claim for civil conspiracy.  A civil conspiracy "'is not independently actionable; rather it is a means for establishing vicarious liability for the underlying tort.'"  *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 446 (D.C. 2013) (quoting *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)).  Such a claim requires that plaintiff "prove (1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme."  *Id.* (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)).  As discussed above, "the existence of an agreement, . . . is the essential element of

a conspiracy claim," and "in pleading that a defendant entered into an agreement the plaintiff must set forth more than just conclusory allegations of [the] agreement." *Acosta Orellana*, 711 F. Supp. 2d at 113-14 (internal quotation marks omitted). Here, with respect to the requisite "unlawful act," the complaint does no more than allege that it is the "hacking operation that Defendants commissioned for the purpose of silencing Mr. Azima," which plaintiff claims "is illegal under several applicable federal and state[] criminal and civil laws, including but not limited to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030." Compl. ¶ 210. But even if that were sufficient identification of the conspiracy—and it is not—plaintiff has alleged no facts suggesting that Mr. Hughes had anything to do with the hacking of Mr. Azima. Accordingly, just as the complaint fails to state a claim for any substantive violation of the law by Mr. Hughes premised on the hacking, it fails to state a claim that Mr. Hughes conspired to commit any such violation.

## CONCLUSION

For the reasons stated, the complaint should be dismissed with prejudice as to Mr. Hughes.

Dated: February 3, 2023                              Respectfully submitted,

                                                     /s/ Helen Gredd
                                                     Helen Gredd* (N.Y. Bar: 1997360)
                                                     Michael Gerber* (N.Y. Bar: 4527727)
                                                     LANKLER SIFFERT & WOHL LLP
                                                     500 Fifth Avenue
                                                     New York, New York 10110
                                                     Telephone: (212) 921-8399
                                                     hgredd@lswlaw.com
                                                     mgerber@lswlaw.com
                                                     *Attorneys for Defendant David Graham Hughes*

                                                     * *admitted pro hac vice*