IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JONATHAN "JAY" SOLOMON, | ) | Case No.: 1:22-cv-03137-JEB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DECHERT, LLP, DAVID NEIL | ) | |
| GERARD, DAVID GRAHAM HUGHES, | ) | |
| NICHOLAS DEL ROSSO, VITAL | ) | |
| MANAGEMENT SERVICES, INC., AMIT | ) | |
| FORLIT, ISRAEL INSIGHT ANALYSIS AND | ) | |
| RESEARCH, LLC, SDC-GADOT, LLC, AMIR | ) | |
| HANDJANI, ANDREW FRANK, AND | ) | |
| KARV COMMUNICATIONS, INC. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| | ) | |

## MOTION TO DISMISS AND FOR MORE DEFINITE STATEMENT:

Pursuant to Rules 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure, Defendants

INSIGHT RESEARCH AND ANALYSIS, LLC and SDC-GADOT, LLC Move this Court for

entry of an Order Dismissing the Plaintiff's Amended Complaint (with leave to amend certain

claims asserted therein by the Plaintiff in greater detail, and for dismissal with prejudice of other

claims which fail to state valid causes of action as a matter of law and cannot be cured by

amendment). Defendants furthermore move for a more definite statement as to the factual

allegations underpinning the claims brought against these Defendants based upon the "shotgun

pleading" manner utilized by the Plaintiff in his Amended Complaint (which was not cured

despite being addressed in Motion practice directed to the original Complaint). This Motion is

accompanied by a supporting Memorandum incorporating the Defendants' Statement of Points

and Authorities as required by LCvR 7, as well as a proposed Order for the Court's review.

Dated this 9th day of March, 2023.

Respectfully submitted,

By: */s/ Charles Haskell, Esq.*
     Charles R. Haskell
     The Law Offices of Charles R. Haskell, Esq.
     DC Bar No.: 888304007
     (202) 888-2728 (Office)
     641 Indiana Ave. NW
     Washington, DC 20004
     Charles@CharlesHaskell.com

By: */s/ Christopher S. Salivar, Esq.*
     Christopher S. Salivar, Esquire
     Florida Bar No.: 57031
     CHRISTOPHER S. SALIVAR, P.L.L.C.
     6576 Whispering Wind Way
     Delray Beach, FL 33484
     Tel: (561) 628-8908
     Email: cssalivarattorney@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JONATHAN "JAY" SOLOMON, | ) | Case No.: 1:22-cv-03137-JEB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DECHERT, LLP, DAVID NEIL | ) | |
| GERARD, DAVID GRAHAM HUGHES, | ) | |
| NICHOLAS DEL ROSSO, VITAL | ) | |
| MANAGEMENT SERVICES, INC., AMIT | ) | |
| FORLIT, ISRAEL INSIGHT ANALYSIS AND | ) | |
| RESEARCH, LLC, SDC-GADOT, LLC, AMIR | ) | |
| HANDJANI, ANDREW FRANK, AND | ) | |
| KARV COMMUNICATIONS, INC. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| _____ | ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS, SDC-GADOT, LLC AND INSIGHT ANALYSIS AND RESEARCH, LLC'S MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT:</u>

Respectfully submitted,

By: */s/ Charles Haskell, Esq.*
      Charles R. Haskell
      The Law Offices of Charles R. Haskell, Esq.
      DC Bar No.: 888304007
      (202) 888-2728 (Office)
      641 Indiana Ave. NW
      Washington, DC 20004
      Charles@CharlesHaskell.com

By: */s/ Christopher S. Salivar, Esq.*
      Christopher S. Salivar, Esquire
      Florida Bar No.: 57031
      CHRISTOPHER S. SALIVAR, P.L.L.C.
      6576 Whispering Wind Way
      Delray Beach, FL 33484
      Tel: (561) 628-8908
      Email: cssalivarattorney@gmail.com

## **TABLE OF CONTENTS**:

**Pages**:

1.  TABLE OF AUTHORITIES:                                                6-8

2.  INTRODUCTION:                                                        9

3.  PLAINTIFF'S RELEVANT BACKGROUND ALLEGATIONS:                         9-10

4.  PLEADING STANDARDS:                                                  10-13

5.  PLAINTIFF'S VIOLATION OF PLEADING STANDARDS:                         13-17

    a.  No Short and Plain Statement of Facts Supporting Claims Asserted Against    13-14
        Each Defendant.

    b.  Failure to plead the Defendants' respective conduct, and predicate acts      14-17
        of "racketeering activity", with requisite level of specificity

6.  FAILURE TO STATE A VALID CAUSE OF ACTION:                            17-31

    a.  COUNT I – 18 U.S.C. 1964(c)                                          17

        i.  Failure to Identify Basis of Claim under 18 U.S.C. § 1962:          18

        ii.  Failure to Sufficiently Allege Predicate Acts of Racketeering      18-25
            Activity

        iii.  No Allegations of Continuity of Alleged Racketeering Enterprise.  25-28

        iv.  Claim Time-barred Under Applicable Statute of Limitation           28-29

        v.  Pleading Impermissible Damages                                     29-31

    b.  COUNT II – CLAIM BROUGHT UNDER THE COMPUTER FRAUD            31-34
        AND ABUSE ACT (18 U.S.C. §1030)

        i.  Failure to plead facts establishing the elements of a civil claim   31-33
            under the Act.

        ii.  Plaintiff fails to plead legally cognizable damages or losses,    33-34
            and lacks standing.

        iii.  Claim time-barred under applicable 2 year statute of             34
            limitation.

c.  COUNTS III & IV – CLAIMS BROUGHT UNDER THE WIRETAP ACT:   34-39
    18 U.S.C. § 2511(1)(c) and § 2520, and 18 U.S.C. 2511(1)(d) and 2520:

    i.  Failure to State a Claim Based Upon Lack of Contemporaneous   34-37
        Interception of Communication

    ii.  No Secondary or Conspiracy Liability Under 18 U.S.C. § 2511:   37-39

d.  COUNT V & VI – CLAIMS BROUGHT UNDER DC Code §§   39-41
    23-542(a)(2) and 23-554, and DC Code §§23-542(a)(3) and 23-554

e.  COUNT VII – TORTIOUS INTERFERENCE   41-49

    i.  No allegation of Intentional Interference by Defendants INSIGHT   41-42
        or GADOT

    ii.  No Allegation of a Valid Contract to Have Been Wrongfully   42-45
        "Interfered With"

    iii.  To the Extent Plaintiff Claims Count VI Asserts a Cause of Action   45-46
        for Tortious Interference with Prospective Economic Advantage,
        That Claim Fails As Well

    iv.  Plaintiff's Claims are Time-barred Under the District of Columbia's   46-49
        Applicable Statute of Limitation:

f.  COUNT VIII – CIVIL CONSPIRACY   49-50

g.  COUNT IX – PUNITIVE DAMAGES   50-51

7.  CONCLUSION:   51

## <u>TABLE OF AUTHORITIES</u>:

**1. Rules of Procedure**:                                   <u>**PAGES**</u>

    a.  F.R.Civ.P. 8 (2022)                          9-10

    b.  F.R.Civ.P. 12(e) (2022).                     11

    c.  F.R.Civ.P. 10 (2022).                       11

    d.  F.R.Civ.P. 12(b).                           17

2. **Statutes**:

    a.  18 U.S.C. § 1964.                            17, 50

    b.  18 U.S.C. § 1962.                            15, 17-18, 25

    c.  18 U.S.C. § 1961.                            15, 18-19, 24-25

    d.  18 U.S.C. 1512.                              18

    e.  18 U.S.C. § 1343.                            20

    f.  18 U.S.C. § 2511  .                          34-39

    g.  DC Code §§ 23-541.                           40

    h.  DC Code §§ 23-542.                           40

3. **Case Authority**:

    a.  *Transatlantic, LLC v. Humana, Inc.*          10-12
       U.S. Dist. LEXIS 138761 (M.D.Fla. 2014)

    b.  *Jiggetts v. D.C.*                            11
       319 F.R.D. 408 (D.C. 2017).

    c.  *Bates v. Northwestern Human Servs.*          11-12, 15-16, 23
       466 F. Supp. 2d 69 (D.D.C. 2006)

    d.  *Azima v. Del Rosso*                          13, 38-39
       2021. Dist. LEXIS 237463 (M.D.NC 2021)

    e.  *Williams v. Equity Holding Corp.*           15-16

145 F.R.D. 240 (E.D.VA. 2007)

f.   *Beck v. Pupris*                                              18
529 U.S. 494 (2000)

g.  *H.J. Inc. v. Northwestern Bell Te. Co.*      18
492 U.S. 229 (1989)

h.  *Targum v. Citrin Cooperman & Co, LLP*    18
2013 U.S. Dist. LEXIS 164585 (S.D. NY 2013)

i.   *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*   20-21
758 F. Supp. 2d 153 (E.D. NY 2010);

j.   *Sundwall v. Weinstein & Assocs.*          20-21
1997 U.S. Dist. LEXIS 12702 (D.Conn 1997)

k.  *Democratic National Comm. v. Russian Federation*   21
Supp. 3d 410 (S.D.N.Y. 2019)

l.   *Kimm v. Chang Hoon Lee*, 2005 U.S. Dist. LEXIS 727   22
(S.D. NY 2005)

m. *R.J.R. Nabisco v. European Cmty.*         24
579 U.S. 325 (2016)

n.  *Efron v. Embassy Suites (P.R.), Inc.*       25-26
223 F.3d 12 (1st Cir. 2000)

o.  *Rotella v. Wood*                        28-29
528 U.S. 549 (2000)

p.  *McMurtry v. Brasfield*              29-30
654 F. Supp. 1222 (E.D. VA 1987)

q.  *Bakala v. Krupa*, 2021                30
U.S. Dist. LEXIS 150004 (SC.Dist. 2021)

r.   *Hargraves v. Capital City Mortg. Corp.*    30-31
140 F. Supp. 2d 7 (D.D.C. 2000)

s.   *Energy Intelligence Grp. Inc. v. Kirby Inland Marine LP*   31
2021 U.S. Dist. LEXIS 9390 (S.D.TX 2021)

t.   *Brown Jordan Int'l, Inc. v. Carmicle*    31-32
846 F.3d 1167 (11th Cir. 2017)

u.  *Van Buren v. United States*                              33-34
    141 S. Ct. 1648 (2021)

v.  *Garback v. Lossing*                                      34-37
    2010 U.S. Dist. LEXIS 99059 (E.D.Mi 2010)

w.  *Browning v. Clinton*                                     41
    292 F.3d 235 (D.C.A. 2002)

x.  *Daisley v. Riggs Bank, N.A.*                             42-45, 49-50
    372 F. Supp. 2d 61, 67-68 (D.D.C. 2005)

y.  *Gross v. Davis,*                                         43-45
    2003 U.S. Dist. LEXIS 3427 (D.D.C. 2003)

z.  *Beard v. Edmondson & Gallagher*                          46-47
    A.2d 541 (D.C.A. 2002)

aa. *Johnson v. Chase Manhattan Mortg, Corp.,*               50-51
    2006 U.S. Dist. LEXIS 60760 (D.D.C. 2006)

**INTRODUCTION:**

The Plaintiff initiated this action on October 14, 2022, seeking relief for acts which he alleges led to the termination of his employment with the Wall Street Journal on June 21, 2017[1]. Plaintiff now brings a total of nine (9) claims, jointly filed against eleven (11) named Defendants, seeking a judgment jointly and severally against all eleven (11) named Defendants for his "damages". In Count I, Plaintiff seeks to allege a civil cause of action under 18 U.S.C. § 1964 (under the Racketeer Influenced Corrupt Organizations Act of 1970). In Count II, Plaintiff seeks to allege a civil cause of action under 18 U.S.C. 1030 (the Computer Fraud and Abuse Act); In Count III, Plaintiff seeks to assert a claim under 18 U.S.C. § 2511(c) (The Electronic Communications Privacy Act of 1986). In Count IV, Plaintiff seeks to allege a civil cause of action under 18 U.S.C. § 2511(d) (The Electronic Communications Privacy Act of 1986). In Count V, Plaintiff seeks to allege a civil cause of action under District of Columbia Code §§ 23-542(a)(2) and §§ 23-544. In Count VI, Plaintiff seeks to allege a civil cause of action under District of Columbia Code §§ 23-542(a)(3) and §§ 23-544. In Count VII, Plaintiff seeks to allege a common law claim for tortious interference. In Count VIII, Plaintiff seeks to allege a common law claim for civil conspiracy. Finally, in Count IX Plaintiff has separately pleaded his alleged entitlement to punitive damages under 18 U.S.C. § 1964(c).

**PLAINTIFF'S RELEVANT BACKGROUND ALLEGATIONS:**

Plaintiff alleges that he is an award winning journalist who was formerly an employee of the Wall Street Journal, and whose employment was terminated on June 21, 2017 as a result of the actions of the Defendants. See Amended Complaint at Paragraphs 11, 12, and 13. Plaintiff alleges that, due to his reporting activities and his connection with non-party Farhad Azima

---

[1] In the original Complaint, it was alleged that termination of employment occurred on July 21, 2017.

(identified as one of the Plaintiff's "sources"), he became the target of a conspiratorial enterprise whose goals included silencing the Plaintiff and non-party Farhad Azima, and discrediting them in the public eye. See Amended Complaint at Paragraphs 32-38, 42, 78, and 79. Plaintiff alleges that the Defendants engaged in a "hack and dump" scheme designed to gain access to emails and computers maintained by non-party Farhad Azima, to upload copies of emails and data files onto the internet, to locate and then re-download those emails and data files, and then ultimately to use those emails and data files to discredit the Plaintiff (by turning them over to his employer, and then other journalists) and to induce the termination of the Plaintiff's employment with the Wall Street Journal. Finally, the Plaintiff alleges that he has sustained "pain, suffering, mental anguish, emotional distress, and financial or economic loss…" as a result of the Defendants' alleged conduct. As a result of these alleged injuries, he seeks treble damages, court costs, attorney's fees, and "punitive damages". See Complaint at Paragraphs 208, 215, 225, 233, 243, 251, 257, 258, 262, 264, and 268.

## PLEADING STANDARDS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE:

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)**, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face**," Id. at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory

statements. Id. at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id. at 556. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *See Transatlantic, LLC v. Humana, Inc.*, 2014 U.S. Dist. LEXIS 138761, *2-4 (M.D. Fla. 2014) (emphasis added).

"[i]t is counsel's responsibility, not the Court's, to organize th[e] information prior to the filing of a complaint into the 'clear and concise' statements required by the Rules." *Chennareddy v. Dodaro*, 282 F.R.D. 9, 16 (D.D.C. 2012). And it is clear beyond cavil that "[a] 'shotgun pleading'—one in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'—does not comply with the standards of Rule[] 8[.]" *Kabbaj v. Obama*, 568 F. App'x 875, 879 (11th Cir. 2014)." *See Jiggetts v. D.C.*, 319 F.R.D. 408, 417 (D.C. 2017).

"Generally speaking, shotgun pleadings "are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." Wagner v. First Horizon Pharmaceutical, Inc., 464 F.3d 1273, 1279 (11th Cir. 2006). Shotgun complaints invariably begin with a long list of general allegations, most of which are immaterial to most of the claims for relief. District courts have the power and the duty to define the issues at the earliest stages of litigation. Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1333 (11th Cir. 1998). Under the Federal Rules of Civil Procedure, a defendant faced with a shotgun complaint is not expected to frame a responsive pleading. Rather, the defendant is

expected to move, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *See Transatlantic, LLC v. Humana, Inc.*, 2014 U.S. Dist. LEXIS 138761, *5-6 (M.D. Fla. 2014).

Per Rule 12(e) of the Federal Rules of Civil Procedure, "MOTION FOR A MORE DEFINITE STATEMENT. A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. ..."   See F.R.Civ.P. 12(e) (2022).

Under Federal law, "Rule 9(b) requires fraud allegations to be plead "with particularity." "In a complaint subject to Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006). "Particularity means that a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." United States v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006). See also Ziemba v. Cascade Int'l, Inc.., 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted); Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." Garfield, 466 F.3d at 1262 (citations omitted). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 549 U.S. 810, 127 S. Ct. 42, 166 L. Ed. 2d 18 (2006)." *See Id. At 4*. These pleading requirements are applicable to a Civil RICO claim asserted under 18

U.S.C. § 1962 *et seq*. as well, specifically including claims relying on predicate acts such as "mail fraud" or "wire fraud". *See gen. Bates v. Northwestern Human Servs.*, 466 F. Supp. 2d 69, 77 (D.D.C. 2006).

Finally, per Rule 10(b) of the Federal Rules of Civil Procedure, "(b) PARAGRAPHS; SEPARATE STATEMENTS. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense. *See* F.R.Civ.P. 10 (2022).

### PLAINTIFF'S VIOLATION OF REQUIRED PLEADING STANDARDS:

**1. No Short and Plain Statement of Facts Supporting Claims Asserted Against Each Defendant.**

Rather than assert a short and plain statement in support of his asserted claims (which actually detailed the alleged predicate acts which purportedly stand as the basis for the Plaintiff's claims), the Plaintiff has filed a second "shotgun pleading" style Amended Complaint, aggregating more than 180 paragraphs of general allegations which span across the globe (and identify alleged activities in foreign jurisdictions and which were allegedly directed to foreign courts or third parties which could not substantiate the claims asserted by the Plaintiff – such as the alleged kidnapping of non-parties in a foreign jurisdiction), and which span across the eleven (11) named Defendants, then generally aggregating and attributing all allegations as to all Defendants in **all** of the Plaintiff's stated claims.

As noted in these Defendants' first Motion to Dismiss directed to the Complaint, only three (3) of the Plaintiff's alleged claims can possibly arise in connection with a common law or statutory "conspiracy". See Counts I, VIII, and IX. The remaining claims are all predicated upon

common law or statutory causes of action which provide for direct liability, but do not provide for secondary or conspiracy liability[2]. Despite this, the Plaintiff has made no attempt to segregate the claims in Counts II, III, IV, V, VI or VII into direct claims asserted against individual Defendants, or to only include therein allegations of conduct attributable to the identified and named Defendant against whom relief is sought.

Given the foregoing, at a bare minimum the Plaintiff's Amended Complaint must be dismissed with leave to amend to segregate into separate counts the alleged acts committed by each Defendant, and the claims asserted against each Defendant, so that each Defendant may be afforded the opportunity to respond thereto and to assert all available defenses to the claims directed to said Defendants.

## 2. Failure to plead the Defendants' respective conduct, and predicate acts of "racketeering activity", with requisite level of specificity

In addition to the foregoing, while the Plaintiff's 180 paragraphs of general allegations set forth specific details culled from other allegations in other pleadings filed by other parties in other jurisdictions, the Amended Complaint is actually devoid of essential "who, what, when, where, why, and how" factual allegations as to multiple named Defendants, specifically including SDC-GADOT, LLC and INSIGHT ANALYSIS AND RESEARCH, LLC, and as to the "racketeering activities" allegedly directed to the Plaintiff himself.

As to these Defendants, while general allegations are made to "activities" ascribed to these Defendants those allegations are wholly lacking in any manner of specificity sufficient to allow the Defendants to identify the actual predicate "racketeering activities" underpinning the Plaintiff's asserted claims as to these Defendants. The lack of specificity of allegation as to the

---

[2] For purposes of example, see *Azima v. Del Rosso*, 2021 U.S. Dist. LEXIS 237463 (M.D.NC 2021), wherein the Court held that 18 U.S.C. § 2511 <u>does not provide for "secondary or conspiracy" liability</u>.

"who, what, when, where, why, and how" of the subject "predicate offenses" and "crimes" completely deprives the Defendants from the ability to respond to the Plaintiff's claims, and Plaintiff has in no way sought to plead actual elements of predicate "racketeering activities" as defined in 18 U.S.C. 1961.

The civil remedies provided under 18 U.S.C. § 1962 are creatures of statute, and as such predicate activities which actually fall within the definition of "racketeering activities" as the term is defined in 18 U.S.C. § 1961 must be alleged, and in connection with activities of "fraud" and "wire fraud", they must be pled with the requisite level of specificity. *See Bates v. Northwestern Human Servs.*, 466 F. Supp. 2d 69, 77-78 (D.D.C. 2006) ("The defendants further contend that the plaintiffs fail to plead the existence of the alleged predicate acts of mail and wire fraud with sufficient specificity to satisfy the heightened pleading requirement of Rule 9(b). Defs.' Mem. at 9-13; Defs.' Reply at 11-14; see Fed. R. Civ. P. 9(b) (stating that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity"). For the reasons discussed below, the Court concludes that the facts alleged by the plaintiffs do not necessarily preclude the existence of a separate and distinct enterprise involving a parent corporation and its wholly-owned subsidiaries sufficient to meet the requirements of Section 1962(c). The Court finds, however, that it is unable to make a conclusive determination on the strength of the facts alleged in the plaintiffs' complaint regarding the distinctiveness of the defendants from each other and from the alleged RICO enterprise in carrying out the purportedly criminal activities. The Court also agrees with the defendants that the plaintiffs' complaint does not provide enough detail regarding the alleged acts of mail and wire fraud and their relationship to the conduct being challenged by the plaintiffs to satisfy Rule 9(b)'s heightened pleading requirement. Accordingly, the Court must dismiss the plaintiffs' RICO

claims."); see also *Williams v. Equity Holding Corp.*, 145 F.R.D. 240, 243-244 (E.D.VA. 2007) ("As an initial matter, it must be noted that  the Fourth Circuit is "especially cautious" when it comes to finding the existence of a pattern when the predicate acts involved in a RICO claim are mail and wire fraud. *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians,* 155  F.3d  500, 506  (4th Cir. 1998).  … The Williams's second amended complaint purports to establish a pattern of racketeering activity based on mail and wire fraud. Second Am. Compl. P 116. In order to survive a motion to dismiss a RICO claim, ***a "plaintiff must plead [the] circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).***" *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684 (4th Cir. 1989) (quoting *Schreiber Distribution Co. v. Serv-Well  Furniture  Co.,* 806  F.2d  1393,  1400-01  (9th Cir.  1986)) (internal  quotations omitted). Conclusory allegations that are not stated with particularity do not satisfy Rule 9(b)'s requirements. *See id.* at 684. … The Williams have not properly alleged a pattern under RICO. As discussed in the August 3 Opinion, the Williams have properly alleged specific fraudulent acts  directed  toward  *themselves.* However,  their  second  amended  complaint  lacks the specificity required to plead RICO's pattern requirement. … ***Under Rule 9(b), the Williams must plead "the time, place, and content of the false representations, the person making them, and what the person gained from them***." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999) (internal quotations and citation omitted). ***The Williams's second amended complaint lacks the requisite specific information with respect to the alleged "similar transactions," such as the identity of those persons purportedly defrauded, or when specifically these fraudulent transactions took place***. ... Because the  Williams  have  not

properly alleged a pattern under RICO, defendants' motion to dismiss Count Eight (RICO) is **GRANTED."**) *See Id*. (emphasis added).

In light of the foregoing, the Plaintiff's Amended Complaint must be dismissed, and if leave to amend to re-plead is given, then Plaintiff must plead any "racketeering activities" founded in "fraud" (such as mail fraud, wire fraud, money laundering, obstruction of justice, etc.) upon which the claims in the new Complaint rely with the level of specificity mandated by Rule 9 of the Federal Rules of Civil Procedure, and the Plaintiff must also be required to segregate his claims so as to provide these Defendants a reasonable opportunity to respond to the allegations directed to these Defendants, as opposed to being grouped into claims which include allegations not relating to these Defendants and for which these Defendants cannot be held legally liable.

### FAILURE TO STATE CAUSES OF ACTION:

In addition to the foregoing, Plaintiff's claims fail, on their face, to state legally cognizable causes of action for which relief may be afforded, and as such are subject to dismissal per Rule 12(b)(6) of the Federal Rules of Civil Procedure. How each claim fails to state a claim upon which relief may be granted is separately addressed below.

### COUNT I – CIVIL RICO (18 U.S.C. § 1964(c)):

**1.  Failure to Identify Basis of Claim under 18 U.S.C. § 1962:**

Even though this was addressed in the Motion to Dismiss directed to the original Complaint, the Amended Complaint still fails to identify what provision of 18 U.S.C. § 1962 Plaintiff's claim travels under. Per U.S.C. § 1964 (1995), a private right of action was created for any person who sustains damages as a result of a violation of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c) (1995).

While providing for a private civil cause of action, 18 U.S.C. § 1964 requires a Plaintiff to actually allege, and establish, a violation of 18 U.S.C. § 1962(a), (b), (c), or (d) in order to obtain relief. By review of Count I, it can be seen that the Plaintiff has not alleged whether the claim asserted therein travels under 18 U.S.C. § 1962(a), (b), (c), or (d), and instead Count I leaves the Defendants to guess as to which statutory violation is alleged as the predicate for the Plaintiff's claim in Count I. This is improper, and as such Count I fails to assert a claim upon which relief can be granted, and on this basis must be dismissed.

**2.** <u>**Failure to Sufficiently Allege Predicate Acts of Racketeering Activity**</u>:

In 18 U.S.C. § 1961, "pattern of racketeering activity" and "racketeering activity" are defined terms. A plaintiff must actually allege a pattern of racketeering activity based upon one or more of the specified "racketeering activities" as defined under 18 U.S.C.  1961, and furthermore the Plaintiff must identify specific injury to the Plaintiff's business or property which stems from a "pattern of racketeering activity" (and as noted in *Beck v. Pupris*, 529 U.S. 494, 507 (2000), the damages or injury must be proximately caused by an action which itself constitutes a "racketeering activity" as defined under 18 U.S.C. 1961)[3].

In alleging the "pattern of racketeering activity", a Plaintiff must allege "at least two acts", one of which occurred after the effective date of this chapter and the last of which occurred within ten years after the commission of a prior act of racketeering activity. See gen. *H.J. Inc. v. Northwestern Bell Te. Co.*, 492 U.S. 229, 232-233 (1989) ("RICO renders criminally and civilly liable "any person" who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a);

---

[3] Therein, the Supreme Court held: "We conclude, therefore, that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused <u>by an overt act that is not an act of racketeering or otherwise unlawful under the statute</u>." *See Id.* (emphasis added).

who acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or, finally, who conspires to violate the first three subsections of § 1962, § 1962(d)."

While the Plaintiff makes general allegations as to the commission of wire fraud, witness tampering, obstruction of justice, money laundering, sanctions evasion, fraud, human rights abuses, kidnapping, torture, robbery, theft, conversion, extortion, witness tampering, illegal hacking operations, fraud in connection with access devices, and attacks against free press, these general "key word" style allegations do not allege facts which establish the elements of one or more "racketeering activities" per the definitions contained in 18 U.S.C. § 1961. Highlighting the problem with the Plaintiff's chosen method of pleading, "obstruction of justice" is a defined term, identifying 18 U.S.C. § 1503 as the basis for the definition as it applies to 18 U.S.C. § 1961 *et seq*. 18 U.S.C. § 1503 addresses the use of threats of force to influence or intimidate specific participants in the courts of the United States, proceedings before United States magistrate judges. None of the Plaintiff's allegations fall within the definition of "obstruction of justice" as it is used in 18 U.S.C. § 1503 or 1961. Moreover, "obstruction of justice" for purposes of a claim under 18 U.S.C. § 1961 must be directed to a Court in the United States, and activities abroad do not fall within the ambit of the statute (per 18 U.S.C. § 1503). As such, all allegations or the provision of "false testimony" before foreign courts cannot constitute "obstruction of justice" under 18 U.S.C. 1961 as a matter of law.

"Witness Tampering" as it pertains to 18 U.S.C. § 1961 would only encompass a violation of "section 1512 (relating to tampering with a witness, victim, or an informant)".

Looking to 18 U.S.C. § 1512, none of the Plaintiff's allegations fall within the applicable statutory definition of "witness tampering".

The same issues arise in connection with all of the Plaintiff's other generic allegations of alleged "criminal activities".  Per *Targum v. Citrin Cooperman & Co, LLP*, 2013 U.S. Dist. LEXIS 164585 (S.D. NY 2013), "*First*, "[t]he elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." In the Plaintiff's Amended Complaint, the allegations of "wire fraud" are all tied to the Plaintiff's nebulous allegations of "hacking" directed to a non-party, or communications and filings in litigation matters. However, there are no factual allegations which fall within the statutory definition of "wire fraud" as set forth in 18 U.S.C. § 1343, and there is no allegation that the purpose of the "scheme to defraud" was to obtain money or property by use of interstate mail or wires.

Plaintiff also seeks to argue that certain actions of participation in litigation proceedings and filing documents with the Courts (both in the United States, and abroad) somehow constitutes a predicate act of "racketeering activity", despite case law holding directly the opposite. *See Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153 (E.D. NY 2010); *Sundwall v. Weinstein & Assocs.*, 1997 U.S. Dist. LEXIS 12702 (D.Conn 1997) ("Plaintiff's other alleged predicate acts involve mail fraud and obstruction of justice claims, both arising out of defendants' alleged fraudulent activities in representing their clients in Connecticut state and federal courts. These allegations are insufficient, as a matter of law, to constitute the necessary predicate acts under RICO. *See Gunn v. Palmieri*, No. 87 CV 1418, 1989 WL 119519 (E.D.N.Y. Sept. 29, 1989)("If serving and filing an answer or a motion by any defendant in a federal action could be considered obstruction of justice, this Court would be

flooded with motions to amend complaints by plaintiffs seeking to add RICO claims based upon mail fraud and obstruction of justice as soon as an answer was served. Such an interpretation of the RICO statute is untenable."), *aff'd*, 904 F.2d 33 (2d Cir. 1990), *cert. denied*, 498 U.S. 1049, 112 L. Ed. 2d 777, 111 S. Ct. 758 (1991); *Gabovitch v. Shear*, 1995 U.S. App. LEXIS 32856, 1995 WL 697319 (1st Cir. 1995)(alleging that a "litigation stance" in another case was fraudulent is not sufficient to state a claim under RICO. Such an extension of RICO would federalize a substantial volume of common law fraud litigation traditionally left to state courts.), *cert. denied*, 134 L. Ed. 2d 216, 116 S. Ct. 1269 (1996). Plaintiff's RICO claim must therefore be dismissed.").

Moreover, "concealing" prior alleged racketeering activity itself is not a RICO predicate, and cannot stand as the basis for a claim under 18 U.S.C. § 1962. See *Democratic National Comm. v. Russian Federation*, 392 F. Supp. 3d 410 (S.D.N.Y. 2019). In that case, the plaintiff alleged that an "enterprise" hacked and released its emails, *id.* at 417–18, and later "attempted to cover up" their activities "through criminal obstruction of justice and witness tampering," *id.* at 424–25. Noting that "'acts of concealment done after the central objectives of the conspiracy have been attained, for the purpose of covering up after the crime,' are not considered part of the conspiracy," the Court held that the acts of concealment in that case "cannot be found to be predicate acts for the purposes of the DNC's RICO claim." *Id.* at 444 (quoting *Grunewald v. United States*, 353 U.S. 391, 405 (1957) and *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 919 (N.D. Ind. 2013)). Plaintiffs' allegations of a "cover up" here mirror those in *Dem. Nat'l Comm.* There are no allegations that the alleged acts of concealment were "done in order to allow the defendants to continue stealing documents or to continue publishing documents" to achieve their central objective, *id.*. Thus, just as in that case, "the alleged acts of concealment . . .

cannot be considered predicate acts." *Dem. Nat'l Comm.*, 392 F. Supp. 3d at 444 n.29; *see also Preway Inc. v. Touche Ross & Co.*, 1987 WL 109924, at *9 (W.D. Wis. Feb. 18, 1987) ("[T]he concealment or cover-up itself merely protects the original fraudulent acts. A cover-up produces no distinct injuries and has no separate or distinguishable victims.")

Plaintiff makes additional allegations that the publication of "false" statements about him constitute "racketeering activity", and Plaintiff's claims rely heavily upon allegations that the conspiracy headed a "*manufactured press assault against Mr. Solomon's character…" See* Amended Complaint at Paragraph 113. However, it is well established that a defamation charge cannot constitute a RICO predicate act. *See Kimm v. Chang Hoon Lee*, 2005 U.S. Dist. LEXIS 727, *17-19 (S.D. NY 2005) ("It is unfortunate -- to say nothing of expensive and time consuming -- to have watched the proliferation of alleged RICO claims. While some show a degree of creativity, they are more frequently an effort to construct a treble damage suit from what, at best, is a civil wrong, something that was never the intention of those who drafted the statute in the Justice Department or of Congress when it became law. Organized Crime Control Act of 1970, Pub. L. No. 91-451, § 1, 84 Stat. 922, 1073 (1970) (Statement of Findings and Purpose) ("It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime."); *Russello v. United States,* 464 U.S. 16, 25, 78 L. Ed. 2d 17, 104 S. Ct. 296 (1983) ("The legislative history clearly demonstrates that the RICO statute was intended to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots."). Indeed, another court in this District has found that a plaintiff, like Kimm, came "perilously close to violating Rule 11 in his pleading of …

RICO claims" because, *inter alia,* ***"the insufficiency of a defamation charge as a RICO predicate act is ascertainable from the face of the statute." Creed Taylor, Inc. v. CBS, Inc., 718 F. Supp. 1171, 1180 (S.D.N.Y. 1989)***. In sum, Kimm's allegations do not fall within the scope of the mail and wire fraud statutes, whose purpose is "to punish wrongful transfers of property from the victim to the wrongdoer, not to salve wounded feelings."*Monterey Plaza Hotel Ltd. P'ship v. Local 483 of Hotel Employees & Rest. Employees Union, AFL-CIO,* 215 F.3d 923, 927 (9th Cir. 2000).").

In addition to the foregoing, the Plaintiff has not alleged any statutorily defined "racketeering activities" which were directed to him. As stated in *Bates v. Northwestern Human Servs.*, 466 F. Supp. 2d 69, 91 (D.D.C. 2006), "A RICO plaintiff, however, "only has standing if . . . he has been injured . . . by the conduct constituting the violation," Sedima, 473 U.S. at 496, an unexceptional requirement which buttresses the need for the plaintiffs to plead not only actual fraud, but actual fraud directed at the plaintiffs. See Anza v. Ideal Steel Supply Co., _ U.S. _, _, 126 S. Ct. 1991, 1996-97, 164 L. Ed. 2d 720 (June 5, 2006) (holding that the plaintiff had not suffered an injury under Section 1962(c) where "the direct victim of [the alleged mail and wire fraud]" was not the plaintiff, but the State of New York. As the Sixth Circuit has stated, "the defendant must make a false statement or omission of fact to the plaintiff to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim." Cent. Distributors of Beer, Inc. v. Conn, 5 F.3d 181, 184 (6th Cir. 1993) (emphasis in original); see Shahmirzadi v. Smith Barney, Harris Upham & Co, 636 F. Supp. 49, 54 (D.D.C. 1985) (noting that the Rule 9(b) standard requires, among other things, a showing that the allegedly fraudulent statements "misled the plaintiff") (citation omitted) (emphasis added). *See Id.* at 91. As the Plaintiff has not alleged facts identifying actual "racketeering activities" which fall under the definition of the term as set

forth in 18 U.S.C. § 1961 and which were allegedly <u>directed to him</u> (and thereby the element of proximate causation of his "injury to business or property" is lacking), his claim fails.

Another fatal problem exists with the venue(s) where the alleged "racketeering activities" are purported to have occurred, per the Plaintiff's nebulous allegations. In Paragraph 36 of the Amended Complaint, the Plaintiff openly alleges: "The illegal activities engaged in by the racketeering enterprise occurred in, involved and/or impacted countries across the world including, but not limited to, the United States of America, the Islamic Republic of Iran, The United Arab Emirates, the United Kingdom, the Republic of Georgia, Israel, India, Switzerland, and the Republic of Cyprus." In *R.J.R. Nabisco v. European Cmty.*, 579 U.S. 325 (2016), the Supreme Court had occasion to rule on the issue of extraterritorial application of 18 U.S.C. § 1961 *et seq.*, and specifically which "racketeering activities" as defined in 18 U.S.C. § 1961(1) committed outside of the territorial jurisdiction of the United States of America could substantiate an actionable claim under 18 U.S.C. § 1962. In its holding, the Court stated: "It is a basic premise of our legal system that, in general, "United States law governs domestically but does not rule the world." Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 454, 127 S. Ct. 1746, 167 L. Ed. 2d 737 (2007). This principle finds expression in a canon of statutory construction known as the presumption against extraterritoriality: Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *See Id.* at 491-92. The Court then explained the scope of application of 18 U.S.C. § 1962(b) and (c) to extraterritorial acts as follows: "We therefore conclude that RICO applies to some foreign racketeering activity. A violation of §1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, *provided that each of those offenses violates a*

*predicate statute that is itself extraterritorial*. This fact is determinative as to §1962(b) and §1962(c), both of which prohibit the employment of a pattern of racketeering." *Id.* at 495-96.

The Plaintiff has not even attempted to identify the "where" for the Plaintiff's "key word" alleged "activities", which in and of itself leaves the Defendants guessing as to where the alleged conduct occurred, and whether or not such conduct would substantiate a claim under 18 U.S.C. § 1962 based upon the Supreme Court's holding in *R.J.R. Nabisco v. European Cmty*. In point of fact, the Plaintiff's Amended Complaint (as with the original Complaint) does not allege the location of the "protected computer" or data device(s) belonging to Farhad Azima which were allegedly "hacked", or the location of the server which stored and hosted the accessed data (if such access to Farhad Azima's computers allowed remote access to a hosting server in an alternate location), leaving the Defendants to guess in a Carmen Sandiego style manner "where in the world were the servers and the data?"

Finally, certain other alleged "activities" do not fall within the definition of "racketeering activity" under 18 U.S.C. 1961 at all, such as: "sanctions evasion", "human rights abuses", "torture", "conversion", "illegal hacking operations", "fraud in connection with access devices", and "attacks on free press".

Based upon the foregoing, the Plaintiff has not sufficiently pled requisite "racketeering activities" as a predicate to establish a "pattern of racketeering activity" under 18 U.S.C. § 1962(a), (b), (c), or (d), and as such Count I must be dismissed.

**3.  No Allegations of Continuity of Alleged Racketeering Enterprise**:

It is held that in order to state a cause of action for RICO under 18 U.S.C. § 1962(c), a Plaintiff must allege: "…each of the four elements required by the statute: '"(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Feinstein*, 942 F.2d at 41

(quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985)). … By statute, the "pattern" element requires a plaintiff to show at least two predicate acts of "racketeering activity," which is defined to include violations of specified federal laws, such as the mail and wire fraud statutes, *see* 18 U.S.C. § 1961(1)(B), (5). *Although showing two predicate acts is the only statutory requirement, case law establishes that this is not sufficient to prove a "pattern" - the plaintiff also must demonstrate that the "predicates are related, and that they amount to or pose a threat of continued criminal activity."* H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989); *see also Feinstein*, 942 F.2d at 44." *See Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 14-15 (1st Cir. 2000) (emphasis added).

In discussing the relation of the predicate acts to the element of "actual or threatened continuation of criminal activity", the Court in *Efron v. Embassy Suites (P.R.), Inc.* further illustrated: "We have more than once remarked upon the difficulty of articulating concrete guidelines for this "continuity plus relationship" standard for identifying a pattern. *See Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, 94 F.3d 721, 731 (1st Cir. 1996); *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 722 (1st Cir. 1992); *see also H.J. Inc.*, 492 U.S. at 236 ("Developing a meaningful concept of 'pattern' within the existing statutory framework has proved to be no easy task."). The Supreme Court has noted that the "relationship" portion of the standard is easier to grasp, in part because there exists a relevant statutory definition in another portion of the legislation of which RICO was a part. *See H.J. Inc.*, 492 U.S. at 240. Under Title X of the partially repealed Organized Crime Control Act of 1970, the pattern requirement was defined "solely in terms of the *relationship* of the defendant's criminal acts one to another: 'Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar

purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id.* (quoting 18 U.S.C. § 3575(e)). The parties do not dispute the relatedness of the communications at issue here. The continuity element, which lacks statutory illumination, has proved more puzzling. Noting that it is "difficult to formulate in the abstract any general test for continuity," the Supreme Court in *H.J. Inc.* nonetheless provided a starting point for analysis. *See* 492 U.S. at 241-43; *Feinstein*, 942 F.2d at 45. We previously have summarized the court's guidance as follows: For there to be continuity, the plaintiff must show that the related predicates "amounted to, or posed a threat of, continued criminal activity." . . . Under the "amounting to" approach, "[a] party alleging a RICO violation may demonstrate continuity . . . by proving a series of related predicates extending over a substantial period of time." *H.J.*, 492 U.S. at 242. Because RICO was intended by Congress to apply only to enduring criminal conduct, "predicate acts extending over a few weeks or months . . . do not satisfy this requirement." *Id.* Under the "threat" approach, however, even where the predicate acts occur in a narrow time frame and suit is brought before the pattern has taken definitive shape, the requirement can still be satisfied by . . . a showing that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business." *Id.* *Feinstein*, 942 F.2d at 45 (some citations omitted). The Supreme Court thus described continuity as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. *See Id.* at 15-16.

    Here, the Plaintiff makes "key word" allegations of activities as noted *supra*, without factual substance to identify the alleged predicate acts committed by these Defendants, let alone

all of the named party Defendants. Those few acts which are identified in the Amended Complaint appear, on the face of the pleadings, wholly unrelated (the alleged kidnapping of a non-party by agents of another non-party, for questioning by one of the named Defendants [NEIL GERARD] on behalf of a non-party; the "hacking" of e-mails belonging to a non-party; the proffer of alleged perjurious testimony to a Court in the United Kingdom, such testimony having been provided by non-parties [along with named Defendant NEIL GERARD]; and finally the disclosure of the "hacked" e-mails to the Plaintiff's former employer). Moreover, the period of time of the activities does not demonstrate prolonged and interconnected criminal activity sufficient to substantiate a claim under 18 U.S.C. § 1962, but rather an alleged hacking of the e-mail account of a non-party in 2015, the disclosure of those e-mails in 2016 (allegedly to the Plaintiff's employer and to other non-parties), the alleged provision of perjurious testimony to a Court in the United Kingdom in 2019, and then the publication of online articles by non-parties (and potentially "Cohorts" who are not identified by the Plaintiff) through some unidentified date in 2020. The Plaintiff's Complaint is completely devoid of allegations in furtherance of the "enterprise" from 2020 onward, and does not allege any current ongoing racketeering activities or enterprise. Taken in totality, the Plaintiff's pleadings fall short of his requirement to plead the necessary "continuity plus relationship" standard for identifying a pattern of racketeering activity, and as such Count I must be dismissed.

**4.  Plaintiff's Claim Is Time-barred by Applicable Statute of Limitations:**

The Plaintiff cannot escape the fact that, on the face of the Complaint, the Plaintiff's claim asserted in Count I is time barred. A claim under 18 U.S.C. § 1962 must be brought within four (4) years of the Plaintiff's discovery of his injury. *See Rotella v. Wood*, 528 U.S. 549 (2000). Therein, the Supreme Court rejected a "discovery of injury and pattern of practice" test

for determining the beginning of the applicable four (4) year limitations period, and instead approved the "injury discovery rule" which had been affirmed and applied by the Fifth Circuit Court of Appeal below. As part of its holding, the Court stated: "*Agency Holding Corp.* v. *Malley-Duff & Associates*, *Inc.,* 483 U.S. 143, 156, 97 L. Ed. 2d 121, 107 S. Ct. 2759 (1987), established a 4-year limitations period for civil RICO claims. The District Court held that the period began when Rotella discovered his injury, which he concedes he did in 1986 at the latest. 147 F.3d 438, 439 (CA5 1998). Under this "injury discovery" rule, the limitations period expired in 1990, and the District Court accordingly ordered summary judgment for respondents. Rotella appealed to the Fifth Circuit, arguing that the RICO limitations period does not begin to run until the plaintiff discovers (or should have discovered) both the injury and the pattern of racketeering activity. After the Fifth Circuit ruled against him, *ibid.*, we granted certiorari to address a split of authority among the Courts of Appeals, on whether the limitations period is triggered in accordance with the "injury and pattern discovery" rule invoked by Rotella. 526 U.S. 1003, 143 L. Ed. 2d 207, 119 S. Ct. 1139 (1999). We now affirm." *Id*. at 552-553.

In his Amended Complaint, the Plaintiff alleges that he was terminated from his position of employment with the Wall Street Journal on **June 21, 2017**. Given his termination, the Plaintiff was at that point aware of the loss of his income from his position of employment, and thereby his "injury". Despite this, the Plaintiff did not initiate this action for another five (5) years and four (4) months, when his original Complaint was filed on October 14, 2022. On the face of the Complaint, it can be seen that the Plaintiff's claim in Count I is untimely, as he sustained his alleged injury when he lost his position of employment with the Wall Street Journal

on June 21, 2017[4]. Given the foregoing, Count I should be dismissed with prejudice and without leave to amend.

5. **Pleading Impermissible Damages**:

    In Count I the Plaintiff also pleads, and seeks to recover, impermissible damages, including damages for alleged "pain, suffering, mental anguish, emotional distress, and financial or economic loss…"

    Only injuries to "business or property" are compensable under RICO. *See McMurtry v. Brasfield*, 654 F. Supp. 1222, 1224-1225 (E.D. VA 1987) ("As a matter of pure statutory language, a plaintiff may only recover under the civil RICO provision if he has been "injured in his business or property by reason of a violation of section 1962 of [the Act]." 18 U.S.C. § 1964(c). As set forth in *Sedima*, "***the plaintiff [in a civil RICO suit] only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.***" *Sedima*, 105 S. Ct. at 3285-3286.") (emphasis added); *see also Bakala v. Krupa*, 2021 U.S. Dist. LEXIS 150004, *14-16 (SC.Dist. 2021).

    As a pure matter of law, Plaintiff's claim fails to the extent it seeks an award of damages which are not to Plaintiff's "business or property", as opposed to Plaintiff's emotional health, wellbeing, or personal reputation. As to reputation, Plaintiff's allegations as to the alleged "falsity" of the materials purportedly circulated to "silence" and "de-platform" him go to personal reputation, not business,  as they allegedly consisted of leaked communications suggesting the existence of dealings between Plaintiff and non-party Farhad Azima pertaining to

---

[4] The Plaintiff was well aware of his alleged injury in 2017, and even wrote a lengthy article about his termination which was published on March 5, 2018, which in and of itself was still more than four (4) years before he initiated this action. See https://www.cjr.org/special_report/the-source.php.

defense contracting and the sale of surveillance equipment to a foreign government, not journalism.

Finally, Plaintiff's request for "punitive damages" in addition to treble damages as a component of Count I must be dismissed, as while Courts hold that a party may seek punitive damages in other claims not arising under RICO brought in an action also involving a RICO claim, the Plaintiff may not seek and recover treble damages and punitive damages under the same RICO claim. See gen. *Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7, 26-27 (D.D.C. 2000) ("Defendants also argue that punitive damages are unavailable. While some courts have ruled that punitive damages are unavailable, *see Moravian Development Co. v. Dow Chemical Co.*, 651 F. Supp. 144, 149 (E.D. Pa. 1986), in cases involving claims under both RICO and other causes of action, courts have permitted punitive damage awards. *See Bingham v. Zolt*, 823 F. Supp. 1126 (S.D.N.Y. 1993) (holding that punitive damages are unavailable for RICO claims, but permitting a (reduced) punitive damage award pursuant to another claim) *aff'd* 66 F.3d 553 (2d Cir. 1995); *Al-Kazemi v. General Acceptance & Investment Corp.*, 633 F. Supp. 540, 543-44 (D.D.C. 1986) (lowering, but permitting, a punitive damage award in addition to a RICO treble damage award); *see also First American Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1122 (D.D.C. 1996) (treble damage provision of RICO may suggest a punitive element).").

### COUNT II – CLAIM UNDER THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030):

**1.  Failure to plead facts establishing the elements of a civil claim under the Act.**

In Count II, Plaintiff has sought to plead a claim under 18 U.S.C. § 1030. However, the claim completely fails as pled. As held by the Court in *Energy Intelligence Grp. Inc. v. Kirby Inland Marine LP*, 2021 U.S. Dist. LEXIS 9390, *2-3 (S.D.TX 2021),

The Computer Fraud and Abuse Act is primarily a criminal statute designed to combat computer "hacking." *WEC Carolina Energy Solutions LLC v Miller*, 687 F3d 199, 201 (4th Cir 2012) (citation omitted). It thus criminalizes the unauthorized access of computers in appropriate circumstances. 18 USC § 1030(a). It was expanded in 1986 to include a civil-action component. *Turner v Hubbard Systems, Inc*, 855 F3d 10, 12 (1st Cir 2017). That section provides, "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 USC § 1030(g).

> ***To say that the necessary pleading requirements for such civil actions are complex is an understatement. For example, see 18 USC § 1030(c)(4)(A)(i)(I)-(VI); Brown Jordan Intonational, Inc v Carmicle, 846 F3d 1167, 1173-74 (11th Cir 2017)***. But Kirby in no way even specifies what provision of CFAA it is that Plaintiffs allegedly violated. Dkt 66 at 13-15; see 18 USC § 1030(a)(1)-(a)(7). More problematic, the counterclaim is devoid of meaningful factual allegations—or is dependent upon rank assertions of necessary predicates solely "upon information and belief." See Dkt 66 at 13-14. It thus provides little more than a recitation of certain statutory elements.

See *Id*. (emphasis added)

Per the actual statute, a civil cause of action may only be brought if specific provisions of

the criminal statute are allegedly met, as discussed in *Brown Jordan Int'l, Inc. v. Carmicle*, 846

F.3d 1167, 1173 (11th Cir. 2017), wherein the Court held,

> "Whoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer" violates the CFAA. 18 U.S.C. § 1030(a)(2)(C). "***A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).*" 18 U.S.C. § 1030(g) (emphasis added)**. Subclause (I), applicable to the instant case, permits an action only if the plaintiff incurs a minimum "loss" of $5,000 as a result of the defendant's violation of the CFAA. 18 U.S.C. § 1030(c)(4)(A)(i)(I). The CFAA provides that:
>
> > the term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offenses, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

Per 18 U.S.C. 1030(g): "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section ***may be brought only if the conduct involves 1 of the factors set forth in subclauses [subclause] (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)***. Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. ***No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage***. No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware." See 18 U.S.C. 1030(g) (2008) (emphasis added).

The factors identified in 18 U.S.C. 1030(g) are: **(i)** an offense under subsection (a)(5)(B), which does not occur after a conviction for another offense under this section, if the offense caused (or, in the case of an attempted offense, would, if completed, have caused)— **(I)** loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value; **(II)** the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals; **(III)** physical injury to any person; **(IV)** a threat to public health or safety; **(V)** damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security; or **(VI)** damage affecting 10 or more protected computers during any 1-year period…" *See* 18 U.S.C. 1030 (2008).

By review of the Amended Complaint, it can plainly be seen that none of these factors are alleged to exist (or have occurred), which is fatal to the Plaintiff's claim. As such, Count II must be dismissed, and with prejudice as no leave to amend may cure the deficient claim asserted by the Plaintiff.

**2.   Plaintiff fails to plead legally cognizable damages or losses, and lacks standing.**

An important point overlooked entirely by the Plaintiff is that his allegations do not identify a "protected computer" owned or belonging to the Plaintiff which was allegedly the subject of a "hack", or unauthorized access, and Plaintiff does not allege the occurrence of "damages" or "loss" as defined under the statute. As stated by the United States Supreme Court in *Van Buren v. United States*, 141 S. Ct. 1648, 1659-1660 (2021),

> The Government's position has another structural problem. Recall that violating §1030(a)(2), the provision under which Van Buren was charged, also gives rise to civil liability. See §1030(g). Provisions defining "damage" and "loss" specify what a plaintiff in a civil suit can recover. "'[14] ***[D]amage,'" the statute provides, means "any impairment to the integrity or availability of data, a program, a system, or information." §1030(e)(8). The term "loss" likewise relates to costs caused by harm to computer data, programs, systems, or information services. §1030(e)(11). The statutory definitions of "damage" and "loss" thus focus on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data. Limiting "damage" and "loss" in this way makes sense in a scheme "aimed at preventing the typical consequences of hacking*****.*** *Royal Truck*, 974 F. 3d, at 760. The term's definitions are ill fitted, however, to remediating "misuse" of sensitive information that employees may permissibly access using their computers. *Ibid.* Van Buren's situation is illustrative: His run of the license plate did not impair the "integrity or availability" of data, nor did it otherwise harm the database system itself.

Plaintiff does not allege the existence of "damage" or "loss" as they are defined under 18 U.S.C. § 1030, and in fact he can never do so, as he alleges that the purported "hack" and "unauthorized access" were not of his "protected computer", but rather a computer or computers belonging to a non-party. As such, his claim fails, and must be dismissed with prejudice.

**3.   Claim barred by applicable statute of limitations.**

Finally, a civil claim under 18 U.S.C. 1030 must be brought within two (2) years of the commission of the act or discovery of the Plaintiff's alleged damages. *See* 18 U.S.C. § 1030(g) (2008). The "hack" allegedly directed to Farhad Azima purportedly occurred in 2015 per the allegations in paragraphs 75 and 76 of the Amended Complaint. Plaintiff's employment was terminated on June 21, 2017. As such, there is no possible way a claim asserted for the first time by the Plaintiff in 2023 via his Amended Complaint can be considered timely pursuant to the requirements of 18 U.S.C. 1030(g). This mandates dismissal with prejudice of Court II.

<u>**COUNTS III AND IV – CLAIMS BROUGHT UNDER THE WIRETAP ACT:**</u>
<u>**18 U.S.C. § 2511(1)(c) and § 2520, and 18 U.S.C. 2511(1)(d) and 2520**</u>:

1.   **Failure to State a Claim Based Upon Lack of Contemporaneous Interception of Communication**:

As to the Plaintiff's stated claims in Counts III and IV, both fail to state a cause of action as a matter of law. As stated in *Garback v. Lossing*, 2010 U.S. Dist. LEXIS 99059, *5-7 (E.D.Mi 2010), "***Garback alleges that Shwedel and others violated Title I of the ECPA, 18 U.S.C. § 2511 ("Wiretap Act"), when they allegedly "hacked" into Garback's email account and read his emails***. Section 2511 prohibits, among other things, the "interception" of any wire, oral, or electronic communication, 18 U.S.C. § 2511(1)(a), as well as the intentional use of the contents of any electronic communication with knowledge that the information was obtained through the interception of an electronic communication, 18 U.S.C. § 2511(1)(d). These provisions may be enforced in a civil action brought by one whose communication was intercepted. 18 U.S.C. § 2520(a). Both sides agree that "electronic communication" includes email. The issue here is whether Garback has sufficiently alleged an "interception." ***Shwedel argues that Garback has failed to allege that anyone, let***

*alone Shwedel, "intercepted" Garback's email.  "Intercept" is defined in the Wiretap Act as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."* 18 U.S.C. § 2510(4). The Sixth Circuit has not addressed the issue, but another judge from this District has agreed with the other circuits that have. *All agree that the term "intercept" "'encompasses only acquisitions contemporaneous with transmission.'"* See Bailey v. Bailey, No. 07-11672, 2008 U.S. Dist. LEXIS 8565, 2008 WL 324156, at *4 (E.D. Mich. Feb. 6, 2008) (Cox, J.) (emphasis added) (quoting *United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003) and citing *Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457 (5th Cir. 1994); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2001); *In re Pharmatrak, Inc.*, 329 F.3d 9 (1st Cir. 2003); and *Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107 (3rd Cir. 2003)). *Judge Cox noted that the general reasoning behind these decisions is that "based on the statutory definition and distinction between 'wire communication' and 'electronic communication,' the latter of which conspicuously does not include electronic storage, Congress intended for electronic communication in storage to be handled solely by the Stored Communications Act." Bailey, 2008 U.S. Dist. LEXIS 8565, 2008 WL 324156, *4. As did Judge Cox, the Court finds this reasoning persuasive and adopts it here*. This standard does not require courts to measure the time between transmission and receipt to determine whether an acquisition was contemporaneous with transmission. *Rather, courts must consider the method used by alleged violators*. *In Steiger, for example, the Eleventh Circuit held that the conduct at issue did not constitute interception when an anonymous source used a Trojan Horse virus. An anonymous source uploaded a photograph with an embedded Trojan Horse virus to an online news group. Once Steiger downloaded the*

*photograph, the virus permitted the anonymous source to enter Steiger's computer via the internet and locate incriminating evidence. The source later passed the evidence to law enforcement*. 318 F.3d at 1041-44. Based on this evidence, **Steiger was indicted for violating a series of federal statutes involving the sexual exploitation of minors. He moved to suppress the evidence arguing, in part, that the anonymous source violated the Wiretap Act to obtain the evidence. The panel held there had been no interception by the source. 1 Id. at 1046. It adopted the contemporaneity standard used by the Fifth and Ninth Circuits and held**: [T]here is nothing to suggest that any of the information provided in the source's emails to [law enforcement] was obtained through contemporaneous acquisition of electronic communications while in flight. Rather, the evidence shows that the source used a Trojan Horse virus that enabled him to access and download information stored on Steiger's personal computer. This conduct, while possibly tortious, does not constitute an interception of electronic communications in violation of the Wiretap Act. *Id*. at 1050; *see Bailey*, 2008 U.S. Dist. LEXIS 8565, 2008 WL 324156, *4 (no interception where defendant uploaded to plaintiff's computer a program allowing defendant to learn plaintiff's passwords and later used the program to access plaintiff's electronic communications, citing *Steiger* as analagous). **Similarly, courts have found that simply accessing another's stored email does not constitute interception because it is not done contemporaneously with the transmission of the original email. …** Applying these standards, the Court concludes that Garback has failed to state a plausible claim against Schwedel for violation of the Wiretap Act." *See Id*. at 7-11.

Here, the Plaintiff's claims all derive from allegations of the "hacking" and subsequent disclosure of emails and data belonging to non-party Farhad Azima (some of which were either

from, or to, the Plaintiff), which occurred after-the-fact, and not contemporaneous with the original transmission of the e-mails alleged to be at issue. *See* Amended Complaint at Paragraph 78, and 84-86.

A claim under 18 U.S.C. § 2511(1)(c) requires the intentional disclosure, or an endeavor to disclose, "to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection". See 18 U.S.C. § 2511(1)(c) (2018). By contrast, a claim under 18 U.S.C. § 2511(1)(d) requires the intentional use, or an endeavor to use, "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection".  See 18 U.S.C. § 2511(1)(d) (2018).

Pursuant to the authority cited above, the conduct alleged in the Complaint could never meet the requirements of either statute, as there was no "interception" of an "electronic communication" within the meaning of the Wiretap Act. As such, Counts II and III fail as a pure matter of law, and must be dismissed with prejudice and without leave to amend.

2. **No Secondary or Conspiracy Liability Under 18 U.S.C. § 2511**:

In addition to the foregoing, the Plaintiff's claims in Counts III and IV fail due to the Plaintiff's direct allegations that non-parties (i.e., "CyberRoot and BellTroX") were responsible for the "hacking" of non-party Farhad Azima. See Complaint at Paragraph 78. This issue actually arose in an action brought by non-party Farhad Azima against Defendants NICHOLAS DEL ROSSO and VITAL MANAGEMENT SERVICES, INC. in the Middle District of North Carolina (Case No.: 1:20CV954). Therein, Farhad Azima brought claims under the same statutes

as the Plaintiff does in Counts III and IV, and those claims were dismissed for failure to state a valid cause of action as no civil liability for secondary or conspiracy conduct exists thereunder. As held by the Court in *Azima v. Del Rosso*, 2021 U.S. Dist. LEXIS 237463 (M.D.NC 2021), "**Wiretap Act claims:** ***Defendants argue that Plaintiff fails to state a claim "because there is no civil liability for secondary or conspiracy conduct" under the Wiretap Act.*** (Docket Entry 32 at 17.) ***Defendants point out that Plaintiff "does not allege that Defendants themselves intercepted, disclosed, or used Azima's data [but rather] that CyberRoot and/or BellTroX did so."*** (*Id.* (emphasis in original) (citing Compl. ¶¶ 16-19.) Indeed, regarding civil damages the Wiretap Act provides that in general, "any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from *the person or entity*, other than the United States, *which engaged in that violation such relief as may be appropriate*." 18. U.S.C. § 2520(a) (emphasis added). ***The Tenth Circuit and Fifth Circuits have interpreted this language as precluding liability for aiders and abettors****. See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000); *but see Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006) (concluding that § 2520 permits suits based on procurement). ***In their analysis, the Tenth and Fifth Circuits point to the fact that a prior version of the law "imposed both criminal and civil liability for those who procured an interception."*** *Kirch*, 702 F.3d at 1247 (citing 18 U.S.C. § 2511(1)(a) (1968)) (emphasis added)). However, an amendment in 1986 removed the procurement language from the civil liability provision, limiting civil liability to the person that "engaged in that violation." *Peavy*, 221 F.3d at 169 (quoting 18 U.S.C. § 2520(a)) ("Accordingly, 'that violation' refers only to illegal interception, disclosure, or use, and *not* to procuring interception by another.") (emphasis in

original). While the Fourth Circuit has not addressed whether § 2520 authorizes suits based on procurement, *see Attkisson v. Holder*, 925 F.3d 606, 623 (4th Cir. 2019), *as amended* (June 10, 2019) (acknowledging "lack of settled precedent" on this issue), **several district courts in this Circuit have followed the Tenth and Fifth Circuits' reasoning. See Motise v. Am. Online, Inc., No. CIV.A. 04-1494, 2005 U.S. Dist. LEXIS 36991, 2005 WL 1667658, at \*4 (E.D. Va. June 24, 2005) (dismissing plaintiff's claim because the Wiretap Act "does not recognize a cause of action for aiding and abetting a primary violator, and the Act does not create any secondary liability" and plaintiff only alleged that defendant enabled a third party to intercept communications, rather than alleging that defendant intercepted such communications itself***); Buckingham v. Gailor, No. 00-CV-1568, 2001 U.S. Dist. LEXIS 24779, 2001 WL 34036325, at \*6 (D. Md. Mar. 27, 2001), aff'd sub nom. Buckingham ex rel. Buckingham v. Gailor, 20 F. App'x 243 (4th Cir. 2001) (concluding that an action based on procurement "is no longer available under 18 U.S.C. § 2520, as a result of amendments passed by Congress in 1986").** The undersigned is persuaded by the reasoning of these courts and finds that the weight of authority supports dismissing Wiretap Act claims based on procurement." *See Id*. at \*22-24 (emphasis added).

Given the foregoing, Plaintiff's allegations that CyberRoot and BellTroX were behind the "hack" (and thereby the collection of non-party Farhad Azima's e-mails and data), Plaintiff's claim could only viably lie against those non-parties, and not any of the named Defendants in this action. As such, Counts III and IV must be dismissed with prejudice.

### COUNTS V AND VI – CLAIMS BROUGHT UNDER DC Code §§23-542(a)(2) and 23-554, and DC Code §§23-542(a)(3) and 23-554

The claims asserted by the Plaintiff in Counts V and VI of his Complaint arise under specific sections of the code of the District of Columbia, which are modeled (in part) after the

Federal Wiretap Act. Specifically, DC Code §§ 23-541 defines "wire communication" and "intercept"[5] using terminology that is similar to that found in the federal counterpart at 18 U.S.C. § 2510(1) and (4), but with a key exception: **Under the DC Code, "intercept" may only apply to the "aural acquisition of the contents of any wire or oral communication…"**. See DC Code §§ 23-541(3) (emphasis added).

Based upon a clear reading of the plain language of the statute, it does not apply to electronic communications, or the "hacking" alleged in the Plaintiff's Complaint. Here, the Plaintiff has not alleged that any "aural interception" of any "wire or oral communication" occurred. Rather, all allegations in the Complaint address "hacking" of email accounts and computers belonging to non-party Farhad Azima. Moreover, the Plaintiff has not alleged that any of the offending conduct occurred within the District of Columbia, where the DC Code sections at issue solely pertain to activities conducted within the District. See DC Code §§ 23-542: "Except as otherwise specifically provided in this subchapter, any person who in the District of Columbia —…"

Based upon a plain reading of the statutes themselves, Counts V and VI of the Complaint must be dismissed with prejudice and without leave to amend as the sections of the D.C. Code

---

[5] Per DC Code §§ 23-541, "wire communication" and "intercept" are defined as:

**(1)** the term "wire communication" means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities; …

**(3)** the term "intercept" means the aural acquisition of the contents of any wire or oral communication through the use of any intercepting device;

identified by the Plaintiff as the basis for his requests for relief do not apply to the alleged "hacking" and duplication of electronic communications or data.

### COUNT VII – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

**1. No Allegation of Intentional Interference by Defendants INSIGHT and GADOT:**

As to Count VII, it appears to assert a common law cause of action for tortious interference arising under the common law as adopted by the District of Columbia, as no federal statute codifying a cause of action for "tortious interference" exists. In the case of *Browning v. Clinton*, 292 F.3d 235 (D.C.A. 2002), the Court discussed the requisite elements of a tortious interference claim as follows: "To survive a motion to dismiss on this claim, Browning must plead "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." *Bennett Enters. v. Domino's Pizza, Inc.*, 310 U.S. App. D.C. 192, 45 F.3d 493, 499 (D.C. Cir. 1995). The first element--business expectancy--must be "commercially reasonable to anticipate." *Whelan v. Abell*, 293 U.S. App. D.C. 267, 953 F.2d 663, 673 (D.C. Cir. 1992) (internal quotation marks and citation omitted)." *See Id*. at 242.

In his Complaint, the Plaintiff nebulously alleges conduct ascribed to all "Defendants" and incorporates all of his 180 plus paragraphs of general allegation into Count VII. However, in so doing he specifically incorporates his allegations that the interference with his employment relationship with the Wall Street Journal falls at the feet of Defendant DECHERT, LLP, and Defendant NEIL GERRARD, not these Defendants. See Complaint at Paragraph 38, 74, 78, 86, 96, 97, and 103. Moreover, the Plaintiff alleges that the party who presented Farhad Azima's "hacked" emails and data "in a misleading way as to falsely implicate Mr. Solomon in an alleged

set of improper dealings with Mr. Azima, under the heading "fraud"" was non-party Nti, not these Defendants.  See Complaint at Paragraph 99. The Plaintiff has not alleged that these Defendants are the parties responsible for any communications with the Plaintiff's employer, let alone the transmission of the e-mails at issue which he alleges led to his termination. The Plaintiff has also not alleged any alternative theory of responsibility (such as *respondeat superior*) under which these Defendants could be liable for the activities of DECHERT, LLP or NEIL GERARD or their communications with the Plaintiff's former employer. As such, the Plaintiff has failed to plead a valid cause of action against these Defendants, and as such Count VI must be dismissed as to these Defendants.

**2.  No Allegation of a Valid Contract to Have Been Wrongfully "Interfered With":**

Upon review of the Complaint, the Plaintiff's allegations regarding his actual employment with the Wall Street Journal are found to be spartan. Most tellingly, the Plaintiff still has not alleged the existence of an employment agreement which moved the Plaintiff outside of the legally presumed status of an at will employee. *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 67-68 (D.D.C. 2005) ("In the District of Columbia, absent express language indicating particular terms or duration of employment, the employment relationship is presumed to be at-will. *Carter v. George Washington Univ.*, 180 F. Supp. 2d 97, 109 (D.D.C. 2001) (citing *Sisco v. GSA Nat'l Capital Fed. Credit Union*, 689 A.2d 52, 53 (D.C. 1997), *United States ex rel. Yesudian v. Howard Univ.*, 332 U.S. App. D.C. 56, 153 F.3d 731, 745 (D.C. Cir. 1998)). This presumption applies unless the parties "state clearly their intention to limit the employer's right to terminate," *Taylor v. Wash. Metro. Area Transit Auth.*, 922 F. Supp. 665, 674 (D.D.C. 1996) (citation and internal quotation marks omitted), such as by a contract provision setting out

employment for a fixed term or language that allows termination only for cause. *See Hodge v. Evans Fin. Corp.*, 228 U.S. App. D.C. 161, 707 F.2d 1566 (D.C. Cir. 1983).").

Per this Court's holding in *Gross v. Davis*, 2003 U.S. Dist. LEXIS 3427 (D.D.C. 2003), an at will employee can never establish a fundamental element of a tortious interference with employment contract claim, i.e., the existence of a contract to be interfered with. In deciding this issue, this Court specifically stated: "To state a claim for intentional interference with contract, a plaintiff must establish (1) the existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach by the defendant, and (4) damages resulting from the breach. *Sorrells v. Garfinckel's,* 565 A.2d 285, 289 (D.C. 1989). Here, Plaintiff has failed to state a claim for intentional interference with contract because, drawing all reasonable inferences in his favor, he has nonetheless failed to establish the existence of any contract. It is undisputed that Plaintiff did not have an employment contract with the BEP Police Force or with any other agency with whom he sought employment. Plaintiff was an at-will employee with the BEP Police Force and had no contractual guarantee that he would be appointed to the permanent Commander position. Neither did Plaintiff have any contractual relationship with the other agencies where he sought employment. Instead, he merely contends that he applied, and was not selected for, these positions. In *Bible Way Church v. Beards,* the D.C. Court of Appeals held that an employment contract is a "necessary prerequisite for … tortious interference with contract claims." *Bible Way,* 680 A.2d 419, 432 (D.C. 1996) (affirming trial court dismissal where plaintiff failed to rebut at-will employment presumption, thus leaving "no basis for … a tortious interference with   contract   claim"). More   recently,   in *McManus   v.   MCI Communications   Corp.,* 748 A.2d 949, 957 (D.C. 2000), the D.C. Court of Appeals again concluded that "it is clear that, as an at-will employee, [the plaintiff] did not have a contractual

employment relationship she could use as the basis for a suit for tortious interference with a contractual relationship." Indeed, relying on *Bible Way* and *McManus* numerous courts in the District of Columbia have denied interference with contract claims where, as here, the plaintiff was an at-will employee and therefore did not, as a matter of law, have a contractual relationship that could form the basis for an interference with contract claim. *See Riggs v. Home Builders Institute,* 203 F. Supp.2d 1, 22-23 (D.D.C. 2002); *Dale v. Thomason,* 962 F. Supp. 181, 183-84 (D.D.C. 1997); *Bell v. Ivory,* 966 F. Supp. 23, 30 (D.D.C. 1997). … In sum, accepting Plaintiff's allegations as true, as the Court must in a Motion to Dismiss, it is clear that Plaintiff has failed to establish one of the requisite elements of an intentional interference with contract claim--namely the existence of a contract. As an at-will employee with the BEP Police Force, Plaintiff did not have a contractual relationship with his employer. *See Id.* at 5-8.

This Court's explanations of District Columbia law in *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 67-68 (D.D.C. 2005) further illustrate and explain this Court's rationale and ruling as set forth in *Gross v. Davis*: "Under District of Columbia law, "the mutual promise to employ and serve creates a contract terminable 'at will' by either party." *Bell v. Ivory*, 966 F. Supp. 23, 29 (D.D.C. 1997) (citing *Sullivan v. Heritage Found.*, 399 A.2d 856 (D.C. 1979)). ***Both employer and employee may terminate an at-will employment relationship "for any reason or no reason at all."*** *Wemhoff v. Investors Mgmt. Corp.*, 528 A.2d 1205, 1208 n.3 (D.C. 1987) (citing *Taylor v. Greenway Rest., Inc.*, 173 A.2d 211 (D.C. 1961)). At-will employment should not be viewed as the absence of contract, but as a "species of contract," a principle "well settled" in the District of Columbia. *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 32 (D.D.C. 1999) (citing *Rinck v. Ass'n of Reserve City Bankers*, 676 A.2d 12, 15 (D.C. 1996). ***Termination of employment, then, does not breach an at-will employment contract, because by its very***

**terms the agreement contemplates that either party may end the employment relationship, with or without cause**. *See Frazier v. Univ. of District of Columbia*, 742 F. Supp. 28, 29 (D.D.C. 1990) (dismissing breach of contract action because "the District of Columbia does not recognize wrongful discharge for an at-will employee.") (citations omitted)." *See Id*. at 67 (emphasis added).

Taking the Plaintiff's allegations in his Complaint in a light most favorable to him, he has not alleged the existence of any prior employment agreement with the Wall Street Journal which would have removed the Plaintiff from the status of an at-will employee. As such, his claim in Count VII fails as a matter of law.

**3. To the Extent Plaintiff Claims Count VII Asserts a Cause of Action for Tortious Interference with Prospective Economic Advantage, That Claim Fails As Well**

Based upon the manner of the claim asserted in Count VII, it is unclear as to whether the Plaintiff will assert that the "Tortious Interference" claim dealt with a prospective economic advantage as opposed to an existing employment contract. It is potentially suggested that Plaintiff might seek to assert this, based upon allegations in Paragraph 257 of the Complaint that he sustained "*damaged reputation, forgone opportunities to build on his reputation such as prestigious job opportunities, high value speaking engagements and book publishing deals that would have otherwise been available to him…*".

Of note, Plaintiff has not actually alleged with whom these "prestigious job opportunities, high value speaking engagements and book publishing deals that would otherwise have been available to him" were purportedly to be with, let alone whether or not such relationships existed in 2017 (at the time of the alleged publication of the e-mails at issue) or whether the Defendants were aware of such relationships. As held by this Court in *Gross v. Davis*, 2003 U.S. Dist. LEXIS 3427 (D.D.C. 2003): "To state a claim for intentional interference with prospective

economic advantage, a plaintiff must establish (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) intentional interference inducing or causing termination of the relationship or expectancy, and (4) resultant damage. *See Bennett Enterprises v. Domino's Pizza,* 310 U.S. App. D.C. 192, 45 F.3d 493, 499 (D.C. Cir. 1995). ***Here, Plaintiff has failed to establish the existence of a valid business relationship or expectancy. Here, as in its ruling on the interference with contract claim, the D.C. Court of Appeals has also rejected a claim for interference with prospective economic advantage by an at-will employee***. *See McManus,* 748 A.2d 957. In so doing, the *McManus* court explained that it "never has held that an employee can maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship, and we do not do so now." *Id; see also Riggs,* 203 F. Supp. 2d at 24-25 (dismissing tortious interference with prospective advantage claim where plaintiff was at-will employee). Thus, as an at-will employee with the BEP Police Force, Plaintiff's belief that he would be appointed to the permanent Commander position does not, as a matter of law, establish the existence of the requisite valid business relationship or expectancy." *See Id.* at 9-10

Again, Plaintiff's presumed status as an at-will employee (based upon the allegations of his Complaint) prove fatal to this type of claim, requiring dismissal of Count VII.

**4. Plaintiff's Claims are Time-barred Under the District of Columbia's Applicable Statute of Limitation:**

Additionally, under the law of the District of Columbia, a tortious interference claim is subject to a three (3) year statute of limitations, which ordinarily begins to run when the Plaintiff sustains the tortious injury at issue. As stated in *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 546 (D.C.A. 2002): "The cause of action for tortious interference with contract is subject to a three year statute of limitations. *See* D.C. Code § 12-301 (8) (2001). The question we must

decide is whether that statute had run by the time E&G sued Gross and Foley Hoag for tortious interference in December 1992. The statute of limitations on a tort claim ordinarily begins to run when the plaintiff sustains a tortious injury or - if the so-called "discovery rule" applies because "the relationship between the fact of injury and the alleged tortious conduct [is] obscure," *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc) - when the plaintiff knows or reasonably should know that the cause of action exists. *See id.* at 473; *see also Mullin v. Washington Free Weekly, Inc.*, 785 A.2d 296 (D.C. Nov. 8, 2001); *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996) (holding that under the discovery rule, cause of action accrues "when the plaintiff has either actual notice of her cause of action or is deemed to be on inquiry notice because if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs, such an investigation, if conducted, would have led to actual notice"). At the latest, therefore, a cause of action accrues for limitations purposes when "the plaintiff 'knows' or 'by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) of some evidence of wrongdoing.'" *Hendel v. World Plan Executive Council*, 705 A.2d 656, 660-61 (D.C. 1997) (quoting *Bussineau v. President & Dirs. of Georgetown Coll.*, 518 A.2d 423, 435 (D.C. 1986)). Under this rule, the plaintiff does not have "*carte blanche* to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm." *Hendel*, 705 A.2d at 661. Nor need all damages be sustained, or even identified, for the cause of action to accrue; "any 'appreciable and actual harm flowing from the [defendant's] conduct' is sufficient." *Id.* (quoting *Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989))." *See Id.* at 546.

In his Complaint, the Plaintiff has alleged that his employment with the Wall Street Journal was terminated on July 21, **2017**. At that time, he was aware that his e-mail

communications with non-party Farhad Azima were made public as a result of an alleged "hack" of Mr. Azima's email accounts and computers. See Complaint at Paragraphs 101-106. Notably, in his allegations regarding his termination and the timing of the disclosure of Farhad Azima's "hacked" e-mails, the Plaintiff alleges: "There was no way Dow Jones could have downloaded those emails off those BitTorrent accounts without the help of Defendant Dechert and/or their Cohorts, as the files were encrypted. They could not be opened without a digital key, efforts to download the documents invited serious risk of infection and the sheer volume of data rendered the files inaccessible. Mr. Linder refused to tell Mr. Solomon how Dow Jones obtained the stolen and manipulated data, only that it came in "over the transom." Notably, the parent of Dow Jones, News Corp. is a client of Defendant Dechert." See Complaint at Paragraph 103.

The foregoing allegations show that all elements of the Plaintiff's claim had accrued in 2017, including the Plaintiff's knowledge of his termination by the Wall Street Journal, his knowledge of the disclosure of the alleged "hacked" e-mails, and his knowledge that his employer had obtained those emails only with "the help of Defendant Dechert and/or their Cohorts, as the files were encrypted."

Putting the Plaintiff's allegations into a proper frame of context, the Plaintiff also had significantly more knowledge about the matters alleged in his Complaint as of March 2018, when he published the Columbia Journal Review article referenced in footnote four (4) *supra* (see  https://www.cjr.org/special_report/the-source.php). Therein, the Plaintiff detailed his relationship with non-party Farhad Azima, as well as his detailed knowledge of the matters alleged in the Complaint, which as of March 2018 included the content of the following article excerpt: "THE EXACT DATE my sourcing relationship with Farhad Azima entered the public realm is hard to say. Sometime in August 2016, a year after my last visit to the yacht, hundreds

of email communications and texts between us appeared on the dark Web. The hackers heralded

their data trove: "Fraud Between Farhad Azima and Jay Solomon," read the title of a torrent file

posted online on September 13. Other files were also uploaded onto the Web around that same

time, <u>suggesting a coordinated information operation targeting us</u>. (I would come to suspect the

Iranian government or its proxies.).

Even without consideration of the Plaintiff's broad scope knowledge of the matters

alleged to be at issue in this case as set forth in his article published in March of 2018, the

allegations found on the face of the Complaint in and of themselves establish that the Plaintiff's

tortious interference claim is time-barred and must be dismissed with prejudice.

## <u>COUNT VIII – CIVIL CONSPIRACY</u>

In Count VIII the Plaintiff seeks to plead a common law cause of action for "civil

conspiracy". The basis of the alleged conspiracy was, according to the Plaintiff, to obtain the

termination of his employment at the Wall Street Journal in order to "silence" the Plaintiff and

his "source", non-party Farhad Azima. See Complaint at Paragraphs 262-263.

In order to assert a valid cause of action based upon a "civil conspiracy", a Plaintiff must

allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or

in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act

performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the

common scheme." *Griva v. Davison*, 637 A.2d 830, 848 (D.C. 1994) (citing *Halberstam v.

Welch*, 227 U.S. App. D.C. 167, 705 F.2d 472, 477 (D.C. Cir. 1983)). *See Daisley v. Riggs Bank,

N.A.*, 372 F. Supp. 2d 61, 73 (D.D.C. 2005). Moreover, ""[t]here is no recognized independent

tort action for civil conspiracy in the District of Columbia." *Waldon v. Covington*, 415 A.2d

1070, 1074 (D.C. 1980) (citing *Lamont v. Haig*, 192 U.S. App. D.C. 8, 590 F.2d 1124, 1136 n.73

(D.C. Cir. 1978)). Rather, recovery under a theory of civil conspiracy "is a means for establishing vicarious liability for "some underlying tortious act." *Weishapl v. Sowers*, 771 A.2d 1014, 1023-24 (D.C. 2001) (quoting *Griva*, 637 A.2d at 848). Performance of the underlying tort, pursuant to an agreement, give rise to a civil conspiracy claim. *Halberstam*, 705 F.2d at 479; *see also Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 25-26 (D.D.C. 2002) (plaintiff stated a claim for civil conspiracy under District of Columbia law when he had pled a cognizable underlying tort). *See Id. at 73*.

As alleged in the Complaint, the underlying "tort" upon which Count VIII is predicated upon the use of emails to "cause Mr. Solomon to lose his job". See Complaint at Paragraph 262. As pled, the civil conspiracy is one alleged to have been organized for the purpose of completing the "tortious interference" alleged and pursued by the Plaintiff under Count VII. As the claims in Count VII are subject to dismissal based upon the matters identified *supra*, so to does the claim asserted in Count VIII fail. There is no allegation of an employment agreement which is not "at-will", and thereby an element of the underlying tort fails to exist, be it tortious interference with contract or advantageous "business relationship". As such, Count VIII must also be dismissed.

## COUNT IX – PUNITIVE DAMAGES

In Count IX, Plaintiff cites to 18 U.S.C. § 1964(c) for a claim titled "punitive damages". Of note, 18 U.S.C. § 1964(c) is the statutory section cited to by the Plaintiff in Count I of his Complaint, rendering Count IX duplicative, in addition to the fact that it does not allege a claim under 18 U.S.C. § 1962 (which is the predicate required to establish civil liability under § 1964(c)). Moreover, punitive damages are a remedy, not a cause of action. See *Johnson v. Chase Manhattan Mortg. Corp.*, 2006 U.S. Dist. LEXIS 60760, *9 (D.D.C. 2006) ("*C. Punitive Damages* Plaintiff's final cause of action is a claim for punitive damages.

However, "[p]unitive damages is a remedy and not a freestanding cause of action," *Int'l Kitchen Exhaust Cleaning Ass'n. v. Power Washers of North America,* 81 F. Supp. 2d 70, 74 (D.D.C. 2000), therefore, the Court will dismiss this "claim" at this juncture."). Given the foregoing, Count IX must be dismissed.

<u>CONCLUSION</u>:

In conclusion, the Plaintiff's pleading has again been filed in an impermissible comingled manner as a "shotgun style" pleading. These Defendants would assert that Counts I through IX all mandate dismissal with prejudice and without leave to amend, as the causes of action asserted do not cover the factual allegations made by the Plaintiff, or are barred as a matter of law. However, should this Court disagree, it is requested that leave to amend as to Counts I, VII and VIII be granted to the Plaintiff with instruction that the Plaintiff allege specifically the facts underpinning the claims as they pertain to each Defendant (including the existence (or non-existence) of a written employment agreement with Wall Street Journal, that if such employment agreement existed the Plaintiff incorporate into the Complaint the relevant terms and conditions governing Plaintiff's employment including a) rate of pay, b) additional financial benefits or alternate compensation for which relief is sought herein, and c) the provision(s) of the agreement which remove the agreement from the presumption that Plaintiff's employment was "at-will").

WHEREFORE Defendants SDC-GADOT, LLC and INSIGHT ANALYSIS AND RESEARCH, LLC request that this honorable Court GRANT this Motion, that the Court GRANT all relief requested herein, and that the Court GRANT these Defendants such other and further relief as the Court may deem just and proper (including but not limited to a recovery of the Defendant's incurred Court costs and reasonable attorney's fees).

Dated this 9th day of March, 2023.

Respectfully submitted,

By: */s/ Charles Haskell, Esq.*
      Charles R. Haskell
      The Law Offices of Charles R. Haskell, Esq.
      DC Bar No.: 888304007
      (202) 888-2728 (Office)
      641 Indiana Ave. NW
      Washington, DC 20004
      Charles@CharlesHaskell.com

By: */s/ Christopher S. Salivar, Esq.*
      Christopher S. Salivar, Esquire
      Florida Bar No.: 57031
      CHRISTOPHER S. SALIVAR, P.L.L.C.
      301 W. Atlantic Ave., Suite O-5
      Delray Beach, FL 33444
      Tel: (561) 628-8908
      Email: cssalivarattorney@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2023 I electronically filed the foregoing with the Clerk of Court using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic filing.

Dated:     March 9, 2023           /s/ Charles R. Haskell
                                        Charles R. Haskell
                                        DC Bar No.: 888304007
                                        641 Indiana Ave. NW
                                        Washington, DC 20004
                                        Tel. (202) 888-2728
                                        Charles@CharlesHaskell.com