**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

—————————————————————  )
                                                                    )
**JONATHAN SOLOMON,**                        )
                                                                    )
                 Plaintiff,                                  )
                                                                    )
         v.                                                      )         Case No. 1:22cv03137-JEB
                                                                    )
**DECHERT LLP,** *et al.***,**                          )
                                                                    )
                 Defendants.                            )
—————————————————————  )

<u>**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS THE AMENDED COMPLAINT**</u>

David G. Barger, Esq.
D.C. Bar No. 469095
Michael R. Sklaire, Esq.
D.C. Bar No. 445364
S. Mohsin Reza, Esq.
D.C. Bar No. 985270
GREENBERG TRAURIG, LLP
1750 Tysons Blvd, Suite 1000
McLean, VA  22102
Tel:  (703) 749-1307
Fax:  (703) 714-8307
bargerd@gtlaw.com
sklairem@gtlaw.com
mohsin.reza@gtlaw.com

*Counsel for Defendants Amir Handjani, Andrew Frank, and KARV Communications, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION .............................................................................................. 1

       A.    Causes of Action ................................................................................... 2

II.    BACKGROUND ............................................................................................... 6

III.   LEGAL STANDARD ....................................................................................... 9

IV.    ARGUMENT ................................................................................................... 10

       A.    COUNT ONE MUST BE DISMISSED FOR FAILURE TO ALLEGE
             RICO VIOLATIONS. ........................................................................... 10

             1.    Plaintiff failed to sufficiently allege a predicate offense. ......... 11
             2.    A single limited scheme cannot meet the pattern element of a
                   RICO violation............................................................................ 18
             3.    Plaintiff has failed to sufficiently allege an enterprise............. 20
             4.    Defendants did not proximately cause Plaintiff's alleged injuries. ......... 22
             5.    Plaintiff cannot allege damages caused by Defendants. ........... 24
             6.    The claims are barred by the statute of limitations. ................. 24

       B.    PLAINTIFF DOES NOT SUFFICIENTLY ALLEGE A TIMELY
             CAUSE OF ACTION UNDER 18 U.S.C. § 1030............................... 27

             1.    Plaintiff's allegations are outside of the two-year statute of
                   limitations .................................................................................. 27
             2.    Plaintiff was not the target of the unauthorized access............ 27
             3.    Plaintiff has not alleged the type of loss required to establish a
                   violation of 18 U.S.C. § 1030. ................................................... 28
             4.    Plaintiff has not alleged sufficient facts to establish that the KARV
                   Defendants took part in the alleged violation of 18 U.S.C. § 1030. ......... 29

       C.    PLAINTIFF HAS NO CLAIM UNDER EITHER THE FEDERAL OR
             D.C. WIRETAP STATUTES. .............................................................. 29

             1.    Plaintiff fails to sufficiently and plausibly allege that Defendants
                   had knowledge of contemporaneous interceptions. ................... 29
             2.    Plaintiff's federal and D.C. wiretap claims are untimely.......... 33

       D.    SOLOMON HAS NO CLAIM FOR TORTIOUS INTERFERENCE
             WITH BUSINESS RELATIONSHIPS. .............................................. 33

             1.    Solomon failed to plead a claim for tortious interference......... 34

a.    Solomon failed to plead that his damages were caused by any tortious interference by the KARV Defendants. .................... 37

b.    The tortious interference claim is time-barred. ........................... 39

E.    SOLOMON'S CLAIM FOR CIVIL CONSPIRACY FAILS. ........................... 41

F.    SOLOMON HAS NO CLAIM FOR PUNITIVE DAMAGES PURSUANT TO 18 U.S.C. § 1964(c). ................................................................. 44

V.    CONCLUSION ............................................................................................. 45

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adler v. Loyd*,
496 F. Supp. 3d 269 (D.D.C. 2020) ................................................................... 23

*Anderson v. Wiggins*,
460 F. Supp. 2d 1 (D.D.C. 2006) ...................................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 9

*Asnake v. Deutsche Bank Nat'l Tr. Co.*,
313 F. Supp. 3d 84 (D.D.C. 2018) ..................................................................... 6

*Ass'n of Am. Physicians & Surgeons v. Schiff*,
518 F. Supp. 3d 505 (D.D.C. 2021) .................................................................. 24

*Aston v. Johnson & Johnson*,
248 F. Supp. 3d 43 (D.D.C. 2017) ............................................................... 16, 22

*Azima v. Del Rosso*,
2021 U.S. Dist. LEXIS 236611 (M.D.N.C. Dec. 10, 2021) ............................. 25

*\*Azima v. Rak Inv. Auth.*,
305 F. Supp. 3d 149 (D.D.C. 2018) ........................................................ 25, 40, 41

*Bakeir v. Capital City Mortg. Corp.*,
926 F. Supp. 2d 320 (D.D.C. 2013) .................................................................. 42

*Bates v. Nw. Human Servs.*,
466 F. Supp. 2d 69 (D.D.C. 2006) .................................................................... 13

*Beard v. Edmondson & Gallagher*,
790 A.2d 541 (D.C. 2002) ................................................................................ 40

*Beck v. Prupis*,
529 U.S. 494 (2000) ...................................................................................... 11, 44

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 9

*Bepler v. Vorobek*,
2020 U.S. Dist. LEXIS 64937 (D.D.C. Apr. 10, 2020) ............................... 10, 24

*Berry v. Funk*,
146 F.3d 1003 (D.C. Cir. 1998) ........................................................................ 31

*Better Holdco., Inc. v. Beeline Loans, Inc.*,
2021 U.S. Dist. LEXIS 138908 (S.D.N.Y. July 26, 2021) ............................... 28

*Bingham v. Zolt*,
66 F.3d 553 (2d Cir. 1995) ................................................................................ 18

*Blakeney v. O'Donnell*,
  117 F. Supp. 3d 6 (D.D.C. 2015) ...........................................................43

*Boehner v. McDermott*,
  484 F.3d 573 (D.C. Cir. 2007) ...............................................................31

*Boyle v. United States*,
  556 U.S. 938 (2009) ...............................................................................21

*Brass v. American Film Technologies, Inc.*,
  987 F.2d 142 (2d Cir. 1993) ..................................................................18

*Bridges v. Lezell Law, PC*,
  842 F. Supp. 2d 261 (D.D.C. 2012) ..........................................10, 19, 20

*Brink v. Cont'l Ins. Co.*,
  787 F.3d 1120 (D.C. Cir. 2015) .............................................................12

*Broidy Capital Mgmt. LLC v. Muzin*,
  2020 U.S. Dist. LEXIS 58302 (D.D.C. March 31, 2020) ...........12, 16, 20

*Butcher v. Wendt*,
  975 F.3d 236 (2d Cir. 2020) ..................................................................14

*Byrne v. Clinton*,
  410 F. Supp. 3d 109 (D.D.C. 2019) ......................................................24

*Chambers v Time Warner, Inc.*,
  282 F. 3d 147 (2d Cir. 2002) .................................................................18

*Cheeks of N. Am., Inc. v. Fort Myer Constr. Corp.*,
  807 F. Supp. 2d 77 (D.D.C. 2011) ........................................................39

*Cheeks v. Fort Myer Constr. Corp.*,
  216 F. Supp. 3d 146 (D.D.C. 2016) ................................................10, 39

*Coleman v. Unknown Cent. Intelligence Agents*,
  2006 U.S. Dist. LEXIS 60761 (D.D.C. Aug. 28, 2006) .........................10

*Comm. to Defend U.S. Const. v. Moon*,
  776 F. Supp. 568 (D.D.C. 1991) .....................................................12, 13

*Companhia Brasileira Carbureto de Calcio – CBCC v. Applied Indus. Materials Corp.*,
  887 F. Supp. 2d 9 (D.D.C. 2012) ..........................................................19

*Cortec Indus., Inc. v Sum Holding, LP*,
  949 F.2d 42 (2d Cir. 1991) ....................................................................18

*Council on Am.-Islamic Relations Actions Network v. Gaubatz*,
  793 F. Supp. 2d 311 (D.D.C. 2011) ......................................................30

*Council on American-Islamic Rels. Action Network, Inc. v. Gaubatz*,
  31 F. Supp. 3d 237 (D.D.C. 2014) ..................................................31, 33

*Danielsen v. Burside-Ott Aviation Training Ctr., Inc.*,
  941 F.2d 1220 (D.C. Cir. 1991) ............................................................10

*Dist. Telecommunications Dev. Corp. v. Dist. Cablevision, Inc.*,
    638 F. Supp. 418 (D.D.C. 1985) ........................................................................20

*Dooley v. United Technologies Corp.*,
    803 F. Supp. 428 (D.D.C. 1992) ........................................................................16

*E. Sav. Bank, FSB v. Papageorge*,
    31 F. Supp. 3d 1 (D.D.C. 2014) ....................................................................14, 23

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995) ..........................................................................18

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
    829 F. Supp. 420 (D.D.C. 1993) ..........................................................................3

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ............................................................................9

*El Omari v. Buchanan*,
    2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) ....................................................10

*\*El Omari v. Buchanan*
    2022 U.S. App. LEXIS 26799 (2d Cir. Sept. 26, 2022) ....................................15

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
    749 A.2d 724 (D.C. 2000) ................................................................................41

*Flavell v. Collier*,
    2021 U.S. Dist. LEXIS 163268 (D.D.C. Aug. 30, 2021) ..................................35

*Galerie Furstenberg v. Coffaro*,
    697 F. Supp. 1282 (S.D.N.Y. 1988)..................................................................45

*Garcia v. Pompeo*,
    2020 U.S. Dist. LEXIS 5159 (D.D.C. Jan. 13, 2020) .......................................42

*Greenpeace, Inc. v. Dow Chem. Co.*,
    808 F. Supp. 2d 262 (D.D.C. 2011) ..................................................................22

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)..................................................................3

*Grunewald v. United States*,
    353 U.S. 391 (1953)..........................................................................................19

*H.J. Inc.v. Northwestern Bell Telephone Co.*,
    492 U.S. 299 (1989)..........................................................................................19

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ..........................................................................42

*Hedgeye Risk Mgmt., LLC v. Heldman*,
    271 F. Supp. 3d 181 (D.D.C. 2017)..............................................................27, 32

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010)..............................................................................................23

*Hill v. Medlantic Health Care Grp.*,
  933 A.2d 314 (D.C. 2007) ...................................................................................42

*Holmes v. Sec. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) ................................................................................22, 24

*Huff v. Spaw*,
  794 F. 3d 543 (6th Cir. 2015) ..............................................................................32

*Ibrahim v. Titan Corp.*,
  391 F. Supp. 2d 10 (D.D.C. 2005) ........................................................................24

*Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*,
  726 F. Supp. 1 (D.D.C. 1989) ..............................................................................34

*Jacobsen v. Oliver*,
  201 F. Supp. 2d 93 (D.D.C. 2002) ........................................................................41

*Jones v. Meridian Towers Apartments, Inc.*,
  816 F. Supp. 762 (D.D.C. 1993) ..........................................................................21

*Jones v. Nat'l Commc'n & Surveillance Networks*,
  409 F. Supp. 2d 456 (S.D.N.Y. 2006) ...................................................................17

*\*Kelly v. U.S.*,
  140 S. Ct. 1565 (2020) .........................................................................12, 13, 23, 25

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018) ...................................................................................14

*Klayman v. Judicial Watch*,
  296 F. Supp. 3d 208 (D.D.C. 2018) ......................................................................37

*Klayman v. Obama*,
  125 F. Supp. 3d 67 (D.D.C. 2015) ........................................................................24

*Kowal v. MCI Communications Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ..........................................................................9, 10

*Lanza v. Merrill Lynch & Co.*,
  154 F.3d 56 (2d Cir. 1998) ...................................................................................18

*Lewis v. Gov't of the D.C.*,
  2015 U.S. Dist. LEXIS 164586 (D.D.C. Dec. 9, 2015) ........................................45

*McManus v. MCI Communs. Corp.*,
  748 A.2d 949 (D.C. 2000) ...................................................................................35

*McNamara v. Picken*,
  866 F. Supp. 2d 10 (D.D.C. 2012) ........................................................................35

*McPherson v. Harker*,
  2021 U.S. Dist. LEXIS 86449 (D.D.C. May 6, 2021) ...........................................30

*Murray v. Mulgrew*,
  704 F. Supp. 2d 45 (D.D.C. 2010) ..................................................................23, 24

*Neiweem v. Nicholson*,
2019 D.C. Super. LEXIS 179 (D.C. Sup. Ct. May 20, 2019)................................38

*Nexans Wires S.A. v. Sark-USA, Inc.*,
166 F. App'x 559 (2nd Cir. 2006) .....................................................................28

*\*Nyambal v. AlliedBarton Sec. Servs., LLC*,
153 F. Supp. 3d 309 (D.D.C. 2016) ............................................................. *passim*

*Papasan v. Allain*,
478 U.S. 265 (1986)...........................................................................................9

*Precision Contracting Sols., LP v. ANGI Homeservices, Inc.*,
415 F. Supp. 3d 113 (D.D.C. 2019) ..................................................................36

*Prunte v. Universal Music Group*,
484 F. Supp. 2d 32 (D.D.C. 2007) ...................................................................10

*Pyramid Secur., Ltd. v. IB Resolution, Inc.*,
924 F.2d 1114 (D.C. Cir. 1991) .......................................................................19

*Pyramid Secur., Ltd. v. International Bank*,
726 F. Supp. 1377 (D.D.C. 1989) ....................................................................19

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*,
757 F. Supp. 1499 (N.D. Ill. 1990) ..................................................................16

*Republic of Kazakhstan v. Stati*,
380 F. Supp. 3d 55 (D.D.C. 2019) ...............................................................14, 17

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)..........................................................................................21

*Riggs v. Home Builders Inst.*,
203 F. Supp. 2d 1 (D.D.C. 2002) .....................................................................35

*Robertson v. Cartinhour*,
867 F. Supp. 2d 37 (D.D.C. 2012) ...................................................................22

*Roe v. Bernabei & Wachtel PLLC*,
85 F. Supp. 3d 89 (D.D.C. 2015) .....................................................................20

*Rotella v. Wood*,
528 U.S. 549 (2000)..........................................................................................25

*Saleh v. Titan Corp.*,
436 F. Supp. 2d 55 (D.D.C. 2006) ...................................................................11

*Sandza v. Barclays Bank PLC*,
151. F. Supp. 3d 94 (D.D.C. 2015) ..................................................................26

*Saunders v. Davis*,
2016 U.S. Dist. LEXIS 125304 (D.D.C. Sept. 15, 2016) ..............................11, 13

*Sewell v. Bernardin*,
795 F.3d 337 (2d. Cir. 2015)............................................................................27

*Solano v. Delmed*, *Inc.*,
  759 F. Supp. 847 (D.D.C. 1991) .........................................................................10

*Sparrow v. United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) ...........................................................................9

*Sparshott v. Feld Ent., Inc.*,
  311 F. 3d 425 (D.C. Cir. 2002) ..........................................................................33

*Sprint Communs. Co., L.P. v. FCC*,
  76 F.3d 1221 (D.C. Cir. 1996) ...........................................................................40

*Sundberg v. TTR Realty, LLC*,
  109 A.3d 1123 (D.C. 2015) ................................................................................42

*Sykes v. U.S. Atty.*,
  770 F. Supp. 2d 152 (D.D.C. 2011) ....................................................................43

*Tabb v. District of Columbia*,
  477 F. Supp. 2d 185 (D.D.C. 2007) ....................................................................43

*Thompson v. Dulaney*,
  970 F.2d 744 (10th Cir. 1992) ...........................................................................31

*Toumazou v. Turkish Republic of N. Cyprus*,
  71 F. Supp. 3d 7 (D.D.C. 2014) .........................................................................34

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) .............................................................................9

*Turlock Irrigation Dist. v. FERC*,
  786 F.3d 18 (D.C. Cir. 2015) .............................................................................24

*United States v. Awuah*,
  654 F. App'x 597 (4th Cir. 2016) .......................................................................16

*United States v. McGill*,
  815 F.3d 846 (D.D.C. 2016) ..............................................................................20

*United States v. Philip Morris, Inc.*,
  273 F. Supp. 2d 3 (D.D.C. 2002) .......................................................................44

*United States v. Philip Morris USA, Inc.*,
  566 F.3d 1095 (D.C. Cir. 2009) .........................................................................12

*United States v. Sang Han*,
  280 F. Supp. 3d 144 (D.D.C. 2017) ..............................................................12, 13

*Van Buren v. United States*,
  141 S. Ct. 1648 (2021) ......................................................................................28

*Watson v. Faris*,
  139 F. Supp. 3d 456 (D.D.C. 2015) ....................................................................20

*Western Assocs Ltd. P'ship. v. Market Square Assocs*,
  235 F. 3d 629 (D.C. Cir. 2001) ..........................................................................18

*Wiggins v. State Farm Fire & Cas. Co.*,
   153 F. Supp. 2d 16 (D.D.C. 2001) ..............................................................................25

*Williams v. Fannie Mae*,
   2006 U.S. Dist. LEXIS 42911 (D.D.C. June 26, 2006) ......................................34, 35

*Zandford v. NASD*,
   30 F. Supp. 2d 1 (D.D.C. 1998) ..................................................................................39

**Statutes**

18 U.S.C. § 1029 ..............................................................................................................16

18 U.S.C. § 1030 ....................................................................................................... *passim*

18 U.S.C. § 1343 ..........................................................................................................12, 3

18 U.S.C. § 1503 ..............................................................................................................15

18 U.S.C. § 1512 ..............................................................................................................15

18 U.S.C. § 1515 ..............................................................................................................15

18 U.S.C. § 1956 ..............................................................................................................17

18 U.S.C. § 1961 ......................................................................................10, 11, 16, 18

18 U.S.C. § 1962 ..........................................................................................3, 11, 21, 44

18 U.S.C. § 1964 ....................................................................................................... *passim*

18 U.S.C. § 2510 ........................................................................................................31, 33

18 U.S.C. § 2511 ..................................................................................................3, 29, 31

18 U.S.C. § 2520 ........................................................................................................3, 33

D.C. Code § 12-301 ..................................................................................................33, 39

D.C. Code § 23-541 ..........................................................................................................33

D.C. Code § 23-542 ................................................................................................4, 29, 30

D.C. Code § 23-554 ....................................................................................................4, 30

**Other Authorities**

Fed. R. Civ. P. 8 ..........................................................................................................34, 43

Fed. R. Civ. P. 9(b) ..............................................................................................10, 12, 13

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 9, 18, 45

Fed. R. Evid. 201(b)(2) ....................................................................................................18

Fed. R. Evid. 201(c)(2) ....................................................................................................18

Restatement (Second) of Torts § 772 ................................................................................38

Defendants Amir Handjani, Andrew Frank, and KARV Communications, Inc. ("KARV") (collectively, the "KARV Defendants"), by counsel, submit this memorandum of law in support of their Motion to Dismiss the Amended Complaint filed by Plaintiff Jonathan "Jay" Solomon ("Plaintiff" or "Solomon") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Specifically, the KARV Defendants move to dismiss all counts that are brought against them because Plaintiff fails to state a claim upon which the relief demanded may be granted. Even after being informed by all Defendants through motions to dismiss the original Complaint, the Amended Complaint solves none of its original fatal defects. For example, it remains unclear from Plaintiff's imprecise and vague pleading if all Defendants are sued in all counts. For purposes of their Motion to Dismiss, the KARV Defendants assume they are sued in all nine counts and therefore seek dismissal of the KARV Defendants from the nine counts.

## I.      INTRODUCTION

In his Amended Complaint, Plaintiff alleges that the emails of a colleague, source, and potential business partner, Farhad Azima, were hacked in 2016, and these hacked emails included communications between Azima and Solomon, who at the time was a reporter for the *Wall Street Journal*. Solomon alleges that some of the emails were provided to his employer. He additionally alleges that because of the hacked emails, an investigative reporter from the Associated Press questioned his employer, and that resulted in him losing his job. Solomon's sensational Amended Complaint is filled with alleged international intrigue but is woefully short of facts supporting the alleged nine causes of action against these Defendants. Solomon continues to fail to sufficiently allege that the KARV Defendants had anything to do with his employment termination.

Solomon alleges that he was fired from his job on June 21, 2017, over five years ago, following his employer obtaining email communications he had with Azima. He alleges that those emails were "hacked" and that the KARV Defendants were part of a large conspiracy of

individuals, companies and a global law firm who organized the hacking and then purposefully leaked the hacked documents to get him fired. Those allegations appear to be based upon his review of pleadings in foreign litigation unrelated to Plaintiff and an obviously similar lawsuit filed by Azima in the Southern District of New York, both of which are entirely disconnected to his firing. The "hacking" itself was not of his computers, emails, electronics, or devices belonging to any other party to this case. So, in order to bolster his claim, Plaintiff makes wildly speculative, baseless and conclusory statements that accuse the members of this supposed conspiracy of engaging in a laundry list of alleged offenses. Those purported offenses have nothing to do with Plaintiff, and more importantly, nothing to do with the KARV Defendants.

### A.      Causes of Action

Plaintiff alleges nine causes of action against the KARV Defendants: civil RICO, in violation of 18 U.S.C. § 1964(c); unlawful access to a computer, in violation of 18 U.S.C. § 1030(a)(2) and (b); violations of federal and state wiretapping laws; tortious interference; and civil conspiracy. Each of those causes of action fails and should be dismissed with prejudice against the KARV Defendants for failing to plead sufficient and plausible facts to support any of the elements of the claims, and for failing to sufficiently allege causes of action within the respective statutes of limitations.

1.      Count I alleges civil RICO in violation of 18 U.S.C. § 1964(c). Solomon alleges that the RICO enterprise had numerous predicate acts at its foundation, the alleged hacking – unauthorized access of Azima's emails with Solomon – and the effort to cover up that hacking in litigation in the United Kingdom and in the United States by denying that Defendants hacked or were involved in some way in the hacking or covering up the hacking. Solomon contends that these denials constituted obstruction of justice and were part of the RICO enterprise. With regard to the claim of civil racketeering, Plaintiff fails to satisfy the pleading requirements under 18

U.S.C. § 1962(c) and (d) in that he fails to sufficiently allege (1) a predicate offense, (2) a pattern, (3) an enterprise, (4) proximate cause, and (5) damages.  <u>Any</u> of these failures is sufficient to dismiss the RICO claim.  <u>Solomon fails in all five</u>.  The Amended Complaint fails to tie any allegations related to any predicate RICO act to each KARV Defendant individually.  Instead, the Amended Complaint improperly lumps the KARV Defendants in with the purported conspiracy and continually accuses all Defendants of engaging in all violative conduct.  That type of shotgun pleading, especially after Solomon reviewed the prior motions to dismiss and then filed an Amended Complaint, is inappropriate, unsupported by well-established case law in this district, does not provide the KARV Defendants the specificity needed to defend against this lawsuit, and is an abuse of the civil RICO statute.  *See Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y. 2009) (discussing the misuse of the RICO statute by plaintiffs); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 829 F. Supp. 420, 424 (D.D.C. 1993) ("[T]oo many private litigants have distorted the law in an effort to reach activities RICO was never intended to address.").

2.      Count II alleges violation of 18 U.S.C. § 1030(a)(2) and (b), stating that the "Defendants" intentionally accessed, and conspired to intentionally access, Mr. Azima's computer. Not only are those allegations outside of the two-year statute of limitations, but Azima is not a party to this lawsuit. Plaintiff has not properly alleged the elements of the offense as related to the KARV Defendants, and moreover, Plaintiff has not alleged how he suffered the type of loss relating to a data breach that is necessary to establish a violation of this statute.

3.      Count III alleges a violation of 18 U.S.C. §§ 2511(1)(c) and 2520, contending that the "Defendants" disclosed and used intercepted wire and electronic communications between Solomon and Azima.

3.      Count IV alleges in its caption a violation of 18 U.S.C. § 2511(1)(d) (though not in

the body of the Count) and contends that the "Defendants" used and conspired to use intercepted wire and electronic communications between Solomon and Azima.

4. Count V alleges a violation of D.C. Code §§ 23-542(a)(2) and 23-554 and contends that the "Defendants" disclosed intercepted wire and electronic communications between Solomon and Azima.

5. Count VI alleges a violation of D.C. Code §§ 23-542(a)(3) and 23-554 and contends that the "Defendants" conspired to use and used intercepted wire and electronic communications between Solomon and Azima.

In Counts III through VI, Plaintiff's attempts to allege violations of federal and D.C. wiretap laws against the KARV Defendants fail for the additional reason that he has not properly alleged facts to support the elements of those claims. Both the federal and D.C. wiretap statutes require that the cause of action be based upon the contemporaneous interception of wire, oral, or electronic communications. Plaintiff asserts that he was fired because of the alleged leaking of emails that were stored on a person's computer, but not because his **real-time** communications were intercepted and subsequently disclosed. "Hacking" as Plaintiff appears to define it in the Amended Complaint simply does not qualify as a violation of the federal or D.C. wiretap statutes, and the claims should be dismissed. Furthermore, Plaintiff fails to allege (nor could he) that any of the Defendants knew that the communications were contemporaneously intercepted, which is also fatal to the claims. Finally, the wiretap claims are untimely and should be dismissed with prejudice.

6. Count VII alleges Tortious Interference with Business Relationships, contending that the "Defendants" interfered with Solomon's business relationship with Dow Jones (the *Wall Street Journal's* parent company) by hacking Azima's email account and delivering

communications between Solomon and Azima to Solomon's employer in an effort to have Solomon's employment terminated.  Count VII does not allege under which law this claim is made. One assumes it is the law of the District of Columbia where Solomon alleges he resided.

7.     Count VIII alleges a civil conspiracy by "Defendants" in hacking Azima's emails, using and disclosing them, and harming Solomon. Plaintiff again does not allege under which jurisdiction's law he is attempting to proceed.

Plaintiff's claims for tortious interference and conspiracy should be dismissed for failing to allege any facts sufficient to state a claim.  Plaintiff's insufficient allegations notwithstanding, the claims fail because the allegations do not support his contention that the KARV Defendants caused the termination of Plaintiff's employment.  Even if the Court were to accept all of the other implausible allegations of wrongdoing set forth in the Amended Complaint by the composite group of "Defendants," there are simply no facts connecting any improper action of the KARV Defendants to the *Wall Street Journal's* decision to terminate Plaintiff for his own admitted misconduct.  Likewise, Plaintiff's new allegation that the enterprise's "continued assault" on his "reputation and literary voice" lacks no facts to maintain any claim against the KARV Defendants.

8.     Count IX seeks damages against the "Defendants" under the federal RICO statute, 18 U.S.C. § 1964(c).  Plaintiff captions these damages sought as "punitive" and in the body of the Count seeks treble damages, attorney's fees and "punitive" damages.  The statute cited by Plaintiff does not provide for punitive damages.  Because Count IX still does not allege a cause of action and only asserts a claim for damages, it should also be dismissed with prejudice.

For the reasons discussed more fully below, all of the claims in the Amended Complaint should be dismissed with prejudice against the KARV Defendants.

## II.     BACKGROUND

Solomon filed his original complaint in this Court one day after Farhad Azima filed a similar, and nearly verbatim in many paragraphs, RICO action in the United States District Court for the Southern District of New York.  *Azima, et al. v. Dechert, LLP, et al*., 1:22-cv-08728-PGG (S.D.N.Y.).[1]     Not satisfied with the original cut-and-paste job, Solomon then filed this Amended Complaint on February 17, 2023, which included more verbatim and nearly verbatim allegations from the Azima complaint along with the same exhibits filed in the Azima case.  He also added a claim for violation of 18 U.S.C. § 1030.  Cutting through the mostly irrelevant, outlandish, and conclusory allegations against Defendants and others, the facts that relate to the alleged harm to *this* Plaintiff by *these* Defendants are as follows (assumed only as true for the purposes of this motion):  Plaintiff was fired as a reporter for the *Wall Street Journal* in June 2017.  Am. Compl. ("AC") ¶ 11.  Over five years later, Plaintiff filed this lawsuit alleging that his termination resulted from a vast conspiracy among many individuals and companies around the world to "hack" Farhad Azima's emails, share those emails with his employer, publicize those emails in a manner intended to humiliate him, and then conspire to cover up their involvement in an email "hack."  *Id.* ¶¶ 13, 14-15.  Specifically, Plaintiff alleges that in December 2016, his employer told him they had received emails "over the transom" between Plaintiff and a source, Mr. Azima, indicating that Plaintiff wanted to join Mr. Azima's company.  *See id.* ¶¶ 101-103.  Plaintiff denied the allegation, and his employer would not tell him who provided the emails.  *Id.*  Then in June 2017, over six months after receiving the emails that allegedly resulted in Plaintiff's termination, an Associated Press ("AP") reporter informed Plaintiff's employer that he had evidence that Solomon "played a role in trafficking arms to the Middle East; was part of a conspiracy to instigate a coup against the

---

[1]     *See, e.g.*, *Asnake v. Deutsche Bank Nat'l Tr. Co.*, 313 F. Supp. 3d 84, 85-86 (D.D.C. 2018) (stating that the Court may take judicial notice of "other court proceedings").

royal family of Kuwait; and had an interest in [Mr. Azima's company]." *Id.* ¶ 106.  Plaintiff denied these allegations to his employer, but they fired him "in connection with the accusations" made by the AP reporter apparently when the news of the correspondence between Plaintiff and Azima was to become public.  *Id.*  Plaintiff does not claim here that his own records exposed by the hack are false but says that the allegations made by the AP reporter were false.

With regard to the KARV Defendants, Plaintiff alleges the following:  First, Plaintiff generally alleges, without identifying any persons, dates, times, places or events, that the KARV Defendants (jointly) disseminated hacked emails to the press "for the purpose of attacking the credibility of Mr. Solomon and others associated with him."  *Id.* ¶ 6.  Plaintiff further alleges, without any details, that Mr. Handjani is a "front man," whose duties included "befriending Mr. Azima and deceiving him as to the enterprise's role in the hacking and theft of documents … to the detriment of Mr. Solomon."  *Id.* ¶ 29.  Mr. Handjani is also accused of generally "receiv[ing] reports," "attend[ing] strategy meetings," and guaranteeing "offers of payment to witnesses in exchange for testimony concealing the role of enterprise members," in an entirely different proceeding in a foreign jurisdiction unrelated to Solomon almost all of which is supposed to have occurred well after Plaintiff was fired.  *See id.* ¶¶ 29, 74, 122.   Defendant Frank is generally accused of attending meetings, receiving hacked materials and disseminating emails to the press, devoid of any facts regarding time, place or manner.  *Id.* ¶ 31.  Defendant KARV is only alleged to have been "a key architect of the … strategy for attacking and harming Mr. Azima, and by association, Mr. Solomon," without any further description to support that allegation.  *Id.* ¶ 32.

In the Amended Complaint, Plaintiff copies a section of the Azima complaint regarding an "action plan" he alleges was created in late 2015.  Specifically, Plaintiff vaguely describes an alleged "outline" called "View from the Window" that allegedly led to the "action plan" (neither

of which are attached as exhibits) as being drafted "at least in part by Frank and KARV," in late 2015 and January 2016 "to attack and damage Mr. Azima . . . . to cause economic damages to Mr. Azima and his businesses," *id.* ¶ 75, but offers no particulars for these vague conclusions.

The Amended Complaint also includes a list of transactions in Exhibit A and a list of times in Exhibit B when some of the Defendants allegedly used the mails or wires in furtherance of the activities. But at no point in the Amended Complaint does Plaintiff explain the significance of any of these items or their connection to the activities of the KARV Defendants.

Other than the list of transactions and activities in Exhibits A and B, none of the allegations set forth in the Amended Complaint contain dates or times of the alleged meetings. Nor, most significantly, are there any allegations of the specific content of the alleged received materials, or even the substance of communications among the Defendants. In fact, the only specified allegation in the Amended Complaint that places a date or time on any alleged act of any of the KARV Defendants is that Mr. Handjani was at a "breakfast in early February 2020," – wholly unrelated to Plaintiff's termination of employment that occurred nearly three years earlier – at which he and a co-defendant allegedly asked another individual, Mr. Page, to "investigate who was funding Mr. Al Sadeq's litigation against Defendant Dechert, Defendant Mr. Gerrard and others." *Id.* ¶ 157. This litigation reference is litigation in the United Kingdom, not the United States, and Solomon was not and is not a party. *In the High Court of Justice*, Claim No. QB-2020-000322. Plaintiff then alleges, again irrelevantly, that Mr. Page retained another Defendant "to employ hacking techniques to locate this information … which he shared with Mr. Page and which Mr. Page in turn shared with Defendants Mr. Gerrard and Mr. Handjani." AC ¶ 131. Importantly, Plaintiff was not a party to that litigation, does not allege any involvement in that litigation, and cannot allege any damages resulting from this purported February 2020 incident.

### III.   <u>LEGAL STANDARD</u>

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). Although 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) — that is, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Particularly where the defendant's allegedly unlawful conduct has "an obvious alternative explanation," the complaint must allege facts that "plausibly suggest" — and are "not merely consistent with" — the defendant's liability. *Twombly*, 550 U.S. at 557, 567; *see also Iqbal*, 556 U.S. at 680.

The Court need not accept as true, then, "a legal conclusion couched as a factual allegation," *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), nor "inferences . . . unsupported by the facts set out in the complaint." *Id.* (quoting *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). And it may consider not only "the facts alleged in the complaint," but also "any documents either attached to or incorporated in the complaint[,] and matters of which [courts] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Also, a plaintiff must meet Rule 9(b) of the Federal Rules of Civil Procedure's heightened pleading requirements where fraudulent acts form the alleged pattern of racketeering activity.  *See Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007) (citing *Danielsen v. Burside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991)).  This rule "normally . . . means that the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Bridges v. Lezell Law, PC*, 842 F. Supp. 2d 261, 265 (D.D.C. 2012) (quoting *Kowal v. MCI Communications Corp.*, 16 F.3d at 1278).

## IV.   <u>ARGUMENT</u>

### A.   COUNT ONE MUST BE DISMISSED FOR FAILURE TO ALLEGE RICO VIOLATIONS.

To survive dismissal, a civil RICO plaintiff must sufficiently allege three elements:  a pattern, an enterprise, and damages proximately caused by the actions of the defendants within the four-year statute of limitations.  *See, e.g., Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 153, 159 (D.D.C. 2016) (dismissing a RICO claim for failing to make out a pattern, an enterprise, and damages proximately caused by the actions of defendants); *Solano v. Delmed*, Inc., 759 F. Supp. 847, 854 (D.D.C. 1991) (dismissing a RICO complaint for being outside the four-year statute of limitations); *El Omari v. Buchanan,* 2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) (dismissing similar case against some of these same defendants for failing to plausibly allege civil RICO), *aff'd*, 2022 WL 4454536 (2d Cir. Sept. 26, 2022); *Bepler v. Vorobek*, 2020 U.S. Dist. LEXIS 64937, at *2 (D.D.C. Apr. 10, 2020) (dismissing a civil RICO case for failing to state a claim).  While the alleged computer "hacking" is the foundation on which Plaintiff builds his shaky house, hacking is not a predicate act under RICO.  *See* 18 U.S.C. § 1961(1); *Coleman v. Unknown Cent. Intelligence Agents*, 2006 U.S. Dist. LEXIS 60761, at *11 (D.D.C. Aug. 28, 2006) ("[I]njury

caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO … is

not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)) (quoting

*Beck v. Prupis*, 529 U.S. 494, 505 (2000)).   Plaintiff tries to circumvent this fatal flaw by

labyrinthine but futile pleadings.   As set forth below, Plaintiff failed to sufficiently and plausibly

allege any predicate act, any pattern, any enterprise, any proximate cause, or any damages.

### 1.   Plaintiff failed to sufficiently allege a predicate offense.

Plaintiff succinctly summarized his cause of action by stating that Defendants were part of

a conspiracy that stole emails between Solomon and Azima from Azima's computer that were

"used to ruin Mr. Solomon's reputation and damage him financially by causing him to, *inter alia,*

lose his job with the *Wall Street Journal.*"   AC ¶ 42; *Saleh v. Titan Corp.*, 436 F. Supp. 2d 55, 58

(D.D.C. 2006) ("personal injuries alone are not sufficient to meet RICO's standing requirement of

some allegation of damage to business or property").   Even if true (for the purposes of this motion),

stealing emails and then disclosing them to the press does not create a RICO cause of action.   In

fact, "hacking" is not a predicate offense under RICO.   *Saunders v. Davis*, 2016 U.S. Dist. LEXIS

125304, at *25 n.6 (D.D.C. Sept. 15, 2016) (noting "that 18 U.S.C. § 1030 is not a predicate offense

for the purposes of RICO") (citing 18 U.S.C. § 1961(1)).   And to the extent that Plaintiff relies

upon the federal or DC wiretap statutes, as set forth in Counts III-VI, the interception of

communications under those statutes are not predicate acts for RICO either.   18 U.S.C. § 1961(1).

Plaintiff appears then to try and equate (or intermingle) the "hacking" with violation of the

wire fraud statute in a futile attempt to improperly shoehorn his allegations within the RICO

statute.   *See* AC ¶¶ 186-87, 196.   While wire fraud can be a RICO predicate, the facts as alleged

in this case do not give rise to such a cause of action, and the Amended Complaint fails to allege

the very basic elements of wire fraud.   In order to base a RICO claim on wire fraud, Plaintiff must

properly allege a scheme to obtain money or property by false pretenses or promises, and use of

wire communications in interstate commerce to further the scheme.  18 U.S.C. § 1343.  The "wire" must be used to transmit "any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."  *Id.*  That is not what Plaintiff alleges here.  The "hacking" scheme as alleged does not meet any of the requirements of the wire fraud statute.  And the conspiracy as alleged was not intended to have Defendants obtain Solomon's money or property nor deprive him of any money or property as required under the statute.  *Id.*; *United States v. Sang Han*, 280 F. Supp. 3d 144, 153 (D.D.C. 2017); *Comm. to Defend U.S. Const. v. Moon*, 776 F. Supp. 568, 572 n.4 (D.D.C. 1991); *see also Kelly v. U.S.*, 140 S. Ct. 1565, 1573 (2020) (no fraud "when the loss to the victim is only an incidental byproduct of the scheme"); *Cent. Distributors of Beer, Inc. v. Conn*, 5 F. 3d 181, 184 (6th Cir. 1993) ("[T]he defendant must make a false statement or omission of fact to the plaintiff to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim.").  No material false statements are alleged to have been made by the KARV Defendants to Solomon.

Moreover, even if Plaintiff could allege wire fraud as a predicate act, any allegation must be pled with specificity against each of the Defendants under Federal Rule of Civil Procedure 9(b).  "In a multi-defendant RICO scheme, 'each defendant' must have committed two predicate offenses."  *Broidy Capital Mgmt. LLC v. Muzin*, 2020 U.S. Dist. LEXIS 58302, at *25 (D.D.C. March 31, 2020) (quoting *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1117 (D.C. Cir. 2009)).  In particular, Plaintiff has not alleged the date, time, place or participants in any wire communication sent to deprive him of money or property, and more particularly, what exact wire communication was sent by any of the KARV Defendants in furtherance of such a scheme.  Plaintiff's reliance on the wire fraud statute must necessarily fail.  *See, e.g., Brink v. Cont'l Ins. Co.,* 787 F.3d 1120, 1127 (D.C. Cir. 2015) (dismissing RICO claims where appellants' mail and

wire fraud claims failed to meet 9(b) pleading requirements); *see also Saunders v. Davis*, 2016 U.S. Dist. LEXIS 125304, at *38 (D.D.C. Sept. 15, 2016) (requiring heightened pleading requirement for RICO claims including wire fraud).[2]

In the Amended Complaint, Solomon tries to correct this fatal flaw by attaching a list of alleged phone calls and emails to which Defendant Handjani was a party.  *See* AC, Ex. B.  But at no point does he explain how those phone calls and emails, copied verbatim from the Azima complaint, have anything to do with the alleged damages caused to Solomon.  Without explaining their significance, one is left to presume that Plaintiff's attempt to string together a series of emails, calls, and messages purportedly between Handjani and others, as alleged in Exhibit B to the Amended Complaint, appears to relate to the concealment allegation (which cannot support the RICO claim).  They do not relate to any attempt by Handjani or others to deprive the Plaintiff of money and property as required under the statute.  *See Kelly v. U.S.*, 140 S. Ct. 1565, 1573 (2020) (legal expenses were "an incidental by-product of the scheme"); *United States v. Sang Han*, 280 F. Supp. 3d 144, 153 (D.D.C. 2017) (explaining that the federal-wire fraud statute imposes penalties "'for obtaining money or property by means of false or fraudulent pretenses'") (quoting 18 U.S.C. § 1343); *Comm. to Defend U.S. Const. v. Moon*, 776 F. Supp. 568, 572 n.4 (D.D.C. 1991) ("An act can only constitute mail or wire fraud if it results in money or property damage.").

As a backup plan, Plaintiff then attempts to bolster his futile claims by inserting inflammatory allegations of misconduct that are purported to have impacted others in foreign

---

[2]      The Amended Complaint continues to refer to actions by "Defendant Dechert and/or their Cohorts," without further specificity.  *See, e.g.,* AC ¶ 103.  Plaintiff never defines "Cohorts" and if this is an attempt to include the KARV Defendants in the unfounded allegations, those shotgun claims should be dismissed as violative of Rule 9(b) of the Federal Rules of Civil Procedure.  *See, e.g.*, *Bates v. Nw. Human Servs.*, 466 F. Supp. 2d 69, 92 (D.D.C. 2006) ("Requiring the three defendants to guess amongst themselves which one is responsible for the instances of mail and wire fraud alleged by the plaintiffs is surely not in keeping with the purposes of Rule 9(b).").

litigation to which Solomon was not even a party as a basis for seeking damages. Not surprisingly, most of the other alleged misconduct that forms the basis for the RICO claim appears to derive from ongoing litigation that post-dates Plaintiff's termination and resulting damages. *See, e.g.*, AC ¶¶ 136, 152, 157. In several cases, this Court and others have made it very clear that litigation activities, even if fraudulent, and even if the proximate cause of damages to a party (which is not the case here), cannot serve as a RICO predicate. *See, e.g., Republic of Kazakhstan v. Stati,* 380 F. Supp. 3d 55, 61 (D.D.C. 2019) (noting that "[c]ourts do not allow allegedly fraudulent "'litigation activities,' such as filing fraudulent documents or engaging in baseless litigation to serve as predicate acts for RICO . . . where such acts constitute 'the only allegedly fraudulent conduct.'") (citations omitted); *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13-14 (D.D.C. 2014) ("[t]he vast majority of the plaintiff's litany of woes delineated in the complaint, cannot, as a matter of law, form the basis of a RICO complaint, since they are all directly related to ongoing, non-frivolous litigation."); *see also Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act"); *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (same).

Plaintiff also alleges that witness tampering or obstruction focused on foreign litigation with Azima, not Plaintiff, is a predicate offense. *See In the High Court of Justice*, Claim No. HC-2016-002798. Those allegations must necessarily fail for the simple reason that they post-date the alleged damages caused to this Plaintiff by the purported enterprise. In the Amended Complaint, Plaintiff alleges that he was fired in June 2017, and all of the damages to his business and his reputation resulted from the termination. But he spends a significant amount of time explaining how the enterprise engaged in a grand conspiracy to cover up the "hacking" in litigation not with him but Azima that occurred well after June 2017, and well after the damages were caused. The

supposed concealment did not cause the alleged damages to Plaintiff.  Similarly, the purported witness tampering, and obstruction did not cause the alleged damages to Plaintiff. In fact, none of the other alleged fact-free laundry list of crimes, such as kidnapping, extortion, or money laundering as set forth in the Amended Complaint resulted in his termination.  Plaintiff makes it very clear that he believes that his termination and the resulting damage to his reputation resulted from the disclosure from Azima's computer (not Solomon's computer) of his emails with Mr. Azima, which is simply not a RICO predicate.

Moreover, the allegations of witness tampering, and obstruction of justice allegedly occurred regarding litigation in the United Kingdom, and thus cannot be the basis for the violation of the statute and used as a RICO predicate in this case as the statute makes clear the alleged obstruction and witness tampering must be of a proceeding in the United States.  *See* 18 U.S.C. §§ 1503, 1512 & 1515(a)(1).  In a related case, *El Omari v. Buchanan*, the plaintiff sought to reverse the district court's dismissal of his RICO lawsuit, claiming that leave to amend should have been granted based on an affidavit filed in a civil action pending in the United Kingdom.  2022 U.S. App. LEXIS 26799, at *2 (2d Cir. Sept. 26, 2022).  According to the plaintiff, leave to amend was improperly denied because tampering with a witness, which he claimed was evidenced by the foreign-filed affidavit, was a RICO predicate act.  *Id.* at *2-3.  The affidavit "address[ed] potential misconduct only in foreign proceedings and investigations . . ."  *Id.* at *4.  The Second Circuit rejected the plaintiff's argument, finding that the affidavit filed in a foreign proceeding – the very proceedings at issue here – did not support a RICO claim.  *Id.* at *4-5.  Rather, § 1512 only applied to certain *domestic* proceedings.  *Id.*  The Second Circuit issued its decision only a few weeks before Solomon, who echoes the same narrative, filed this Amended Complaint.  *Id.*

With regard to the KARV Defendants, the only allegations that come close to improper

activity are that they participated in meetings to plan a campaign against Azima, including the

"hacking," which is not a predicate, that they received and distributed hacked emails to the press,

which is not a predicate, and that Mr. Handjani allegedly investigated and coordinated the payment

of witnesses in 2020 in foreign litigation- three years after Plaintiff's termination and resulting

damages, which is also not a predicate.  Accordingly, Plaintiff has failed to sufficiently allege a

proper predicate RICO offense against any of the KARV Defendants.  *See Dooley v. United*

*Technologies Corp.*, 803 F. Supp. 428, 438 (D.D.C. 1992) ("[a] plaintiff must allege [defendants],

*individually* committed at least two predicate acts of racketeering to state a RICO claim against

them.") (emphasis added) (citing *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499,

1509 (N.D. Ill. 1990)); *Broidy*, 2020 U.S. Dist. LEXIS 58302, at *25 ("In a multiple-defendant

RICO scheme, "each defendant" must have committed two predicate offenses.") (citing *United*

*States v. Phillip Morris USA, Inc.*, 556 F.3d 1095, 1117 (D.C. Cir. 2009); *Aston v. Johnson &*

*Johnson*, 248 F. Supp. 3d 43, 51 (D.D.C. 2017) ("RICO's cause of action requires a plaintiff to

plead that [their] injury was proximately caused by the defendant's RICO violation.").[3]

    Plaintiff also attempts to allege money laundering as a predicate offense, alleging without

any factual basis, that "Defendants have engaged in repeated acts of money laundering … to

---

[3]    Plaintiff also argues generally that Defendants engaged in access device fraud, without
alleging facts supporting the claim or even citing to a particular statute.  AC ¶ 196.  While access
device fraud as defined under 18 U.S.C. § 1029 is a predicate offense for racketeering under §
1961(1)(B), Plaintiff failed to allege any facts that support a claim against any Defendants under
§ 1029, much less a claim against any of the KARV Defendants.  For example, Plaintiff has not
alleged that Defendants "knowingly used a counterfeit access device, with the intent to defraud,"
which is necessary to prove a violation of 18 U.S.C. § 1029(a)(1).  *See United States v. Awuah,*
654 F. App'x 597, 601 (4th Cir. 2016).  Plaintiff has not alleged that Defendants used one or more
"unauthorized access devices" during a one-year period to obtain "anything of value aggregating
more than $1,000" as required under section 1029(a)(2).  And Plaintiff has not alleged any facts
meeting any of the eight other possible offenses under section 1029.  18 U.S.C. § 1029(a).  Those
allegations should be dismissed.

promote the unlawful . . . activities of the enterprise" and attempts to rely on an Exhibit filed in a lawsuit filed by Mr. Azima in another court.  AC ¶ 188.  Plaintiff fails to sufficiently allege even the basic elements of a money laundering violation.  *See* 18 U.S.C. § 1956(a)(2).  There are no facts that identify a specified unlawful activity that is the basis for the claim, and there is no attempt to identify what money was used to promote any specified unlawful activity.  *See Republic of Kazakhstan*, 380 F. Supp. 3d at 63 n.6.  Most importantly, there are no facts that tie any actions by the KARV Defendants to any such allegation.  And while the Amended Complaint generally alleges that all Defendants received consulting or legal fees as a result of the racketeering activities, there are simply no facts that support that specious claim against the KARV Defendants.

The money laundering allegation appears to be that KARV promoted some unspecified unlawful act by receiving monthly retainer payments from 2014-2022 for its communications consulting services. *See* AC ¶¶ 221, 244; *id.* Ex. A.  Plaintiff, however, fails to provide any factual allegations establishing how KARV's ordinary monthly retainers were supposedly criminal. Plaintiff does not identify which specified unlawful activity was funded with which payment. Plaintiff does not specify how the money was spent, who spent it, how it ties back to Solomon or how it furthered the alleged scheme.  Plaintiff does not even attempt to identify which Defendants had access to the funds.  Instead, he only provides a list of money transfer payments and baldly claims that "money laundering" occurred without identifying any specified unlawful activity to which the retainer payments relate.  As such, his conclusory allegations fail to state a claim against Frank and KARV. *E.g., Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006) ("[C]onclusory allegations are insufficient to survive a motion to dismiss RICO claims.").  There certainly is no allegation of "new and independent injury" to Plaintiff from

this purported "money laundering" to cause a new RICO claim to accrue. *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 59 (2d Cir. 1998); *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995).

Moreover, Solomon's alleged facts supporting the money laundering allegation are simply a list of transactions obtained from the website of the Department of Justice (DOJ) in the Foreign Agent Registration Act (FARA) section for reports from Foreign Agents.  KARV is a Registered Foreign Agent and is required by law to file publicly available transaction reports.   Thus, to support his general allegations, Plaintiff merely points to publicly filed DOJ reports in which the source, date, amount and recipient are disclosed and not concealed.  There is no plausible link between these lawfully reported payments and any of the activities described in the Amended Complaint.  The money laundering claims are wholly unsubstantiated and should be dismissed.[4]

## 2.    A single limited scheme cannot meet the pattern element of a RICO violation.

A RICO claim that relies upon a single, limited fraudulent scheme does not satisfy the pattern requirement of 18 U.S.C. § 1961(5).  *Anderson v. Wiggins*, 460 F. Supp. 2d 1, 8 (D.D.C. 2006) ("One act does not a pattern make, and therefore is not enough to satisfy the clearly stated requirements of RICO.").  The D.C. Circuit has held that allegations regarding a "single scheme, single injury, and few victims," makes it "virtually impossible for plaintiffs to state a RICO claim." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995); *Western Assocs Ltd. P'ship.v. Market Square Assocs*, 235 F. 3d 629, 633 (D.C. Cir. 2001).

---

[4] The Court can take judicial notice of the FARA filings on the DOJ website pursuant to FRE 201(b)(2) and (c)(2).  *See Cortec Indus., Inc. v Sum Holding, LP*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *see also Chambers v Time Warner, Inc.*, 282 F. 3d 147, 153 (2d Cir. 2002); *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

In this case, the single incident of alleged misconduct was the computer hacking of Mr. Azima, followed by continued efforts to deny or conceal alleged involvement. *See, e.g.*, AC ¶¶ 24, 25, 187, 256. The Amended Complaint alleges that Defendants (again, without specificity) all conspired to hack into the email accounts and disclosed the emails that caused Solomon to get fired, *see, e.g.*, AC ¶¶ 38, 99, 256, and alleged that Defendants spent the next several years denying involvement, covering up involvement, and convincing others to conceal their involvement. Those allegations do not make it a pattern of separate and distinct criminal activity. *Companhia Brasileira Carbureto de Calcio – CBCC v. Applied Indus. Materials Corp.*, 887 F. Supp. 2d 9, 22 (D.D.C. 2012) (RICO requires two overt acts of racketeering activity that "amount to or pose a threat of continued criminal activity" to establish a pattern) (quoting *H.J. Inc.v. Northwestern Bell telephone Co.*, 492 U.S. 299, 239 (1989)). Concealment after achieving the central object of a conspiracy is not a RICO predicate. *See Pyramid Secur., Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991) (quoting *Grunewald v. United States*, 353 U.S. 391, 405 (1953)).

Concealment also does not satisfy the requirement of "continuity" that is necessary to prove a pattern under the RICO statute. *See H.J. Inc.,* 492 U.S. at 241; *Bridges v. Lezell Law, P.C.,* 842 F. Supp. 2d 261, 264 (D.D.C. 2012) (Boasberg, J.) (dismissing RICO case for failure to establish a "threat of continued criminal activity."). In order to proceed on a RICO claim, a plaintiff must establish that the enterprise engaged in continuing criminal activity that targeted multiple victims over a period of time. *Pyramid Secur., Ltd. v. International Bank*, 726 F. Supp. 1377, 1382, 1384 (D.D.C. 1989). This can be an open-ended scheme, whereby the party's past conduct threatens ongoing and continued repetition in the future. *H.J. Inc.,* 492 U.S. at 241. Or it could be a closed-ended scheme, whereby the unlawful conduct is over. *Id.* In this case, repeated denials of involvement in hacking are neither open-ended nor closed-ended continuity. There is no open-

ended continuity because Plaintiff does not "plausibly allege a 'distinct' threat of further long-term racketeering activity" or show "'that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'"  *Broidy Capital Mgmt.*, 2020 U.S. Dist. LEXIS 58302, at \*26 (quoting *H.J.,* 492 U.S. at 240).  Indeed, the *Broidy* court found that "even if the Complaint had alleged an ongoing threat of releasing the stolen materials, that ongoing threat would be to further the same goal, not an open-ended scheme of racketeering activity."  *Id.* at \*28 (citing *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 101 (D.D.C. 2015)).  There is also no closed-ended continuity because Plaintiff's mere allegations that the same misrepresentations meant to conceal the hacking were repeated over and over cannot cure the single scheme and single injury flaws.  *See id.* at \*29; *see also Bridges,* 842 F. Supp. 2d at 266.

In short, Plaintiff alleges a single act – hacking – that resulted in litigation activity and attempts to conceal involvement.  That is not a pattern for RICO.  *E.g.*, *Watson v. Faris*, 139 F. Supp. 3d 456, 461 (D.D.C. 2015) (dismissing RICO claim that was premised on a "single act of foreclosure").

### 3.     Plaintiff has failed to sufficiently allege an enterprise.

Plaintiff also failed to sufficiently plead an enterprise.  *See United States v. McGill*, 815 F.3d 846, 931 (D.D.C. 2016) ("Individuals acting 'independently and without coordination' do not form a RICO enterprise.") (citation omitted).  An enterprise requires "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 939 (2009) (requiring that the enterprise have an identifiable structure).  Plaintiff fails to meet this standard because he alleges an enterprise that is "one and the same" with the pattern of racketeering activity and so is not "separate and distinct" as RICO requires.  *See Dist. Telecommunications Dev. Corp. v. Dist. Cablevision, Inc.*, 638 F. Supp. 418, 421 (D.D.C. 1985)

(noting that an enterprise must exhibit three basic characteristics: "(1) a common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering.") (internal citations omitted).

In particular, Plaintiff alleges that the enterprise was created and maintained to investigate and obtain damaging information about perceived enemies of a non-party.  All of the members of the enterprise, including the KARV Defendants, were made part of the enterprise for the sole purposes of (1) carrying out the "hacking" activity, and (2) continuing to conceal involvement in the hacking.  AC ¶¶ 185-187.  As the D.C. district court noted in the *Dist. Cablevision* case, which is equally applicable to this case, "there is no ascertainable structure of the 'enterprise' that is distinct from that inherent in the conduct of the alleged pattern of racketeering activity ... the only apparent common denominator among the [] defendants as an ongoing 'enterprise' is their involvement in the particular transaction which is the subject of this suit."  *Dist. Cablevision, Inc.*, 638 F. Supp. at 421.  If Plaintiff is to be believed, a disparate group of individuals and corporate entities came together for the sole purpose of bringing Azima down.  *See, e.g.*, AC ¶¶ 31, 60, 65, 73, 186.  That is not sufficient to allege a separate and distinct enterprise.

Additionally, with regard to the KARV Defendants, it is not enough to merely allege that they participated in the enterprise, but Solomon must allege that they directed or managed the affairs of the enterprise.  *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993).  The RICO allegation must be dismissed if Plaintiff can only argue that they simply performed services on behalf of the enterprise, and not identify how they were actively involved in coordinating the operation.  *See Jones v. Meridian Towers Apartments, Inc.*, 816 F. Supp. 762, 771-72 (D.D.C. 1993) (noting that participating in one or two of the underlying acts is not sufficient to establish a violation under 18 U.S.C.  § 1962(c)).  As noted above, the Amended Complaint falls woefully short of establishing

such a role for the KARV Defendants.  The alleged evidence merely establishes that they attended

meetings, received and disclosed the "hacked" emails, or that they made inquiries with regard to

witnesses in the ongoing, post-termination litigation.  *See, e.g.*, AC ¶¶ 6, 74, 122, 157.  In fact,

other than an unsupported reference in an introductory paragraph accusing KARV of being an

"architect" that is never repeated or substantiated in the body of the complaint, Solomon fails to

allege at any point that any of the KARV Defendants directed or managed the affairs of the

enterprise.  As such, the RICO allegations must fail.

### 4.     Defendants did not proximately cause Plaintiff's alleged injuries.

As noted above, most of the allegations in Plaintiff's sprawling conspiracy theory involve

acts that occurred well after his employment was terminated by the *Wall Street Journal.*  In order

to sustain his RICO claim; however, Plaintiff must show that his damages were proximately caused

by a RICO predicate act.  In particular, § 1964(c) requires that a plaintiff plausibly allege injury

"by reason of a RICO violation."  18 U.S.C. § 1964(c).  To prove proximate cause, a plaintiff must

show "some direct relation between the injury asserted and the injurious conduct alleged."

*Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 54 (D.D.C. 2012) (quoting *Holmes v. Sec. Inv. Prot.

Corp.*, 503 U.S. 258, 268 (1992)); *see Greenpeace, Inc. v. Dow Chem. Co.*, 808 F. Supp. 2d 262,

269 (D.D.C. 2011) (noting that "injured parties must show that the RICO predicate offense was

not only the 'but for' cause of their injury, but the proximate cause as well") (citations omitted).

The Amended Complaint only alleges one act that resulted in his termination – the

"hacking" of Azima's computer.  Everything else from witness tampering to obstruction to

extortion has absolutely nothing to do with Plaintiff, so the issue then becomes whether the

Amended Complaint has established that a RICO predicate caused his harm.  *See Aston*, 248 F.

Supp. 3d at 51 (dismissing plaintiffs' claims because the plaintiffs failed to plausibly allege that

they were injured).  The obvious and only plausible answer is no.  At best, Plaintiff was indirectly

harmed by the "hacking" of Azima, and courts have consistently held that a RICO defendant cannot be held liable for indirect and attenuated injuries. *See E. Sav. Bank,* 31 F. Supp. 3d at 15; *Adler v. Loyd*, 496 F. Supp. 3d 269, 281 (D.D.C. 2020); *see also Kelly,* 140 S. Ct. at 1573.

More significantly, accepting the allegations as true, there appear to be several intervening causes for Plaintiff's damages that prevent Plaintiff from sufficiently and plausibly alleging proximate cause in this case. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9-10 (2010). First, the Amended Complaint notes that Plaintiff was terminated by a decision made by his employer. Second, that employer was alleged to have been influenced by an AP reporter who provided information about Plaintiff's extracurricular activities that would compromise Solomon's integrity. Third, the Amended Complaint implies without a factual basis that the information provided by the AP reporter to the *Wall Street Journal* came from hacked emails obtained from Azima. Fourth, apparently those emails had been provided to the *Wall Street Journal* over six months prior to the termination, so the timing of the termination appears to demonstrate that the termination was based on the public reporting about the emails, an intervening factor. Fifth, the Amended Complaint implies without a factual basis that the information contained in the hacked emails included Plaintiff's correspondences. In other words, Plaintiff seeks to argue that it was "reasonably foreseeable" that the enterprise's hacking of Azima's computer would result in Solomon losing his job with the *Wall Street Journal* and subsequent book deals. That interpretation of proximate cause strains credulity.

This strained causation link becomes even more implausible when Plaintiff attempts to target the KARV Defendants. At no point does the Amended Complaint allege that the KARV Defendants knew who Solomon was, much less whether he would lose his job or his potential book deals as a result of their supposed actions. *See, e.g.*, *Murray v. Mulgrew*, 704 F. Supp. 2d

45, 48 (D.D.C. 2010) (dismissing RICO claim where plaintiff failed to explain alleged causal link between defendants and plaintiff's alleged injuries).  The factual allegations against KARV and the individuals - that they were in meetings regarding the hack, that they reviewed hacked emails, and that they engaged with witnesses in litigation well after Solomon was fired - cannot plausibly support a finding of proximate cause, even without the obvious intervening factors.

### 5.    Plaintiff cannot allege damages caused by Defendants.

In order to plead a RICO claim, a plaintiff must allege that he incurred a cognizable injury to his "business or property."  *Klayman v. Obama*, 125 F. Supp. 3d 67, 88 (D.D.C. 2015) (quoting *Holmes*, 503 U.S. at 267-68).  And "[a]llegations of personal injury do not suffice.  *Id.* (citing *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 19 (D.D.C. 2005)).  Further, to the extent part of Solomon's claims concern allegations of damage to his reputation, such alleged damages are not cognizable under RICO.  *Byrne v. Clinton*, 410 F. Supp. 3d 109, 117 n.6 (D.D.C. 2019), *aff'd,* 2020 U.S. App. LEXIS 9943 (D.C. Cir. Feb. 27, 2020).  Additionally, Solomon's damage allegations for items such as future book deals are too speculative to satisfy the proximate cause requirement of RICO.  *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 514 (D.D.C. 2021) (refusing to find that plaintiff suffered monetary injury based on overly speculative "assumption[s] regarding the future behavior of third parties") (quoting *Turlock Irrigation Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015)).  Solomon's allegations are "too remote, purely contingent, [and] indirect" and fail to prove any direct relation between the conduct he alleges and his alleged damages.  *See Cheeks*, 216 F. Supp. 3d at 159.

### 6.    The claims are barred by the statute of limitations.

Plaintiff's claims fall outside of RICO's four-year statute of limitations.  *Bepler*, 2020 U.S. Dist. LEXIS 64937, at *10 n.4.  The limitations period runs from the date that the injury at issue was discovered; it does not run from the discovery that the injury was part of an alleged pattern of

racketeering activity. *Rotella v. Wood*, 528 U.S. 549, 554 (2000).  Solomon alleges that his injury

consists of harm to his reputation, lost employment, and "forgone opportunities to build on his

reputation," "public humiliation," "emotional distress," and "mental grieving, pain and suffering"

(all "incidental by products" of the alleged scheme). *See Kelly*, 140 S. Ct. at 1573; AC ¶ 262.  The

Amended Complaint makes it clear that Solomon's claims accrued no later than his employment

with the *Wall Street Journal* was formally terminated on June 21, 2017.  *See* AC ¶¶ 13, 15.  Any

of the alleged acts thereafter purportedly in furtherance of the RICO scheme were related solely to

concealment of involvement in the hack, *see* AC ¶ 16, and concealment only tolls the statute of

limitations where the plaintiff exercises "reasonable diligence" to discover his claim. *See Wiggins*

*v. State Farm Fire & Cas. Co.*, 153 F. Supp. 2d 16, 21 (D.D.C. 2001).

Solomon cannot plausibly claim that he brought these claims with reasonable diligence.

The alleged hacking of Mr. Azima that is the focus of Solomon's claims and the claimed event

that triggered his firing has been the subject of litigation since 2016.  *See Azima v. Rak Inv. Auth.*,

305 F. Supp. 3d 149, 154 (D.D.C. 2018) (noting that Mr. Azima's lawsuit filed concerning the

hacking was filed in this Court on September 30, 2016).  Indeed, in later litigation filed by Mr.

Azima, *Azima v. Del Rosso*, 2021 U.S. Dist. LEXIS 236611, at *10 (M.D.N.C. Dec. 10, 2021), the

UnitedStates District Court for the Middle District of North Carolina took judicial notice of Mr.

Azima's 2016 lawsuit *in this Court*, noting "the existence of . . . factual allegations, which include

that [Mr. Azima] had been hacked and his hacked confidential business data posted online."  *Id.*

at *9.  Upon taking judicial notice of the Complaint filed here, the North Carolina court dismissed

four of Mr. Azima's causes of action as being untimely, concluding that Mr. Azima's factual

allegations "in the 2016 D.C. Complaint — that he had been hacked and his hacked confidential

business data published online, . . . establish that by 2016 [Mr. Azima] had discovered the conduct

underlying" Mr. Azima's claims for trade secret misappropriation under federal law trade secret misappropriation under North Carolina law, civil conspiracy under North Carolina law, and invasion of privacy under North Carolina law. *See id.* at *10.

Solomon's contention that he only recently in 2020 appreciated the extent of the alleged enterprise is convenient but not conceivable. Years earlier, Solomon was personally confronted by his employer of the facts that he claims ultimately led to his termination. Moreover, before *and* through the time he was let go from the *Wall Street Journal*, the hacking of Mr. Azima was front and center in litigation pending in this Court. Solomon's RICO claim accrued several years ago, his claims are untimely, and thus should be dismissed with prejudice.

Notably absent from the Amended Complaint is Solomon's discussion of his own culpability and recognition that he was on notice of his alleged injuries and the alleged source thereof. In March 2018, Solomon stated in a published, publicly available article *written by him* that his termination was the result of the "hacking" he knew about as well as his own serious mistakes. *See* Jay Solomon, "The Source," *Columbia Journalism Review*, available at https://www.cjr.org/special_report/the-source.php (March 5, 2018). The Court is permitted to take judicial notice of the CJR article to demonstrate that Solomon was on notice of his claims in early 2018 if not sooner. *E.g.*, *Sandza v. Barclays Bank PLC*, 151. F. Supp. 3d 94, 113 (D.D.C. 2015). Any effort by Solomon to invoke tolling or equitable tolling of the statute of limitations should thus be rejected as his injury notice is established out of his own mouth.

Lastly, Plaintiff's new allegations about purported lost book deals (AC ¶ 113-15) do not bring his claims within the statute of limitations. The publications of the articles listed in the Amended Complaint does nothing to change the fact that his claims accrued at the latest in June

2017 when Solomon was fired.[5]

## B.   PLAINTIFF DOES NOT SUFFICIENTLY ALLEGE A TIMELY CAUSE OF ACTION UNDER 18 U.S.C. § 1030.

### 1.   Plaintiff's allegations are outside of the two-year statute of limitations

Section 1030 has a statute of limitations of two-years **that** runs from "the date the act complained of or the date of the discovery of the damage." *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d. Cir. 2015) (citing 18 U.S.C. § 1030(g)).  Solomon alleges that he "suffered damage and loss by reason of the Defendants unauthorized access of Mr. Azima's computer" when the information obtained was "transmitted or caused to be transmitted by Defendants to Mr. Solomon's employer and other media outlets" that caused Solomon to lose his job, suffer damage to property and business and reputation. *See* AC ¶ 263. Solomon alleges he was fired on June 21, 2017, which is the "date of the act complained of or the date of discovery of the damage," therefore, he filed his complaint well outside of the two-year statute of limitations. *See id.* ¶¶ 11-12.

### 2.   Plaintiff was not the target of the unauthorized access.

Solomon alleges that he was the victim of the unauthorized access to Azima's computer because of his emails that were found on Azima's system.  While third parties in some limited circumstances, may have the ability to bring a cause of action under 18 U.S.C. § 1030, the statute does not provide for recovery simply because the accessed data was subsequently used in a harmful manner.  *See Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 194-95 (D.D.C. 2017) (explaining the CFAA "speaks only of authorized access to data and not use") (internal quotations

---

[5]    Moreover, these newly cited articles do not introduce cognizable claims or injuries.  Like the plaintiff in *Ctr. for Immigr. Studies v. Cohen*, 410 F. Supp. 3d 183, 191 (D.D.C. 2019), Solomon here "has clearly tried to shoehorn a defamation claim into the RICO framework. But the D.C. Circuit has observed that a plaintiff 'complaining about a defamatory statement cannot end-run the requirements for a defamation claim' by pleading it as a RICO violation."

and citation omitted).  Solomon alleges that he suffered damages based on the use of the information, and not because of the "intentional access …without authorization."  18 U.S.C. 1030(a)(2).  Solomon alleges that his damages occurred with the disclosure, "when the information … was transmitted or caused to be transmitted by Defendants to Mr. Solomon's employer and other media outlets …" AC ¶ 212.  Because the focus of a claim under section 1030 is not on the disclosure of hacked materials, but on the hacking itself, and because the alleged hacking was of Azima's computer, not Solomon's, the cause of action must fail.

### 3. Plaintiff has not alleged the type of loss required to establish a violation of 18 U.S.C. § 1030.

Solomon does not allege sufficient facts to establish that he suffered "damage or loss" under the CFAA because the Supreme Court has recently held that "[t]he statuary definitions of 'damage' and 'loss' [in the CFAA] . . . focus on technological harms — such as the corruption of files — of the type unauthorized users cause to computer systems and data." *Better Holdco., Inc. v. Beeline Loans, Inc.*, 2021 U.S. Dist. LEXIS 138908, at *8 (S.D.N.Y. July 26, 2021) (quoting *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021)). And "[p]rior to *Van Buren*, courts in this District similarly interpreted the CFAA's civil remedy as requiring loss related to damage or impairment to the targeted computer." *Id.* at *9 (collecting cases).

Further, "[t]he statute's civil enforcement provision allows 'any person who suffers damage or loss' from conduct prohibited by the statute to bring an action under its terms, but only if the plaintiff can satisfy one of five factors." *Nexans Wires S.A. v. Sark-USA*, 166 F. App'x 559, 562 (2nd Cir. 2006) (citing 18 U.S.C. § 1030(g)). Specifically, Solomon is alleging factor § 1030(c)(4)(A)(i)(I) "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *See* AC ¶ 265. But Solomon does not explain how his alleged $5,000 in "loss and injury" is related to the sort of computer-based loss required by the CFAA's "damage" or

"loss" language.  *See id.* Thus, even though Solomon does not have to own the allegedly hacked computer to bring a claim, he still has to link his resulting "loss" or "damage" to technological harms. And in his CFAA count, Solomon claims he was damaged instead by "lost awards, book publishing deals, and speaking engagements." *See* AC ¶ 264.  That is not the type of damages sufficient to plead a violation of 18 U.S.C. § 1030.

4.    **Plaintiff has not alleged sufficient facts to establish that the KARV Defendants took part in the alleged violation of 18 U.S.C. § 1030.**

Finally, even if Solomon was able to plead the elements of the offense in a timely manner and properly assert a claim for damages, the allegations must fail against the KARV Defendants for the simple reason that there are no facts to support the claim. In particular, there are no allegations that Handjani had any involvement in the hacking- his role, as previously noted, was to "befriend" Azima and then later on, to allegedly cover-up the hack.  *See, e.g.,* AC ¶ 29.  And while Defendant Frank was alleged to have contributed to the "action plan" to target Azima, at no point do the allegations in the Amended Complaint provide any facts that could plausibly establish that the KARV Defendants either intentionally accessed Azima's computer or conspired to access Azima's computer within the two-year statute of limitations.  *See* AC ¶¶ 210, 220.  Any attempt to lump the KARV Defendants in with all other Defendants in order to establish this cause of action must fail.  *See* AC ¶¶ 210-12.

C.    **PLAINTIFF HAS NO CLAIM UNDER EITHER THE FEDERAL OR D.C. WIRETAP STATUTES.**

1.    **Plaintiff fails to sufficiently and plausibly allege that Defendants had knowledge of contemporaneous interceptions.**

Plaintiff generally alleges that the Defendants used and disclosed wire and electronic communications that were "improperly and illegally obtained through interception," in violation of the federal Wiretap Act, 18 U.S.C. § 2511(1)(c), and the D.C. wiretap statute, D.C. Code § 23-

542(a)(2) and 23-554.  Solomon fails to allege any facts to support these claims and these claims

fail for several very basic reasons.  First, the emails allegedly "hacked" and obtained by the reporter

and others are not wire, oral or electronic communications as so defined by either the federal or

D.C. wiretap statutes.  Both statutes require real-time interception of those communications, *see*

*McPherson v. Harker*, 2021 U.S. Dist. LEXIS 86449, at *28–29 (D.D.C. May 6, 2021), *aff'd*, 2022

U.S. App. LEXIS 8147 (D.C. Cir. Mar. 28, 2022), and the complaint does not allege that (1) any

of the accessed emails were accessed in real-time, or (2) that any defendant knew that the emails

were accessed in real-time.  Second, Plaintiff has failed to allege sufficient facts as to the

knowledge of each Defendant regarding the real-time interception of wire, oral or electronic

communications.  *See also Council on Am.-Islamic Relations Actions Network v. Gaubatz*, 793 F.

Supp. 2d 311, 329 (D.D.C. 2011).  In particular, Plaintiff does not identify, and cannot identify,

any facts to support an allegation that each of the KARV Defendants used and disclosed such

communications knowing that they resulted from contemporaneous interceptions in violation of

the statute.  Based upon the scant allegations set forth in the Amended Complaint, Plaintiff appears

to allege that members of the enterprise accessed Azima's email account and obtained stored,

historical emails between Azima and Solomon, not "real-time" communications between the two

parties.  In fact, while Plaintiff continually refers to "persistent" access to Azima's computer, at

no point does he allege that the allegedly acquired emails were obtained in real-time, much less

that any of the KARV Defendants were aware that the emails were acquired in real-time.

 In order to establish a claim under these statutes, Plaintiff must allege that (1) the

communications were intentionally intercepted in real-time, (2) the particular defendant knew or

had reason to know that the communication resulted from such a real-time interception, and (3)

the interception was made in violation of the wiretap statute.  *See Council on American-Islamic*

*Rels. Action Network, Inc. v. Gaubatz*, 31 F. Supp. 3d 237, 262 (D.D.C. 2014) ("[t]o establish liability under §2511(1)(c) and (d), 'the use or disclosure must . . . be intentional' and '[t]he defendant must know 1) the information used or disclosed came from an intercepted communication, and 2) sufficient facts concerning the circumstances of the interception such that the defendant could, with presumed knowledge of the law, determine that the interception was prohibited in light of Title III.'") (quoting *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992)); *see also Berry v. Funk*, 146 F.3d 1003, 1012 (D.C. Cir. 1998) (quoting 18 U.S.C. § 2511(1)(c) & (d)) ("[t]he prohibition on use or disclosure only applies to those 'knowing or having reason to know that the information was obtained through the interception of a . . . communication in violation of this subsection.'"); *Boehner v. McDermott*, 484 F.3d 573, 577 (D.C. Cir. 2007) (Section 2511(1)(c) makes intentional disclosure of any illegally intercepted conversation a criminal offense if the person disclosing the communication knew or had reason to know that it was so acquired).

Under the federal wiretap statute, a "wire communication" is defined as an aural (voice) communication transferred over the telephone or computer. *See* 18 U.S.C. § 2510(1) and (18). An oral communication is a verbally transmitted in real-time between individuals who are speaking in person where there exists an expectation of privacy. *See* 18 U.S.C. § 2510(2). And an electronic communication is typically a written communication transmitted over wires or the internet. *See* 18 U.S.C. § 2510(12). In this case, Plaintiff has not alleged that any Defendant was in possession of any recorded statements transmitted by either wire communications or oral communications, so those claims should be disregarded. With regard to electronic communications, however, Plaintiff appears to argue that the acquisition and disclosure of "hacked" emails between Plaintiff and Mr. Azima constitute a violation. But "hacking" is not defined, does not equate to real-time

interception, and is not covered by the federal or DC wiretap statutes. *Cf. Hedgeye Risk Mgmt., LLC*, 271 F. Supp. 3d at 195 (hacking is however, covered by the Computer Fraud and Abuse Act).

More importantly, the Amended Complaint fails to allege facts establishing that any of the KARV Defendants were aware that the emails resulted from real-time interception in violation of the federal and state wiretap laws. The KARV Defendants are alleged to have received and then disseminated the "hacked" emails, but there are no facts to support the allegation that they knew the emails were intercepted in violation of Title III. Moreover, the Amended Complaint fails to identify which communications were received and/or disseminated, when they were illegally intercepted, and when and how these Defendants were made aware of the illegal interception. Without those basic facts, Plaintiff presents no plausible claim against the KARV Defendants under Counts II through V.

A reading of Solomon's Amended Complaint as lacking in any factual allegation of interception is corroborated by a review of the complaint he largely copied, that was filed by Farhad Azima the day before Solomon's in the Southern District of New York, *Azima, et al. v. Dechert LLP, et al.* (Case No. 22-cv-08728 (S.D.N.Y.) (ECF No. 1-1), which contains no allegation of interception. Similarly, the hacking case both Solomon and Azima refer to in the UK does not contain any allegations of interception. The point simply is, to the extent permitted by the Federal Rules of Civil Procedure, a review of the factual allegations in the other pending Complaints that allegedly form the basis for Solomon's Counts II – V, identify no allegation of real-time interception. Thus, it is hard to understand how Solomon can profess a good faith basis to bring these claims. Additionally, the Federal Wiretap Act does not apply to extraterritorial interceptions. *Huff v. Spaw*, 794 F. 3d 543, 547 (6th Cir. 2015). Here, Solomon alleges the "hacking" occurred in "India." AC ¶ 78.

The flaws in the Amended Complaint require similar dismissal of the D.C. wiretap claim. The D.C. wiretap statute requires a plaintiff to show that a defendant (1) acted "willfully" in disclosing or using the contents of an intercepted communication and (2) knew that the communication was intercepted. *Council on American-Islamic Rels.*, 31 F. Supp. 3d at 264-65. As previously discussed, the emails allegedly "hacked" do not meet the definition of wire, oral, or electronic communications defined by either the federal or D.C. wiretap statutes. *See* 18 U.S.C. § 2510(1); D.C. Code § 23-541(1). Further, D.C. Code § 23-541(3), does not apply to emails at all but to the "aural acquisition" of "wire or oral communications." And Plaintiff has failed to identify, and cannot identify, that each Defendant had knowledge of any real-time interception.

### 2.   Plaintiff's federal and D.C. wiretap claims are untimely.

With respect to the statute of limitations applicable to the federal wiretap statute: "A civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). *See Sparshott v. Feld Ent., Inc.*, 311 F. 3d 425, 429 (D.C. Cir. 2002). Under D.C. law, the statute of limitations is three years. D.C. Code § 12-301. Given the fact that Azima has alleged since 2016 that he was hacked and that Solomon's employment was terminated in 2017, well outside of the respective statutes of limitations applicable to the federal and D.C. wiretap statutes. Thus, Solomon's interception claims also fail as well because they are untimely.

### D.   SOLOMON HAS NO CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS.[6]

To plead a tortious interference with business relationships claim under District of Columbia law, a plaintiff must allege: (1) the existence of a valid business relationship or

---

[6]     Neither Count VII nor Count VIII cite which jurisdiction's laws are being invoked for the causes of action. For purposes of this motion, we will assume Solomon meant to invoke the law of the District of Columbia where he claims he resides.

expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage. *Nyambal v. AlliedBarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 315 (D.D.C. 2016). The interference alleged must be both intentional and improper. *Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*, 726 F. Supp. 1, 6 (D.D.C. 1989).

In Count VII, Solomon makes no direct reference to the KARV Defendants. Given the opportunity to amend his claim, Plaintiff added no facts that make the tortious interference claim viable. As explained below, his sparse allegations do not support a claim for tortious interference against the KARV Defendants. Even if the facts were sufficient, the claim about tortious interference with his *Wall Street Journal* employment is untimely. To the extent that Plaintiff is attempting to revive his claim by asserting tortious interference with post-firing business relationships, those allegations are also insufficient. Count VII should be dismissed.

### 1. Solomon failed to plead a claim for tortious interference.

In Count VII, Solomon provides no allegations as to the KARV Defendants. Instead, Solomon generally and inadequately alleges wrongdoing by all Defendants. *See, e.g.*, *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) ("Generally, a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by 'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct.'") (citation omitted). Solomon's failure to plead each Defendant's role in the alleged interference is underscored by his inability to articulate how every one of the *eleven* Defendants knew about his potential business expectancies or had the intention to harm him. This is particularly problematic because D.C. law requires a "'strong showing of intent' in order to make a prima facie case for tortious interference," and a "general intent to interfere is not enough." *Williams v. Fannie Mae*, 2006 U.S. Dist. LEXIS 42911, at *28-29 (D.D.C. June 26, 2006) (citation

omitted).  The only paragraph that identifies a specific Defendant does not identify the KARV

Defendants and does not detail any Defendant's intention to harm Solomon.  *See* AC ¶ 254.

Solomon's improper pleading notwithstanding, Count VII should be dismissed because the

facts alleged do not support a claim for tortious interference even if the allegations could be

attributed to Mr. Handjani, Mr. Frank or KARV.  To begin with, Solomon does not explain the

nature of his employment such that the Court could determine whether a tortious interference claim

can be brought in the first place.  *See Flavell v. Collier*, 2021 U.S. Dist. LEXIS 163268, at *18

(D.D.C. Aug. 30, 2021) ("'Specific facts about the terms of the relationships and whether the

employees were subject to at-will employment agreements are necessary to state a plausible claim,

because, 'if there is no fixed or assured employment there is nothing tangible with which to

interfere.'") (citation omitted) (citing *Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 24 (D.D.C.

2002) (noting that at-will employees do 'not have a contractual employment relationship' that can

form 'the basis for a suit for tortuous [sic] interference with a contractual relationship (quoting

*McManus v. MCI Communs. Corp.*, 748 A.2d 949, 957 (D.C. 2000)).  All that can be gleaned from

the Amended Complaint is that Solomon had an "employment agreement with Dow Jones" and

that he was "terminated without cause."  AC ¶¶ 206, 253.  Solomon cannot advance a tortious

interference claim based on his firing without providing fundamental facts about the terms of his

employment or that he even sued his employer for wrongful termination.

His claims related to tortious interference of his alleged business expectancies should also

be rejected.  "Under District of Columbia law, 'a plaintiff must allege business expectancies, not

grounded in present contractual relationships, but which are commercially reasonable to expect.'"

*McNamara v. Picken*, 866 F. Supp. 2d 10, 15 (D.D.C. 2012) (citation omitted).  Also, as this Court

noted in *Nyambal*, "tortious interference claims are routinely dismissed where the plaintiff fails to

name specific contractual relationships that the defendant allegedly interfered with, or to identify any facts related to future contracts compromised by the alleged interferer." *Nyambal*, 153 F. Supp.at 316 (citations omitted).  Solomon contends that Defendants' tortious interference caused him to lose "opportunities to build on his reputation such as prestigious job opportunities, high value speaking engagements and book publishing deals that would have otherwise been available to him . . ."  AC ¶ 257.  In the first Motion to Dismiss, KARV Defendants argued that Plaintiff offered no details to establish that any opportunity or expectancy was lost because of the alleged tortious interference.  *See, e.g.*, *Precision Contracting Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 124 (D.D.C. 2019) ("Courts applying District law have regarded allegations of interference with 'unspecified relationships,' or with 'hypothetical categories of 'business relationships' as inadequate to plead the existence of a business relationship or expectancy.") (citations omitted); *Nyambal*, 153 F. Supp. 3d at 316 ("[The plaintiff's] general and conclusory pleading thus lacks the specificity required to hold [the defendant] liable for interference with expectant business relationships, or to establish that the expectant business was commercially reasonable to anticipate.").  Plaintiff attempted to cure this deficiency by including non-specific allegations about the loss of "book publishing opportunities" and a book proposal about a Confederate Secretary of State "which his agent could not sell" last year.  AC ¶¶ 113-114.  Though Plaintiff blames the reporting by the *International Policy Digest* ("*IPD*") focused on Mr. Azima, he ignores his own self-indictment in the *Columbia Journalism Review* that predated the *IPD*'s reporting.  Plaintiff also contends that he actually signed with a speakers' bureau in 2018, but due to "Defendants' hack and smear campaign," no one was interested in hearing him speak and thus could not generate the revenue he anticipated.  AC ¶ 115.  However, Plaintiff does not point to any specific speaking opportunities lost.

Further, disclosure of truthful information does not constitute tortious interference. *Watkins*, 726 F. Supp. at 6-7. Solomon alleges that his communications were "stolen and manipulated," AC ¶ 94, but he does not allege that they were altered in any respect. Accordingly, for the above reasons, Count VII should be dismissed.

a.      **Solomon failed to plead that his damages were caused by any tortious interference by the KARV Defendants.**

In Count VII, Solomon claims to have suffered a variety of damages caused by the tortious interference, AC ¶ 258 ("pain, suffering, mental anguish, emotional distress, and financial or economic loss"), but the facts alleged fail to establish any nexus between the alleged wrongdoing, any of the KARV Defendants' role in the interference, and the harm he claims he suffered. Solomon must plead facts sufficient to establish that he suffered damage resulting from Defendants' conduct. *Klayman v. Judicial Watch*, 296 F. Supp. 3d 208, 218 (D.D.C. 2018). Yet, the Amended Complaint lacks those critical facts.

Solomon's tortious interference claim suffers the same causation (or lack thereof) problem that his other claims do. As explained *supra*, Solomon only alleges one act that resulted in his termination – the "hacking" of Mr. Azima's computer. Nothing else relates to Solomon, and even then, his allegations related to the alleged hack lend no support to his claim for tortious interference. For example, in Count VII, Solomon claims that Defendants "engag[ed] in a conspiracy to commit perjury and cause others to commit perjury in such a manner as to conceal and cover-up Defendants' involvement in the hacking of Mr. Azima's email account." AC ¶ 256. Even if this "conspiracy to commit perjury" could be considered to be a tortious interference with his business relationships, the interference happened *long after* Solomon was fired from the *Wall Street Journal* in 2017. *See* AC ¶¶ 136-141 (alleging that conspiracy to commit perjury and

37

obstruct justice was put in place during a December 2019 meeting in Switzerland at which none of the KARV Defendants are alleged to have been present).

Moreover, Solomon's own allegations doom any argument by him that the tortious interference by any Defendant, much less the KARV Defendants, caused his injuries. As noted above, several intervening causes for Solomon's claimed damages prevent him from plausibly alleging proximate cause: (i) Solomon admits that the *Wall Street Journal* fired him only after an AP reporter provided information about his improper relationship with Azima;[7] (ii) Solomon implies—without a factual basis—that the information provided by the AP reporter to the *Wall Street Journal* came from hacked emails obtained from Azima; (iii) those emails had been provided to the *Wall Street Journal* over six months prior to the termination; so it appears that the termination was based on the public reporting of the emails and not on the emails themselves; and (iv) Solomon implies, again without a factual basis, that the information contained in the hacked emails included Solomon's correspondence. In other words, Solomon seeks to argue the impossible: that it was "reasonably foreseeable" that the enterprise's hacking of Azima's computer would result in Solomon losing his job with the *Wall Street Journal* and subsequent book deals. That strained causation becomes even more implausible when Solomon attempts to target the KARV Defendants. At no point does the Amended Complaint allege that the KARV Defendants knew that Solomon would lose his job or potential book deals as a result of their purported actions.

---

[7]     In the Amended Complaint, Solomon claims that the allegedly hacked files were assembled in a "manipulative and misleading way to present a false narrative implicating Mr. Solomon in purported improper, unethical and/or fraudulent activities." AC ¶ 38. Notably absent from the Amended Complaint, however, is a citation to any false statement concerning his activities. *Cf. Neiweem v. Nicholson*, 2019 D.C. Super. LEXIS 179, at *11 (D.C. Sup. Ct. May 20, 2019) (stating that "the interference is not improper when the defendant gives a third person '(a) truthful information . . .'") (quoting Restatement (Second) of Torts § 772). Plaintiff similarly fails to allege that any of the newly cited articles in paragraph 111 of the Amended Complaint contain false statements.

The factual allegations against the KARV Defendants cannot support a finding of proximate cause, even without the clear intervening factors. *See Fort Myer Constr. Corp*., 807 F. Supp. 2d at 98. ("However, [the plaintiff] fails to demonstrate a causal connection between any alleged tortious interference and its failure to win infrastructure contracts … and [the plaintiff] fails to explain how its inability to pay its creditors for existing obligations was exacerbated by the defendants' alleged interference.  Therefore, [the plaintiff] has failed to state a plausible tortious interference claim.").

Plaintiff's new allegations about the "continued manufactured press assault" that followed his firing do not save his claim.  AC ¶ 113.  To begin with, Plaintiff offers *no* facts that suggest or can support an inference that the KARV Defendants had any involvement in the *IPR* articles mentioned in the Amended Complaint or any other articles.  Also, Plaintiff's articles focus not on Plaintiff but on *Azima*, and Plaintiff has not stated a single fact that supports a connection between any statement made in an article and the losses he claims he suffered.  *See* AC ¶ 111.  Also, Plaintiff offers no facts that support a conclusion that the KARV Defendants should be liable for harm he claims to have suffered in 2022 that were caused by articles written by non-parties in 2019.

For these reasons, too, Count VII should be dismissed with prejudice.

### b.      The tortious interference claim is time-barred.

Solomon's claim for tortious interference with business relations is governed by the three-year statute of limitations set forth in D.C. Code § 12-301(8).  *E.g.*, *Zandford v. NASD*, 30 F. Supp. 2d 1, 24 (D.D.C. 1998).  The D.C. Court of Appeals has held:

> The statute of limitations on a tort claim ordinarily begins to run when the plaintiff sustains a tortious injury or - if the so-called 'discovery rule' applies because 'the relationship between the fact of injury and the alleged tortious conduct [is] obscure,' - when the plaintiff knows or reasonably should know that the cause of action exists. At the latest, therefore, a cause of action accrues for limitations purposes when 'the plaintiff 'knows' or 'by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) of some evidence of wrongdoing.' Under this rule, the plaintiff does not have '*carte blanche* to defer legal action indefinitely if she knows or should know that she may have suffered

> injury and that the defendant may have caused her harm.' Nor need all damages be sustained, or even identified, for the cause of action to accrue; 'any 'appreciable and actual harm flowing from the [defendant's] conduct' is sufficient.'"

*Beard v. Edmondson & Gallagher*, 790 A.2d 541, 546 (D.C. 2002) (citations omitted).

There is no basis to find that the claim for tortious interference accrued any time after the date Solomon was fired in June 2017. Solomon tries to get around the statute of limitations by arguing that "[u]ntil the series of court filings, which started in 2020, [he] believed he was hacked by Iran as retaliation for his investigative reporting on the money laundering scheme in 2013 and secret payments by the Obama administration in 2016." AC. ¶ 107. Solomon contends that "[at] the time of [his] firing," "he was unaware that the hacking of Mr. Azima was a component of a larger racketeering enterprise that had been orchestrated by Defendants." *Id.* Solomon's attempt to invoke the discovery rule should be rejected. Solomon admits that *months before* he was fired, he was presented with "some of the hacked and stolen correspondence between him and Mr. Azima" by *Wall Street Journal. Id.* ¶ 101. Then, in June 2017, the AP reporter contacted him and informed him and the *Wall Street Journal* that he was "writing about Mr. Solomon's business dealings with Mr. Azima." *Id.* ¶ 105. Shortly thereafter, Solomon was fired by the *Wall Street Journal*. If Solomon believed that he was wrongfully terminated and he learned the contents of his emails with Azima drove the decision to fire him, he apparently did nothing to confirm the origin for nearly five years. *See Sprint Communs. Co., L.P. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996) ("Once the prospective plaintiff is on notice that it might have a claim, it is required to make a diligent inquiry into the facts and circumstances that would support that claim."). Solomon's lack of diligence is even more troubling given that the alleged hacking of Mr. Azima has been the subject of litigation in *this* jurisdiction and Court for several years. *See Azima v. Rak Inv. Auth.*, 305 F. Supp. 3d 149, 154, 156 (D.D.C. 2018) (noting that between October 2015 and August 2016

"hackers were watching while Azima engaged in sensitive and important business affairs" and that

Mr. Azima's lawsuit was filed in this Court on September 30, 2016), *rev'd by Azima v. Rak Inv.*

*Auth.*, 926 F.3d 870 (D.C. Cir. 2019) (reversing district court's denial of motion to dismiss lawsuit

on grounds of *forum non conveniens*); *see also Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 110 (D.D.C.

2002) (taking judicial notice of matters of public record when determining inquiry notice).

Nothing in the Amended Complaint can be read to support the notion that the KARV

Defendants misled Solomon into thinking that Iran hacked his emails or that the discovery rule

should breathe any life into any tortious interference claim against them.  Solomon's attempt to

carve out a timely tortious interference claim by suggesting there was a "continued assault" on his

"reputation and literary voice" lacks weight considering that he admits that the post-firing

reporting was based on "information that they had stolen via the hacking" that occurred before he

was fired.  AC ¶ 110.[8]  Count VII should be deemed to have accrued when Solomon was fired by

the *Wall Street Journal*, and the claim should be dismissed as a matter of law.

### E.    SOLOMON'S CLAIM FOR CIVIL CONSPIRACY FAILS.

Under District of Columbia law, the elements of civil conspiracy are (1) an agreement

between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful

manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the

agreement (4) pursuant to, and in furtherance of, the common scheme. *Exec. Sandwich Shoppe,*

*Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000).   A claim of civil conspiracy "depends

on the performance of some underlying tortious act." *Halberstam v. Welch*, 705 F.2d 472, 479

---

[8]      If anything, Plaintiff's new allegations present a better case for dismissal on the ground of
untimeliness.  Solomon's tortious interference claim sounds even more in defamation than before.
Under D.C. law, the *one-year* statute of limitations for defamation should thus apply and bar this
claim.  *See Browning v. Clinton*, 292 F.3d 235, 244 (D.C. Cir. 2002); *see also Nyambal v.*
*AlliedBarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 314-15 (D.D.C. 2016).

(D.C. Cir. 1983).   If the underlying tort fails, so does the civil conspiracy claim.   *See, e.g.*, *Nyambal*, 153 F. Supp. 3d at 319 ("[The plaintiff's] civil conspiracy claim fails and will not be discussed at length because he has not pled sufficient facts in support of any of the underlying torts alleged.").   Several reasons doom Solomon's civil conspiracy claim.

As an initial matter, a civil conspiracy, "is not an independent tort but only a means for establishing vicarious liability for an underlying tort."   *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007); *Bakeir v. Capital City Mortg. Corp.*, 926 F. Supp. 2d 320, 339 (D.D.C. 2013) ("Under District of Columbia law, a cause of action for civil conspiracy is not actionable as an independent cause of action, but rather is 'a means for establishing vicarious liability for the underlying tort.'").   For this reason alone, Count VIII cannot stand on its own.

Pleading problems aside, there is no basis to find that Solomon can advance any claim against the KARV Defendants based on civil conspiracy.   Solomon must bring a civil conspiracy claim based on a tort, not a violation of a statute.   *See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129 (D.C. 2015) ("[A] claim of civil conspiracy does not lie for violation of a statute absent statutory language to the contrary.").   Solomon does not assert an underlying tortious act committed by Defendants.   Instead, he says that the "type of hacking operation that Defendants commissioned" "is illegal under several applicable federal and state, criminal and civil laws, including but not limited to the tortious and illegal conduct described in each of the preceding Counts, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030."   AC ¶ 261; *see also Garcia v. Pompeo*, 2020 U.S. Dist. LEXIS 5159, at *14 (D.D.C. Jan. 13, 2020) ("The court is under no obligation to attempt to divine what Plaintiff has not made clear.").   At explained above, Solomon has no claim under any of the D.C. or federal statutes cited.   Likewise, Solomon's deficient tortious inference claim cannot support a claim for civil conspiracy.

Furthermore, as discussed above, Solomon's allegations focus very little on the role of the KARV Defendants in the wide-ranging harm he contends all the Defendants caused.  In Count VIII, Solomon makes no effort to explain how the KARV Defendants entered into any agreement to participate in an unlawful act.  Solomon's allegations, or lack thereof, are problematic not just because of his failure to comply with Rule 8.  Solomon seeks to hold KARV, Mr. Frank, and Mr. Handjani liable for civil conspiracy.  Yet, the "'intracorporate conspiracy doctrine holds that . . . a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.'"  *Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 14 (D.D.C. 2015); *see also Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007) (stating that the intracorporate conspiracy doctrine is "based on the notion that a corporation and its agents constitute a single legal entity that cannot conspire with itself, just as it is impossible for an individual person to conspire with himself or herself.").  Solomon has advanced no facts that establish that Mr. Frank or Mr. Handjani could be held liable pursuant to a civil conspiracy theory of relief along with KARV.

Finally, even if Solomon sufficiently pleaded the ability to recover under a civil conspiracy claim, the claim would be untimely.  *See Sykes v. U.S. Atty.*, 770 F. Supp. 2d 152, 155 (D.D.C. 2011) (stating that "'a civil conspiracy claim incorporates not only every substantive element of the underlying tort, but also its statute of limitations'") (citation omitted).  Under the CFAA, "[n]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage."  18 U.S.C. § 1030(g).  Assuming that Solomon could even base his claim on the hack of Azima (he cannot), the cause of action accrued well before October 14, 2020.

For all of these reasons, Count VII should be dismissed with prejudice.

**F.     SOLOMON HAS NO CLAIM FOR PUNITIVE DAMAGES PURSUANT TO 18 U.S.C. § 1964(c).**

Count IX is Solomon's second cause of action brought pursuant to 18 U.S.C. § 1964(c). Like Count I, the claim for punitive damages under Count VIII should be dismissed.  In Count IX, Solomon seeks punitive damages and other damages such as "pain, suffering, mental anguish, emotional distress and financial and economic loss in amounts to be proven, trebled, and for his costs expended, including attorneys' fees, and for an award of compensatory and punitive damages…" AC ¶ 268.  His claim for punitive and other damages is meritless.

According to the heading for Count IX, Solomon's alleged basis for these varied damages is 18 U.S.C. § 1964(c).  However, the body of Count VIII makes no reference to the statutory basis for the damages he seeks.  Further, Count IX alleges no facts to maintain a separate cause of action from the other seven Counts.  Section 1964(c) identifies four factors that must be satisfied to establish standing for a civil RICO claim: (1) the plaintiff must be a "person" (2) who sustains injury (3) to its "business or property" (4) "by reason of" the defendant's violation of § 1962; *see, e.g.*, *United States v. Philip Morris, Inc.*, 273 F. Supp. 2d 3, 6 n.6 (D.D.C. 2002) ("Section 1964(c) creates a cause of action for 'any person injured in his business or property by reason of a violation of section 1962. . . and shall recover threefold the damages he sustains.'").  As explained above, Solomon failed to plead that the KARV Defendants violated § 1962.  *See Beck*, 529 U.S. at 505 ("[I]njury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO … is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d).").  Count IX must be dismissed for this reason alone.

To the extent Solomon seeks to rely on 18 U.S.C. § 1964 for purposes of asserting the right to recover punitive damages, the statute allows for recovery of "threefold" damages to a "person injured in his business or property."  The statute makes no provision for punitive damages or pain,

suffering, mental anguish, or emotional distress.  *See, e.g.*, *Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1289 (S.D.N.Y. 1988) ("Since [the plaintiff] sues here under the federal RICO laws, whose plain language do not allow for punitive damages, and has not shown that Congress intended such damages to be available under RICO, the fourth claim is dismissed.").  Lastly, Solomon was aware of all of the defects of Count IX (previously Count VIII) (as well as the glaring defects in the original Complaint) and did nothing to correct them, thus wasting the Defendants' and the Court's time and resources.  Thus, Count IX should be dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons,[9] Defendants Amir Handjani, Andrew Frank, and KARV Communications, Inc., respectfully request that the Court grant their Motion to Dismiss and dismiss all claims against them with prejudice.

Dated:  March 17, 2023                            Respectfully submitted,

/s/ David G. Barger
David G. Barger (D.C. Bar No. 469095)
Michael R. Sklaire (D.C. Bar No. 445364)
S. Mohsin Reza (D.C. Bar No. 985270)
GREENBERG TRAURIG, LLP
1750 Tysons Blvd, Suite 1000
McLean, VA  22102
Tel:  (703) 749-1307
Fax:  (703) 714-8307
bargerd@gtlaw.com
sklairem@gtlaw.com
mohsin.reza@gtlaw.com

*Counsel for Defendants Amir Handjani, Andrew Frank, and KARV Communications, Inc.*

---

[9]     To the extent permitted by law, the KARV Defendants adopt and incorporate the Rule 12(b)(6) legal arguments of the other Defendants that are applicable to the KARV Defendants. *See*, *e.g.*, *Lewis v. Gov't of the D.C.*, 2015 U.S. Dist. LEXIS 164586, at *7 (D.D.C. Dec. 9, 2015).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of March, 2023, that I filed the foregoing with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to all registered counsel that have entered an appearance.

/s/ David G. Barger
David G. Barger, Esq.
D.C. Bar No. 469095