# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

JONATHAN SOLOMON

          Plaintiff

   v.

DECHERT LLP,
DAVID NEIL GERRARD,
DAVID GRAHAM HUGHES,
NICHOLAS DEL ROSSO,
VITAL MANAGEMENT SERVICES, INC,
AMIT FORLIT,
ISRAEL INSIGHT ANALYSIS AND
RESEARCH, LLC,
SDC-GADOT LLC,
AMIR HANDJANI,
ANDREW FRANK, and
KARV COMMUNICATIONS, INC.,

        Defendants.

**Civil Action No. 22-CV-03137-JEB**

**<u>Oral Argument Requested</u>**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT DAVID NEIL GERRARD'S
## <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Andrew St. Laurent*
Evan W. Bolla*
Harris St. Laurent & Wechsler LLP
40 Wall St., 53rd Fl
New York, New York 10005
Tel: (212) 397-3370
andrew@hs-law.com
ewbolla@hs-law.com

*Attorneys for Defendant David Neil Gerrard*

*admitted pro hac vice*

## <u>TABLE OF CONTENTS</u>

FACTUAL BACKGROUND ............................................................................................ 3

   A.  Solomon Is Defamed and Fired Based on Documents that Defendants Obtained by
       Hacking Farhad Azima ........................................................................................... 3

   B.  Azima Initiates Legal Proceedings that Reveal Defendants as the Source of the Hacked
       Materials ............................................................................................................... 5

   C.  Solomon Alleges Lost Professional Income and Damage to Reputation ..................... 5

ARGUMENT ................................................................................................................... 6

  I.    SOLOMON HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER
       GERRARD ............................................................................................................. 6

   A.  Standard Under Rule 12(b)(2) .............................................................................. 6

   B.  The Amended Complaint Does Not Sufficiently Allege Personal Jurisdiction
       Over Gerrard ........................................................................................................ 7

      i.    RICO Nationwide Service Is Inapplicable .................................................... 7

      ii.   D.C. Code § 13-423(a)(3) is Inapplicable .................................................... 8

      iii.  Solomon Cannot Establish Jurisdiction Through the Alleged Conspiracy ................. 10

      iv.  Solomon Cannot Establish Jurisdiction Under Other Subsections of the DC Long-
          Arm Statute ................................................................................................ 13

      v.    Exercise of Personal Jurisdiction Over Gerrard Would Violate Due Process ........... 14

  II.   SOLOMON'S CLAIMS ARE TIME-BARRED .......................................................... 15

   A.  The Statutes of Limitations .................................................................................. 16

   B.  The Time of Accrual .......................................................................................... 16

   C.  Solomon Has Not Plead a Basis for Tolling ......................................................... 19

  III.  SOLOMON HAS FAILED TO PLEAD THE NECESSARY ELEMENTS OF EACH
       CAUSE OF ACTION ........................................................................................... 21

   A.  Standard of Review ........................................................................................... 21

B.  Solomon Has Not Sufficiently Stated a Claim Under RICO (Count I) ............................. 22

    i.  Solomon Has Not Satisfied the Conduct Element By Alleging Sufficient Predicate Acts ........................................................................................................................... 22

        a.  Much of the Alleged Misconduct is Not Covered Under the RICO Statute .......... 23

        b.  Litigation and "Cover-up" Activities Are Not Predicate Acts ............................... 24

        c.  Extraterritorial Conduct Unless Included in the Underlying Statute Is Excluded as Predicate Acts ................................................................................................... 25

        d.  The Amended Complaint Does Not Sufficiently Allege Claims for Money Laundering or Mail or Wire Fraud Against Gerrard ............................................... 27

    ii.  The Amended Complaint Does Not Sufficiently Allege An "Enterprise" ................ 29

    iii.  Solomon Has Not Alleged A Pattern of Racketeering Activity ................................. 30

    iv.  Solomon Has Not Alleged Proximate Cause for His Injuries.................................... 32

    v.  Solomon has not alleged actionable injuries................................................................ 35

C.  Solomon Has Failed To Plead a Cause of Action for Violation of the Computer Fraud and Abuse Act (Count II) ................................................................................................... 37

D.  Solomon Has Failed To Plead Causes of Action for Violations of the Federal Wiretap Act (Counts Three and Four) and the D.C. Wiretap Act (Counts Five & Six) ........................ 39

E.  Solomon Has Failed to Plead a Claim for Tortious Interference with a Business Relationship .................................................................................................................... 42

F.  Solomon Has Not Stated a Claim for Civil Conspiracy .................................................... 44

G.  Solomon Has Not Stated a Claim for Punitive Damages .................................................. 45

CONCLUSION ................................................................................................................ 45

## TABLE OF AUTHORITIES

**Cases**

*A.V v. iParadigms, LLC*
    562 F.3d 630 (4th Cir. 2009) ...................................................... 38

*Adler v. Loyd*
    496 F. Supp. 3d. 269 (D.D.C. 2020) ............................................. 30

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*
    406 F. Supp. 3d 72 (D.D.C. 2019) ................................................ 27

*Amobi v. Brown*
    317 F. Supp. 3d 29 (D.D.C. 2018) ................................................. 9

*Anderson v. Ayling*
    396 F.3d 265 (3d Cir. 2005) ......................................................... 35

*Anderson v. Wiggins*
    460 F. Supp. 2d 1 (D.D.C. 2006) .................................................. 31

*Anza v. Ideal Steel Supply Corp.*
    547 U.S. 451 (2006) ............................................................... 34, 35

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................... 21, 22

*Avianca, Inc. v. Corriea*
    705 F. Supp. 666 (D.D.C. 1989) .................................................... 7

*Azima v. Dechert LLP, et al.*
    No. 1:22-cv-08728 (S.D.N.Y. Oct. 13, 2022) ................................ 28

*Azima v. Del Rosso*
    No. 1:20CV954, 2021 WL 6755013 (M.D.N.C. Aug. 9, 2021) ............. 44

*Azima v. Rak Inv. Auth.*
    305 F. Supp. 3d 149 (D.D.C. 2018) .............................................. 11

*Azima v. RAK Investment Authority*
    No. 16-cv-1948 (D.D.C. Sept. 30, 2016) .................................... 5, 20

*Azima v. RAKIA*
    926 F.3d 870 (D.C. Cir. 2019) ................................................. 5, 10

*B3DC Navy Yard LLC v. Epoch Design Grp. Inc.*
   No. 19-2939 (JEB), 2020 WL 888574 (D.D.C. Feb. 24, 2020) ................................................ 13

*Bailey v. Bailey*
   No. 07-cv-11672, 2008 WL 324156 (E.D. Mich. 2008) ......................................................... 40

*Bailey v. J&B Trucking Services, Inc.*
   577 F. Supp. 2d 116 (D. D. C. 2008) .................................................................................... 6

*Bates v. Northwestern Human Servs., Inc.*
   466 F. Supp. 2d 69 (D.D.C. 2006) ................................................................................. 27, 28

*Beck v. Prupis*
   529 U.S. 494 (2000) ............................................................................................................. 23

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ....................................................................................................... 21, 22

*Bennett Enters., Inc. v. Domino's Pizza, Inc.*
   45 F.3d 493 (D.C. Cir. 1995) .......................................................................................... 42, 43

*Bernhardt v. Islamic Republic of Iran*
   47 F.4th 856 (D.C. Cir. 2022) ......................................................................................... 11, 12

*Blakeney v. O'Donnell*
   117F. Supp. 3d 6 (D.D.C. 2015) .......................................................................................... 44

*Boyle v. U.S.*
   556 U.S. 938 (2009) ............................................................................................................. 29

*Bridges v. Lezell Law, P.C.*
   842 F. Supp. 2d 261 (D.D.C. 2012) ..................................................................................... 32

*Brink v. Cont'l Ins.Co.*
   787 F.3d 1120 (D.C. Cir. 2015) ........................................................................................... 27

*Broidy Cap. Mgmt. LLC v. Muzin*
   No. 19-CV-0150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31, 2020) ........................ 22, 31, 32

*Brown Jordan Int'l, Inc. v. Carmicle*
   846 F.3d 1167 (11th Cir. 2017) ........................................................................................... 38

*Browning v. Clinton*
   292 F.3d 235 (D.C. Cir. 2002) ....................................................................................... 35, 37

*Buckingham v. Gailor*
  No. 00-CV-1568, 2001 WL 34036325 (D. Md. Mar. 27, 2001) ............................................. 41

*Burnett v. Al Baraka Inv. and Dev. Corp.*
  274 F. Supp. 2d 86 (D.D.C. 2003) ............................................................................................ 36

*Butcher v. Wendt*
  975 F.3d 236 (2d Cir. 2020)....................................................................................................... 24

*Casper v. Paine Webber Grp., Inc.*
  787 F. Supp. 1480 (D.N.J. 1992) .............................................................................................. 34

*Chalabi v. Hashemite Kingdom of Jordan*
  503 F. Supp. 2d 267 (D.D.C. 2007) .................................................................................... 16, 17

*Chalabi v. Hashemite Kingdom of Jordan*
  543 F.3d 725 (D.D.C. 2008) ...................................................................................................... 18

*Cockrum v. Donald J. Trump for President, Inc.*
  319 F. Supp. 3d 158 (D.C. 2018)........................................................................................ 10, 11

*Coleman v. Unknown Cent. Intel. Agents*
  C/A No. 04-1688(EGS), 2006 WL 2506631 (D.D.C. Aug. 28, 2006) ................................... 23

*Companhia Brasileira Carbureto de Calcio – CBCC v. Applied Indus. Materials Corp.*
  887 F. Supp. 2d 9 (D.D.C. 2012) .............................................................................................. 31

*Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*
  640 F.3d 369 (D.C. Cir. 2011) .................................................................................................. 10

*CoStar Grp., Inc. v. Leon Cap. Grp., LLC*
  No. 21-CV-2227 (CRC), 2022 WL 2046096 (D.D.C. June 7, 2022) ..................................... 37

*Ctr. for Immigr. Stud. v. Cohen*
  410 F. Supp. 3d 183 (D.D.C. 2019) .......................................................................... 24, 27, 37

*Currier v. Radio Free Eur./Radio Liberty, Inc.*
  159 F.3d 1363 (D.C. Cir. 1998) ................................................................................................ 20

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*
  758 F. Supp. 2d 153 (E.D.N.Y. 2010) ...................................................................................... 24

*Daimler AG v. Bauman*
  571 U.S. 117 (2014)............................................................................................................. 6, 14

*Democratic Natl. Comm. v. Russian Fedn.*
  392 F Supp 3d 410 (S.D.N.Y. 2019) ................................................................. 25

*Dist. Telecommunications Dev. Corp. v. Dist. Cablevision, Inc.*
  638 F. Supp. 418 (D.D.C. 1985) ...................................................................... 30

*Doe v. City of Boston*
  No. 20-cv-2948 (CKK), 2021 WL 2457961 (D.D.C. June 16, 2021) ....................... 8

*Doe v. Fed. Democratic Republic of Eth.*
  851 F.3d 7 (D.C. Cir. 2017) ............................................................................ 11

*Doe v. Roe*
  958 F.2d 763 (7th Cir. 1992) .......................................................................... 36

*Dooley v. United Technologies Corp., et al.*
  No. 91-2499, 1992 WL 167053 (D.D.C. 1992) ................................................... 26

*Drake v. McNair*
  993 A.2d 607 (D.C. 2010) .............................................................................. 17

*Dunleavy v. Wayne Cty. Comm'n*
  No. 04-cv-74670, 2006 WL 8431836 (E.D. Mich. May 11, 2006) .......................... 36

*E. Sav. Bank, FSB v. Papageorge*
  31 F. Supp. 3d 1 (D.D.C. 2014) ...................................................................... 36

*Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*
  208 F. Supp. 3d 219 (D.D.C. 2016) ................................................................. 43

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*
  48 F.3d 1260 (D.C. Cir. 1995) ........................................................................ 31

*Egilman v. Keller & Heckman, LLP*
  401 F. Supp. 2d 105 (D.D.C. 2005) ................................................................. 17

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*
  246 F. Supp. 3d 52 (D.D.C. 2017) ............................................................. 10, 11

*Elsevier, Inc. v. Grossman*
  77 F. Supp. 3d 331 (S.D.N.Y. 2015) .................................................................. 7

*Employment Law Group, P.C. v. Brady*
  No. 20-cv-1852 (JDB), 2022 WL 35626 (D.D.C. Jan. 4, 2022) ............................. 8

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*
749 A.2d 724 (D.C. 2000) ........................................................... 44

*Fam v. Bank of Am. NA (USA)*
236 F. Supp. 3d 397 (D.D.C. 2017) ................................................ 3

*Farmer v. D & O Contractors, Inc.*
640 F. App'x 302 (5th Cir. 2016) ................................................. 21

*Findlay v. CitiMortgage, Inc.*
813 F. Supp. 2d 108 (D.D.C. 2011) ............................................... 44

*Fraser v. Nationwide Mut. Ins. Co.*
352 F.3d 107 (3d Cir. 2003) ...................................................... 39

*FutureGen Co. v. Carter*
915 F. Supp. 2d 104 (D.D.C. 2013) ............................................... 14

*Galerie Furstenberg v. Coffaro*
697 F. Supp. 1282 (S.D.N.Y. 1988) ............................................... 45

*Ghebreyesus v. Federal Democratic Republic of Ethiopia*
No. 21-cv-02865, 2022 WL 4534631 (D.D.C. Sept. 28, 2022) ........................ 12

*Greenpeace, Inc. v. Dow Chemical Co.*
808 F. Supp. 2d 262 (D.D.C. 2011) ........................................ passim

*Grunewald v. U.S.*
353 U.S. 391 (1957) ........................................................... 25, 31

*GTE New Media Servs. Inc. v. BellSouth Corp.*
199 F.3d 1343 (D.C. Cir. 2000) ................................................. 6, 13

*H.J. Inc. v. N.W. Bell Tel. Co.*
492 U.S. 229 (1989) ........................................................... 30, 31

*Hargraves v. Cap. City Mortg. Corp.*
140 F. Supp. 2d 7 (D.D.C. 2000) ................................................. 17

*Harris v. Corr. Corp. of America*
796 F. Supp. 2d 7 (D.C. Cir. 2011) .............................................. 22

*Havilah Real Prop. Servs., LLC v. VLK, LLC*
108 A.3d 334 (D.C. 2015) ....................................................... 42

*Helmer v. Doletskaya*
 393 F.3d 201 (D.C. Cir. 2004) ................................................................. 8

*Hemi Grp., LLC v. City of New York*
 559 U.S. 1 (2010) ................................................................................ 32, 33

*Hill v. Medlantic Health Care Grp.*
 933 A.2d 314 (D.C. 2007) ...................................................................... 44

*Holder v. Haarmann & Reimer Corp.*
 779 A.2d 264 (D.C. 2001) ...................................................................... 13

*Hollander v. Flash Dancers Topless Club*
 340 F. Supp. 2d 453 (S.D.N.Y. 2004) ..................................................... 33

*Hollander v. Pressreader, Inc.*
 19-cv-2130 (AJN), 2020 WL 2836189 (S.D.N.Y. 2020) ....................... 28

*Holmes v. Sec. Inv. Prot. Corp.*
 503 U.S. 258 (1992) ................................................................................ 32

*Hourani v. Mirtchev*
 796 F.3d 1 (D.C. Cir. 2015) ................................................................... 24

*Hourani v. Mirtchev*
 943 F. Supp. 2d 159 (D.D.C. 2013) ........................................................ 26

*Huff v. Spaw*
 794 F.3d 543 (6th Cir. 2015) ................................................................. 40

*Ibrahim v. Titan Corp.*
 391 F. Supp. 2d 10 (D.D.C. 2005) .......................................................... 36

*iMark Marketing Serv., LLC v. Geoplast S.p.A.*
 753 F. Supp. 2d 141 (D.D.C. 2010) .......................................................... 8

*In re Lorazepam & Clorazepate Antitrust Litig.*
 No. 03-cv-1650, 2004 WL 7081446 (D.D.C. May 18, 2004) ................. 21

*In re Vasquez*
 705 N.E.2d 606 (Mass. 1999) ................................................................. 26

*Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*
 726 F. Supp. 1 (D.D.C. 1989) ................................................................. 42

*J.T. v. de Blasio*
   500 F. Supp. 3d 137 (S.D.N.Y. 2020).................................................................. 35

*Jung v. Ass'n of Am. Med. Colls.*
   300 F. Supp. 2d 119 (D.D.C. 2004) .................................................................... 10

*Kim v. Kimm*
   884 F.3d 98 (2d Cir. 2018).................................................................................. 24

*Kimberlin v. Nat'l Bloggers Club*
   No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015)............................... 23

*Kimm v. Chang Hoon Lee & Champ, Inc.*
   196 F. App'x 14 (2d Cir. 2006) .......................................................................... 36

*Kimm v. Lee*
   No. 04 CIV. 5724 (HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) ....................... 24

*Kinchen v. St. John's Univ.*
   Nos. 17-cv-3244, 17-cv- 4409, 2019 WL 1386743 (E.D.N.Y. Mar. 26, 2019)....................... 40

*Kirch v. Embarq Mgmt. Co.*
   702 F.3d 1245 (10th Cir. 2012) .......................................................................... 41

*Klayman v. Obama*
   125 F. Supp. 3d 67 (D.D.C. 2015) ...................................................................... 36

*Klehr v. A.O. Smith Corp.*
   521 U.S. 179 (1997)..........................................................................17, 18, 21

*Knight v. Furlow*
   553 A.2d 1232 (D.C. 1989) ................................................................................ 17

*Kowal v. MCI Commc'ns Corp.*
   16 F.3d 1271 (D.C. Cir. 1994)............................................................................ 22

*Lonegan v. Hasty*
   436 F. Supp. 2d 419 (E.D.N.Y. 2006) ................................................................ 41

*Luis v. Zang*
   833 F.3d 619 (6th Cir. 2016) .............................................................................. 40

*LVRC Holdings LLC v. Brekka*
   581 F.3d 1127 (9th Cir. 2009) ............................................................................ 37

*Manax v. McNamara*
    660 F. Supp. 657 (W.D. Tex. 1987) ........................................................................ 24

*Marsoun v. U.S.*
    525 F. Supp. 2d 206 (D.D.C. 2007) ......................................................................... 6

*McManus v. MCI Commc'ns Corp.*
    748 A.2d 949 (D.C. 2000) ...................................................................................... 43

*McPherson v. Harker*
    No. 18-CV-3082 (BAH), 2021 WL 1820290 (D.D.C. May 6, 2021) ................................ 39, 40

*Meng v. Schwartz*
    116 F. Supp. 2d 92 (D.D.C. 2000) ...................................................................... 33, 35

*Miller v. Meyers*
    766 F. Supp. 2d 919 (W.D. Ark. 2011) .................................................................... 40

*Moncrief v. Lexington Herald-Leader Co.*
    807 F.2d 217 (D.C. Cir. 1986) ................................................................................. 8

*Mondy v. Sec'y of the Army*
    845 F.2d 1051 (D.C. Cir. 1988) .............................................................................. 20

*Mruz v. Caring, Inc.*
    991 F. Supp. 701 (D.N.J. 1998) .............................................................................. 36

*Mwani v. bin Laden*
    417 F.3d 1 (D.C. Cir. 2005) ..................................................................... 6, 11, 12

*Nader v. Democratic Nat. Committee*
    567 F.3d 692 (D.C. Cir. 2009) ........................................................ 20, 21, 44

*New Vision Photography Program, Inc. v. District of Columbia*
    54 F. Supp. 3d 12 (D.D.C. 2014) ............................................................................ 2

*Nexans Wires S.A. v. Sark-USA, Inc.*
    319 F. Supp. 2d 468 (S.D.N.Y. 2004) ..................................................................... 38

*Nodine v. Textron*
    819 F.2d 347 (1st Cir. 1987) .................................................................................. 34

*Nuevos Destinos, LLC v. Peck*
    No. 15-cv-1846, 2019 WL 78780 (D.D.C. Jan. 2, 2019) ............................................. 7

*Nyambal v. Alliedbarton Sec. Servs., LLC*
   153 F. Supp. 3d 309 (D.D.C. 2016) ...................................................... 43

*Peavy v. WFAA-TV, Inc.*
   221 F.3d 158 (5th Cir. 2000) ............................................................ 41

*Petroff Amshen LLP v. Alfa Rehab PT PC.*
   No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022) .......................... 37

*Pohlot v. Pohlot*
   664 F. Supp. 112 (S.D.N.Y. 1987) ...................................................... 36

*Pyramid Sec. Ltd. v. IB Resolution, Inc.*
   924 F.2d 1114 (D.C. Cir. 1991) .................................................... 30, 31

*R.J.R. Nabisco v. European Cmty.*
   579 U.S. 325 (2016) ........................................................................ 25

*Radbob v. Moghim*
   269 A.3d 1035 (D.C. 2022) ............................................................... 18

*RAKIA v. Azima*
   Case No. HC-2016-002798 ................................................................. 5

*Republic of Kazakhstan v. Stati*
   380 F. Supp. 3d. 55 (D.D.C. 2019) ............................................... 24, 29

*Reynolds v. Condon*
   908 F. Supp. 1494 (N.D. Iowa 1995) ................................................. 36

*Riggs v. Home Builders Inst.*
   203 F. Supp. 2d 1 (D.D.C. 2002) ...................................................... 43

*Ritchie v. Sempra Energy*
   No. 10-cv-1513, 2013 WL 12171757 (S.D. Ca. Oct. 15, 2013) .............. 24

*Rotella v. Wood*
   528 U.S. 549 (2000) ................................................................... 16, 18

*Rtskhiladze v. Mueller*
   No. 20-CV-1591 (CRC), 2021 WL 3912157 (D.D.C. Sept. 1, 2021) ........ 19

*Sandza v. Barclays Bank PLC*
   151 F. Supp. 3d 94 (D.D.C. 2015) ....................................................... 2

*Saunders v. Davis*
No. 15-cv-2026 (RC), 2016 WL 4921418 (D.D.C. Sept. 15, 2016) ............................ 23, 27, 34

*Second Amendment Found. v. U.S. Conference of Mayors*
274 F.3d 521 (D.C. Circ. 2001) ............................................................................ 10

*Shatsky v. Palestine Liberation Org.*
955 F.3d 1016 (D.C. Cir. 2020) ............................................................................ 15

*Sheridan v. Mariuz*
No. 07 Civ. 3313, 2009 WL 920431 (S.D.N.Y. Apr. 6, 2009) ................................. 34

*Slate v. Kamau*
No. 20-CV-3732 (BAH), 2021 WL 3472438 (D.D.C. Aug. 6, 2021) ........................ 14

*Sparshott v. Feld Ent., Inc.*
311 F.3d 425 (D.C. Cir. 2002) ........................................................................... 17, 18

*Steinberg v. Int'l Criminal Police Org.*
672 F.2d 927 (D.C. Cir. 1981) ............................................................................. 14

*Sundberg v. TTR Realty, LLC*
109 A.3d 1123 (D.C. 2015) ................................................................................. 44

*Teltschik v. Williams & Jensen, PLLC*
748 F.3d 1285 (D.C. Cir. 2014) ........................................................................... 23

*U.S. v. Maturo*
982 F.2d 57 (2d Cir. 1992) ................................................................................. 40

*U.S. v. Maxwell*
920 F.2d 1028 (D.C. Cir. 1990) ........................................................................... 27

*U.S. v. Minaya*
No. 17-359, 2019 WL 1615549 (D.N.J. Apr. 16, 2019) ........................................ 40

*U.S. v. Steiger*
318 F.3d 1039 (11th Cir. 2003) ........................................................................... 40

*U.S. ex rel. Miller v. Bill Harbert Int'l Constr.*
505 F. Supp. 2d 1 (D.D.C. 2007) ......................................................................... 20

*U.S. v. Philip Morris Inc.*
116 F. Supp. 2d 116 (D.C. Cir. 2000) ..................................................................... 6

*U.S. v. Smith*
  729 F. Supp. 1380 (D.D.C. 1990) .................................................................. 26

*U.S. v. Hawit*
  15-CR-252 (PKC), 2017 WL 663542 (E.D.N.Y. Feb. 17, 2017) ....................................... 26, 28

*Urquhart-Bradley v. Mobley*
  964 F.3d 36 (D.C. Cir. 2020) ...................................................................... 15

*Walden v. Fiore*
  571 U.S. 277 (2014).............................................................................. 10

*Washington Post v. Robinson*
  935 F.2d 282 (D.C. Cir. 1991) ..................................................................... 2

*Watson v. Norris*
  No. 89-0625, 1991 WL 7165 (D.D.C. Jan. 11, 1991).............................................. 29

*Weaver v. Bratt*
  421 F. Supp. 2d 25 (D.D.C. 2006) ............................................................. 33, 34

*Western Assocs. Ltd. P'ship. v. Market Square Assocs.*
  235 F.3d 629 (D.C. Cir. 2001) ............................................................... 22, 31

*White v. Washington Intern Student Hous.*
  No. CV 18-2021 (CKK), 2019 WL 1858298 (D.D.C. Apr. 25, 2019) .................................. 19

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*
  530 F. Supp. 2d 486 (S.D.N.Y. 2007)........................................................... 36

*Wright v. Towns*
  No. 90-0565, 1991 WL 100388 (D.D.C. May 30, 1991)............................................ 30

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*
  774 F.3d 1065 (6th Cir. 2014) ................................................................ 38

*Zandford v. NASD*
  30 F. Supp. 2d 1 (D.D.C. 1998) ............................................................... 16

*Zheng v. Yahoo! Inc.*
  No. C-08-1068, 2009 WL 4430297 (N.D. Cal. Dec. 2, 2009)...................................... 40

**Statutes**
18 U.S.C. § 1030.......................................................................... passim

18 U.S.C. § 1343......................................................................... 26, 28

18 U.S.C. § 1503 ................................................................................. 26

18 U.S.C. § 1951 ................................................................................. 26

18 U.S.C. § 1956 ............................................................................ 28, 29

18 U.S.C. § 1961 ........................................................................... passim

18 U.S.C. § 1962 ............................................................ 22, 23, 25, 33

18 U.S.C. § 1964 ................................................................... 15, 23, 44

18 U.S.C. § 1965 ................................................................................... 7

18 U.S.C. § 2510 ......................................................................... 39, 41

18 U.S.C. § 2511 ................................................................... 15, 39, 41

18 U.S.C. § 2520 ........................................................... 15, 16, 17, 39

D.C. Code § 12-301 ......................................................................... 16

D.C. Code § 13-423 .......................................................... 7, 8, 13, 14

D.C. Code § 22-2001 ......................................................................... 26

D.C. Code § 22-3251 ......................................................................... 26

D.C. Code § 23-541 ........................................................................... 41

D.C. Code § 23-542 ............................................................ 15, 16, 39, 41

D.C. Code § 23-554 ..................................................................... 15, 16

**Rules**
Fed. R. Civ. P. 9 ............................................................................... 27

Fed. R. Civ. P. 12 ................................................................... 1, 3, 21

**Other Authorities**
Restatement (Second) of Torts § 772, cmt. b (1979) ....................... 42

Defendant David Neil Gerrard respectfully submits this memorandum in support of his motion to dismiss the Amended Complaint filed by Plaintiff Jonathan "Jay" Solomon on February 17, 2023 (Dkt. 47) pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure.

Plaintiff Jay Solomon ("Solomon") was a foreign affairs reporter with the Wall Street Journal (the "Journal"). As alleged in his Amended Complaint, Solomon was terminated in June 2017 as the result of an Associated Press ("A.P.") investigation into Farhad Azima ("Azima"), an American businessman with business interests in the Middle East, who was also a long-time source of Solomon. As part of that investigation, the Associated Press obtained communications and information that raised questions about Solomon and Azima's relationship. When the A.P. brought its findings to the Journal, the Journal terminated Solomon. As reported by the A.P. on June 21, 2017, Solomon acknowledged there were good reasons for his termination by the Journal:

> The relationship was uncovered in interviews and in internal documents that Azima's lawyer said were stolen by hackers.
>
> "I clearly made mistakes in my reporting and entered into a world I didn't understand." Solomon told the AP on Wednesday. "I never entered into any business with Farhad Azima, nor did I ever intend to. But I understand why the emails and the conversations I had with Mr. Azima may look like I was involved in some seriously troubling activities. I apologize to my bosses and colleagues at the Journal, who were nothing but great to me."
>
> Two other Denx partners — ex-CIA employees Gary Bernsten and Scott Modell — told the AP that Solomon was involved in discussing proposed deals with Azima at the same time he continued to cultivate the businessman as a source for his stories for the Journal. Bernsten and Modell said Solomon withdrew from the venture shortly after business efforts began and that the venture never added up to much. They provided no evidence as to when Solomon withdrew.
>
> The emails and texts reviewed by the AP — tens of thousands of pages covering more than eight years — included more than 18 months of communications involving the apparent business effort. Some messages described a need for Solomon's Social Security

> number to file the company's taxes, but there was no evidence
> Solomon provided it.

*See* March 17, 2023, Declaration of Andrew St. Laurent ("St. Laurent Dec."), Ex. 1.[1]

Solomon has not established that Defendant Gerrard has the requisite contacts with the District of Columbia (the "District" or "D.C.") to establish personal jurisdiction over him. Accordingly, the Amended Complaint should be dismissed with prejudice. In addition, Solomon's causes of action are time-barred. Solomon attempts to save his claims by amending his complaint to now include allegations about later published articles and post-Journal-termination career setbacks. Because these alleged injuries arise from the same alleged acts of the Defendants, *viz.*, the pre-2016 hacking of Azima, and because Solomon has been on notice of those acts for at least six years, these "new" injuries do not change the statute of limitations analysis. In the alternative, these allegations, including that Solomon was unable to sell a book proposal on Confederal Secretary of State, Judah P. Benjamin because of the continued press coverage of his termination (*see* Am. Compl. ¶ 114), are speculative and conclusory, and, thus, insufficient to revive Solomon's time-barred claims.

Finally, Solomon has failed to plead sufficient facts to satisfy the numerous requirements of a RICO claim or to support his other federal and state claims.

---

[1] It is "entirely proper" for the court to take judicial notice of published news articles not "for the truth of [their] assertions, but rather for the fact that they contained certain information, which (true or not) should have put plaintiff on notice of the need to investigate [his] potential claims." *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 113 (D.D.C. 2015). And a Court may take notice that facts were published in area papers. *see id.* (*citing Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (a "court may take judicial notice of the existence of newspaper articles in the Washington, D.C., area that publicized" certain facts)); *see also New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 23 (D.D.C. 2014) ("It is well established that courts are allowed to take judicial notice of matters in the general public record.") (cleaned up) (internal citations omitted).

## FACTUAL BACKGROUND[2]

A.    *Solomon Is Defamed and Fired Based on Documents that Defendants Obtained by Hacking Farhad Azima*

Sheikh Saud is the Ruler of the Emirate of Ras Al Khaimah, one of the seven United Arab Emirates ("Sheikh Saud" or the "Ruler") which in turn controls the Ras Al Khaimah Investment Authority ("RAKIA"). Am. Compl. ¶ 19. Beginning in or around 2014, the Ruler hired Defendants Dechert and its partner, David Neil Gerrard ("Gerrard") to investigate claims of fraudulent activity at RAKIA, allegedly by its former CEO Khater Massaad ("Dr. Massaad"). *Id.* ¶ 35.

As part of that representation, in 2015 Gerrard and co-defendants targeted Farhad Azima, a former business associate of RAKIA, by hacking his email communications. *Id.* ¶¶ 32, 78-84. Upon discovering Azima and Solomon's relationship, Dechert and Gerrard instructed their "Cohorts" (offhandedly described in the Am. Compl. ¶ 13 as "co-conspirators and fellow participants in a racketeering enterprise" without any further identifying details whatsoever) to locate documents from those emails relating to Solomon. Following the hack, a tranche of encrypted electronic communications was posted on the internet, which included an entire folder containing communications between Solomon and Azima. *Id.* ¶ 38. The Defendants and/or their Cohorts, including Defendants Forlit, Insight and SDC-Global, created a dossier of communications, selected in a manipulated way to present a narrative implicating Solomon in improper, unethical, and/or fraudulent activities. The Defendants and/or their Cohorts sent this dossier to the Journal and then to other media outlets to discredit him. As a result of the Defendants' actions, Solomon was discredited and was fired by the Journal. *Id.*

---

[2] All the non-conclusory factual allegations of the Amended Complaint are treated as true for the purposes of this motion only. Fed. R. Civ. P. 12(b). *See, e.g.*, *Fam v. Bank of Am. NA (USA)*, 236 F. Supp. 3d 397, 405 (D.D.C. 2017).

In June 2017, Solomon was contacted by A.P. reporter Jeff Horwitz, who said he was writing about Solomon's business dealings with Azima. Solomon told Horwitz the same thing that he had told others at the Journal, denying that Solomon was ever part of any of Azima's companies. Horwitz was not placated and accused Solomon in communications with the Journal's public relations team of being party to a string of criminal activities with Azima. On information and belief, Horwitz received his information from the stolen emails, which were provided to him by the Defendants. *Id*. ¶ 105.

Among other things, Horwitz told the Journal that he had evidence that: Solomon played a role in trafficking arms to the Middle East; he was part of a conspiracy to instigate a coup against the royal family of Kuwait; and he had an interest in Denx. Defendant Gerrard made similar claims about Azima in British court proceedings. None of them were true, and despite Solomon's denials, the Journal fired Solomon based on these allegations. *Id*. ¶ 106.

On June 21, 2017, the A.P. published its story on its investigation of Azima[3] and another story on Solomon's termination in which Solomon is quoted to say: "I clearly made mistakes in my reporting and entered into a world I didn't understand… I never entered into any business with Farhad Azima, nor did I ever intend to. But I understand why the emails and the conversations I had with Mr. Azima may look like I was involved in some seriously troubling activities. I apologize to my bosses and colleagues at the Journal, who were nothing but great to me." *See* Ex. 1.

The enterprise used the data to induce media outlets to write false and damaging stories about Solomon in an attempt to harm him, his business, and his properties. They did so by taking

---

[3] John Gambrell, Jack Gillum & Jeff Horwitz, *'Worth killing over': How a plane mogul dodged US scrutiny*, AP NEWS (June 21, 2017), https://apnews.com/article/iran-mo-state-wire-ks-state-wire-middle-east-international-news-4a4b6e9dfc0949e698ee0ada284414ed.

the information that they had stolen via hacking and disseminating or causing to be disseminated this information in articles that they caused to be published. Am. Compl. ¶¶ 110-115.

### B. Azima Initiates Legal Proceedings that Reveal Defendants as the Source of the Hacked Materials

In early 2016, RAKIA sued Azima in the United Kingdom for fraud based on their prior business dealings.  *See RAKIA v. Azima*, Case No. HC-2016-002798 (the "U.K. Proceeding"). Some of the evidence in that case involved emails from Azima's account. Am. Compl. ¶ 123. Later in 2016, Azima sued RAKIA in this Court (the "Azima D.C. Proceeding"), alleging that RAKIA hacked his emails.  *See* Complaint, *Azima v. RAK Investment Authority*, No. 16-cv-1948 (D.D.C. Sept. 30, 2016), ECF No. 1.  The Azima D.C. Proceeding was eventually dismissed by the D.C. Circuit on *forum non conveniens* grounds.  *See Azima v. RAKIA*, 926 F.3d 870, 880 (D.C. Cir. 2019).  After his claims were dismissed, Azima filed counterclaims against RAKIA in the U.K. Proceeding again based on the alleged hacking, eventually adding Dechert and Gerrard (and others) as defendants.  That proceeding is pending.

Solomon alleges that Dechert filed briefs before this Court and the D.C. Circuit "falsely and misleadingly asserting that Mr. Azima's stolen data was 'obtained via publicly available internet sources.'" Am. Compl. ¶ 125. Solomon also asserts that meetings were held to fabricate responses to Azima's inquiries in those proceedings regarding how his data had been discovered by RAKIA, including meetings in Cyprus and Switzerland. *Id.* ¶¶ 126-36.

### C. Solomon Alleges Lost Professional Income and Damage to Reputation

Solomon alleges damage in the forms of, inter alia, lost income from his employment at the Journal and other outlets, damaged reputation, lost awards, missed opportunities to build on his reputation such as speaking engagements and book publishing deals that would have otherwise been available to him, public humiliation, emotional distress, mental grieving, pain and suffering.

*Id.* ¶ 257. As discussed herein, these types of damages are not available under RICO or many of Solomon's other causes of action.

## **ARGUMENT**

### I.   **SOLOMON HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER GERRARD**

      A.     *Standard Under Rule 12(b)(2)*

A plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). To meet this burden, plaintiff "must allege specific facts on which personal jurisdiction can be based; he cannot rely on conclusory allegations." *Marsoun v. U.S.*, 525 F. Supp. 2d 206, 211 (D.D.C. 2007). Determining whether personal jurisdiction exists over any defendant in this case is a "two-part inquiry." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). "A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *Id.*

With respect to the constitutional inquiry, the plaintiff must plead facts sufficient to establish the defendant had the requisite "minimum contacts with the District of Columbia" and that the exercise of personal jurisdiction over him would be reasonable. *U.S. v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 129 (D.C. Cir. 2000). In the absence of a basis for general jurisdiction— which requires a defendant's contacts with the judicial district to be "so constant and pervasive 'as to render [him] at home in the forum state,'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotation marks omitted)—a plaintiff must meet the test for specific jurisdiction, which requires that there be minimum contacts between the defendant and the forum "such that [the defendant] should reasonably anticipate being haled into court there." *Bailey v. J&B Trucking Services, Inc.*, 577 F. Supp. 2d 116 (D. D. C. 2008).

B.     *The Amended Complaint Does Not Sufficiently Allege Personal Jurisdiction Over Gerrard*

Solomon cites two bases for personal jurisdiction over Gerrard, (1) 18 U.S.C. § 1965(b), the RICO statute, and (2) D.C. Code § 13-423(a)(3), a subsection of the D.C. long-arm statute. Each is inapplicable. We address those cited bases first, followed by a discussion of other potential bases of personal jurisdiction.

i.     *RICO Nationwide Service Is Inapplicable*

Section 1965(b) is RICO's nationwide service provision which provides if "the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." 18 U.S.C. § 1965(b); *see Nuevos Destinos, LLC v. Peck*, No. 15-cv-1846, 2019 WL 78780, at *12 (D.D.C. Jan. 2, 2019). However, § 1965(b) "cannot be used to obtain personal jurisdiction over [foreign] defendants because it only provides for *nationwide* service of process." *Id.*

Gerrard is a U.K. resident who was not served within the United States. Accordingly, § 1965(b) is inapplicable to Gerrard. *See Nuevos Destinos*, 2019 WL 78780 at *12; *Avianca, Inc. v. Corriea*, 705 F. Supp. 666, 684–85 (D.D.C. 1989) ("[a]lthough RICO authorizes nationwide service of process, it does not provide for service of process in a foreign country" (internal citation omitted)), *superseded on other grounds by Avianca, Inc. v. Harrison*, 70 F.3d 637 (D.C. Cir. 1995). In the event of service outside the United States "plaintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit." *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015).

### ii.    D.C. Code § 13-423(a)(3) is Inapplicable

Other than the RICO nationwide service statute, Solomon invokes only subsection (a)(3) of D.C.'s long-arm statute. *See* Am. Compl. ¶ 4. Subsection (a)(3) provides for personal jurisdiction for claims arising from a defendant "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423(a)(3). "This provision is 'a precise and intentionally restricted tort section which stops short of the outer limits of due process,' and requires that both act and injury occur in the District of Columbia." *Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004) (quoting *Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986)).

"Regardless of where the injury occurred, without an act or omission in the District of Columbia causing that injury, paragraph (a)(3) is unavailable as a basis for personal jurisdiction." *Employment Law Group, P.C. v. Brady*, No. 20-cv-1852 (JDB), 2022 WL 35626, at *6 (D.D.C. Jan. 4, 2022). Even where tortious communications are sent into and cause injury within the District, that is insufficient if the communication did not also originate in the District. *See Doe v. City of Boston*, No. 20-cv-2948 (CKK), 2021 WL 2457961, at *5 (D.D.C. June 16, 2021) (providing a retaliatory reference to a D.C.-based prospective employer was insufficient to establish jurisdiction as the reference was not given within the District); *iMark Marketing Serv., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 160 (D.D.C. 2010) (quoting *Moncrief*, 807 F.2d at 220) (the act of defamation occurs where the defendant made the defamatory statements.)

While there are allegations that Gerrard held meetings in London, Cyprus, and New York, and the Complaint alleges generally that there was "conduct in the United States," there are no allegations that Gerrard entered D.C. or committed any tort within. *See iMark Marketing Serv., LLC*, 753 F. Supp. 2d at 159. ("[O]ut-of-forum actions…do not satisfy D.C. Code § 13-423(a)(3).")

There are also no allegations that Gerrard participated in the Azima D.C. Proceeding.

What is alleged is that Gerrard made statements and participated in the UK Proceeding which "given the status of the D.C. District Court Proceeding, th[ese] false statement[s] w[ere] necessarily intend[ed], at least in part, to obstruct those proceedings" (Am. Compl. ¶¶ 129, 131, 132, 135). However, not only is this statement conclusory, but it is also counterfactual. The docket in the D.C. Proceeding[4] shows that case was resolved on legal and procedural grounds without any evidence, denials, or other facts being a factor: on September 30, 2016, Azima filed the complaint in this District ([Dkt. 1](#)); on December 12, 2016, RAKIA filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim which stayed discovery ([Dkt. 13](#)); on April 25, 2017, the Court granted Azima leave to file an amended complaint to address issues raised during argument on the motion to dismiss ([Dkt. 27](#)); on May 16, 2017, Azima filed an amended complaint ([Dkt. 28](#)); on June 13, 2017, RAKIA filed a motion to dismiss the amended complaint which continued the stay of discovery ([Dkt. 31](#)); on March 30, 2018, the District Court denied that motion ([Dkt. 42](#)); on April 13, 2018, RAKIA filed notice of an interlocutory appeal divesting the District Court of jurisdiction[5] ([Dkt. 43](#)); on July 6, 2018, Azima sought leave to seek third-party discovery ([Dkt. 48](#)); on November 5, 2018, the District Court found that it did not have jurisdiction to order any discovery considering the interlocutory appeal of its prior decision ([Dkt. 62](#)); and on July 9, 2020, the District Court dismissed Azima's complaint pursuant to the June 18, 2019 decision and order of the U.S. Court of Appeals for the District of Columbia Circuit which reversed the Court's prior decision and instructed the case to be dismissed on *forum non conveniens* grounds

---

[4] "[C]ourts are permitted to take judicial notice of the dockets in other judicial proceedings." *Amobi v. Brown*, 317 F. Supp. 3d 29, 35-36 (D.D.C. 2018).

[5] As found by the Court in addressing its own jurisdiction. *See* Azima D.C. Proceeding, [Dkt. 62](#).

based on the language of a settlement agreement between Azima and RAKIA (Dkt. 68). *See Azima*, 926 F.3d at 880. The UK proceedings had no effect on the D.C. Proceeding.

iii.    *Solomon Cannot Establish Jurisdiction Through the Alleged Conspiracy*

Solomon alleges only one act within the District by any of Gerrard's alleged co-conspirators, the August 8, 2018 filing of a brief by Dechert in the D.C. Proceeding. However, that act is insufficient to establish jurisdiction over Gerrard.

"Courts in this Circuit . . . have applied the test for co-conspirator jurisdiction warily in order to prevent a broad extension of long-arm jurisdiction." *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 90 (D.D.C. 2017) (internal quotation marks omitted). To satisfy this test, "plaintiffs must plead *with particularity* the conspiracy as well as the *overt acts within the forum* taken in furtherance of the conspiracy." *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011) (citation and internal quotation marks omitted). "This particularity requirement is 'strictly enforced.'" *EIG Energy*, 246 F. Supp. 3d at 90 (quoting *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 141 (D.D.C. 2004)). "Since the bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction, a plaintiff must allege specific acts connecting the defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Circ. 2001) (internal quotation marks and alterations omitted).

In *Walden*, the Supreme Court "made clear that, for purposes of determining specific jurisdiction, 'it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.'" *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 185 (D.C. 2018) (quoting *Walden v. Fiore*, 571 U.S. 277, 291 (2014)). Accordingly, "a plaintiff who seeks to establish jurisdiction over a defendant based on a co-conspirator's contacts must plead, at a

10

minimum, that the defendant *knew* his co-conspirator was carrying out acts in furtherance of the conspiracy *in the forum*.'" *Cockrum*, 319 F. Supp. 3d at 185–86 (quoting *EIG Energy*, 246 F. Supp. 3d at 91).

Here, neither the hacking nor subsequent communications that Solomon cites as leading to his termination are alleged to have originated in the District (with, as discussed further herein, the communications alleged to have caused his termination coming from an A.P. reporter, who is neither a party defendant nor an alleged "Cohort"). S*ee, e.g.*, *Azima v. Rak Inv. Auth.*, 305 F. Supp. 3d 149, 171 (D.D.C. 2018) (citing *Doe v. Fed. Democratic Republic of Eth.*, 851 F.3d 7, 10 (D.C. Cir. 2017) (the hacking "plainly lay[s] abroad" if the hackers themselves are not inside the United States, and so does the "'tortious act[ ] of computer programming' that constitutes the actus reus", or alternatively, the "'placement of [a virus] on [the plaintiff's] computer' [which] injures the victim when he] 'open[s] the infected email attachment.'")

Similarly, there are no allegations that Gerrard had any knowledge of participation in the August 8, 2018 Dechert filing, or that Dechert agreed to make that filing for the purpose of furthering the goals of the alleged conspiracy. *See* Am. Compl. ¶ 100; *see e.g. EIG Energy Fund XIV, L.P.,* 246 F. Supp. 3d at 90 (finding plaintiff could not establish co-conspiracy jurisdiction where it was not alleged the parties agree to commit the scheme *for the purpose* of defrauding investors.)

Further, to meet the Due Process requirement, a plaintiff must plead that the litigation results from alleged injuries that "arise out of or relate to those activities [in the forum]." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 864 (D.C. Cir. 2022) (quoting *Mwani*, 417 F.3d at 12). This test ensures that a district court exercises specific personal jurisdiction only over those foreign

defendants who had "fair warning that a particular activity may subject them" to U.S. jurisdiction. *Mwani*, 417 F.3d at 11 (cleaned up).

Even if Gerrard had some involvement with the D.C. Proceeding, that litigation had no effect on Solomon. Solomon was not a party to it nor was he a third-party beneficiary of the agreement between Azima and RAKIA such that he had an interest in its outcome. There is simply no logical connection between any conduct alleged to have been taken by any defendant (or Cohort) in connection with the Azima D.C. Proceeding and any injury suffered by Solomon. Solomon's alleged injuries relate solely to his termination from the Journal. In fact, Solomon has amended his complaint to make this more explicit, adding: "As these book publishing deals and speaking engagements drew from Mr. Solomon's status and credibility as a Wall Street Journal reporter, Mr. Solomon cannot replicate these opportunities in quantity and magnitude, even through other employment." Am. Compl. ¶ 257. Solomon has made no allegation why the source of the alleged hack was relevant to the injury he sustained or why a cover-up, even if successful, would have made that injury worse. Accordingly, Solomon has not provided any logical basis as to why any of the alleged obstruction of justice in the D.C. Proceeding relates to his injury in any way. *See Bernhardt*, *supra*, at 865 (plaintiff's allegations did not support an inference that the injuries from a bombing arose out of or related to the foreign defendants' sanctions evasion); *Ghebreyesus v. Federal Democratic Republic of Ethiopia*, No. 21-cv-02865, 2022 WL 4534631, at \*4 (D.D.C. Sept. 28, 2022) (plaintiffs did not allege sufficient facts to show their claims arose out of or related to any contacts with D.C. as alleged misconduct surrounding Ethiopian litigation was directed at Ethiopia and allegedly executed in part, in Nevada).

> iv.   *Solomon Cannot Establish Jurisdiction Under Other Subsections of the DC Long-Arm Statute*

Plaintiff does not invoke any other subsections of DC Code § 13-423(a), *see* Am. Compl. ¶ 4, presumably because it is evident none apply. Subsection 13-423(a)(1), which allows personal jurisdiction related to claims arising from a defendant's "transacting any business in the District of Columbia," *id.* § 13-423(a)(1), does not apply. While the "'transacting any business' clause generally has been interpreted to be coextensive with the Constitution's due process requirements and thus to merge into a single inquiry," *GTE New Media Servs. Inc.*, 199 F.3d at 1347, a plaintiff must show that a defendant "has purposefully engaged in some type of commercial or business-related activity directed at District residents." *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001).

Here, the Amended Complaint does not allege any facts that support that Gerrard individually engaged in commercial or business-related activity within the District or directed at District residents. In fact, the Amended Complaint, paragraph 4, which sets forth the purported basis for jurisdiction over Gerrard repeatedly alleges that Gerrard transacted business in the United States which gave rise to injuries in D.C. — not that Gerrard transacted business in the District as necessary for jurisdiction under § 13-423(a)(1).

Subsection 13-423(a)(2) authorizes personal jurisdiction for claims arising out of a defendant's "contracting to supply services in the District of Columbia." There are no allegations that Gerrard contracted "to supply a service in [the District of Columbia]." *B3DC Navy Yard LLC v. Epoch Design Grp. Inc.*, No. 19-2939 (JEB), 2020 WL 888574, at *3 (D.D.C. Feb. 24, 2020).

Section 13-423(a)(4) is also inapplicable. While that section allows for personal jurisdiction over a defendant who "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia," a plaintiff must demonstrate that the defendant (1)

"regularly does or solicits business" in the District; (2) "engages in any other persistent course of conduct" there; or (3) "derives substantial revenue from goods used or consumed, or services rendered" there. D.C. Code § 13-423(a)(4). "[S]ection (a)(4) requires that the persistent course of conduct occur *in* the District; directing conduct from another state into the District via telephone, internet, and mail is insufficient." *FutureGen Co. v. Carter*, 915 F. Supp. 2d 104, 108 (D.D.C. 2013). "These so-called 'plus factors' ensure that personal jurisdiction is not exercised over a defendant when the in-District injury 'is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.'" *Slate v. Kamau*, No. 20-CV-3732 (BAH), 2021 WL 3472438, at *7 (D.D.C. Aug. 6, 2021) (quoting *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981)).

Here, as detailed further below, Solomon has not alleged that an act by Gerrard caused his injury or that Gerrard engaged in persistent conduct in the District or that Gerrard derives substantial revenue from service in the District. Subsections (a)(5)–(a)(7) of the long-arm statute relate to real property within the District, serving as a surety for an agreement within the District, and having a familial relationship within the District, and do not apply to the allegations in the Amended Complaint.

> ### v.   *Exercise of Personal Jurisdiction Over Gerrard Would Violate Due Process*

Even if there were a statutory basis for personal jurisdiction over Gerrard, dismissal of the amended complaint would still be required because the exercise of personal jurisdiction over Gerrard would violate due process.

Gerrard is a citizen and resident of the United Kingdom. He does not have District of Columbia contacts that are "so constant and pervasive as to render [him] essentially at home in the forum State." *Daimler*, 571 U.S. at 122 (internal quotation marks omitted).  In the absence of this

"'general or all-purpose jurisdiction,'" the complaint must allege "'a relationship among the defendant, the forum, and the litigation' such that 'the defendant's suit-related conduct creates a substantial connection with the forum'" in order to justify the exercise of specific jurisdiction. *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 43–44 (D.C. Cir. 2020) (quoting *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020) (alterations adopted)). Plaintiff's complaint, even as amended, does no such thing. As described in detail above, the amended complaint does not identify a single act taken by Gerrard in the District of Columbia, much less sufficient contacts to conclude that there is a substantial connection among Gerrard, the wrongful acts, and the District. "Minimum contacts" are accordingly not satisfied.

## II.     SOLOMON'S CLAIMS ARE TIME-BARRED

Solomon's Amended Complaint contains nine Counts consisting of seven causes of action and two dependent claims for conspiracy and punitive damages. Based upon the pleadings and other information the Court may take judicial notice, each cause of action is time-barred as a matter of law.

The seven causes of action are the following:

- Civil Rico (18 U.S.C. § 1964(c))

- Conspiracy to Intentionally Access Computers under the Computer Fraud and Abuse Act (CFAA) (18 U.S.C. §§1030(a)(2) and (b))

- Disclosure of Wire, Oral or Electronic Communication under the Wiretap Act (18 U.S.C. §§2511(1)(C) and 2520)

- Use of Intercepted Wire, Oral, or Electronic Communication under the Wiretap Act (18 U.S.C. §§2511(1)(d) and 2520)

- Disclosure of Wire of Oral Communication under DC Wiretap Act (D.C. Code §§ 23-542(1)(2) and 23-554)

- Use of Intercepted Wire, Oral, or Electronic Communication under the Wiretap Act (D.C. Code §§ 23-542(a)(2) and 23-554)

- Use of Intercepted Wire, Oral, or Electronic Communication under the Wiretap Act (D.C. Code §§ 23-542(a)(3) and 23-554)

- Tortious Interference with Business Relationships

A.      *The Statutes of Limitations*

The statute of limitations for civil RICO claims is four years from the date the plaintiff discovers or should have discovered their injury. *Rotella v. Wood*, 528 U.S. 549, 552-553 (2000). The statute of limitations for civil claims under the Computer Fraud and Abuse Act is "2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). The statute of limitations for a civil claim under the federal wiretap law is "two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e) (emphasis added). The statute of limitations for tortious interference with business relationships and civil conspiracy under D.C. law is three years "from the time the right to maintain the action accrues." D.C. Code § 12-301(8); *Zandford v. NASD*, 30 F. Supp. 2d 1, 24 (D.D.C. 1998). The D.C. Wiretap Act does not specify the applicable statute of limitations, so claims under the statute are subject to D.C.'s residual three-year statutory limitations period. D.C. Code § 12–301(8)*; see also Chalabi v. Hashemite Kingdom of Jordan*, 503 F. Supp. 2d 267, 273-274 (D.D.C. 2007). The Complaint here was filed on October 14, 2022 ([Dkt. 1](#)), well after the expiration of the statute of limitation of each of Solomon's causes of action.

B.      *The Time of Accrual*

For civil RICO claims, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella*, 528 U.S. at 555. Whether a plaintiff knew of the alleged pattern of racketeering activity that caused the harm, or of any predicate act in that pattern, has no bearing on the application of the statute of limitations. *See Klehr v. A.O. Smith Corp.*, 521 U.S.

16

179, 187 (1997). A plaintiff need not know the identity of the alleged wrongdoer; it does not matter

if a plaintiff "remained unaware of the defendants' racketeering activities, and unaware that [his]

injuries arose out of such activities." *Hargraves v. Cap. City Mortg. Corp.*, 140 F. Supp. 2d 7, 16

(D.D.C. 2000), *amended on other grounds*, 147 F. Supp. 2d 1 (D.D.C. 2001); *see also Chalabi*,

503 F. Supp. 2d at 274 ("When a cause of action accrues upon plaintiff's discovery of his injury,

'[i]t is inconsequential that he did not then know the full extent or duration of the injury.'")

 The Computer Fraud and Abuse Act similarly provides that accrual is measured from the

date of the act complained of or the date of the discovery of the damage, whichever is later. 18

U.S.C. § 1030(g). *See Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105, 110 (D.D.C.

2005).

 The Federal Wiretap Act accrues when a plaintiff "first has a reasonable opportunity to

discover the violation, "18 U.S.C. § 2520(e), i.e., when plaintiff has "such notice as would lead a

reasonable person either to sue or to launch an investigation that would likely uncover the requisite

facts." *Sparshott v. Feld Ent., Inc*., 311 F.3d 425, 429 (D.C. Cir. 2002) (citation omitted).

 Similarly, when the relationship between the fact of the injury and the tortious conduct

under D.C. law is obscure, "a cause of action accrues when the plaintiff has knowledge of (or by

the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2)

its cause in fact, and (3) some evidence of wrongdoing." *Knight v. Furlow*, 553 A.2d 1232, 1234

(D.C. 1989). As with federal law, a plaintiff need not know the full details of his injury for accrual

to occur. *Drake v. McNair*, 993 A.2d 607, 617-18 (D.C. 2010).

 Here, Solomon claims in December of 2016 the hacked documents were provided to the

Journal, which confronted him almost immediately with the contents of the allegedly hacked

emails that related to Solomon's conduct. Am. Compl. ¶ 101. Solomon began to experience

changes in how he was treated at the Journal after that meeting. *Id.* at ¶ 104. Solomon claims that

as the result of inquiries from the A.P. concerning what he presumes were the same documents,

the Journal fired him in June 2017. *Id.* at ¶ 13-15. Solomon was aware of his injury no later than

June 2017, and aware of the documents implicating his wrongful conduct that were allegedly

hacked from Azima in December 2016. This is all that was required for Plaintiff's claims to accrue.

*See Rotella*, 528 U.S. at 555 (RICO claim); *Sparshott*, 311 F.3d at 429 (Federal Wiretap claim);

*Radbob v. Moghim*, 269 A.3d 1035, 1044 (D.C. 2022) (D.C. claims).

Solomon's Amended Complaint looks to new injuries to extend the statute of limitations.

However, those allegations do not restart the running of the statute of limitations because the

alleged "new injuries" all stem from the same cause as the "old injuries": Solomon's public

termination by the Journal. *See Klehr*, 521 U.S. at 190 (dismissing RICO claim where plaintiffs

had not "shown how any new act could have caused them harm over and above the harm that the

earlier acts caused," even though they alleged predicate acts that occurred within the limitations

period); *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 730 (D.D.C. 2008) ("the absence

of recent injury bar[red] [plaintiff's] claim"). While he cites to news articles within the statute of

limitation that he claims created new injuries, those articles relate to the same basic facts which

Solomon had been aware of for years.[6]

More importantly, it is not alleged that the articles contain any new hacked information or false

statements, nor do the pleadings explain in any logical or rational matter how these articles, even

---

[6] *See e.g.* Nick Kennedy, *Expect more Iranian Cyber Attacks as Sanctions Continue to Bite*, International Policy Digest (Oct. 11, 2019) (linking to Solomon's own account of events) (annexed to St. Laurent decl. as Ex. 3),

https://web.archive.org/web/20191011080349/https://intpolicydigest.org/2019/10/11/expect-more-iranian-cyber-attacks-as-sanctions-continue-to-bite/.

if promoted by the defendants, create reputational injuries separate from the time-barred injuries arising from Solomon's termination from the Journal.

While new independent defamatory statements would have their own statute of limitations, new injuries cannot arise once the allegedly damaging information is available from another source.[7] *See Rtskhiladze v. Mueller*, No. 20-CV-1591 (CRC), 2021 WL 3912157, at *10 (D.D.C. Sept. 1, 2021). Solomon's damages all originate with the release of the hacked communications in 2016 or his termination in 2017. *See* Ex. 1. The cited articles largely discuss Solomon's March 5, 2018, essay in the Columbia Journalism Review entitled "The Source: How Hacked Emails and a Yacht in Monaco Ended my Career at *The Wall Street Journal*" (the "CJR Essay")[8] in which he discusses his relationship with Azima, termination from the Journal, and he admits to errors. Solomon's conclusory claim that these articles rather than the underlying facts covered in them have caused him new injury is belied by the contents of the articles and common sense and need not be accepted by the Court. *See Rtskhiladze; see also Greenpeace, Inc. v. Dow Chemical Co.*, 808 F. Supp. 2d 262, 267-68 (D.D.C. 2011).

C.      *Solomon Has Not Plead a Basis for Tolling*

Solomon has not set forth a basis for tolling the statute of limitations. Equitable estoppel "prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159

---

[7] In addition, and as described in detail below, none of the Defendants are alleged to have made (or caused to have been made) any of the allegedly defamatory statements, which itself breaks the chain of causation. *See also White v. Washington Intern Student Hous.*, No. CV 18-2021 (CKK), 2019 WL 1858298, at *6 (D.D.C. Apr. 25, 2019) (statute of limitations against one defendant cannot be affected by action of a third party).

[8] *See* Jay Solomon, *The Source*, COLUMBIA JOURNALISM REVIEW (March 5, 2018), https://www.cjr.org/special_report/the-source.php. (annexed to St. Laurent Decl. as Ex. 2).

F.3d 1363, 1367 (D.C. Cir. 1998) (emphasis removed). A "court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). And regardless of "[w]hatever the lengths to which a defendant has gone to conceal the wrongs," equitable estoppel does not apply "if a plaintiff is on notice of a potential claim." *Nader v. Democratic Nat. Committee*, 567 F.3d 692, 700 (D.C. Cir. 2009). "Neither a lack of knowledge of the specific pattern of fraudulent activity, or an inability to know the particular identities of some of the perpetrators . . . alters this result." *U.S. ex rel. Miller v. Bill Harbert Int'l Constr.*, 505 F. Supp. 2d 1, 9 (D.D.C. 2007).

As alleged in the Amended Complaint, the Journal told Solomon about the allegedly hacked emails between him and Azima in December 2016, Am. Compl. ¶ 101. On May 16, 2017, Azima filed an Amended Complaint in the Azima D.C. Proceeding alleging that RAKIA was responsible for hacking Azima's data and made allegations supporting the inference that Dechert and Gerrard were involved. *See* Amended Complaint, *Azima v. RAK Investment Authority*, No. 16-cv-1948, ECF No. 28 (D.D.C. May 16, 2017). On June 21, 2017, the A.P. reported in the story on Solomon's termination that Azima's lawyer said the documents cited in their investigation were stolen by hackers. *See* Ex. 1. The Azima D.C. Proceeding was publicized by at least four major news outlets between 2017 and 2018. [9] The March 5, 2018 CJR essay addressed the hacking claims

---

[9] *See* fn. 3; *see also* Gardiner Harris & Mark Landler, *Qatar Charm Offensive Appears to Have Paid Off, U.S. Officials Say*, N.Y. TIMES (April 9, 2018), https://www.nytimes.com/2018/04/09/us/politics/qatar-trump-embargo-charm-offensive.html; Kevin Collier, *How Two Persian Gulf Nations Turned The US Media Into Their Battleground*, BUZZFEED NEWS (May 10, 2018), https://www.buzzfeednews.com/article/kevincollier/qatar-uae-iran-trump-leaks-broidy; Zach Dorfman, *The Mysterious Tale of a Powerful American Businessman, Three Sanctioned Iranians and an Imprisonment in Tehran*, POLITICO (May 27, 2018), https://www.politico.com/magazine/story/2018/05/27/the-mysterious-tale-of-a-powerful-

and his termination from the Journal. In the CJR Essay, Solomon was clear he knew about Azima's D.C. Proceeding, the filings in that lawsuit and that he had come to believe "Dechert or Bell Pottinger [a British public relations firm] were the sources" of his emails. *See* St. Laurent Decl., Ex. 2 at 10-12.

Accordingly, there can be no doubt that Solomon was on notice of both the alleged hacking and Dechert's potential involvement no later than the date of the CJR Essay, March 5, 2018. *See In re Lorazepam & Clorazepate Antitrust Litig.*, No. 03-cv-1650, 2004 WL 7081446, at *1 (D.D.C. May 18, 2004) (charging plaintiff with notice of claims due to earlier, well-publicized lawsuits "based on the same conduct alleged" by plaintiff). Given Solomon's actual notice of his injuries and its alleged source, equitable estoppel is unavailable to him to toll statutes of limitations based on alleged subsequent concealment by the defendants. *See Nader*, 567 F.3d at 700 (apply DC law); *Farmer v. D & O Contractors, Inc.,* 640 F. App'x 302, 306 (5th Cir. 2016) ("[A] plaintiff who is not reasonably diligent [could] not assert 'fraudulent concealment[.]'") (quoting *Klehr*, 521 U.S. at 194) (addressing RICO claims).

## III.   SOLOMON HAS FAILED TO PLEAD THE NECESSARY ELEMENTS OF EACH CAUSE OF ACTION

### A.   *Standard of Review*

Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's "obligation to provide the grounds of his entitlement to relief 'requires more than labels and conclusions, and a formulaic

---

american-businessman-an-emirati-sheikhdom-three-sanctioned-iranians-and-an-imprisonment-in-tehran-218405/

recitation of the elements of a cause of action will not do.'" *Greenpeace, Inc.*, 808 F. Supp. at 267-68 (quoting *Twombly*, 550 U.S. at 555). The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* And the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Harris v. Corr. Corp. of America*, 796 F. Supp. 2d 7, 10 (D.C. Cir. 2011) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor should courts accept "a legal conclusion couched as a factual allegation," or "naked assertions of unlawful misconduct devoid of further factual enhancement." *Id.* (cleaned up) (quoting *Iqbal*, 556 U.S. at 678).

B.      *Solomon Has Not Sufficiently Stated a Claim Under RICO (Count I)*

A violation of § 1962 of the RICO Act consists of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Western Assocs. Ltd. P'ship. v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001). Solomon has failed to allege facts sufficient to establish these elements.

i.   *Solomon Has Not Satisfied the Conduct Element By Alleging Sufficient Predicate Acts*

To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must establish that each defendant, through the commission of two or more predicate acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce. 18 U.S.C. § 1961(5); *Western Assocs.*, 235 F.3d at 633. Each of the predicate acts must be among the criminal offenses the RICO statute enumerates in 18 U.S.C. § 1961(1) ("Section 1961"). *See Western Assocs.*, 235 F.3d at 633. In a multi-defendant RICO scheme, "each defendant must have committed two predicate offenses." *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-CV-0150 (DLF), 2020 WL 1536350, at *9 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021).

Here, Plaintiffs have failed to plead two predicate acts by Gerrard. None of the misconduct alleged against Gerrard in the Amended Complaint constitutes a predicate act as they are (a) not included in the RICO statute, (b) consist of excluded litigation or cover-up activity, (c) extraterritorial, (d) not sufficiently pled or (e) some combination thereof.

> a. Much of the Alleged Misconduct is Not Covered Under the RICO Statute

"[I]njury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)." *Coleman v. Unknown Cent. Intel. Agents*, C/A No. 04-1688(EGS), 2006 WL 2506631, at *3 (D.D.C. Aug. 28, 2006) (quoting *Beck v. Prupis*, 529 U.S. 494, 505 (2000)). Section 1961(1) does not include as cognizable predicate acts "human rights abuses," "torture," "attacks against the free press", "abusive display[s] of thuggery" or, "illegal hacking described in Am. Compl. ¶ 36. *See Saunders v. Davis*, No. 15-cv-2026 (RC), 2016 WL 4921418, at *4 n.6 (D.D.C. Sept. 15, 2016) ("The Court notes that 18 U.S.C. § 1030 is not a predicate offense for the purposes of RICO." (citing 18 U.S.C. § 1961(1)).

Further, Solomon's claim that the use of the word "fraud" in connection with the packaging of documents concerning Solomon and that the documents were presenting in a misleading (though notably not false) light (*see* Am. Compl. ¶ 93-99) is closer to a claim for defamation than it is to any RICO predicate act. As observed by the D.C. Circuit Court in *Ctr. for Immigr. Stud. v. Cohen*:

> D.C. Circuit has observed that a plaintiff "complaining about a defamatory statement cannot end-run the requirements for a defamation claim" by pleading it as a RICO violation. *See Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285, 1288 (D.C. Cir. 2014). Other district courts have not looked favorably at attempts to do so. *See Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *9 (D. Md. Mar. 17, 2015) (dismissing plaintiff's RICO claim for the additional reason that it "reflect[ed] more of an attempt to spin an alleged scheme to harm his reputation than it reflects a

viable RICO claim"); *Ritchie v. Sempra Energy*, No. 10-cv-1513, 2013 WL 12171757 at *4 (S.D. Ca. Oct. 15, 2013) (finding that allegations of a smear campaign, through a website and press releases, containing false statements regarding market analysis, designed to injury the company's good will and lower its stock prices, did not state a predicate offense under RICO); *Kimm v. Lee*, No. 04 CIV. 5724 (HB), 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006) (dismissing plaintiff's RICO claim where plaintiff alleged false statements perpetrated to harm his reputation); *Manax v. McNamara*, 660 F. Supp. 657, 660 (W.D. Tex. 1987), *aff'd*, 842 F.2d 808 (5th Cir. 1988) (where defendant coordinated false and misleading press articles harmful to plaintiff, the scheme was not a fraud on tangible or intangible rights, but rather was damage to his reputation and thus could not be a predicate act under RICO). And, the law is clear that defamation is not a predicate act under RICO. *Hourani v. Mirtchev*, 796 F.3d 1 (D.C. Cir. 2015).

410 F. Supp. 3d 183, 191 (D.D.C. 2019), *aff'd,* 806 F. App'x 7 (D.C. Cir. 2020).

### b.  Litigation and "Cover-up" Activities Are Not Predicate Acts

In "a long line of cases," courts have found "as a matter of law, that … 'litigation activities' … cannot constitute predicate acts for the purposes of RICO." *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011). Rather, claims of litigation misconduct should be "direct[ed] . . . to the [] courts where these acts are allegedly occurring and where the underlying litigation is still pending," *Id.* at 173–74; *see Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (citing *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)); *see also Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d. 55, 61 (D.D.C. 2019) (noting that "[n]umerous other circuit courts and district courts across the country have concluded that wrongful litigation activities cannot serve as RICO predicate acts").

Furthermore, "acts of concealment done after the[ ] central objectives [of the conspiracy] have been attained, for the purpose of covering up after the crime," are not considered part of the

conspiracy and do not provide the necessary predicate acts. *Democratic Natl. Comm. v. Russian Fedn.*, 392 F Supp 3d 410, 444 (S.D.N.Y. 2019). In *Democratic National Committee v. Russian Federation*, the plaintiff alleged that an "enterprise" hacked and released its emails, and later took steps to cover up the hacking, "through criminal obstruction of justice and witness tampering." *Id.* at 424. The court dismissed the RICO claim on several grounds. *Id.* at 443-44. The court held that the allegations concerning the cover-up were not cognizable predicates because "acts of concealment after the central objections of the conspiracy have been attained, for the purpose of covering up after the crime, are not considered part of the conspiracy." *Id.* at 444 (cleaned up) (quoting *Grunewald v. U.S.*, 353 U.S. 391, 405 (1957)).

Most of the acts in the Amended Complaint relate to the alleged "cover-up" or litigation activities following Azima's discovery of the alleged hacking. Am. Complaint ¶¶ 189-90, 202-206. These allegations are not predicate acts for the purposes of the conduct element of Solomon's RICO claims.

      c.   Extraterritorial Conduct Unless Included in the Underlying Statute Is Excluded as Predicate Acts

In *R.J.R. Nabisco v. European Cmty.*, 579 U.S. 325 (2016), the Supreme Court limited the application of RICO to apply only to limited foreign racketeering activity: "A violation of § 1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, provided that each of those offenses violates a predicate statute *that is itself extraterritorial.*" *Id.* at 340 (emphasis added). Solomon relies on numerous alleged offenses where the statute is not extraterritorial.

Section 1961(1) lists as a predicate offense only the state law crime of kidnapping. The District of Columbia's kidnapping statute, is limited to acts that take place in the District. *See* D.C.

Code § 22-2001. All allegations concerning the alleged kidnapping of Al Sadeq (Am. Compl. ¶¶ 61-71, 153, 166) are alleged to have occurred outside of the District.

Solomon's allegations concerning false testimony before the High Court in the United Kingdom, which Solomon alleges amounts to "obstruction of justice" (Am. Compl. ¶¶ 187, 199, 202-03) do not satisfy the predicate act requirement because 18 U.S.C. § 1503, the applicable obstruction of justice statute, only applies to domestic proceedings. *See Dooley v. United Technologies Corp., et al*., No. 91-2499, 1992 WL 167053 (D.D.C. 1992) ("[18 U.S.C. § 1503 which] prohibits any corrupt attempt to obstruct the due administration of justice requires that the perpetrators intend to obstruct a pending *federal court* proceeding.") (emphasis added) (internal citation omitted); *U.S. v. Smith*, 729 F. Supp. 1380, 1385 (D.D.C. 1990) (finding that 18 U.S.C. § 1503 did not apply as relevant proceedings were "not in federal court").

Section 1961(1) lists both state and Hobbs Act extortion as potential RICO predicates pursuant to 18 U.S.C. § 1951. However, the District of Columbia's criminal prohibition on extortion, D.C. Code § 22-3251, does not reach beyond the territory of the District, and the Hobbs Act extortion also does not apply extraterritorially. *See, e.g.*, *In re Vasquez*, 705 N.E.2d 606, 610 (Mass. 1999); *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 168 (D.D.C. 2013). Am. Compl. ¶¶ 36, 63-71.

In addition, wire fraud under 18 U.S.C. § 1343 does not apply extraterritorially. S*ee U.S. v. Hawit,* 15-CR-252 (PKC), 2017 WL 663542, at *4 (E.D.N.Y. Feb. 17, 2017). For Solomon's sweeping and unspecified claims like those for wire fraud the Amended Complaint's general pleading deficiencies dovetail with its failure to establish non-extraterritorial conduct by Gerrard as the pleadings fail both to establish the necessary conduct by Gerrard and that such conduct occurred in the U.S. Am. Compl. ¶ 186-87, 194.

> d. The Amended Complaint Does Not Sufficiently Allege Claims for Money Laundering or Mail or Wire Fraud Against Gerrard

A plaintiff suing for mail or wire fraud must allege with specificity each of the actions alleged to constitute the mail and/or wire fraud. Rule 9(b); *Bates v. Northwestern Human Servs., Inc.*, 466 F. Supp. 2d 69, 89-90 (D.D.C. 2006). An allegation of wire fraud requires pleading "(1) a scheme to defraud; and (2) the use of an interstate wire communication to further the scheme." *U.S. v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990); *Ctr. for Immigr. Stud.*, 410 F. Supp. 3d at 189; *see, e.g.*, *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015) (dismissing RICO claims because appellants failed to meet 9(b) pleading requirements); *see also Saunders*, 2016 WL 4921418, at *12 (requiring heightened pleading requirement for RICO claims including wire fraud).

While Gerrard is included in Exhibit B, an exhibit pulled from Azima's filing (*see* Am. Compl. ¶ 193), which purports to provide examples of mail or wire fraud, the allegations are entirely generic. *See Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 78 (D.D.C. 2019) ("A party pleading fraud must state the time, place, and content of the false representations, the fact misrepresented, and what was retained or given up as a consequence of the fraud; relevant circumstances of mail and wire fraud subject to this heightened standard include the time, place and contents of the false representations.") (cleaned up) (internal citations omitted). The vast majority of the alleged examples simply allege "Co-conspirator Page called Defendant Gerrard to discuss the scheme to defraud Azima" without providing any particulars of what was allegedly said. Indeed, all but three of the examples are concededly not substantive acts of mail or wire fraud, with Azima's counsel (from whom this exhibit is lifted) describing them as "Communications between coconspirators in furtherance of scheme to defraud Azima." There is no allegation of an intent to deceive, a deception, a victim, or an injury in these communications.

The remaining examples of "wire fraud" on Exhibit B (*see e.g.* #85, 115, and 118) involve litigation communications which, as separately briefed, are excluded as predicate acts.

In addition, Solomon's claims of wire fraud under 18 U.S.C. § 1343 fail because Solomon fails to identify the location of the relevant acts and as noted above the statute does not apply extraterritorially. *See Hawit,* 2017 WL 663542, at *4.

Further, Solomon has failed to adequately allege that the objective of the alleged mail or wire fraud was the acquisition of money or property as required. *See Hollander v. Pressreader, Inc.*, 19-cv-2130 (AJN), 2020 WL 2836189, at *4 (S.D.N.Y. 2020). A plaintiff must allege "which defendant caused what to be . . . transmitted by wire . . . as well as *specifically* when and how each mailing or transmission . . . furthered the fraudulent scheme." *Bates*, 466 F. Supp. 2d at 89-90. Solomon has done none of this. In fact, the allegations of the Amended Complaint identify as the purposes of the hacking activity the obtaining of an advantage for RAKIA in its litigation against Azima (Am. Compl. ¶ 187) and the destruction of Solomon's reputation and professional prospects, (*id.* ¶ 222), neither of which constitutes the "money or property" element of a wire fraud offense.

The Amended Complaint states that specific instances of money laundering are included in Exhibit A, another exhibit borrowed from the recently filed Azima litigation. *See* Am. Compl. ¶ 188; *see also* Amended Complaint, Exhibit A, *Azima v. Dechert LLP, et al.*, No. 1:22-cv-08728, ECF No. 1-1 (S.D.N.Y. Oct. 13, 2022). However, a review of that document shows that not one transfer is alleged to have been sent or received by Gerrard. Further, there are no factual allegations that Gerrard directed any of those payments to be made. Further, nowhere in the Amended Complaint has Solomon alleged the elements of "money laundering" as a racketeering activity (as defined in 18 U.S.C. § 1961(1) and 18 U.S.C. § 1956), in that there is no allegation that any of the

Defendants were involved in the transfer of "proceeds" of "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7). With respect to money laundering, Solomon merely recites the elements of money laundering pursuant to 18 U.S.C. § 1956(a)(2)(A), which is not enough. *See Republic of Kazakhstan*, 380 F. Supp. 3d at 62 (rejecting claim for money laundering as a RICO predicate where Plaintiff merely recited the elements of the statute). Furthermore, claims of money laundering require alleging the specific "unlawful activity" the transfer of funds was meant to promote, and Plaintiff fails to plead any such allegations. *See id.*, n.6; 18 U.S.C. § 1956(a)(7).

Ultimately, there is not a single properly pled predicate act that supports a claim against Gerrard.

### ii.   *The Amended Complaint Does Not Sufficiently Allege An "Enterprise"*

"[O]ne of the essential elements of a RICO violation is the existence of an 'enterprise.'" *Watson v. Norris*, No. 89-0625, 1991 WL 7165, at *2 (D.D.C. Jan. 11, 1991). An enterprise requires "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 939 (2009) (requiring that the enterprise have an identifiable structure).

While an "association-in-fact" can be sufficient to satisfy the enterprise element, the association must be "an entity *separate and apart* from the pattern of racketeering activity in which it engages." *Watson v*, 1991 WL 7165, at *2 (emphasis in original). A plaintiff has not alleged an enterprise where "there is no ascertainable structure of the 'enterprise' that is distinct from that inherent in the conduct of the alleged pattern of racketeering activity. [Or where], the only apparent common denominator among the [] defendants as an ongoing 'enterprise' is their involvement in

the particular transaction which is the subject of this suit." *Dist. Telecommunications Dev. Corp.*
*v. Dist. Cablevision, Inc.*, 638 F. Supp. 418, 421 (D.D.C. 1985).

Here the Amended Complaint alleged that the purpose of the enterprise was to carry out a
criminal enterprise and commit further crimes and cover up the crimes. Am. Compl. ¶ 182. This
type of conclusory pleading where the purpose is nothing more than the complained of act does
not sufficiently establish an enterprise. *Wright v. Towns*, No. 90-0565, 1991 WL 100388, at *4
(D.D.C. May 30, 1991) ("Where the enterprise alleged has only one straightforward goal, the
alleged wrongdoing, such an association is not sufficiently continuing to constitute an enterprise.")
(cleaned up).

### iii.   Solomon Has Not Alleged A Pattern of Racketeering Activity

To properly plead RICO, a plaintiff must allege facts to support a "pattern," of predicate
acts that are both related and continuous. *Adler v. Loyd*, 496 F. Supp. 3d 269, 279 (D.D.C. 2020)
(citing *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). With respect to the continuity
requirement, it must be "shown that the predicates themselves amount to, or that they otherwise
constitute a threat of, *continuing* racketeering activity." *Id.* (emphasis in original). Continuity is
"both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or
to past conduct that by its nature projects into the future with a threat of repetition." *Id.* Solomon
has satisfied neither.

An open-ended scheme requires "far more than a hypothetical possibility of further
predicate acts." *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1119 (D.C. Cir. 1991).
"[A] complaint must plausibly allege a 'distinct' threat of further long-term racketeering activity
or a 'showing that the predicate acts or offenses are part of an ongoing entity's regular way of

doing business.'" *Broidy Cap. Mgmt.*, 2020 WL 1536350, at *9 (quoting *H.J. Inc.*, 492 U.S. at 242).

A RICO claim that relies upon a single, limited fraudulent scheme does not satisfy the pattern requirement of 18 U.S.C. § 1961(5). *Anderson v. Wiggins*, 460 F. Supp. 2d 1, 8 (D.D.C. 2006) ("One act does not a pattern make, and therefore is not enough to satisfy the clearly stated requirements of RICO."). Where there is a "single scheme, single injury, and few victims," it is "virtually impossible for plaintiffs to state a RICO claim." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995); *see Western Assocs.*, 235 F. 3d 629 at 633.

Here while there is a disconnected discussion of potential money laundering in Iran and the detention of Al Sadeq by RAK security forces, those events are not alleged to have been directed or caused by the enterprise. Instead, the single incident of alleged misconduct by the defendants was the hacking of Mr. Azima, followed by a cover-up. *See, e.g.*, Am. Compl. ¶¶ 31, 18-31, 108-109, 171, 173, 182, 184, 186-87, 190, 206, 218, 220-21.

This does not constitute a pattern of separate and distinct criminal activity. *Companhia Brasileira Carbureto de Calcio – CBCC v. Applied Indus. Materials Corp.*, 887 F. Supp. 2d 9, 22 (D.D.C. 2012) (RICO requires two overt acts of racketeering activity that "amount to or pose a threat of continued criminal activity" to establish a pattern) (quoting *H.J. Inc.*, 492 U.S. at 239). As noted above, acts of concealment after achieving the central object of a conspiracy do not amount to RICO predicates. *See Pyramid Secur., Ltd.*, 924 F.2d at 1117 (quoting *Grunewald*, 353 U.S. at 405 (1957)).

Concealment also does not satisfy the requirement of "continuity" that is necessary to prove a pattern under the RICO statute. *See H.J. Inc.*, 492 U.S. at 241; *Bridges v. Lezell Law, P.C.*, 842

31

F. Supp. 2d 261, 264 (D.D.C. 2012) (Boasberg, J.) (dismissing RICO case for failure to establish a "threat of continued criminal activity.").

In *Broidy Capital Mgmt.* the court found that similar allegations concerning a hack and distribute scheme did not meet either the open-ended or closed-ended requirement. The Court found that "even if the Complaint had alleged an ongoing threat of releasing the stolen materials, that ongoing threat would be to further the same goal, not an open-ended scheme of racketeering activity." 2020 WL 1536350, at *9 ("The alleged hacking already has happened, and the stories that were meant to silence [Plaintiff] already have been published. A 'one time racket' like this one is not an open-ended scheme.") The alleged "hack and distribute" scheme was not closed-ended because there was "only a single scheme, a single injury, and few victims." *Id.* at *10. Here, the same misrepresentations meant to conceal the 2016 hacking are alleged to be part of a single scheme — with Azima and, potentially, Solomon as the only victims.[10] *See id.* at *29; *see also Bridges,* 842 F. Supp. 2d at 266.

### iv.   Solomon Has Not Alleged Proximate Cause for His Injuries

A plaintiff "must show that the RICO predicate offense was not only the 'but for' cause of the injury, but the proximate cause as well." *Greenpeace Inc.*, 808 F. Supp. 2d at 269 (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). This includes at least three distinct requirements. First, proximate cause requires some "direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. "A link that is too remote, purely contingent, or indirect is insufficient." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9-10 (2010). Second, the injury must flow from the alleged predicate acts supporting the RICO claim.

---

[10] As argued below, even as pled by Solomon, the scheme was directed at Azima with injury occurring only incidentally to Solomon.

*Greenpeace, Inc.*, 808 F. Supp. 2d at 269 (dismissing RICO claim where plaintiff's injuries "in fact stem from underlying violations of District of Columbia law that do not constitute racketeering activity for the purposes of § 1962(c)"); *see also Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 459 (S.D.N.Y. 2004). And third, proximate causation "demands that the plaintiff be the 'intended target' of the RICO violation." *Meng v. Schwartz*, 116 F. Supp. 2d 92, 96 (D.D.C. 2000) (cleaned up). Thus, even if directly traceable to cognizable predicates, incidental harm to a non-target is insufficient. *See also Weaver v. Bratt*, 421 F. Supp. 2d 25, 37 (D.D.C. 2006) (dismissing RICO claim because "plaintiff was not the intended target of the alleged predicate acts").

*First*, the Complaint fails to allege that any of Plaintiff's injuries were caused by predicate acts, as opposed to by intervening acts. Solomon alleges that his employer became aware of the hacked emails but that Solomon was able to retain his position. As alleged, only after the Associated Press contacted the Journal regarding an investigation that uncovered the communications, did the Journal terminate Solomon. The A.P. is not alleged to have been directed by Gerrard to contact the Journal or begin its investigation. In addition, public records make clear that the A.P.'s investigation was not limited to the documents but included numerous interviews with other potential business partners of Azima. *See* Ex. 1. And Solomon told the AP he "under[stood] why the emails and the conversations [he] had with Mr. Azima may look like [he] was involved in some seriously troubling activities." *Id*. Accordingly, Solomon was fired not because of the alleged hacking but because an A.P. investigation unearthed information that raised ethical lapses by Solomon that the Journal could not ignore.

Thus, Solomon's RICO claim impermissibly "rests on the independent actions of third and even fourth parties." *Hemi Grp.*, 559 U.S. at 15; *see also Sheridan v. Mariuz*, No. 07 Civ. 3313,

2009 WL 920431, at *7 (S.D.N.Y. Apr. 6, 2009) (noting that the Supreme Court has "explained that compensable RICO damages must flow directly from the commission of the predicate RICO acts themselves and cannot be the result of an intermediary's actions that may have be[en] induced or caused by the alleged RICO activity") (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006) (only the direct victim of the predicate conduct can show proximate cause)); s*ee Casper v. Paine Webber Grp., Inc.*, 787 F. Supp. 1480, 1495 (D.N.J. 1992) (noting that "cases are legion which hold that a plaintiff, in a suit against the plaintiff's former employer, does not have standing to sue for a violation of [RICO] where the plaintiff's injury consists of termination from his job for 'blowing the whistle' on or for failure to cooperate with his employer's racketeering activity"); *Nodine v. Textron*, 819 F.2d 347, 349 (1st Cir. 1987) (plaintiff was not injured by predicate offenses but instead by "Textron's decision to fire him").

*Second*, Plaintiff does not allege that he was even indirectly harmed by any predicate acts specified in Section 1961, rather than the purported "hack and dump." *See* Am. Compl. ¶ 175; *Greenpeace, Inc.*, 808 F. Supp. 2d at 269 (injury must be caused by a predicate act listed in Section 1961). As detailed above, hacking, or even releasing hacked materials, are not RICO predicates. *See supra*, Section II.B.i.a; *Saunders*, 2016 WL 4921418, at *4 n.6 ("The Court notes that 18 U.S.C. § 1030 [the Computer Fraud and Abuse Act] is not a predicate offense for purposes of RICO."). Here it is alleged that the documents concerning Solomon were taken from Azima. *See* Am. Compl. ¶ 79. Solomon was not even the target of the hacking in the first instance. Further, and as argued in Section II.B above, the alleged obstruction of justice as to the identity of the hackers is entirely unrelated to any injury suffered by Solomon.

*Third*, Plaintiff's RICO claims fail because he was not the "intended target" of any RICO predicate offense. *Weaver*, 421 F. Supp. 2d at 37. As neither hacking nor the disclosure of hacked

materials are RICO predicates, there are no allegations that he was the target of any predicate acts. Solomon was not the target of the alleged kidnapping or extortion, nor does he claim that the alleged wire fraud was targeted at *him*. It appears evident from the factual allegations, that in as much as there was a target that it was Azima, with Solomon's injury resulting from the Journal's obtaining materials allegedly hacked from Azima's accounts. *Meng*, 116 F. Supp. 2d at 96 (dismissing claim where RICO violations were aimed at other parties); *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 166 (S.D.N.Y. 2020), *aff'd in part, appeal dismissed in part sub nom*., *K.M. v. Adams*, No. 20-4128, 2022 WL 4352040 (2d Cir. Aug. 31, 2022) ("Simply put, a RICO plaintiff cannot establish standing if the alleged injury is the derivative result of a fraudulent scheme that targets another victim."); *Anza*, 547 U.S. at 459.

Finally, any alleged injury subsequent to Plaintiff's termination is even more attenuated from the alleged predicate acts. For example, "the relationship between any evaporation of interest in [Plaintiff's] book" and Defendant's alleged actions is "too remote" to sustain a RICO claim. *Browning v. Clinton*, 292 F.3d 235, 249 (D.C. Cir. 2002).

Accordingly, Solomon has not sufficiently alleged that any RICO predicate act committed by any defendant was the proximate cause of his alleged damages.

> ### v. Solomon has not alleged actionable injuries

Beyond not sufficiently alleging proximate causation, Solomon has failed to set forth injuries that are actionable under RICO. For example, courts routinely reject loss of employment as the basis for RICO injury because termination is a decision of an employer rather than a direct result of any predicate act. *See Anderson v. Ayling*, 396 F.3d 265, 270-71 (3d Cir. 2005) ("job loss" is an injury "that has been found not normally to create RICO standing"). Similarly, other courts have held that loss of employment does not constitute an injury to "business or property" sufficient

to confer RICO standing. *See Dunleavy v. Wayne Cty. Comm'n*, No. 04-cv-74670, 2006 WL 8431836, at *2 (E.D. Mich. May 11, 2006) (analyzing cases; concluding that "[i]f Congress had meant to confer standing on any person who has suffered any type of financial injury, including the loss of employment or the loss of an employment opportunity, it could have said so"); *Reynolds v. Condon*, 908 F. Supp. 1494, 1518 (N.D. Iowa 1995) ("Thus it appears that mere injuries to employment or income from employment are not RICO injuries."); *but see Mruz v. Caring, Inc.*, 991 F. Supp. 701, 711-12 (D.N.J. 1998) (job loss is injury to business or property).

Solomon's other injuries are even farther outside available damages to "business or property" under RICO. To have standing, Plaintiffs must plead a "concrete financial loss" which is "not easily met." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 521 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009). The alleged harm must be tied to "an ascertainable, calculable value." *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014) (citation omitted). It is well-settled that "[a]llegations of personal injury do not suffice" to demonstrate injury to "business or property." *Klayman v. Obama*, 125 F. Supp. 3d 67, 88 (D.D.C. 2015) (citing *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 19 (D.D.C. 2005)); *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp. 2d 86, 101 (D.D.C. 2003). This includes claims for mental anguish or emotional distress. *Pohlot v. Pohlot*, 664 F. Supp. 112, 116 (S.D.N.Y. 1987) ("The courts have uniformly held that personal injuries and emotional distress do not come within RICO."). Pecuniary losses that flow from personal injuries are also outside of RICO. *Burnett*, 274 F. Supp. 2d at 100-02; *see also Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992) (RICO "preclude[s] recovery for personal injuries *and the pecuniary losses incurred therefrom*." (emphasis added)). "[G]eneralized reputational harms" likewise will not suffice. *Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14, 16 (2d Cir. 2006). And allegations of lost future profits—including from

book deals—cannot sustain a RICO claim because they are "too remote." *Browning*, 292 F.3d at 249 (holding alleged lost profits on a potential book deal did not plead RICO injury because it was "too remote"); *Petroff Amshen LLP v. Alfa Rehab PT PC.*, No. 21-847, 2022 WL 480475, at *2 (2d Cir. Feb. 17, 2022); *see also Ctr. for Immigr. Stud.,* 410 F. Supp. 3d at 191.

Here, Solomon's alleged damages fall into these non-actional categories of damages with Solomon unable to detail his alleged damages beyond "lost business opportunities" (Am. Compl. ¶ 195) and "damage to his economic and reputational detriment" *(id.* ¶ 206) *"*causing him severe emotional harm" and unsubstantiated generic claims of "damages to his property" (*id.*) Accordingly, he has not alleged proper injuries for RICO standing.

### C.    Solomon Has Failed To Plead a Cause of Action for Violation of the Computer Fraud and Abuse Act (Count II)

The Computer Fraud and Abuse Act ("CFAA") authorizes a civil suit if a plaintiff can show that the defendant: "(1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." *CoStar Grp., Inc. v. Leon Cap. Grp., LLC,* No. 21-CV-2227 (CRC), 2022 WL 2046096, at *7 (D.D.C. June 7, 2022) (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009)); *see* 18 U.S.C. § 1030(g).

Solomon alleged "that one team consisting of Defendants Vital and Mr. Del Rosso as well as Cyber Defense, BellTrox and CyberRoot in India which hacked Mr. Azima's email account and dumped encrypted tranches of his emails onto a public location accessible through the internet." Am. Compl. ¶ 78. It is later alleged that access to Azima's data included "communications Mr.

Solomon sent or received." Solomon claims as a result he lost awards, including book publishing and speaking engagements and other lost opportunities. *Id.* ¶ 213.

To bring a CFAA suit, a plaintiff must have suffered "damage or loss by reason of" the alleged violation. 18 U.S.C. § 1030(g). And the amount lost must total at least $5,000 in "aggregat[e]" value. *Id.* § 1030(g), (c)(4)(a)(i)(I); Am. Compl. ¶ 214.

The only category in § 1030(c)(4)(A)(i) that Solomon claims is applicable is category 1, which involves "loss" to one or more persons during any one-year period, aggregating at least $5,000 in value. Am. Compl. ¶ 214. In this category, only "economic damages" are compensable. § 1030(c)(4)(A)(i)(I). What constitutes "loss" as contemplated by the CFAA, includes: "(1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017); *see also Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1073–74 (6th Cir. 2014); *A.V v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009). Solomon's alleged damages fall into neither category. As observed by a number of courts, "there is nothing to suggest [in the CFAA] that the 'loss' or costs alleged can be unrelated to the computer." *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 474 (S.D.N.Y. 2004) (finding that, in light of the statute as a whole and the legislative history, loss refers only to "any remedial costs of investigating the computer for damage, remedying the damage and any costs incurred because the computer cannot function while or until repairs are made" and finding that travel expenses to remedy the violation were "too far outside the scope of what the statute is to protect against"), *aff'd*, 166 F. App'x 559 (2d Cir. 2006).

As the damages Solomon has alleged are wholly untethered to the "computer" that was hacked, his claim under the CFAA fails to sufficiently allege this necessary element.

> **D.**    *Solomon Has Failed To Plead Causes of Action for Violations of the Federal Wiretap Act (Counts Three and Four) and the D.C. Wiretap Act (Counts Five & Six)*

Solomon has failed to plead facts in support of the necessary elements of the wiretapping statutes cited in the Amended Complaint. The federal statute, 18 U.S.C. § 2511(1)(a), expressly imposes liability only where a person "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." The same requirement — that there be an "interception" — is found in 18 U.S.C. § 2520(a), authorizing a civil cause of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this [law]." The term "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). The D.C. statute contains the same requirements. *See* D.C. Code § 23-542(a)(1) (applying to "any person who in the District of Columbia —(1) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication.").

Courts have universally held that the "interception" of a communication "must be contemporaneous with the communication's transmission." *McPherson v. Harker*, No. 18-CV-3082 (BAH), 2021 WL 1820290, at *10 (D.D.C. May 6, 2021), *aff'd sub nom.*, *McPherson v. Del Toro*, No. 21-5127, 2022 WL 985412 (D.C. Cir. Mar. 28, 2022); *see Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as amended* (Jan. 20, 2004) ("Every circuit court to have considered the matter has held that an 'intercept' under the [Act] must occur

contemporaneously with transmission."); *Luis v. Zang*, 833 F.3d 619, 627 (6th Cir. 2016); *U.S. v. Steiger*, 318 F.3d 1039, 1048 (11th Cir. 2003). Applying this principle, numerous courts have held that the seizure of emails stored on a server is not an "interception" under the statute. *McPherson*, 2021 WL 1820290, at *10 (retrieving Facebook messages after transmission was completed "did not contemporaneously intercept them"); *Kinchen v. St. John's Univ.*, Nos. 17-cv-3244, 17-cv-4409, 2019 WL 1386743, at *11 (E.D.N.Y. Mar. 26, 2019) (alleged phishing and subsequent "surveill[ance]" of emails did not plead contemporaneous interception); *see also Bailey v. Bailey*, No. 07-cv-11672, 2008 WL 324156, at *5 (E.D. Mich. 2008) (finding Wiretap Act did not apply where ex-husband used key logger to access his then wife's emails); *Miller v. Meyers*, 766 F. Supp. 2d 919, 924 (W.D. Ark. 2011).

In his Amended Complaint, Solomon alleges that his documents were located in a batch of documents taken from Azima. Am Compl. ¶¶ 38, 41, 85. Accordingly, the element of "contemporaneity" of the Federal Wiretap Act is not satisfied.

In addition, the Federal Wiretap Act does not apply extraterritorially. *See, e.g.*, *Huff v. Spaw*, 794 F.3d 543, 547 (6th Cir. 2015); *U.S. v. Maturo*, 982 F.2d 57, 60 (2d Cir. 1992); *Zheng v. Yahoo! Inc.*, No. C-08-1068, 2009 WL 4430297, at *3-4 (N.D. Cal. Dec. 2, 2009). The "relevant location" in determining extraterritoriality under the Federal Wiretap Act "is not the location or nationality of any person whose voice might have been intercepted; it is the site at which the interceptions occurred." *U.S. v. Minaya*, No. 17-359, 2019 WL 1615549, at *6 (D.N.J. Apr. 16, 2019), *aff'd*, 827 F. App'x 232 (3d Cir. 2020); *see also Huff*, 794 F.3d at 547 ("The relevant location is not where the Huffs' conversations took place, but where Spaw used a device to acquire the contents of those conversations."). The District of Columbia wiretap statute similarly applies only to "any person **who in the District of Columbia** (1) willfully intercepts, endeavors to

intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication." D.C. Code § 23-542(a) (emphasis added). The Complaint alleges that India based companies CyberRoot and BellTroX were responsible for hacking Azima's emails. Am. Compl. ¶ 74. No other facts are alleged regarding the locus of the alleged hacking. It is not alleged that any interception occurred either in the U.S. or more specifically in the District.

And as to Gerrard, there are no allegations that he was directly involved in the interception of the communications. Courts have found there is no aiding and abetting or conspiracy liability available under section 2511(c). *See Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246 (10th Cir. 2012); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000). Solomon does no better under Section 2511(d). Congress amended the statute in 1986 to eliminate civil liability for "procurement" although leaving the criminal penalties for Section 2511(d) unchanged. *See Buckingham v. Gailor*, No. 00-CV-1568, 2001 WL 34036325, at *6 (D. Md. Mar. 27, 2001), *aff'd sub nom. Buckingham ex rel. Buckingham v. Gailor*, 20 F. App'x 243 (4th Cir. 2001); *Peavy*, 221 F.3d at 168–69; *but see Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006).

Finally, unlike the Federal Wiretap Act, the D.C. Wiretap Act does not include within its proscription "electronic communications." Under the D.C. Code, "intercept" means "the *aural* acquisition of the contents of any wire or oral communication through the use of any intercepting device." D.C. Code § 23-541(3) (emphasis added); *cf.* 18 U.S.C. § 2510(4) (federal definition of "intercept" means "the aural *or other* acquisition of the contents of any wire, electronic, or oral communication" (emphasis added)). In other words, it is literally a wiretapping statute, and it does not reach hacking of emails as has been alleged here.

E.    *Solomon Has Failed to Plead a Claim for Tortious Interference with a Business Relationship*

While Solomon's claim for tortious interference is time-barred, he also fails to state a valid claim. In order to state a claim for tortious interference, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy, and (4) resultant damage." *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995). "A necessary prerequisite to recovery under this theory is that the interference alleged [has] been both intentional and improper." *Int'l City Mgmt. Ass'n Ret. Corp. v. Watkins*, 726 F. Supp. 1, 6 (D.D.C. 1989).

As an initial matter, a truthful disclosure cannot support a tortious interference claim as a matter of law. It is well-established that the District of Columbia "embraces the Restatement's definition of tortious interference and its defenses." *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 349 (D.C. 2015). And under Section 772 of the Restatement of Torts, a plaintiff cannot base a tortious interference claim on a defendant's disclosure of "truthful information." Restatement (Second) of Torts § 772, cmt. b (1979). Thus, Federal and D.C. courts consistently dismiss tortious interference claims based solely on truthful disclosures. *See, e.g.*, *Int'l City Mgmt. Ass'n Ret. Corp.*, 726 F. Supp. at 6-7; *see also Bennett Enters., Inc.*, 45 F.3d at 499 (reversing district court's judgment because defendant's disclosure of truthful information was insufficient to establish tortious interference claim).

Here by Solomon's own admission he "understood why the emails and the conversations [he] had with Mr. Azima may look like [he] was involved in some seriously troubling activities." Ex. 1. And as stated in the A.P.'s story, the assertions in the hacked communications were reportedly corroborated by numerous witness interviews. *Id.*

42

Further, as discussed in the context of Solomon's RICO claim, the alleged proximate cause of the injury, the hacking and dissemination of information, is too far removed and with too many independent intervening acts occurring to support a claim. This same reasoning is why courts require "[s]pecific facts about the terms of the relationships and whether the employees were subject to at-will employment agreements [] to state a plausible claim" for tortious interference with economic advantage. *Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*, 208 F. Supp. 3d 219, 229 (D.D.C. 2016) (dismissing plaintiff's tortious interference claim for insufficient pleading). As an at-will employer can terminate an employee for any or no reason under D.C. law, an at-will employment agreement cannot provide a basis for a tortious interference claim. *Id.* at 229-30*; Riggs v. Home Builders Inst.*, 203 F. Supp. 2d 1, 24 (D.D.C. 2002); *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 957 (D.C. 2000). Plaintiff does not allege any more defined contractual relationship with either the Journal (or anyone else) which is fatal to his tortious interference claim.

Solomon alleges that he lost "opportunities to build on his reputation such as prestigious job opportunities, high value speaking engagements and book publishing deals that would have otherwise been available to him." Am. Compl. ¶ 257. So while Solomon may allege general reputational damage, he does not "name [any] specific contractual relationships that the defendant allegedly interfered with, or . . . identify any facts related to future contracts compromised by the alleged interferer." *Nyambal v. Alliedbarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 316 (D.D.C. 2016), *reconsidered on other grounds*, 344 F. Supp. 3d 183 (D.D.C. 2018). And even if he had, Plaintiff fails to allege any "knowledge of the relationship or expectancy on the part of" Defendants. *Bennett Enters., Inc.*, 45 F.3d at 499.

This claim should be dismissed.

43

F.      *Solomon Has Not Stated a Claim for Civil Conspiracy*

Under the law of the District of Columbia, "[c]ivil conspiracy is not an independent tort." *Blakeney v. O'Donnell*, 117F. Supp. 3d 6, 14 (D.D.C. 2015) (quoting *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007)).  Accordingly, "[a] claim for civil conspiracy thus fails unless the elements of the underlying tort are satisfied." *Id.* at 14 (quoting *Nader*, 567 F.3d at 697). Because Plaintiff is incapable of satisfying pleading requirements as to the statutory violations or torts allegedly supporting any conspiracy claim, he cannot demonstrate a viable cause of action for conspiracy.

Furthermore, a claim of civil conspiracy cannot be supported by a statutory violation absent statutory language or a common law tort analogue. *See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1129-30 (D.C. 2015) ("[W]e . . . have cited authority that 'a claim of civil conspiracy does not lie for a violation of a statute' absent statutory language to the contrary.") (quoting *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 739 (D.C. 2000))); *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011) (rejecting civil conspiracy claim under Consumer Protection Procedures Act and noting that "the District of Columbia Court of Appeals has expressed skepticism about statutory violations serving as 'underlying torts' for civil conspiracy claims where the statutory right at issue has no common law tort analogue"). There is no common law analog to the CFAA or Wiretap Act and they do not provide for abettor liability. *Azima v. Del Rosso*, No. 1:20CV954, 2021 WL 6755013, at *8 (M.D.N.C. Aug. 9, 2021), *adopted in part and rejected in part on other grounds*, 2021 WL 5861282 (M.D.N.C. Dec. 20, 2021) ("'there is no civil liability for secondary or conspiracy conduct' under the Wiretap Act.")

G.       *Solomon Has Not Stated a Claim for Punitive Damages*

The statute Solomon cites—18 U.S.C. § 1964(c)—does not provide for punitive damages. *See, e.g.*, *Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1289 (S.D.N.Y. 1988) (stating that RICO's "plain language do[es] not allow for punitive damages"). He cites to no other bases for punitive damages. Furthermore, for the reasons set forth above, he has not stated a sufficient RICO or another claim to support punitive or other damages. Thus, his punitive damages claim cannot survive.

**CONCLUSION**

For the foregoing reasons, as well as those reasons set forth in the papers of the other defendants in this action which are incorporated by reference as applicable, Gerrard respectfully requests that the Court dismiss Solomon's Complaint with prejudice.

DATED: March 17, 2023
            New York, New York

                            Respectfully submitted,

                             */s/ Andrew St. Laurent*
                            Andrew St. Laurent* (N.Y. Bar: 2936086)
                            Evan W. Bolla* (N.Y. Bar: 4574489)
                            Harris St. Laurent & Wechsler LLP
                            40 Wall St., 53rd Fl
                            New York, New York 10005
                            Tel: (212) 397-3370
                            andrew@hs-law.com
                            ewbolla@hs-law.com

                            *Attorneys for Defendant David Neil Gerrard*

                            *admitted pro hac vice*

45